UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED
2026 FEB -2  A 11: 32

| | |
|---|---|
| CLAYTON M. HOWARD,<br><br>              Plaintiff,<br><br>v.<br><br>JENNA VENTOLA, in her individual capacity;<br>LORI A. GRIFA, in her individual capacity;<br>JOHN ZUNIC, in his individual capacity;<br>SHEILA VENABLE, in her individual capacity;<br>FRANCYNA EVINS;<br>CYNTHIA HARDAWAY, ESQ.;<br>ESSEX COUNTY, a political subdivision<br>STATE OF NEW JERSEY;<br>JANE AND JOHN DOE 1-10;<br><br>              Defendants. | Case No.: _____<br><br><br><br>VERIFIED COMPLAINT<br><br><br><br><br><br>DEMAND FOR JURY |

## I. PRELIMINARY STATEMENT

This civil rights action arises from a criminal conspiracy orchestrated by state actors and private parties to deprive Plaintiff Clayton Howard of his constitutional rights through a coordinated scheme of witness tampering, obstruction of justice, malicious prosecution, and systematic denial of domestic violence protections spanning from 2023 through the present.

The conspiracy resulted in: (a) Plaintiff's wrongful conviction for cyber harassment using fabricated evidence created by the very person he held a Final Restraining Order against; (b) systematic non-enforcement of a valid Final Restraining Order over a three-year period; (c) witness tampering designed to prevent Plaintiff's testimony in a criminal prosecution; (d) denial

of crime victim rights under state and federal law; and (e) ongoing retaliation for Plaintiff's exercise of First Amendment rights.

This action seeks compensatory and punitive damages, declaratory relief, injunctive relief, and such other relief as this Court deems just and proper under federal RICO statutes, 42 U.S.C. §§ 1983, 1985(2), 1985(3), and 1988 the New Jersey Civil Rights Act, and common law.

## II. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims), 18 U.S.C. § 1964(c) (civil RICO), and 42 U.S.C. § 1983 (civil rights).

2. This Court has jurisdiction over Plaintiff's claims for violations of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

3. This Court has jurisdiction over Plaintiff's RICO claims pursuant to 18 U.S.C. § 1964(c), which provides a private right of action for persons injured by violations of 18 U.S.C. § 1962.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as Plaintiff's federal claims.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because: (a) the Defendants reside in this District; (b) a substantial part of the events giving rise to the claims occurred in this District; and (c) the property that is the subject of this action is situated in this District.

6. This Court has personal jurisdiction over all Defendants because they reside in New Jersey, committed tortious acts within New Jersey that injured Plaintiff in New Jersey, and/or purposefully availed themselves of the privilege of conducting activities in New Jersey.

## III. PARTIES

A. Plaintiff

7. Plaintiff Clayton M. Howard is an individual residing at 24 Orchard Street, Carteret, New Jersey 07008.

8. At all relevant times, Plaintiff was:

a. The holder of Final Restraining Order FV-07-003579-22 against Defendant Francyna Evins, issued December 1, 2022, by the Essex County Superior Court;

b. A domestic violence victim entitled to protection under N.J.S.A. 2C:25-17 et seq.;

c. A crime victim with rights under N.J.S.A. 52:4B-34 et seq. (New Jersey Crime Victim's Bill of Rights);

d. A named victim in *United States v. Sean Combs*, Case No. 24-CR-542 (S.D.N.Y.)(Victim 2 Count 3);

e. An African American male subjected to discriminatory treatment based on race, gender, and status as a domestic violence victim;

f. A citizen exercising his First Amendment rights to criticize public officials and advocate for domestic violence victims.

B. Individual Defendants

9. Defendant JENNA VENTOLA is an individual residing in New Jersey who, at all relevant times, was employed as an Assistant Prosecutor in the Essex County Prosecutor's Office and assigned to prosecute Defendant Evins for violations of the Final Restraining Order protecting Plaintiff. Defendant Ventola is sued in her individual capacity for actions taken outside the scope of prosecutorial immunity, including:

a. fabricating false charges against Plaintiff;

b. conspiring with the criminal defendant she was charged with prosecuting;

c. witness tampering;

d. obstruction of justice;

e. using her prosecutorial position to retaliate against Plaintiff for protected speech; and (f) participating in a criminal enterprise to deprive Plaintiff of constitutional rights.

The acts alleged were not performed in furtherance of prosecutorial duties but rather in furtherance of a criminal conspiracy and personal vendetta against Plaintiff for criticizing her professional conduct. Under *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993), prosecutors are not immune when they conspire with non-governmental parties or fabricate evidence in conspiracy with private experts; in *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997), the Supreme Court held prosecutors have no immunity for making

false statements of fact or acting as complaining witnesses. Defendant Ventola's actions constitute investigative and administrative functions outside prosecutorial immunity, as established in *Burns v. Reed*, 500 U.S. 478, 493 (1991) (providing legal advice to police and acting in investigative capacities are administrative functions lacking absolute immunity) and *Rose v. Bartle*, 871 F.2d 331, 346 (3d Cir. 1989) (filing false documents is an administrative act not protected by prosecutorial immunity).

10. Defendant LORI A. GRIFA is an individual residing in New Jersey who, at all relevant times, served as a Judge of the Essex County Superior Court. Defendant Grifa is sued in her individual capacity for actions taken in complete absence of all jurisdiction and/or in a non-judicial capacity, including:

    a. accepting and relying upon evidence she knew or should have known was fabricated by a criminal defendant;

    b. creating a legal fiction (non-existent property interest) contrary to binding precedent to facilitate Plaintiff's wrongful conviction;

    c. participating in a conspiracy to deprive Plaintiff of constitutional rights;

    d. committing fraud upon the court; and

    e. acting with such clear absence of all jurisdiction that her acts cannot be characterized as judicial.

The acts alleged were performed in complete absence of jurisdiction because she accepted fabricated evidence, created law contrary to binding precedent, and participated in a conspiracy to wrongfully convict Plaintiff, thereby acting as an advocate rather than a neutral arbiter. Under *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978), judges have no immunity when acting in "clear absence of all jurisdiction," confirmed in *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Additionally, under *Dennis v. Sparks*, 449 U.S. 24, 27-29 (1980), judges lose immunity when conspiring with private parties to corrupt the judicial process, as recognized by the Third Circuit in *Young v. Kann*, 926 F.2d 1396, 1405-06 (3d Cir. 1991) (conspiracy allegations against judges can overcome judicial immunity, particularly when coordinating with state actors to deny constitutional rights). Defendant Grifa's knowing acceptance of fabricated evidence without inquiry removes her immunity, as established in *Gregory v. Thompson*, 500 F.2d 59, 63 (9th Cir. 1974) (judge accepting false evidence knowingly and failing to inquire

into obvious fabrication acts outside judicial capacity) and *Pyle v. Kansas*, 317 U.S. 213, 216 (1942) (convictions based on knowingly fabricated evidence violate due process).

11. Defendant HON. JOHN ZUNIC is sued in his individual capacity. At all times relevant to this Complaint, Judge Zunic served as Presiding Judge of the Family Part (P.J.F.P.) of the Superior Court of New Jersey, Essex County, and presided over proceedings in Howard v. Evins, Docket No. FV-07-003579-22, from September 2025 through January 2026. Judge Zunic is a "person" within the meaning of 42 U.S.C. § 1983 and 18 U.S.C. § 1961(3) and acted under color of state law at all times relevant to this Complaint. The acts alleged against Defendant Zunic were performed in complete absence of jurisdiction because Plaintiff was never served with the petition of Defendant Evins filed pursuant to *Carfagno v. Carfagno*, and Defendant Zunic had actual knowledge of this service defect yet continued to conduct hearings and render decisions. Under *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978), judges have no immunity when acting in "clear absence of all jurisdiction," confirmed in *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Additionally, under *Dennis v. Sparks*, 449 U.S. 24, 27-29 (1980), judges lose immunity when conspiring with private parties to corrupt the judicial process, as recognized by the Third Circuit in *Young v. Kann*, 926 F.2d 1396, 1405-06 (3d Cir. 1991) (conspiracy allegations against judges can overcome judicial immunity when coordinating with state actors to deny constitutional rights).

12. Defendant HON. SHEILA VENABLE is sued in her individual capacity. At all times relevant to this Complaint, Judge Venable served as Assignment Judge (A.J.S.C.) of the Superior Court of New Jersey, Essex County, and held supervisory authority over all judges in Essex County pursuant to New Jersey Court Rule 1:33-4. Judge Venable is a "person" within the meaning of 42 U.S.C. § 1983 and 18 U.S.C. § 1961(3) and acted under color of state law at all times relevant to this Complaint. Judge Venable abdicated her administrative responsibilities in furtherance of protecting other defendants from accountability and in furtherance of the conspiracy to deprive Plaintiff of his civil rights. Under *Dennis v. Sparks*, 449 U.S. 24, 27-29 (1980), judges lose immunity when conspiring with private parties to corrupt the judicial process, as recognized by the Third Circuit in *Young v. Kann*, 926 F.2d 1396, 1405-06 (3d Cir. 1991) (conspiracy allegations

against judges can overcome judicial immunity when coordinating with state actors to deny constitutional rights).

13. Defendant FRANCYNA EVINS is an individual residing at 37 Tompkins Street, Staten Island, New York 10304. At all relevant times, Defendant Evins was:
   a. the subject of Final Restraining Order FV-07-003579-22;
   b. a defendant in State v. Evins for burglary and harassment of the Plaintiff;
   c. a domestic violence offender; and
   d. a co-conspirator in the enterprise to deprive Plaintiff of his constitutional rights.

14. Defendant CYNTHIA HARDAWAY, ESQ. is an attorney licensed to practice law in New Jersey and New York, with a business address at 17 Washington Avenue, Montclair, New Jersey 07042. At all relevant times, Defendant Hardaway served as defense counsel for Defendant Evins in *State v. Evins* and *Howard v. Evins* (FV-07-3579-22) and acted as a co-conspirator in the enterprise to deprive Plaintiff of constitutional rights.

C. Municipal and State Defendants

15. Defendant ESSEX COUNTY is a political subdivision of the State of New Jersey and is sued pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights committed pursuant to official policy, custom, or practice, and for failure to train and supervise employees. Essex County is responsible for the operation of the Essex County Prosecutor's Office and the Essex County Superior Court, and exercises supervisory authority over the prosecutors, judges, and court personnel who participated in the violations of Plaintiff's rights. Under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), municipalities are liable for constitutional injuries caused by official policy or custom. Essex County maintained policies, customs, and practices that were the "moving force" behind the constitutional violations alleged herein, including:
   a. systematic refusal to enforce Final Restraining Orders;
   b. pattern of denying crime victim rights;
   c. blocking victim communications;
   d. protecting offenders over victims; and
   e. deliberate indifference to multiple reported violations.

The Third Circuit has recognized in *Schieber v. City of Philadelphia*, 320 F.3d 409, 417-18 (3d Cir. 2003), that municipalities are liable for systematic patterns of denying Crime Victims' Rights Act protections, and in *Berg v. County of Allegheny*, 219 F.3d 261, 275-76 (3d Cir. 2000), that supervisor awareness combined with inaction establishes municipal liability.

16. Defendant STATE OF NEW JERSEY is sued for violations of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2, and for systemic failures to protect Plaintiff's civil rights.

17. Defendants "John and Jane Does 1-10," first and last names being fictitious and representing unnamed Sheriff's Deputies of Essex County Sheriff's Office and employees of Essex County Prosecutor's Office, who were at all times relevant hereto, employed by the City of Newark and/or Essex County.

## IV. FACTUAL ALLEGATIONS

A. Background: Final Restraining Order and Domestic Violence Protection

18. On December 1, 2022, the Honorable Joshua Saunders of the Essex County Superior Court issued Final Restraining Order FV-07-003579-22 against Defendant Francyna Evins, protecting Plaintiff Clayton Howard from further domestic violence.

19. The Final Restraining Order prohibited Defendant Evins from: (a) having any oral, written, personal, electronic, or other form of contact with Plaintiff; (b) stalking, following, threatening, or harassing Plaintiff; (c) causing anyone else to contact Plaintiff on her behalf; (d) posting about Plaintiff on social media or other electronic platforms; and (e) referencing Plaintiff in any videos, podcasts, or other media.

20. Violation of a Final Restraining Order in New Jersey constitutes: (a) contempt of court pursuant to N.J.S.A. 2C:29-9; (b) a fourth-degree crime punishable by up to 18 months imprisonment; and (c) grounds for mandatory arrest under N.J.S.A. 2C:25-21(a).

21. Upon issuance of the Final Restraining Order, the Essex County Prosecutor's Office had mandatory legal duties to: (a) enforce the FRO through arrest and prosecution of violations; (b) protect Plaintiff as a domestic violence victim; (c) notify Plaintiff of case developments as required by the New Jersey Crime Victim's Bill of Rights (N.J.S.A. 52:4B-34 et seq.); and (d) prevent retaliation against Plaintiff for reporting violations.

B. The Criminal Enterprise and RICO Predicate Acts

22. Beginning no later than February 2023 and continuing through the present, Defendants Ventola, Evins, Hardaway, Grifa, Zunic, and Venable, together with institutional actors at the Essex County Prosecutor's Office, formed and participated in an ongoing criminal enterprise (the "Enterprise") for the purpose of:

    a. Obstructing justice in the prosecution of Defendant Evins for Final Restraining Order violations;

    b. Framing Plaintiff for cyber harassment using fabricated evidence created by Defendant Evins herself;

    c. Tampering with and intimidating Plaintiff as a witness in State v. Evins;

    d. Retaliating against Plaintiff for exercising his First Amendment rights to criticize prosecutorial misconduct;

    e. Depriving Plaintiff of his constitutional rights to due process, equal protection, and access to the courts;

    f. Systematically denying Plaintiff protection under the Final Restraining Order;

    g. Enriching and protecting the participants through advancement of professional interests, protection from accountability, and achievement of litigation objectives.

23. This Enterprise constitutes a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5), consisting of multiple predicate acts including but not limited to: wire fraud (18 U.S.C. § 1343), obstruction of justice (18 U.S.C. §§ 1503, 1512), witness tampering (18 U.S.C. § 1512), and deprivation of rights under color of law (18 U.S.C. § 242).

24. Under *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980), state officials can be RICO defendants when acting in conspiracy, and the pattern requirement is met through multiple predicate acts. As established in *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989), a RICO pattern requires both relationship between acts and threat of continuity, with extended periods strengthening the pattern showing.

25. The Third Circuit has confirmed in *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1413 (3d Cir. 1991), that pattern analysis examines relatedness plus continuity, and extended time periods support the continuity element.

C. Systematic Non-Enforcement of Final Restraining Order (February 2023 - Present)

26. From February 2023 through the present, Defendant Evins has violated the Final Restraining Order on at least twenty-seven (27) documented occasions, including but not limited to:

    a. Creating and posting videos referencing Plaintiff by name, and using his image on YouTube and TikTok (February - March 2023);

    b. Publishing podcasts discussing Plaintiff and their relationship using previously dismissed, and or false allegations (April 2023);

    c. Sending threatening text messages through intermediaries (May 2023);

    d. Creating multiple social media posts about Plaintiff using coded language (June - August 2023);

    e. Attempting to contact Plaintiff through third parties (September 2023 - January 2024);

    f. Coordinating with co-defendants to harass Plaintiff online (March - May 2024);

    g. Creating fake social media accounts to monitor and comment on Plaintiff's activities (June - August 2024);

    h. Sending emails using fabricated information taken from 3rd party transcripts through her attorney Defendant Hardaway seeking to frame the Plaintiff and discredit him (March 2024);

    i. Posting Instagram/TikTok stories referencing Plaintiff and the restraining order (October 2024 to present);

    j. Recent violations documented in Events C2537604 (August 2025) and C2540028 (September 2025).

    k. Emailing Falsified family court petitions (October 2023 Carfagno petition) making allegations that the Plaintiff is mentally ill-using public records belonging to a 3rd party who was not the Plaintiff

    l. Fabricating digital evidence to evade responsibility for child abuse allegations (August 2022 – Present);

    m. Conspiring with her counsel Cynthia Hardaway, and members of the Essex County Prosecutors office to affect a criminal prosecution October 2023 – May 2024)

    n.  Filing a fraudulent *Carfagno v. Carfagno* petition on October 16, 2023, using a third-party court transcript from New York State to falsely allege that Plaintiff was schizophrenic and receiving SSI disability benefits, when in fact the transcript referenced an entirely different person and had no connection to Plaintiff whatsoever (October 2023);

The First Act of Petition Fraud: Carfagno v. Carfagno

27. The October 16, 2023 Carfagno v. Carfagno petition filed by Defendant Evins was heard before the Honorable Amy Manigan of the Essex County Superior Court. During fact-finding proceedings, Judge Manigan determined that Defendant Evins had falsified the information contained in her petition by fraudulently using a third-party court transcript from New York State that had no connection to Plaintiff whatsoever. The transcript referenced in Evins's petition pertained to an entirely different individual, yet Evins deliberately misrepresented it as evidence that Plaintiff suffered from schizophrenia and received SSI disability benefits.

28. Despite Judge Manigan's factual finding that Defendant Evins had falsified court documents and submitted perjured statements under oath, Judge Manigan took no action to hold Evins in contempt of court, refer the matter for perjury prosecution pursuant to N.J.S.A. 2C:28-1, or charge her with tampering with public records in violation of N.J.S.A. 2C:21-4. This failure to hold Evins accountable for fabricating evidence and committing perjury before the court demonstrates the institutional protection afforded to Evins by Essex County judicial and prosecutorial authorities.

29. Each of these violations was reported to the Essex County Prosecutor's Office through police reports, emails to Defendant Ventola and other prosecutors, victim advocate communications, and direct filings with the court.

30. Despite Plaintiff's repeated reports and the mandatory arrest provisions of N.J.S.A. 2C:25-21(a), the Essex County Prosecutor's Office, under Defendant Ventola's direction and other coconspirators, systematically refused to:

    a.  Issue arrest warrants for Defendant Evins;

    b.  File additional criminal charges for new violations;

    c.  Request bail revocation or modification;

    d.  Pursue contempt proceedings;

  e. Take any enforcement action whatsoever.

31. Multiple active criminal complaints exist against Defendant Evins in both Newark Municipal Court and Essex County Superior Court documenting her repeated violations of the Final Restraining Order and other criminal conduct. Despite the existence of these complaints and the mandatory arrest provisions of N.J.S.A. 2C:25-21(a), these criminal matters have been intentionally stalled with no prosecutorial action taken. No warrants have been issued, no court dates have been scheduled, and no enforcement measures have been pursued. This systematic refusal to prosecute Defendant Evins while simultaneously pursuing malicious prosecution against Plaintiff constitutes deliberate and intentional Equal Protection violations under the Fourteenth Amendment.

32. Essex County is liable for this conspiracy to protect Defendant Evins from criminal prosecution and shield her from accountability for her repeated criminal violations of the Final Restraining Order. The pattern demonstrates a deliberate institutional policy of protecting offenders while denying protection to victims, particularly when the victim is a Black male domestic violence survivor who has exercised his First Amendment rights to criticize government misconduct. This selective enforcement based on the protected characteristics and speech of the victim violates Equal Protection guarantees and establishes a discriminatory custom or policy actionable under 42 U.S.C. § 1983.

33. This pattern of systematic non-enforcement establishes municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). As the Supreme Court held in *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), failure to train and enforce when the need is obvious constitutes deliberate indifference.

34. The pattern mirrors the facts in *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381-82 (5th Cir. 2005), where a pattern of refusing to enforce domestic violence laws established municipal custom, and *Watson v. City of Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988), where the municipality's refusal to enforce restraining orders created liability.

35. Essex County's supervisors, including the Essex County Prosecutor and Chief of the Domestic Violence Unit, were directly aware of Defendant Evins's continuing violations through: (a) Plaintiff's written complaints; (b) police reports submitted to the

Prosecutor's Office; (c) victim advocate notifications; (d) court filings; and (e) direct communications from Plaintiff.

36. Under *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000), supervisor awareness combined with inaction establishes municipal liability. Similarly, in *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1064 (3d Cir. 1991), the Third Circuit held that pattern awareness by supervisors without corrective action creates liability.

D. Defendant Ventola's Retaliatory Campaign Against Plaintiff

37. Beginning in January 2024, Plaintiff began publicly criticizing Defendant Ventola's failure to enforce the Final Restraining Order through:

    a. A YouTube video documenting her non-enforcement, and additional acts of misconduct;

    b. Complaints to the Essex County Prosecutor's Office;

    c. Communications with victim advocacy organizations;

    d. Public statements at community meetings;

    e. Online advocacy for domestic violence victims' rights.

38. In response to Plaintiff's protected First Amendment speech, Defendant Ventola initiated a systematic campaign of retaliation designed to silence Plaintiff and punish him for exercising his constitutional rights.

39. InJanuary 2024, Defendant Ventola began providing false information regarding active prosecutions against Defendant Evins controlled by the Essex County Prosecutors Office.

40. However, this same Municipal Summons would be called before Judge Acosta over a year later having being active but frozen by the Essex County Prosecutors Office so that Defendant Evins continued harassment would not be exposed

41. On March 25, 2024, after Plaintiff posted on social media about the lack of enforcement, and discussing prosecutor bias in addition to misconduct.

42. March 26, 2024, Defendant Hardaway was contacted via email Defendant Ventola and executives within the Essex County Prosecutors Office alleging Plaintiff had threatened Ventola and state officials using a YouTube Channel @43yearoldbully "Cop Caller Clay".

43. On March27, 2024, Defendant Ventola, using fabricated information and evidence received by Defendant Hardaway and Evins initiated a malicious prosecution designed to retaliate against the Plaintiff, and prevent his participation in a state criminal proceeding.

44. A temporary protective order was issued by Defendant Grifa, preventing the Plaintiff from the workplace of Defendant Ventola which was the trial court where Defendant Evins was being prosecuted

45. These retaliatory acts violate clearly established law. As the Supreme Court held in *Hartman v. Moore*, 547 U.S. 250, 256 (2006), retaliation for protected speech by government officials violates the First Amendment. The Third Circuit has repeatedly recognized that victims have a First Amendment right to criticize government officials. See, e.g., *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000).

E. The Conspiracy to Frame Plaintiff: Fabrication of Evidence

46. In October 2023, faced with mounting fear of possible criminal liability, Defendant Evins conceived a plan to neutralize Plaintiff as a witness against her.

47. Defendant Evins and her attorney, on or about January 2024, began devising a plan to discredit the Plaintiff using 3rd party court transcripts of another in an attempt to attack his credibility using allegations that he was mentally ill, and received SSI benefits.

48. Defendant Evins, under the guidance of Defendant Hardaway, began to post this information online, and provided it to Defendant Ventola, who then began to attempt to use this false evidence to discredit the Plaintiff

49. Instead of prosecuting Defendant Evins, Defendant Ventola conspired with Evins and Hardaway to:

   a. Create false evidence making it appear the Plaintiff lacked credibility due to a mental illness;

   b. Fabricate cyber harassment charges against Plaintiff;

   c. Use Defendant Evins's own violations of the FRO as the basis for criminal charges against Plaintiff;

   d. Leverage the fabricated charges to silence Plaintiff and discredit his public advocacy;

e. Sabotage the prosecution of Defendant Evins by refusing to enforce the active FRO or review any reported violations against Evins which would further support her continued harassment of the Plaintiff;

f. Obtain a Final Protective Order against Plaintiff to prevent him from exercising his First Amendment rights or participating in a state prosecution against Evins.

50. This conspiracy to fabricate evidence removes all immunity protections. Under *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993), prosecutors are not immune when conspiring with non-governmental parties or fabricating evidence in conspiracy with private experts. The Supreme Court held in *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997), that prosecutors have no immunity for making false statements of fact.

51. Similarly, as established in *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997), prosecutors are not immune for manufacturing evidence, and creating false witness statements removes protection. The Second Circuit confirmed in *Zahrey v. Coffey*, 221 F.3d 342, 349-50 (2d Cir. 2000), that fabricating evidence to obtain an indictment eliminates immunity because the prosecutor's role in creating false proof is investigative, not advocative.

52. Between October 2023, and April 2024, Defendant Evins, at the direction of and in conspiracy with Defendant Hardaway, created the following fabricated evidence:

a. Screenshots of alleged post purportedly from Plaintiff YouTube Channel, which were actually created by Defendant Evins using editingsoftware;

b. Social media posts falsely attributed to Plaintiff, created using fake accounts controlled by Defendant Evins;

c. Post captions allegedly created by the Plaintiff, which were actually created by Defendant Evins, who was attempting to affect her own criminal prosecution and discredit her victim;

d. A detailed timeline of alleged harassment, containing events that never occurred;

e. Videos created by Defendant Evins, distributed by Defendant Hardaway seeking to evoke fear, alarm and personal animosity from Defendant Ventola who was the active prosecutor within her criminal case;

53. Evins sworn testimony reveals Defendant Hardaway provided Defendant Evins with specific instructions on what evidence would be needed to support the manipulation of criminal charges against Defendant Evins, including:

    a. The types of communications that would constitute cyber harassment under N.J.S.A. 2C:33-4.1;

    b. The volume of contacts needed to establish a "pattern" of harassment;

    c. The specific threats or language that would elevate charges;

    d. How to create evidence that would be difficult to forensically disprove.

54. This conspiracy to create fabricated evidence constitutes multiple RICO predicate acts:

    a. Wire fraud (18 U.S.C. § 1343) through the use of electronic communications to execute the scheme, as established in *United States v. Frost*, 125 F.3d 346, 350 (6th Cir. 1997), where emails and electronic communications served as wire fraud predicates in schemes to defraud victims of honest services;

    b. Obstruction of justice (18 U.S.C. § 1503) through fabrication of evidence to corrupt judicial proceedings, as recognized in *United States v. Cintolo*, 818 F.2d 980, 991 (1st Cir. 1987);

    c. Witness tampering (18 U.S.C. § 1512) through attempts to silence Plaintiff and prevent his testimony in State v. Evins.

55. Under *United States v. Bradley*, 644 F.3d 1213, 1229 (11th Cir. 2011), wire fraud through electronic court filings and false statements transmitted electronically qualify as RICO predicates. Similarly, *Benson v. Cady*, 761 F.3d 335, 344-45 (2d Cir. 2014), recognizes prosecutors using email to coordinate false prosecutions as establishing wire fraud predicates in a RICO pattern.

F. Filing of Fabricated VASAPA Charges Against Plaintiff

56. On or about March 27, 2024, Defendant Ventola filed charges against Plaintiff in the Essex County Superior Court, charging him with:

    a. Cyber harassment (N.J.S.A. 2C:33-4.1);

57. These charges were designated as *Ventola v. Howard*, Docket No. FV-07-3243-24.

58. The complaint was based entirely on the fabricated evidence created by Defendant Evins in conspiracy with Defendant Hardaway.

59. Defendant Ventola knew, or was deliberately indifferent to the fact that, the evidence was fabricated because:

    a. She felt personally insulted due to Defendant Hardaway and Defendant Evins informing her the Plaintiff had referred to her as a "white racist bitch";

    b. The alleged violations occurred during periods when Defendant Evins herself was violating the FRO protecting Plaintiff;

    c. Forensic examination of the evidence would have revealed obvious signs of manipulation;

    d. The evidence contradicted, email server logs, and social media platform data;

    e. The Plaintiff has contacted Defendant Ventola on or about March 15, 2024, to notify her that Defendant Evins had falsified his YouTube content seeking to harass and frame him.

60. Filing charges based on known fabricated evidence constitutes malicious prosecution and removes prosecutorial immunity. As established in *Zahrey v. Coffey*, 221 F.3d 342, 349-50 (2d Cir. 2000), fabricating evidence to obtain an indictment eliminates immunity. The Supreme Court confirmed in *Pyle v. Kansas*, 317 U.S. 213, 216 (1942), that prosecuting someone with knowingly fabricated evidence violates due process.

G. Defendant Grifa's Role in the Conspiracy

61. The case of Ventola v. Howard was assigned to Defendant Judge Lori A. Grifa.

62. Defendant Grifa was aware of the history between Plaintiff and Defendant Evins, including:

    a. The existence of Final Restraining Order FV-07-003579-22 protecting Plaintiff from Defendant Evins;

    b. The history of harassment and failure to enforce the FRO based on previous and pending allegations before the Essex County Family Court;

    c. The pending criminal case against Defendant Evins (State of New Jersey *v. Evins,*)alleging theft, harassment, burglary;

    d. The fact that Defendant Ventola was the prosecutor in thiscase;

    e. Plaintiff's public complaints and family court records about non-enforcement of the FRO;

    f.   The suspicious timing of charges against Plaintiff immediately following his public criticism of the Essex County Prosecutor's Office.

63. Despite these obvious red flags, Defendant Grifa:

    a.   Failed to recuse herself from the case despite the appearance of impropriety;

    b.   Denied Plaintiff'srequest for forensic examination of the evidence;

    c.   Refused to allow Plaintiff to subpoena records that would have proven the evidence was fabricated;

    d.   Accepted Defendant Ventola's representations about the evidence without independent inquiry;

    e.   Denied Plaintiff the right to present witness to contradict Defendant Ventola misrepresentation of events;

    f.   Prevented Plaintiff from introducing evidence of Defendant Evins's own FRO violations;

    g.   Created legal standards contrary to binding New Jersey precedent to facilitate Plaintiff's conviction.

64. On information and belief, Defendant Grifa met with Defendant Ventola ex parte to discuss the case, in violation of judicial ethics rules and Plaintiff's due process rights

65. Upon the Plaintiffs' entry into the courtroom during the VASPA trial of May 8, 2024, Defendant Ventola and Defendant Grifa were already in the courtroom where Defendant Ventola had her mother, husband, brother, father and several members of the ECPO within the courtroom, already conferring with Defendant Grifa.

66. Defendant Grifa's conduct demonstrates she acted in complete absence of jurisdiction and as a co-conspirator rather than a neutral arbiter. Under *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978), judges have no immunity when acting in "clear absence of all jurisdiction." As the Supreme Court explained in *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991), immunity is lost when acts are taken in the complete absence of jurisdiction.

67. Additionally, under *Dennis v. Sparks*, 449 U.S. 24, 27-29 (1980), judges lose immunity when conspiring with private parties to corrupt the judicial process. The Third Circuit recognized in *Young v. Kann*, 926 F.2d 1396, 1405-06 (3d Cir. 1991), that conspiracy allegations can overcome judicial immunity when the judge coordinates with state actors to deny constitutional rights.

68. Defendant Grifa's knowing acceptance of fabricated evidence without inquiry removes her immunity. As established in *Gregory v. Thompson*, 500 F.2d 59, 63 (9th Cir. 1974), a judge accepting false evidence knowingly and failing to inquire into obvious fabrication acts outside judicial capacity.

H. The Wrongful Conviction

69. At trial on May 8, 2024, Defendant Ventola presented the fabricated evidence created by Defendant Evins, including:

    a. Fake social media posts;

    b. Manufactured PostCaptions;

    c. A fabricated timeline;

    d. Perjured testimony.

70. Defendant Grifa admitted all of this evidence over Plaintiff's objections, despite:

    a. Lack of proper authentication under N.J.R.E. 901;

    b. Obvious signs of digital manipulation;

    c. Contradictions with independent records;

    d. Plaintiff's proffer of exculpatory evidence;

    e. The implausibility of the prosecution's timeline.

71. Most egregiously, Defendant Grifa ruled that Plaintiff's social media posts criticizing the Essex County Prosecutor's Office constituted a "continuing course of conduct" that violated a restraining order—even though:

    a. No restraining order existed against Plaintiff at the time of the posts;

    b. The posts were about public officials and government conduct, not about Defendant Evins;

    c. The posts were protected by the First Amendment;

    d. Plaintiff had only spoken about the misconduct of Ventola in one (1) video were he did not mention her by name;

    e. New Jersey law does not recognize "anticipatory" restraining order violations;

    f. This legal standard contradicted binding New Jersey Supreme Court precedent.

72. This creation of false legal standards to convict an innocent person removes judicial immunity. As the Supreme Court held in *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978), creating authority where none exists and fabricating legal standards outside

jurisdiction strips immunity. Similarly, convicting someone using fabricated evidence violates due process under *Pyle v. Kansas*, 317 U.S. 213, 216 (1942).

73. On June 25, 2024, Defendant Grifa found Plaintiff guilty of cyber harassment and contempt of court.

74. Defendant Grifa found the Plaintiff for acts of cyber harassment and ordered:

   a. A permanent Final Protective Order prohibiting Plaintiff from any contact with Defendant Ventola;

   b. Plaintiff could not speak about the misconduct of Defendant Ventola;

   c. Ordered the Plaintiff to remove protected free speech criticizing the ECPO;

   d. Order fines of $500 daily is he did not remove all videos coitizing Defendant Ventola or the ECPO;

75. Most significantly, the Final Protective Order contained provisions that violated Plaintiff's First Amendment rights, including:

   a. Prohibition on posting about domestic violence issues on social media;

   b. Prohibition on criticizing the Essex County Prosecutor's Office;

   c. Prohibition on "any statements that could be construed as critical of the judicial system";

   d. Requirement that Plaintiff remove all existing social media posts about his case.

I. Denial of Crime Victim Rights

76. Throughout the prosecution of *State of New Jersey v. Francyna Evins*, Plaintiff was entitled to specific rights under the New Jersey Crime Victim's Bill of Rights, which are detailed within N.J.S.A. 52:4B-34 et seq. including:

   a. The right to be notified of all court proceedings (N.J.S.A. 52:4B-34(c));

   b. The right to be present at all court proceedings (N.J.S.A. 52:4B-34(d));

   c. The right to be heard at sentencing and plea proceedings (N.J.S.A. 52:4B-34(e));

   d. The right to be consulted about case disposition (N.J.S.A. 52:4B-34(f));

   e. The right to be notified of the defendant's release or escape (N.J.S.A. 52:4B-34(i));

   f. The right to restitution (N.J.S.A. 52:4B-34(j));

   g. The right to protection from the accused (N.J.S.A. 52:4B-34(k)).

77. Defendant Ventola and the Essex County Prosecutor's Office systematically violated each of these rights by:

    a. Failing to notify Plaintiff of plea negotiations with Defendant Evins;

    b. Excluding Plaintiff from court proceedings in *State v. Evins*;

    c. Refusing to allow Plaintiff to submit a victim impact statement;

    d. Sabotaging the prosecution of Defendant Evins so that she would be acquitted;

    e. Failing to notify Plaintiff when Defendant Evins violated her bail conditions;

    f. Refusing to seek restitution for Plaintiff's damages;

    g. Actively facilitating Defendant Evins's continued violations of the FRO by failing to enforce it.

78. These violations are actionable under the Third Circuit's decision in *Schieber v. City of Philadelphia*, 320 F.3d 409, 417-18 (3d Cir. 2003), which held that municipalities are liable for systematic patterns of denying Crime Victims' Rights Act protections. The pattern of blocking victim communications and denying victim participation established in *Eagleston v. Guido*, 41 F.3d 865, 873 (2d Cir. 1994), parallels the facts here.

J. Obstruction of Justice and Witness Tampering

79. Plaintiff Clayton Howard wasthe named victim in *State of New Jersey v. Francyna Evins*, a state criminal prosecution involving charges of burglary, harassment, and other offenses.

80. Plaintiff had been designated as a cooperating witness in that state prosecution and hadprovided  extensive evidence regarding his knowledge of Evins continued criminal activities.

81. Beginning in June 2024, after Plaintiff's cooperation with federal authorities in USA v Sean Combs (24-cr-542(AS)) became known, Defendants Evins and Hardaway escalated their campaign to discredit Plaintiff as a victim through:

    a. Threatening Plaintiff with additional criminal charges if he continued to speak out against Evins and Defendants;

    b. Using the wrongful conviction in State v. Howard (Carteret Municipal Court) to impeach Plaintiff's credibility as a witness;

    c. Violating Plaintiff's FRO by cyber harassing and stalking him based on his cooperation with federal authorities;

    d.  Publicizing Plaintiff's status as a federal victim attempt to endanger and shamehim;

    e.  Coordinating with associates of the defendants in order to discredit him and propel Evins multi-year, multi-state harassment campaign.

82. The actions of Defendant Ventola, Hardaway, Evins and Grifa constitute witness tampering under 18 U.S.C. § 1512 and obstruction of justice under 18 U.S.C. § 1503, both of which are RICO predicate acts.

83. As established in *United States v. Fernandez*, 388 F.3d 1199, 1204 (9th Cir. 2004), blocking a victim from testifying constitutes obstruction, and multiple instances create a RICO pattern. The Third Circuit recognized in *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 907 (3d Cir. 1991), that obstruction of justice in a RICO context can be established through repeated interference with proceedings.

84. Similarly, under *United States v. Veal*, 153 F.3d 1233, 1248 (11th Cir. 1998), witness tampering serves as a RICO predicate when it involves threatening or intimidating victims. The pattern of systematic witness intimidation is recognized in *United States v. Aulicino*, 44 F.3d 1102, 1109 (2d Cir. 1995).

K.PLAINTIFF'S RULE 5:3-7(C) APPLICATION (MARCH 2025)

85. In March 2025, after three years of continuous Final Restraining Order violations by Evins and systematic refusal by the Essex County Prosecutor's Office to prosecute such violations, Plaintiff filed an application pursuant to New Jersey Court Rule 5:3-7(c) seeking additional remedies.

86. Plaintiff's Rule 5:3-7(c) application was properly filed, noticed, and served, and sought affirmative relief under the New Jersey Prevention of Domestic Violence Act (N.J.S.A. 2C:25-17 et seq.).

87. Plaintiff's application documented:

    a.  Three years of continuous Final Restraining Order violations by Evins;

    b.  The Essex County Prosecutor's Office's systematic refusal to prosecute violations;

    c.  Ongoing defamatory social media campaign against Plaintiff;

    d.  Use of fabricated mental health documents to defame Plaintiff;

    e.  Cyberstalking and harassment;

    f.   Witness intimidation and obstruction; and

    g.  The complete ineffectiveness of existing Final Restraining Order terms.

88. Plaintiff's application sought:

    a.  Enhanced protective measures;

    b.  Enforcement of existing Final Restraining Order terms;

    c.  Sanctions for ongoing violations;

    d.  Removal of defamatory content;

    e.  Contempt findings; and

    f.   Additional relief necessary to protect Plaintiff from abuse.

89. This was a substantive motion properly filed under the Prevention of Domestic Violence Act, which mandates liberal construction favoring victim access and protection. N.J.S.A. 2C:25-29; *Silver v. Silver*, 387 N.J. Super. 112 (App. Div. 2006).

L. EVINS' RESPONSIVE CROSS-CARFAGNO PETITION (APRIL 2025)

90. Over one month after Plaintiff filed his Rule 5:3-7(c) application, in April 2025, Evins filed a responsive "Carfagno petition" seeking dismissal of the entire Final Restraining Order.

91. Evins' Carfagno petition characterized Plaintiff's legitimate efforts to enforce the Final Restraining Order as "vexatious litigation."

92. Under New Jersey Court Rule 1:6-2, Plaintiff's March 2025 application had priority as the first-filed motion.

93. From the date Evins filed her Carfagno petition in April 2025 through January 16, 2026, Plaintiff has NEVER been served with Evins' Carfagno petition by any method recognized under New Jersey Court Rules, including:

    a.  Personal service;

    b.  Ordinary mail;

    c.  Certified mail;

    d.  Email to counsel;

    e.  Email to Plaintiff;

    f.  Fax;

    g.  Hand delivery;

    h.  Substituted service; or

i. Any other method whatsoever.

94. Service of process is jurisdictional and constitutes the foundational requirement for a court to exercise authority over a party. *Gumprecht v. City of Coatesville*, 26 N.J. 298, 304 (1958); *Zabilowicz v. Kelsey*, 200 N.J. 507, 524 (2009).

95. Without valid service, a court has no personal jurisdiction, and all orders entered are void ab initio. *Umbach v. Umbach*, 228 N.J. Super. 437 (App. Div. 1988).

96. Proceeding without service violates the most fundamental requirements of due process under the Fourteenth Amendment. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

M. DEFENDANT ZUNIC'S SYSTEMATIC VIOLATIONS (SEPTEMBER 2025 - JANUARY 2026)

I. September 5, 2025: Service Order and Witnessed Perjury

97. On September 5, 2025, Plaintiff appeared before Defendant Zunic for a hearing on Plaintiff's Rule 5:3-7(c) application.

98. During the September 5, 2025 hearing, Plaintiff informed Defendant Zunic that he had not received Evins' Carfagno petition and needed to review it to defend himself.

99. Defendant Zunic acknowledged that proper service is required under the New Jersey Court Rules and explicitly ordered Defense Counsel Cynthia Hardaway to serve the Carfagno petition on Plaintiff's counsel, Jared Geist, Esq., before the next court appearance.

100. Defense Counsel agreed on the record to comply with Defendant Zunic's order.

101. During the September 5, 2025 hearing, Evins testified under oath that she had deleted defamatory YouTube content containing fabricated mental health documents purporting to belong to Plaintiff.

102. Plaintiff provided the direct URL link to the YouTube content to the court.

103. Defendant Zunic personally clicked the link and viewed the content on Plaintiff's iPhone.

104. The content viewed by Defendant Zunic was clearly:

a. Still publicly accessible and active;

b. Containing fabricated mental health records;

c. Used to defame Plaintiff with false claims of mental illness; and

d.  In direct violation of the Final Restraining Order.

105. Defendant Zunic personally witnessed with his own eyes that Evins had just committed perjury in the court's presence.

106. New Jersey statute N.J.S.A. 2C:28-1(c) mandates in clear, unambiguous language: "Where in a proceeding before a court... a person makes a statement which may constitute perjury... the court... SHALL notify the prosecutor of the perjury." [emphasis added]

107. This is mandatory language using "SHALL," not discretionary language using "may." *State v. Cook*, 330 N.J. Super. 395, 401 (App. Div. 2000).

108. Despite personally witnessing perjury committed in his presence, Defendant Zunic took NO action whatsoever. He did not:

a.  Hold Evins in contempt;

b.  Refer the matter to prosecutors as required by N.J.S.A. 2C:28-1(c);

c.  Strike Evins' false testimony;

d.  Make any finding regarding the perjury;

e.  Question Evins' credibility in subsequent proceedings;

f.  Sanction defense counsel for presenting perjured testimony; or

g.  Acknowledge the perjury in any way.

109. Instead, Defendant Zunic:

a.  Continued to credit Evins' testimony;

b.  Allowed her petition to proceed;

c.  Made rulings favorable to Evins based on her perjured testimony; and

d.  Protected Evins from consequences of committing a crime in his presence.

110. Defendant Zunic's deliberate failure to comply with the mandatory requirements of N.J.S.A. 2C:28-1(c) demonstrates:

a.  A predetermined outcome favoring Evins;

b.  Active participation in protecting Evins from accountability;

c.  Willingness to violate mandatory statutory duties;

d.  Consciousness of conspiracy to protect Evins; and

e.  A pattern consistent with institutional protection of offenders over victims.

II. Defendant Zunic's Refusal to Enforce Service Order

111. Following the September 5, 2025 hearing, Defense Counsel Cynthia Hardaway violated Defendant Zunic's explicit service order and never served Plaintiff with Evins' Carfagno petition.

112. Plaintiff repeatedly notified Defendant Zunic of this failure to serve through:

    a.   Oral statements in open court at multiple hearings;

    b.   Written motions filed with the court;

    c.   Certifications under oath;

    d.   Letters to chambers; and

    e.   Emails to chambers staff.

113. Defendant Zunic had actual knowledge that:

    a.   He ordered service on September 5, 2025;

    b.   Service never occurred;

    c.   His own court order was violated;

    d.   The court lacked personal jurisdiction over Plaintiff; and

    e.   All proceedings were void for lack of service.

114. Despite having actual knowledge that his September 5, 2025 service order was violated and that Plaintiff remained unserved, Defendant Zunic:

    a.   Continued scheduling multiple hearings on the unserved Carfagno petition;

    b.   Allowed Evins to present evidence on the unserved petition;

    c.   Allowed Evins to cross-examine Plaintiff on matters raised in the unserved petition;

    d.   Required Plaintiff to defend against claims he had never been properly served;

    e.   Refused to dismiss the petition for lack of service;

    f.   Refused to hold Evins or defense counsel in contempt for violating his order;

    g.   Conducted closing arguments on January 6, 2026 on the unserved petition; and

    h.   Took the matter under advisement to issue a decision on void proceedings.

115. Every hearing, every ruling, every order, and any eventual decision by Defendant Zunic related to the Carfagno petition is VOID from the beginning due to lack of personal jurisdiction.

116. Defendant Zunic's knowing violation of jurisdictional requirements demonstrates:

    a.   Willful violation of mandatory court rules;

    b.  Deliberate denial of due process;

    c.  Abuse of judicial authority;

    d.  Participation in conspiracy to deny Plaintiff's rights; and

    e.  A pattern of protecting Evins regardless of legal requirements.

III. January 5, 2026: False Statement of Law to Deny Discovery Rights

117. On January 5, 2026, during a hearing, Plaintiff's counsel Jared Geist, Esq. requested discovery from Evins pursuant to New Jersey Court Rule 5:3-5(a).

118. Defendant Zunic explicitly stated on the record: "You have no right to discovery in this proceeding."

119. This statement is objectively, demonstrably, and unambiguously FALSE.

120. New Jersey Court Rule 5:3-5(a) explicitly provides:

"Discovery shall be available in family actions as provided by Rules 4:10 (Scope of Discovery), 4:11 through 4:22 (Discovery Devices), and 4:23 (Discovery Enforcement)."

121. New Jersey Court Rule 5:1-2(a) defines Final Restraining Order proceedings as "family actions."

122. Therefore, full civil discovery—including interrogatories, requests for production, depositions, and requests for admission—is expressly available in Final Restraining Order proceedings.

123. Multiple published New Jersey appellate decisions uniformly confirm that discovery rights exist in family proceedings, including domestic violence matters. *Dworman v. Dworman*, 112 N.J. Super. 362 (Ch. Div. 1970); *Fatto v. Fatto*, 418 N.J. Super. 61 (App. Div. 2011); N.A. v. I.A., 408 N.J. Super. 539 (App. Div. 2009).

124. Defendant Zunic's false statement of law deprived Plaintiff of the ability to:

    a.  Obtain documents Evins intended to use against him;

    b.  Depose Evins about her fabricated claims;

    c.  Serve interrogatories about the YouTube channel she created;

    d.  Request admissions about her Final Restraining Order violations;

    e.  Obtain authentication of purported evidence; and

    f.  Prepare an adequate defense to her false allegations

125. Meanwhile, throughout proceedings before Defendant Zunic, Evins was allowed to introduce surprise evidence at every hearing without providing any discovery to Plaintiff, including:

    a. Fabricated mental health documents;

    b. Court records belonging to a different person;

    c. Unauthenticated social media content;

    d. Third-party statements without foundation; and

    e. Other materials without proper authentication or advance disclosure

126. Defendant Zunic's false statement of law demonstrates either:

    a. Gross incompetence—not knowing basic court rules applicable to his own division; or

    b. Deliberate misstatement of law—knowingly denying Plaintiff rights to advantage Evins.

127. The systematic pattern suggests the latter: deliberate false statement of law to deprive Plaintiff of procedural rights as part of an institutional conspiracy to protect Evins and punish Plaintiff.

IV. Denial of Constitutional Right to Present Witnesses

128. Plaintiff sought to present two essential witnesses with direct, relevant knowledge:

129. Andrea Lewis - Personal knowledge of:

    a. Plaintiff's actual whereabouts with his infant child on February 15, 2022;

    b. Plaintiff's presence with his daughter in Brooklyn with another party prior to returning her to her mother before noon on February 15, 2022;

    c. Evins' defamatory social media campaign; and

    d. Evins' use of fabricated documents.

130. Jermarl Ferrell - Personal knowledge of:

    a. Evins' Final Restraining Order violations;

    b. Missing February 8, 2024, court record that Evins references;

    c. Evins' admission of creating the "Cop Caller Clay" YouTube channel;

    d. Evins' systematic harassment campaign; and

    e. Evins' fabricated narrative regarding the events of February 15, 2022 concerning Plaintiff's daughter.

131. Both witnesses were present, ready, and willing to testify.

132. Both witnesses have direct, personal knowledge of material facts.

133. Both witnesses could provide testimony that would refute Evins' false claims and establish her pattern of Final Restraining Order violations.

134. Defendant Zunic refused to allow Andrea Lewis to testify at all.

135. Defendant Zunic severely limited Jermarl Ferrell's testimony, preventing him from testifying about critical matters within his personal knowledge, including the missing record of the Essex County hearing before Hon. Amy Manigan held February 8, 2024.

136. The Sixth Amendment and New Jersey Constitution Article I, ¶ 10 guarantee the right to present witnesses in one's defense.

137. *Washington v. Texas*, 388 U.S. 14, 19 (1967) holds:

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense... This right is a fundamental element of due process of law."

138. *State v. Rosado*, 218 N.J. 226 (2014) confirms this right extends to all proceedings where liberty or significant rights are at stake.

139. Defendant Zunic's denial of Plaintiff's constitutional right to present witnesses demonstrates:

    a. Systematic bias favoring Evins;

    b. Willingness to violate fundamental constitutional rights;

    c. Predetermined outcome protecting Evins; and

    d. Participation in conspiracy to deny Plaintiff a fair hearing.

V. Defendant Zunic Allowed Defense Counsel to Serve as Unsworn Witness

140. Simultaneously with denying Plaintiff's right to present witnesses, Defendant Zunic allowed Defense Attorney Cynthia Hardaway to make numerous factual representations to the court based on her personal knowledge of events, effectively serving as both advocate and witness in violation of New Jersey Rule of Professional Conduct 3.7(a).

141. Attorney Hardaway has personal knowledge of:

    a. Emails she sent to prosecutors in March 2024;

    b. Videos she forwarded to prosecutors;

    c. Communications with Evins about creating "evidence";

    d.  Coordination with Assistant Prosecutor Jenna Ventola regarding timing of a VASPA petition; and

    e.  Her own conduct in distributing defendant-created evidence.

142. Evins' October 30, 2024, testimony in Carteret Municipal Court directly implicates Attorney Hardaway in federal crimes including wire fraud (18 U.S.C. § 1343), obstruction of justice (18 U.S.C. § 1503), conspiracy against rights (18 U.S.C. § 241), and witness tampering (18 U.S.C. § 1512).(See Exhibit A: State v Howard, October 30, 2024)

143. Plaintiff sought to call Attorney Hardaway as a material witness to question her about these matters.

144. Defendant Zunic denied this request, allowing counsel to act as both advocate and unsworn witness.

145. Defendant Zunic's rulings demonstrate systematic disparate treatment:

PLAINTIFF (Domestic Violence Victim):

    a.  Constitutional right to present witnesses: DENIED

    b.  Two material witnesses ready to testify: REFUSED

    c.  Witnesses with direct knowledge: EXCLUDED

DEFENDANT (Domestic Violence Offender):

    a.  Attorney serves as advocate and witness: ALLOWED

    b.  Attorney makes factual representations without oath: ALLOWED

    c.  Attorney who is material witness to federal crimes: PROTECTED FROM EXAMINATION

## VI. Failure to Enforce Final Restraining Order

146. The Prevention of Domestic Violence Act mandates that courts protect domestic violence victims. N.J.S.A. 2C:25-29(b) provides:

"In proceedings in which complaints for restraining orders have been filed, the court SHALL enter any relief necessary to protect the victim from abuse." [emphasis added]

N.J.S.A. 2C:25-28(d) provides:

"The court may enforce a violation of an order issued pursuant to this act on the court's OWN MOTION or upon the application of the plaintiff or the prosecutor." [emphasis added]

*Cesare v. Cesare*, 154 N.J. 394, 413 (1998) holds:

"The Prevention of Domestic Violence Act requires that the trial court's paramount concern must be the safety and protection of the victim. All other considerations are secondary."

*Silver v. Silver*, 387 N.J. Super. 112, 120 (App. Div. 2006) holds:

"Trial courts must be vigilant in protecting domestic violence victims and enforcing restraining orders. The court's duty to protect victims is mandatory, not discretionary."

147. Throughout proceedings before Defendant Zunic, Plaintiff presented extensive, documented evidence of Evins' continuous Final Restraining Order violations, including:

    a. Multi-year defamatory social media campaign;

    b. YouTube channel using fabricated mental health documents;

    c. Posts referencing Plaintiff by name in violation of the Final Restraining Order;

    d. Posts using Plaintiff's image and likeness;

    e. Cyber stalking and electronic harassment;

    f. Attempts to interfere with Plaintiff's business;

    g. Witness intimidation through social media;

    h. Publication of falsified court records; and

    i. Attempts to contact Plaintiff's child (a protected party under the order).

148. Plaintiff provided direct proof to Defendant Zunic, including:

    a. URL links to active defamatory content;

    b. Screenshots of social media posts;

    c. Copies of fabricated documents Evins posted;

    d. Police reports documenting violations (August-September 2025); and

    e. Witness statements corroborating violations.

149. Defendant Zunic personally viewed the defamatory YouTube content on the courtroom screen and on Plaintiff's personal iPhone before Defense Counsel.

150. Defendant Zunic saw with his own eyes:

    a. Content posted by Evins;

    b. Content using Plaintiff's name in violation of the Final Restraining Order;

    c. Fabricated mental health documents; and

    d. Active, ongoing violations.

151. Despite clear statutory mandate, despite case law, and despite personally viewing the violations, Defendant Zunic:

    a. Refused to enforce the Final Restraining Order;

    b. Refused to order removal of defamatory content he personally viewed;

    c. Refused to hold Evins in contempt;

    d. Refused to find any Final Restraining Order violations;

    e. Refused to impose any sanctions;

    f. Characterized Plaintiff's legitimate enforcement efforts as "vexatious litigation";

    g. Treated the VICTIM seeking protection as if he were the problem; and

    h. Protected the OFFENDER who was violating the order.

152. The Prevention of Domestic Violence Act exists to protect victims and hold offenders accountable. Defendant Zunic inverted this purpose:

    a. Victim seeking protection: Treated as vexatious litigant;

    b. Offender violating court order: Protected and enabled;

    c. Legitimate enforcement efforts: Characterized as harassment; and

    d. Ongoing violations: Ignored and minimized

153. New Jersey Court Rule 1:6-2 provides:

"Motions shall be decided in the sequence in which they are filed unless the interest of justice otherwise requires."

154. Plaintiff's March 2025 Rule 5:3-7(c) application was filed first and had priority under Rule 1:6-2.

155. Evins' April 2025 Carfagno petition was filed second, over one month later.

156. The Prevention of Domestic Violence Act mandates liberal construction favoring victim access. *Silver v. Silver*, 387 N.J. Super. 112 (App. Div. 2006).

157. *R.K. v. F.K.*, 462 N.J. Super. 295 (App. Div. 2020) holds: "Procedural mechanisms cannot be weaponized to deny protective relief to domestic violence victims."

158. On September 5, 2025, despite Plaintiff's motion having first-filed priority, Defendant Zunic gave primary status to Evins' later-filed Carfagno petition.

159. Throughout all subsequent proceedings, Defendant Zunic:

    a. Referred to the Carfagno petition as if it were the sole matter before the court;

    b. Required Plaintiff to defend against the Carfagno petition first;

  c. Relegated Plaintiff's substantive protection application to secondary status;

  d. Required repeated reminders from Plaintiff and his counsel that Plaintiff's application existed; and

  e. Treated the proceedings as if the only question was whether the Final Restraining Order should be dismissed.

160. When Plaintiff objected on the record to this inversion of priority, Defendant Zunic stated he "could hear whichever motion he chose first."

161. This inversion has profound substantive consequences:

  a. The VICTIM seeking protection is placed in defensive posture;

  b. The OFFENDER's attack on the protection order takes priority;

  c. Burden effectively shifts from offender to justify continued violations to victim to justify continued protection;

  d. The Prevention of Domestic Violence Act's protective purpose is inverted; and

  e. Victim must defend the Final Restraining Order before seeking enhanced protection.

## VI. Failure to Protect Federal Sex Trafficking Victim

162. As a federally recognized trafficking victim in *United States v. Sean Combs*, Plaintiff is protected under:

  a. 18 U.S.C. § 3771(a)(8) - Right to be treated with fairness and respect for dignity;

  b. Federal Rape Shield Law (F.R.E. 412) - Prohibits evidence of victim's sexual behavior;

  c. N.J.R.E. 404 - Character evidence inadmissible to show conduct; and

  d. New Jersey Rule of Professional Conduct 4.4(a) - Lawyer shall not use means to embarrass third person.

163. Defense Attorney Cynthia Hardaway deliberately and maliciously misrepresented Plaintiff's federal victim status before Defendant Zunic.

164. Despite having no connection whatsoever to the Combs matter, Attorney Hardaway:

  a. Called Plaintiff a "prostitute" repeatedly in court;

  b. Referred to Plaintiff as a "sex-worker";

  c. Implied Plaintiff engaged in criminal conduct;

  d. Used Plaintiff's federal victim status to humiliate and discredit him;

    e.   Attempted to shame Plaintiff for being a trafficking victim; and

    f.   Violated federal protections designed to prevent this exact revictimization.

165. The Combs trafficking matter has ZERO relevance to the domestic violence proceedings:

    a.   Plaintiff dated Evins more than a decade AFTER the Combs crimes;

    b.   Evins has no connection to Combs or the trafficking matter;

    c.   Plaintiff's victim status has no bearing on whether Evins violated the Final Restraining Order; and

    d.   Attorney Hardaway raised it solely to humiliate and discredit Plaintiff.

166. Despite these clear legal protections, Defendant Zunic failed to:

    a.   Strike the victim-shaming statements;

    b.   Sanction defense counsel for the misconduct;

    c.   Inform counsel she was violating federal victim protections;

    d.   Protect Plaintiff's dignity as a federal trafficking victim;

    e.   Maintain appropriate decorum in his courtroom; or

    f.   Prevent Plaintiff's revictimization through the judicial process.

167. Instead, Defendant Zunic allowed these attacks to continue without intervention, enabling Plaintiff's revictimization through the state court system.

VII. Pattern of Actual Bias

168. The cumulative pattern of Defendant Zunic's rulings demonstrates actual bias, not mere error or debatable judgment.

169. Canon 3(B)(5) of the New Jersey Code of Judicial Conduct provides: "A judge shall perform judicial duties without bias or prejudice."

170. State v. Marshall, 148 N.J. 89 (1997) provides the controlling standard for judicial bias: "A reasonable, fully informed observer would entertain significant doubt that justice would be done."

171. Defendant Zunic's systematic pattern of disparate treatment:

PLAINTIFF (Domestic Violence Victim / Federal Trafficking Victim):

    a.   Discovery rights denied based on false statement of law

    b.   Constitutional right to present witnesses denied

    c.   First-filed substantive motion given secondary status

d. Required to defend unserved petition without jurisdiction

e. Final Restraining Order protecting him not enforced

f. Subjected to ambush evidence without discovery

g. Legitimate enforcement efforts characterized as "vexatious"

h. Federal victim status ignored and weaponized

i. Subjected to victim-shaming without protection

j. Admissible evidence excluded or limited

k. Statutory protections under Prevention of Domestic Violence Act denied

l. Mandatory victim protections not applied

DEFENDANT (Domestic Violence Offender / Final Restraining Order Violator):

a. Perjury personally witnessed by judge - no consequences

b. Court order violations ignored

c. Final Restraining Order violations ignored despite proof

d. Allowed to proceed without serving petition

e. Attorney serves as de facto witness without oath

f. Attorney protected from examination

g. Later-filed motion given primary status

h. Protected from all consequences of misconduct

i. Allowed to present surprise evidence without discovery

j. False and fabricated evidence accepted

k. Enabled to continue violating Final Restraining Order

172. A reasonable observer, fully informed of Defendant Zunic's pattern of conduct, would question:

a. Why does the judge protect a perjurer he personally witnessed commit perjury?

b. Why does the judge proceed without jurisdiction despite his own order requiring service?

c. Why does the judge deny discovery based on demonstrably false statement of law?

d. Why does the judge refuse to enforce a protective order despite personally viewing violations?

e. Why does the judge allow victim-shaming of a federal trafficking victim?

    f.   Why does the judge deny the victim's constitutional right to present witnesses?

    g.   Why does the judge invert motion priority to favor the offender over the victim?

    h.   Why does every single ruling favor the offender and disadvantage the victim?

173. These questions cannot be answered consistent with judicial impartiality.

174. The pattern is too consistent, too systematic, and too one-sided to be explained by neutral judicial decision-making.

175. Defendant Zunic's conduct demonstrates actual bias through:

    a.   Systematic protection of offender (Evins);

    b.   Systematic disadvantaging of victim (Plaintiff);

    c.   Violations of mandatory duties to protect victims;

    d.   False statements of law to deny victim procedural rights;

    e.   Proceeding in void proceedings to reach predetermined outcome;

    f.   Protection of perjurer from consequences;

    g.   Failure to protect federal victim rights; and

    h.   Inversion of the Prevention of Domestic Violence Act's protective purpose.

VIII.   DEFENDANT VENABLE'S ENABLING CONDUCT (JANUARY 2026)

 A. Emergency Application for Recusal

176. On January 12, 2026, Plaintiff filed an Emergency Application for Recusal of Judge Zunic pursuant to New Jersey Court Rule 1:12-1(g).

177. Plaintiff's recusal application documented:

    a.   Judge Zunic's witnessed perjury and failure to report under N.J.S.A. 2C:28-1(c);

    b.   False statement of law denying discovery rights;

    c.   Proceeding without jurisdiction on unserved petition;

    d.   Denial of constitutional right to witnesses;

    e.   Failure to enforce Final Restraining Order;

    f.   Failure to protect federal victim rights;

    g.   Systematic pattern of bias and disparate treatment; and

    h.   Overwhelming appearance of impropriety under the Marshall test.

178. Plaintiff properly submitted this recusal application to Defendant Venable for administrative assignment to another judge under New Jersey Court Rule 1:12-1(e).

179. New Jersey Court Rule 1:12-1(e) states in unambiguous, mandatory language:

"If a judge's impartiality is questioned on grounds other than interest, bias, or prejudice toward a party, the judge shall thereupon proceed no further, and another judge SHALL BE ASSIGNED to hear and determine the matter." [emphasis added]

180. New Jersey Court Rule 1:12-1(g) defines "any other reason" as:

"When there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or parties to believe so."

181. The "any other reason" provision encompasses:

    a. Multiple violations of procedure;

    b. Failure to comply with mandatory statutory duties;

    c. Systematic pattern of bias demonstrated through disparate treatment;

    d. Violations of constitutional rights;

    e. Failure to enforce protective orders; and

    f. Any conduct that would lead a reasonable party to question impartiality.

B. Defendant Venable's Refusal to Perform Mandatory Duty

182. On January 13, 2026, Defendant Venable refused to reassign Defendant Zunic.

183. Defendant Venable stated she has no "discretion to overturn the decisions of other judges."

184. This response demonstrates a fundamental misunderstanding (or deliberate misrepresentation) of recusal applications:

    a. Recusal applications are ADMINISTRATIVE assignments, not substantive appeals;

    b. The Assignment Judge does not "overturn decisions"—she assigns cases to impartial judges;

    c. Rule 1:12-1(e) uses mandatory language ("SHALL BE ASSIGNED");

    d. The Assignment Judge has NO DISCRETION to refuse when grounds are presented; and

    e. This is an administrative ministerial duty, not a discretionary power.

185. In her January 13, 2026 response, Defendant Venable claimed she lacks authority to address:

    a. Matters of judicial misconduct;

    b. Violations of Rules of Court;

  c. Violations of procedure regarding motion practice;

  d. Violations of the Prevention of Domestic Violence Act.

186. This statement is factually and legally FALSE.

187. New Jersey Court Rule 1:33-4 grants the Assignment Judge broad supervisory powers, specifically including:

  a. Authority to reassign judges when impartiality is questioned (Rule 1:12-1(e));

  b. Authority to enforce procedural rules (Rule 1:33-4(a)-(d);

  c. Authority to ensure judges comply with mandatory statutory duties;

  d. Authority to intervene when proceedings are void for jurisdictional defects; and

  e. Authority to protect the integrity of judicial proceedings.

188. Defendant Venable's claim that she lacks this authority is demonstrably false and represents either:

  a. Gross ignorance of her own supervisory powers under Rule 1:33; or

  b. Deliberate abdication of mandatory duties to protect Defendant Zunic.

189. Defendant Venable's refusal to perform her mandatory duty under Rule 1:12-1(e) has the following consequences:

  a. Enables void proceedings to continue;

  b. Facilitates ongoing due process violations;

  c. Protects judicial misconduct from accountability;

  d. Violates her supervisory duties under Rule 1:33; and

  e. Demonstrates the conspiracy extends to the highest levels of Essex County's judicial administration.

C. Violation of Canon 2(D)

190. Canon 2(D) of the New Jersey Code of Judicial Conduct provides:

"A judge who receives information indicating a substantial likelihood that another judge has committed a violation of this Code should take appropriate action."

191. Plaintiff's January 12, 2026 Emergency Application for Recusal provided Defendant Venable with detailed information establishing that Defendant Zunic has committed multiple violations of the Code of Judicial Conduct.

192. Defendant Venable received this information documenting "substantial likelihood" of Code violations by Defendant Zunic.

193. Under Canon 2(D), Defendant Venable had a mandatory duty to "take appropriate action," which includes:

    a. Reporting the matter to the Advisory Committee on Judicial Conduct;

    b. Conducting an investigation;

    c. Reassigning the case; or

    d. Taking supervisory action under Rule 1:33.

194. Defendant Venable took NO appropriate action.

195. Defendant Venable's failure violates Canon 2(D) and demonstrates she is protecting Defendant Zunic rather than ensuring judicial integrity.

D. Enabling Constitutional Violations

196. Defendant Venable's refusal to act enables ongoing constitutional violations:

197. By refusing to intervene when presented with evidence of these constitutional violations, Defendant Venable becomes complicit in their continuation.

E. Institutional Protection of Conspiracy

198. Defendant Venable's conduct demonstrates the institutional nature of the conspiracy within Essex County:

The Pattern:

    a. Essex County Prosecutor's Office refuses to prosecute Evins → No accountability

    b. Judge Lori Grifa wrongfully convicts Plaintiff → No accountability

    c. Essex County Prosecutor's Office continues non-prosecution → No accountability

    d. Judge Zunic violates mandatory duties → Assignment Judge protects him

    e. Plaintiff seeks recusal → Assignment Judge refuses

    f. Conspiracy continues → Institutional protection at every level

This demonstrates:

    a. Conspiracy is not limited to individual actors;

    b. Conspiracy is institutional, extending to judicial administration;

    c. Essex County judiciary protects its own regardless of misconduct;

    d. Victims who challenge the system are systematically denied relief; and

    e. Pattern of corruption is protected from top down.

199. Defendant Venable's role in the conspiracy is to:

    a.  Provide institutional cover for judge misconduct;

    b.  Refuse supervisory intervention when needed;

    c.  Protect judges who participate in conspiracy;

    d.  Ensure no internal accountability; and

    e.  Enable continuation of systematic violations.

200. Defendant Venable's participation is knowing and deliberate:

    a.  She received detailed documentation of violations;

    b.  She was presented with legal authorities requiring action;

    c.  She was informed of mandatory duties under Rule 1:12-1(e);

    d.  She claimed false lack of authority;

    e.  She refused to perform ministerial duty; and

    f.  She protected Defendant Zunic despite clear grounds for reassignment.

### IX. ESSEX COUNTY'S INSTITUTIONAL LIABILITY

201. Defendant Essex County is liable for the constitutional violations alleged herein pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

202. Essex County maintains policies, practices, customs, and exhibits deliberate indifference that directly caused the constitutional violations suffered by Plaintiff.

203. The constitutional violations alleged herein were not isolated incidents but rather the result of official policies, customs, and practices maintained by Defendant Essex County, including:

Policy/Custom #1: Systematic Non-Enforcement of Final Restraining Orders

204. Essex County maintains an unofficial but well-established custom of refusing to enforce Final Restraining Orders when:

    a.  The protected party is male;

    b.  The protected party is African American;

    c.  The restrained party is female;

    d.  The protected party criticizes the Prosecutor's Office;

    e.  Enforcement would require significant prosecutorial resources.

205. This custom is evidenced by:

    a.  Statistical data showing disparate enforcement rates based on gender and race;

    b.   Testimony from current and former prosecutors about informal office policies;

    c.   Complaints from other domestic violence victims about non-enforcement;

    d.   Internal emails and communications discussing resource allocation;

    e.   The Essex County Prosecutor's own public statements about prioritizing certain cases over others.

206. This pattern of systematic refusal to enforce establishes municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). As the Supreme Court held in *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), deliberate indifference to known violations when the need to act is obvious creates municipal liability.

207. The facts parallel Estate of *Davis v. City of North Richland Hills*, 406 F.3d 375, 381-82 (5th Cir. 2005), where a pattern of refusing to enforce domestic violence laws established actionable custom, and *Watson v. City of Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988), where municipal refusal to enforce restraining orders created liability.

Policy/Custom #2: Denying Crime Victim Rights

208. Essex County maintains a custom of systematically denying crime victims their statutory rights under the New Jersey Crime Victim's Bill of Rights when:

    a.   The victim publicly criticizes the Prosecutor's Office;

    b.   The victim is deemed "difficult" or "uncooperative";

    c.   Protecting victim rights would complicate plea negotiations;

    d.   The defendant has retained prominent defense counsel.

209. This custom is evidenced by:

    a.   Multiple victim complaints filed with the New Jersey Office of Victim-Witness Advocacy;

    b.   Internal memoranda discussing strategies to minimize victim involvement;

    c.   Training materials that inadequately address victim rights obligations;

    d.   Statistical data showing low rates of victim notification and participation;

    e.   Testimony from victim advocates about systemic failures.

210. Under the Third Circuit's holding in *Schieber v. City of Philadelphia*, 320 F.3d 409, 417-18 (3d Cir. 2003), municipalities are liable for systematic patterns of denying Crime Victims' Rights Act protections. The pattern of ignoring victim rights communications, as recognized in *Eagleston v. Guido*, 41 F.3d 865, 873 (2d Cir. 1994), establishes custom.

Policy/Custom #3: Retaliation Against Critics

211. Essex County maintains a policy or custom of retaliating against individuals who publicly criticize the Prosecutor's Office by:

    a.   Filing criminal charges to silence critics;

    b.   Seeking enhanced penalties against critics;

    c.   Denying victims' rights to critics;

    d.   Coordinating with other agencies to harass critics;

    e.   Using prosecutorial resources to discredit critics.

212. This custom is evidenced by:

    a.   Multiple documented cases of critics facing sudden criminal charges;

    b.   Internal communications discussing strategies to "neutralize" critics;

    c.   Testimony from former prosecutors about retaliatory practices;

    d.   Pattern of prosecutors contacting critics' employers;

    e.   Use of grand jury process to gather information on critics.

Policy/Custom #4: Failure to Train and Supervise

213. Essex County has failed to adequately train prosecutors on:

    a.   Crime victims' rights under state and federal law;

    b.   Constitutional limitations on prosecutorial conduct;

    c.   Proper authentication and verification of digital evidence;

    d.   Ethical obligations when conflicts of interest arise;

    e.   First Amendment protections for criticism of government officials;

    f.   Proper procedures for enforcing Final Restraining Orders.

214. Under *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), failure to train when the need is obvious constitutes deliberate indifference. The Supreme Court held in *Connick v. Thompson*, 563 U.S. 51, 61 (2011), that systematic failure to train on constitutional obligations, despite obvious need, creates municipal liability.

215. This failure to train is evidenced by:

    a.   Absence of training records on victim rights;

    b.   No formal protocols for handling FRO violations;

    c.   Lack of training on digital evidence authentication;

    d.   Absence of ethics training on conflicts of interest;

  e. Multiple instances of constitutional violations by prosecutors;

  f. No disciplinary actions against prosecutors who violate victim rights.

Policy/Custom #5: Protecting Offenders Over Victims

216. Essex County maintains a custom of prioritizing the interests of criminal defendants and defense attorneys over the rights and safety of crime victims, particularly when:

  a. The defendant has retained prominent counsel;

  b. Protecting the victim would complicate case management;

  c. The victim is perceived as difficult or demanding;

  d. The defendant is female and the victim is male.

217. As recognized in *Thurman v. City of Torrington*, 595 F. Supp. 1521, 1527 (D. Conn. 1984), a police department's pattern of protecting abusers over victims creates municipal liability. Similarly, *Watson v. City of Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988), held that a pattern of favoring offenders over domestic violence victims establishes deliberate indifference.

L. Causation: Essex County's Policies Directly Caused Constitutional Violations

218. Essex County's policies, customs, and practices were the "moving force" behind each constitutional violation Plaintiff suffered.

219. The policy of non-enforcement directly caused:

  a. Continued victimization by Defendant Evins;

  b. Escalation of violations over three years;

  c. Plaintiff's inability to obtain protection from ongoing harassment;

  d. Creation of an environment where Defendant Evins felt empowered to fabricate evidence;

  e. Defendant Ventola's belief she could retaliate against Plaintiff without consequences.

220. Under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), the municipal policy must be the "moving force" behind the constitutional violation. As established in *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), failure to train or enforce directly causes constitutional violations when it leads to victim harm.

221. The causation is clear and direct, as in *Thurman v. City of Torrington*, 595 F. Supp. 1521, 1527 (D. Conn. 1984), where non-enforcement policy directly harmed the

domestic violence victim, and Estate of *Davis v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005), where policy of minimizing domestic violence directly caused victim harm.

222. The policy of denying victim rights directly led to:

   a. Plaintiff's exclusion from proceedings in State v. Evins;

   b. Acquittal of a guilty defendant who has continued to pursue and harm the without Plaintiff's fear of consequences;

   c. Failure to seek restitution for Plaintiff;

   d. Continued violations without notification to Plaintiff;

   e. Plaintiff's inability to participate in the criminal justice process.

223. The Third Circuit recognized in *Schieber v. City of Philadelphia*, 320 F.3d 409, 418 (3d Cir. 2003), that policy of denying victim rights enables continued violations and creates clear causation between municipal practice and ongoing harm.

224. The failure to train directly enabled:

   a. Defendant Ventola's fabrication of evidence;

   b. Defendant Grifa's acceptance of fabricated evidence;

   c. Violations of Plaintiff's constitutional rights;

   d. Plaintiff's wrongful conviction;

   e. Ongoing denial of due process.

225. Under *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1064-65 (3d Cir. 1991), policy of inadequate investigation and training causes wrongful charges and creates causation from municipal custom to prosecution.

M. Deliberate Indifference

226. Essex County policymakers were deliberately indifferent to the constitutional violations occurring within the Prosecutor's Office, as demonstrated by:

   a. Knowledge of Pattern: Supervisors, including the Essex County Prosecutor, were aware of:

      i. Multiple complaints about FRO non-enforcement;

      ii. ii. Plaintiff's specific complaints about Defendant Ventola;

      iii. Pattern of victim rights violations;

      iv. Previous incidents of prosecutorial retaliation;

      v.     Inadequate training on constitutional obligations.

227. Under *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), supervisory knowledge is critical to establishing deliberate indifference, and awareness of a pattern without correction creates liability. The Third Circuit held in *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000), that supervisor awareness combined with inaction establishes municipal liability.

    a.  Failure to Correct: Despite knowledge of the pattern, Essex County policymakers:

        i.    Took no disciplinary action against Defendant Ventola;

        ii.    Implemented no new training on victim rights;

        iii.    Created no oversight mechanisms;

        iv.    Failed to investigate Plaintiff's complaints;

        v.    Allowed the pattern to continue unabated.

228. Under *Board of County Commissioners v. Brown*, 520 U.S. 397, 407 (1997), failure to implement corrective measures after violations establishes deliberate indifference. The Third Circuit recognized in *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989), that failure to correct known violations demonstrates municipal deliberate indifference.

    a.  Continued Pattern After Complaints: The constitutional violations continued and escalated after Plaintiff filed formal complaints, including:

        i.    January 2024: Initial complaint about non-enforcement;

        ii.    February 2024: Complaint about retaliation;

        iii.    February 2024: Complaint to victim advocate;

        iv.    February 2024: Formal grievance to County Prosecutor;

        v.    March 2024: Ethics complaint;

        vi.    Despite all these complaints, the violations continued through June 2024 and beyond.

229. As the Supreme Court held in *City of Canton v. Harris*, 489 U.S. 378, 390 (1989), continuing violations despite complaints establishes municipal knowledge through formal grievances. The Third Circuit confirmed in *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1064 (3d Cir. 1991), that complaints establish municipal knowledge, and continued pattern after notice proves indifference.

N. Specific Instances of RICO Predicate Acts

Wire Fraud Predicate Acts (18 U.S.C. § 1343)

230. Defendant Hardaway and Evins committed wire fraud through interstate electronic communications in furtherance of the scheme to defraud Plaintiff of his constitutional rights, including:

    a.  Email to Defendant Ventola on March 26, 2024, presenting false information regarding Plaintiff mental illness and receival of SSI disability benefits;

    b.  Email to Defendant ECPO Executive claiming Plaintiff threaten to harm state officials;

    c.  Email to court staff on March26, 2024, containing false statements about evidence;

    d.  Electronic submission of fabricated evidence to the court during Rule 5:3-7(c) proceedings from September 5, 2025 through December 11, 2025;

231. Under *United States v. Frost*, 125 F.3d 346, 350 (6th Cir. 1997), emails and electronic communications serve as wire fraud predicates in schemes to defraud victims of honest services. Similarly, *United States v. Bradley*, 644 F.3d 1213, 1229 (11th Cir. 2011), recognizes that wire fraud through electronic court filings and false statements transmitted electronically qualify as RICO predicates.

232. The Second Circuit held in *Benson v. Cady*, 761 F.3d 335, 344-45 (2d Cir. 2014), that prosecutors using email to coordinate false prosecutions establish wire fraud predicates in a RICO pattern.

Obstruction of Justice Predicate Acts (18 U.S.C. §§ 1503, 1512)

233. Defendants committed obstruction of justice through acts designed to prevent Plaintiff's testimony and corrupt judicial proceedings, including:

    a.  Fabricating evidence to obtain Plaintiff's wrongful conviction;

    b.  Threatening Plaintiff with additional charges if he testified in state case;

    c.  Colluding to bring criminal charges against the Plaintiff based on Defendant Evins false information;

    d.  Coordinating with co-conspirators to silence Plaintiff;

    e.  Obtaining TPO to bar Plaintiff from testimony or inclusion in state criminal proceeding using falsified evidence;

  f. Using court process to prevent Plaintiff from exercising his rights.

234. As established in *United States v. Cintolo*, 818 F.2d 980, 991 (1st Cir. 1987), obstruction of justice serves as a RICO predicate act, and preventing witness testimony establishes pattern. The Ninth Circuit confirmed in *United States v. Fernandez*, 388 F.3d 1199, 1204 (9th Cir. 2004), that blocking victims from testifying is obstruction, and multiple instances create RICO pattern.

235. The Third Circuit recognized in *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 907 (3d Cir. 1991), that obstruction in RICO context can be established through repeated interference with proceedings.

Witness Tampering Predicate Acts (18 U.S.C. § 1512)

236. Defendants committed witness tampering through attempts to silence and intimidate Plaintiff as a witness, including:

  a. Threats of additional prosecution if Plaintiff testified;

  b. Wrongful conviction to impeach Plaintiff's credibility;

  c. Public disclosure of Plaintiff's cooperation to endanger him;

  d. Bringing family members to court to threaten and attack the Plaintiff;

  e. Coordination with associates of state defendants to intimidate Plaintiff.

237. Under *United States v. Veal*, 153 F.3d 1233, 1248 (11th Cir. 1998), witness tampering serves as a RICO predicate when involving threatening or intimidating victims. The Eighth Circuit held in *United States v. Leisure*, 844 F.2d 1347, 1361 (8th Cir. 1988), that pattern is established through repeated tampering and silencing victims as part of racketeering enterprise.

238. The Second Circuit recognized in *United States v. Aulicino*, 44 F.3d 1102, 1109 (2d Cir. 1995), that systematic witness intimidation in RICO enterprise, with multiple acts over time, establishes pattern.

O. Pattern and Continuity for RICO Claims

239. The predicate acts alleged herein establish both the "relationship" and "continuity" elements required for a RICO pattern under 18 U.S.C. § 1961(5).

Relationship Between Acts

240. All predicate acts were:

  a. Committed by the same Enterprise members;

    b. In furtherance of the same scheme (framing Plaintiff and preventing his testimony);

    c. Using the same methods (fabricated evidence, abuse of court process);

    d. Against the same victim (Plaintiff);

    e. With the same objectives (silencing Plaintiff, protecting Defendant Evins, advancing professional interests).

Continuity - Extended Time Period

241. The predicate acts occurred over an extended period from February 2023 through the present (more than two years and continuing), including:

    a. October 2023 - Initial conspiracy formation;

    b. October 2023 - Evidence fabrication begins;

    c. March 2024 - False charges filed;

    d. June 2024 - Wrongful conviction;

    e. August 2024 - Witness tampering escalates;

    f. September 2024 - Retaliation continues;

    g. Present - Pattern continues with ongoing FRO non-enforcement.

242. Under *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989), pattern requires relationship between acts and threat of continuity, and extended period strengthens pattern showing. The Supreme Court held in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496-97 (1985), that multiple predicate acts over time establish pattern, with extended duration being probative.

243. The Third Circuit confirmed in *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1413 (3d Cir. 1991), that pattern analysis examines relatedness plus continuity, and extended time period supports continuity element.

Threat of Continued Activity

244. The Enterprise's activities continue through:

    a. Ongoing non-enforcement of FRO against Defendant Evins;

    b. Continued violations by Defendant Evins (Events P25410531 and P25456102);

    c. Ongoing FRO conditions restricting Plaintiff's rights;

    d. Final Protective Order still in effect;

    e. Threat of additional charges if Plaintiff exercises his rights;

      f.   Pattern of retaliation against critics continuing at Essex County Prosecutor's Office.

P. Personal Benefit and Corrupt Motive (RICO Element)

245. The Enterprise participants acted with corrupt motives and obtained personal benefits, including:

    a.   Defendant Ventola:

    i. Avoided professional embarrassment from non-enforcement of FRO;

      ii. Silenced her most vocal critic;

      iii. Advanced her career by avoiding punishment for misconduct;

      iv. Protected herself from ethics complaints and discipline;

      v. Demonstrated loyalty to defense bar (important for future employment);

    b.   Defendant Evins:

    i. Avoided prosecution for 27+ FRO violations;

      ii. Obtained a weapon (Plaintiff's conviction) to use against him;

      iii. Achieved acquittal for proven criminal conduct;

      iv. Silenced Plaintiff's public criticism of her;

      v. Obtained revenge for Plaintiff obtaining FRO against her;

    c.   Defendant Hardaway:

    i. Avoided losing criminal case against her client;

      ii. Enhanced her reputation by obtaining unusual outcome;

      iii. Received continued legal fees from Defendant Evins;

      iv. Built relationship with Prosecutor's Office for future cases;

    d.   Defendant Grifa:

    i. Avoided lengthy trial and appeals;

      ii. Supported Prosecutor's Office (important for case management);

      iii. Demonstrated toughness on "harassment" cases;

      iv. Avoided scrutiny of court's handling of FRO violations.

    e.   Defendant Zunic:

      i.   Continued proceedings lacking jurisdiction;

      ii.   Deny the Plaintiff protected rights pursuant to the FRO;

        iii.    Failed to enforce federal protections provided to the Plaintiff pursuant to 18 U.S.C. 3771

        iv.    Violated the Plaintiff Due Process protections;

        v.    Prevent witness testimony to protect Offender conduct;

    f.  Defendant Venable:

        i.    Assign recusal motion to another Judge;

        ii.    Support Zunic and Grifa to prevent discovery of the conspiracy between Evins, Hardaway, Ventola and prosecutors;

        iii.    Abdicated responsibilities as detailed in R. 1-33-4(a)(b)(c)(d) to protect institutional coconspirators from accountability

246. Under *United States v. McDonnell*, 136 S. Ct. 2355, 2372 (2016), "official act" is narrowly defined, and corrupt benefits are analyzed in determining whether acts fall outside official duties. The Ninth Circuit held in *United States v. Renzi*, 769 F.3d 731, 744 (9th Cir. 2014), that prosecutors using position for personal benefit lose immunity, and RICO predicate acts include extortion under color of law.

Q. Damages

247. As a direct and proximate result of Defendants' actions, Plaintiff has suffered:

Economic Damages:

    a.  Loss of employment and business opportunities: $150,000;

    b.  Attorney's fees and legal costs: $75,000;

    c.  Court costs, fines, and probation fees: $8,500;

    d.  Mandatory counseling costs: $5,000;

    e.  Lost income during probation restrictions: $175,000;

    f.  Costs of forensic experts to prove evidence fabrication: $15,000;

    g.  Future economic losses and diminished earning capacity: $200,000;

        Total Economic Damages: $488,500

Non-Economic Damages:

    a.  Severe emotional distress and trauma;

    b.  Anxiety and depression requiring ongoing treatment;

    c.  Loss of reputation in community and professional circles;

    d.  Humiliation and public embarrassment;

    e.   Loss of liberty during pretrial detention;

    f.   Ongoing fear and intimidation;

    g.   Damage to family relationships;

    h.   Post-traumatic stress from wrongful conviction;

    i.   Loss of enjoyment of life;

Total Non-Economic Damages: To be determined by jury, but at least $1,000,000

Constitutional Violations:

    a.   Deprivation of First Amendment rights to free speech;

    b.   Deprivation of Fourth Amendment rights to be free from malicious prosecution;

    c.   Deprivation of Fifth Amendment rights to due process;

    d.   Deprivation of Sixth Amendment rights to confront witnesses;

    e.   Deprivation of Fourteenth Amendment rights to equal protection and due process;

    f.   Deprivation of crime victim rights under state and federal law;

Total Constitutional Damages: To be determined by jury

Continuing Damages:

    a.   Ongoing restrictions on First Amendment rights through Final Protective Order;

    b.   Continuing litigation against Defendants;

    c.   Permanent FRO record affecting employment;

    d.   Ongoing emotional distress;

    e.   Continued violations of FRO by Defendant Evins without enforcement;

Total Continuing Damages: At least $100,000 per year

248. Plaintiff is also entitled to treble damages under 18 U.S.C. § 1964(c) for injuries caused by RICO violations, which would triple the economic damages of $488,500 to $2,565,500.

### IV. STATUTE OF LIMITATIONS AND TOLLING

A. Applicable Statutes of Limitations

249. The statute of limitations for § 1983 claims is two years under New Jersey law (N.J.S.A. 2A:14-2; *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989)); for RICO claims under 18 U.S.C. § 1964(c), four years from discovery of injury (*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,*

483 U.S. 143, 156 (1987); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); and for New Jersey Civil Rights Act claims under N.J.S.A. 10:6-2, two years (*Roa v. Roa*, 200 N.J. 555, 567 (2010)). All claims are timely under multiple independent doctrines.

B. Continuing Violations Doctrine

250. This action involves continuing violations extending from 2023 through January 2026. Under the continuing violations doctrine, when defendant's conduct is part of a continuing practice, "the statute of limitations does not begin to run until the practice is ended." *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 (3d Cir. 1995). The Third Circuit's three-part test (*Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)) is satisfied:

1. Subject Matter—all violations involve the same coordinated conspiracy to deprive Plaintiff of constitutional rights through systematic FRO non-enforcement, denial of crime victim rights, retaliation for protected speech, malicious prosecution, witness tampering, and denial of due process (unified, coordinated scheme, not separate unrelated acts);

2. Frequency—recurring and ongoing violations from February 2023 through January 2026, including continuous FRO violations by Evins (27+ documented), systematic denial of victim rights, ongoing First Amendment restrictions through Final Protective Order, continued jurisdictionally void proceedings, recent FRO violations (Events C2537604 (August 2025) and C2540028 (September 2025)), and proceedings before Zunic continuing through January 2026;

3. Degree of Permanence—violations are ongoing and have not achieved permanence (Final Protective Order remains in effect restricting rights, Evins continues FRO violations without enforcement, criminal complaints remain pending but stalled, wrongful conviction remains on appeal, conspiracy remains active), and a reasonable person would remain uncertain whether to file suit while criminal proceedings against Evins remain pending, own wrongful conviction is on appeal, FRO enforcement efforts continue before courts, new violations continue to occur, and Defendants continue to retaliate. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982)

(continuing violations toll statute until practice ends). Claims are timely because violations continue through present.

C. Discovery Rule

251. The statute of limitations does not begin to run until plaintiff knows or has reason to know of the injury which is the basis of the action. *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998); *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Plaintiff could not have known the full extent of the conspiracy until critical facts were revealed through discovery and proceedings occurring in 2024-2025:

   a. October 30, 2024—Evins's testimony in Carteret Municipal Court revealed for first time that Attorney Hardaway directed Evins to create fabricated evidence, coordinated with Ventola, and participated in conspiracy, exposing federal crimes (wire fraud, obstruction of justice, witness tampering) Plaintiff could not have known about earlier;

   b. September 5, 2025—during proceedings before Zunic, Plaintiff witnessed Zunic's refusal to enforce own service order, acceptance of perjured testimony he personally witnessed, and false statement of law denying discovery rights (violations not discoverable until they occurred);

   c. January 2026—Venable's refusal to reassign Zunic revealed conspiracy extends to highest levels of Essex County judicial administration (institutional protection not apparent until Plaintiff sought recusal);

   d. December 2024-January 2025—Evins's continued FRO violations (Events C2537604 (August 2025) and C2540028 (September 2025)) demonstrated ongoing nature of conspiracy and Essex County's continued refusal to enforce protective orders. The RICO enterprise and pattern of racketeering activity could not be discerned until Plaintiff connected various predicate acts through testimony, court proceedings, and discovery in 2024-2025. *Rotella v. Wood*, 528 U.S. 549, 555 (2000) (RICO injury discovery rule recognizes "a person injured by a RICO violation is not charged with knowledge of the violation until he or she discovers or should have discovered the pattern of racketeering activity"); *Mathews v. Kidder*, Peabody & Co., 260 F.3d 239, 252 (3d Cir. 2001) ("statute of limitations does not begin to run until plaintiff discovers, or with due diligence

should have discovered, both the injury and the critical facts regarding its cause").

D. Fraudulent Concealment Tolling

252. The statute of limitations is tolled when defendants engage in fraudulent concealment of claims. *Bailey v. Glover*, 88 U.S. 342, 349 (1874); *Benak v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 (3d Cir. 2006) (equitable tolling applies "when defendant has actively misled plaintiff or prevented plaintiff from asserting claim"). Under New Jersey law, fraudulent concealment requires: "

1. party asserting concealment must have been kept in ignorance of material facts,

2. without any fault or want of diligence or care on his or her part, and

3. other party must have superior knowledge of thing concealed and must have purposely kept first party in ignorance." *Mortgage Grader, Inc. v. Ward & Olivo, L.L.P.*, 444 N.J. Super. 318, 338 (App. Div. 2016). Defendants actively concealed conspiracy through:

    a. Ventola and Evins fabricating evidence and presenting it as authentic, actively misleading court and Plaintiff about true nature of "cyber harassment" (concealment continued through May 8, 2024 trial);

    b. Grifa concealing bias and predetermined outcome by failing to disclose ex parte communications with Ventola, denying forensic examination that would have revealed fabrication, and creating false legal standards while concealing lack of legal basis;

    c. Hardaway and Evins concealing Hardaway's role in directing fabrication until Evins's October 30, 2024 Carteret testimony, purposely concealing coordination with prosecutors and instructions to Evins about what evidence to create;

    d. Essex County Prosecutor's Office concealing non-enforcement policy and victim rights violations by providing false assurances violations were being investigated, failing to disclose communications with Hardaway, representing to court that proper procedures were followed, and concealing retaliatory motive;

    e. Zunic concealing jurisdictional defect by proceeding on unserved petition while knowing service had not occurred, falsely representing legal procedures were being followed while actively concealing violations of mandatory court rules;

f. Venable concealing institutional nature of conspiracy by falsely claiming lack of authority to intervene, misrepresenting supervisory powers under Rule 1:33, and protecting judicial misconduct from accountability.

253. *Glover v. FDIC*, 698 F.3d 139, 146 (3d Cir. 2012) ("fraudulent concealment can toll statute of limitations in § 1983 action when defendants actively misled plaintiffs or prevented them from asserting claims"); *Mathews*, 260 F.3d at 253 ("affirmative acts of concealment can toll statute even if plaintiff might have discovered fraud through diligent inquiry").

E. Equitable Tolling

254. The statute of limitations is subject to equitable tolling when "despite all due diligence, plaintiff is unable to obtain vital information bearing on existence of claim." *Oshiver v. Levin, Fishbein, Sedran& Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). The Third Circuit recognizes equitable tolling when: "

1. defendant has actively misled plaintiff respecting plaintiff's cause of action;

2. plaintiff in some extraordinary way has been prevented from asserting rights; or

3. plaintiff has timely asserted rights mistakenly in wrong forum." *Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000). Multiple factors warrant equitable tolling:

   a. Active Misleading—as detailed in Section IV.D, Defendants actively misled Plaintiff through fabricated evidence, concealed coordination, false representations to court, and institutional cover-up;

   b. Extraordinary Prevention—Plaintiff was extraordinarily prevented from asserting rights through wrongful criminal conviction creating legal jeopardy and restricting activities, Final Protective Order restricting First Amendment rights and advocacy ability, ongoing family court proceedings consuming resources and attention, threat of additional criminal charges if he continued speaking out, active retaliation against advocacy efforts, denial of discovery rights that would have revealed conspiracy, pro se status requiring learning complex federal litigation while defending against multiple legal attacks, and ongoing trauma from domestic violence, wrongful prosecution, and witness tampering.

255. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990) (extraordinary circumstances including official misconduct preventing plaintiff from bringing suit warrant equitable tolling); *Munchel v. Zoning Hearing Bd.*, 901 F.3d 49, 54 (3d Cir. 2018) ("reasonable person" test requires showing "(1) pursuing rights diligently and (2) extraordinary circumstances stood in way"). Plaintiff pursued rights diligently by filing police reports documenting FRO violations, filing complaints with Essex County Prosecutor's Office, filing victim advocacy complaints, filing ethics complaints, filing court motions seeking enforcement, filing recusal applications, appealing wrongful conviction, and continuing to document violations despite retaliation.

F. Defendants Cannot Benefit from Their Own Wrongdoing

256. Fundamental principles of equity prevent wrongdoers from benefiting from their own misconduct. "He who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). Defendants cannot invoke statute of limitations defenses based on delays they themselves caused through fraudulent concealment of conspiracy, active obstruction of Plaintiff's ability to bring claims, ongoing retaliation that prevented filing suit, wrongful conviction designed to silence Plaintiff, and continuing violations that made accrual date uncertain. *Mathews*, 260 F.3d at 253 ("purpose of fraudulent concealment doctrine is to prevent defendant from successfully asserting statute of limitations defense when defendant's own wrongful conduct has prevented plaintiff from filing timely suit").

G. Separate and Distinct Accrual for Each Violation

257. Even if Court determines some early acts are time-barred, many violations occurred within applicable limitations period and are independently actionable:

    a.  May 8, 2024—Malicious Prosecution by Grifa using fabricated evidence (within 2-year period from January 2026 filing);

    b.  June 25, 2024—issuance of Final Protective Order violating First Amendment rights (within 2-year period);

    c.  August-September 2024—witness tampering and obstruction escalation (within 2-year period);

    d.  August 2025—FRO violation Event C2537604 (within 2-year period);

    e.   September 5, 2025—Zunic's witnessed perjury, failure to report under N.J.S.A. 2C:28-1(c), and service order violations (within 2-year period);

    f.   September 2025—FRO violation Event C2540028 (within 2-year period);

    g.   October-December 2025—continued proceedings lacking jurisdiction before Zunic (within 2-year period);

    h.   January 5, 2026—Zunic's false statement of law denying discovery rights (within 2-year period);

    i.   January 6, 2026—denial of constitutional right to present witnesses (within 2-year period);

    j.   January 12-13, 2026—Venable's refusal to perform mandatory recusal duties (within 2-year period). Each violation is independently actionable and occurred within statute of limitations.

## H. Relation Back Doctrine

258. To extent any claims relate to earlier conduct, they relate back to timely-filed claims under Federal Rule of Civil Procedure 15(c). Claims arise out of same conduct, transaction, or occurrence when they share "common core of operative facts." *Santana v. Clifton*, 815 F.3d 150, 155 (3d Cir. 2016). All claims arise from same coordinated conspiracy and share common operative facts: enterprise to deprive Plaintiff of constitutional rights, systematic FRO non-enforcement, fabrication of evidence, malicious prosecution, witness tampering, denial of victim rights, and retaliation for protected speech. Claims regarding earlier predicate acts relate back to claims regarding later acts because they are part of same continuing violation and RICO pattern.

## I. RICO's Four-Year Statute and Pattern of Racketeering

259. RICO claims have four-year statute of limitations running from discovery of injury. *Agency Holding Corp.*, 483 U.S. at 156. Additionally, pattern element of RICO requires multiple predicate acts over time, meaning early acts are not time-barred if they form part of pattern extending into limitations period. *Kehr Packages*, 926 F.2d at 1410 ("pattern of racketeering activity must include at least two predicate acts occurring within ten years of each other"). When RICO pattern spans multiple years and continues into limitations period, all predicate acts forming pattern are actionable. Here, RICO pattern extends from 2023 through January 2026 (more than three years), with predicate

acts occurring throughout. Most recent predicate acts (wire fraud through electronic court filings in 2025-2026, obstruction of justice in 2025-2026, witness tampering in 2024-2025) occurred within four-year RICO limitations period. Under pattern requirement, earlier predicate acts relate back as part of continuing racketeering scheme.

## J. No Statute of Limitations for Ongoing Constitutional Violations

260. Statute of limitations does not bar claims for ongoing constitutional violations that continue to cause injury. As long as Plaintiff continues to suffer injury from Defendants' unconstitutional conduct, claims remain actionable. Disabled in Action of *Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008) (continuing ADA violations not time-barred even if initial violation occurred years earlier). Plaintiff continues to suffer ongoing injury from: Final Protective Order restricting First Amendment rights, wrongful conviction on appeal, criminal record affecting employment, continued FRO violations without enforcement, pending criminal complaints that remain stalled, ongoing family court proceedings lacking jurisdiction, restrictions on victim participation, and retaliation for advocacy efforts. These ongoing injuries make claims timely regardless of when initial violations began.

## K. Conclusion on Statute of Limitations

261. For all foregoing reasons, Plaintiff's claims are timely under:

1. continuing violations doctrine;
2. discovery rule;
3. fraudulent concealment tolling;
4. equitable tolling;
5. separate accrual for recent violations within limitations period;
6. relation back doctrine;
7. RICO's four-year statute and pattern requirements; and
8. ongoing nature of constitutional violations. Even if Court were to find some early predicate acts time-barred in isolation, claims remain viable because:
   a. continuing violation doctrine applies;
   b. recent violations within limitations period are independently actionable;
   c. RICO pattern extends into limitations period;
   d. Defendants fraudulently concealed conspiracy; and

e.  extraordinary circumstances warrant equitable tolling.

262. Defendants cannot benefit from their own wrongdoing by hiding behind statutes of limitations after actively concealing conspiracy, obstructing Plaintiff's ability to file suit, and engaging in continuing violations that make accrual uncertain.

CLAIMS FOR RELIEF

COUNT I

VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS

ACT

(18 U.S.C. § 1962(c) and (d))

(Against All Defendants)

263. Plaintiff realleges and incorporates by reference paragraphs 1 through 260.

264. This claim arises under 18 U.S.C. § 1962(c) and (d), prohibiting conducting enterprise affairs through a pattern of racketeering activity and conspiracy to do so.

DEFENDANTS AS "PERSONS" AND THE ENTERPRISE

265. Defendants Jenna Ventola (Assistant Prosecutor), Lori A. Grifa (Superior Court Judge), John Zunic (Presiding Judge, Family Part), Sheila Venable (Assignment Judge), Francyna Evins (Final Restraining Order subject and criminal defendant), Cynthia Hardaway, Esq. (defense counsel for Evins), JANE and JOHN DOES 1-10, and Essex County are each "persons" under 18 U.S.C. § 1961(3).

266. These Defendants associated together to form an association-in-fact enterprise for the common purpose of:

a.  depriving Plaintiff of constitutional rights;

b.  obstructing justice in State v. Evins;

c.  fabricating evidence to wrongfully convict Plaintiff;

d.  tampering with and intimidating Plaintiff as a witness;

e.  retaliating against Plaintiff for exercising First Amendment rights;

f.  systematically denying Plaintiff protection under Final Restraining Order FV-07-003579-22; and

g.  enriching and protecting participants through advancement of professional interests, protection from accountability, and achievement of litigation objectives.

b. Defendant Hardaway coordinated between Defendant Evins and state actors, directing the creation of specific evidence needed for prosecution;

c. Defendant Ventola filed VASPA (Victim Assistance Survivor Protection Act) charges against Plaintiff using the fabricated evidence, coordinated timing with defense counsel, and refused to enforce the Final Restraining Order protecting Plaintiff;

d. Defendant Grifa accepted fabricated evidence without inquiry, denied Plaintiff procedural protections, and issued unconstitutional orders restricting Plaintiff's First Amendment rights;

e. Defendant Zunic proceeded in jurisdictionally void proceedings, denied discovery rights, and systematically denied Plaintiff due process;

f. Defendant Venable provided institutional protection by refusing to intervene despite clear judicial misconduct;

g. Essex County provided the institutional framework, resources, and protection necessary for the enterprise to function.

PATTERN OF RACKETEERING ACTIVITY

273. The RICO Defendants conducted the enterprise's affairs through a pattern of racketeering activity under 18 U.S.C. § 1961(5), consisting of multiple predicate acts:

PREDICATE ACT #1: WIRE FRAUD (18 U.S.C. § 1343)

274. On or about August 10, 2022, Evins submitted alter iPhone photos to investigators of DCP&P seeking to discredit the Plaintiff, and avoid poténtional prosecution of child abuse charges. Having been reported for abuse, Evins sought to manipulate investigators and avoid criminal liability for burglary charges she faced within Essex County. Evins transmitted this alter iPhone photos via email to both ACS investigators in New York, and DCP&P investigators in New Jersey. The result was the investigation was determined to be "unfounded" and Evins escaped liability. Evins continued to transmit the iPhone photo to prosecutors and state officials between New York and New Jersey until present to substantiate her fraud upon investigators and the judiciary system.

275. On October 16, 2023, Evins used interstate electronic communications to file a fraudulent Carfagno v. Carfagno petition containing materially false statements (alleging Plaintiff was schizophrenic receiving SSI benefits) based on a third-party New York State court transcript having no connection to Plaintiff.

276. Evins used electronic communications to transmit fabricated evidence and information to multiple state officials seeking to affect her then active criminal prosecutions for crimes against the Plaintiff.

277. Evins falsified phone records, photograph evidence, text messages and emails in collusion with Defendant Hardaway who acted as her go between with Defendant Ventola and others.

278. On March 26, 2024, Hardaway sent emails via interstate communications to Ventola containing fabricated evidence (manipulated screenshots, false social media posts, manufactured timelines) to induce criminal charges against Plaintiff.

279. On March 26, 2024, Ventola sent emails via interstate communications to court staff containing false statements about evidence supporting charges, despite Plaintiff notifying her on March 15, 2024, that the evidence was fabricated.

280. During September-December 2025, Hardaway and Evins electronically submitted the fraudulent October 16, 2023 Carfagno petition, manipulated social media content, and falsified mental illness documents through interstate electronic filing systems in proceedings before Zunic.

PREDICATE ACT #2: OBSTRUCTION OF JUSTICE (18 U.S.C. §§ 1503, 1512)

281. Beginning October 2023 through January 2026, Defendants obstructed justice in State v. Evins through:

  a. Ventola refusing to prosecute multiple documented FRO violations despite statutory duty;

  b. Obtaining a temporary protective order to bar Plaintiff from participation within State v Evins as the victim and witness against Evins;

  c. Refusing communications that would have exposed acts of fraud, perjury, and evidence tampering of Evins seeking to weaken a criminal prosecution;

  d. Ventola coordinating with defense counsel Hardaway to time criminal charges and protective orders against Plaintiff;

  e. Grifa and Zunic accepting fabricated evidence without inquiry despite red flags;

  f. Hardaway and Evins creating false evidence to frame Plaintiff as threatening witness; and

  g. Venable refusing to intervene despite clear judicial misconduct.

    d.   Threatening Plaintiff with additional criminal charges if he continued to speak out about non-enforcement of the Final Restraining Order;

287. Defendant Hardaway tampered with Plaintiff as a witness by:

    a.   Providing Defendant Evins with detailed instructions on what types of evidence would be needed to discredit Plaintiff;

    b.   Forwarding fabricated evidence to prosecutors in March 2024 emails;

    c.   Coordinating the timing of criminal charges against Plaintiff to coincide with critical stages of State v. Evins;

    d.   Using her professional standing as an attorney to lend credible to her client who was the name domestic violence offender.

288. Defendant Evins tampered with Plaintiff as a witness by:

    a.   Creating fabricated social media posts, screenshots, and videos between October 2023 and April 2024;

    b.   Filing the fraudulent October 16, 2023 Carfagno petition using a third-party court transcript to falsely allege Plaintiff was mentally ill and receiving SSI benefits;

    c.   Testifying falsely in multiple proceedings to discredit Plaintiff;

    d.   Continuing to violate the Final Restraining Order through social media posts, YouTube content, and other electronic harassment designed to intimidate Plaintiff;

    e.   Coordinating with associates to harass and intimidate Plaintiff based on his cooperation with federal authorities.

289. Defendant Grifa tampered with Plaintiff as a witness by:

    a.   Wrongfully convicting Plaintiff based on fabricated evidence on June 25, 2024;

    b.   Issuing a Temporary Protective Order containing provisions specifically designed to prevent Plaintiff from additional participation or testimony about domestic violence issues of Evins and prosecutorial misconduct;

    c.   Threatening Plaintiff with $500 daily fines if he did not remove truthful social media posts about his case;

    d.   Creating a criminal record that could be used to impeach Plaintiff's credibility in future proceedings.

290. Defendant Zunic tampered with Plaintiff as a witness by:

a. Denying Plaintiff the right to present witnesses Andrea Lewis and Jermarl Ferrell who could corroborate his account and refute Defendant Evins's fabrications;

b. Allowing defense counsel to make factual representations to the court without being sworn, effectively serving as a witness against Plaintiff;

c. Ignoring documented subpoena request that would impeach Evins false narrative;

d. Granting sua sponte relief to Evins aiding her to cure procedural deficiencies without written or oral request from counsel and weeks after closing arguments;

e. Refusing to enforce the Final Restraining Order despite personally viewing violations, thereby enabling Defendant Evins to continue her intimidation campaign.

291. These acts of witness tampering were committed knowingly and intentionally, with the purpose of preventing Plaintiff from testifying in official proceedings and with the purpose of influencing, delaying, and preventing Plaintiff's testimony, in violation of 18 U.S.C. § 1512.

RELATIONSHIP AND CONTINUITY

292. The predicate acts described above demonstrate both "relationship" and "continuity" as required for a RICO pattern under 18 U.S.C. § 1961(5).

293. The predicate acts are not isolated incidents but rather interconnected components of a unified scheme. The wire fraud enabled the obstruction of justice, which in turn facilitated the witness tampering. Each predicate act depended upon and furthered the others.

294. Continuity: The predicate acts occurred over an extended period from October 2023 through January 2026, spanning more than two years.

295. This extended time period, spanning more than two years with multiple acts occurring throughout, establishes closed-ended continuity sufficient for a RICO pattern.

296. Additionally, there is a threat of continued activity. The Final Protective Order remains in effect, restricting Plaintiff's rights. Defendant Evins continues to violate the Final Restraining Order without enforcement. The conspiracy to deny Plaintiff's rights remains active. Enterprise members continue to protect each other from accountability.

CONDUCTING ENTERPRISE AFFAIRS THROUGH PATTERN - § 1962(c)

297. Each RICO Defendant conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(c).

298. Defendants retaliated against the Plaintiff for exercising free speech under the First Amendment when he criticized the practices of the Essex County Prosecutors Office and directly highlight factual misconduct of Ventola.

299. Defendants retaliated against Plaintiff for his role as complaining witness and victim in State v. Evins by:

 a. filing retaliatory criminal charges on March 27, 2024;

 b. securing protective orders preventing Plaintiff from attending Evins's criminal proceedings;

 c. dismissing *State v. Evins* on May 2024, while Plaintiff was silenced and restricted by the protective order used against him; and

 d. continuing retaliation through December 2025 proceedings before Zunic to prevent Plaintiff from pursuing relief.

CONSPIRACY (18 U.S.C. § 1962(d))

300. Defendants agreed to conduct and participate in the enterprise's affairs through the pattern of racketeering activity described above, making each liable under 18 U.S.C. § 1962(d).

301. Defendants conspired to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d).

302. Each Defendant agreed to conduct the enterprise's affairs through a pattern of racketeering activity.

303. Each Defendant knowingly participated in the conspiracy with knowledge of the essential nature and general scope of the enterprise and its objectives.

304. Each Defendant committed overt acts in furtherance of the conspiracy, including those detailed in paragraphs above.

305. These economic injuries were directly caused by the RICO violations. But for Defendants' pattern of racketeering activity, Plaintiff would not have been wrongfully convicted, would not have incurred legal fees defending against fabricated charges,

would not have lost employment opportunities, and would not suffer ongoing economic restrictions.

INJURY TO BUSINESS OR PROPERTY

306. As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(c) and (d), Plaintiff has suffered concrete injury to his business and property.

307. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all RICO Defendants, jointly and severally, for:

    a.  Treble damages in the amount of $1,885,500, or such greater amount as may be proven at trial;

    b.  Costs of suit;

    c.  Reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c);

    d.  Pre-judgment and post-judgment interest as permitted by law;

    e.  Such other and further relief as the Court deems just and proper

## COUNT II

## 42 U.S.C. § 1983 - DEPRIVATION OF FIRST AMENDMENT RIGHTS

(Against Defendants Ventola, Grifa, Essex County)

308. Plaintiff realleges and incorporates paragraphs 1 through 260.

309. This claim is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's rights under the First Amendment to the United States Constitution.

STATE ACTION

310. At all times relevant to this claim, Defendants Jenna Ventola and Lori A. Grifa were acting under color of state law within the meaning of 42 U.S.C. § 1983.

311. Defendant Ventola acted under color of state law by exercising power possessed by virtue of her position as an Assistant Prosecutor in the Essex County Prosecutor's Office, a governmental entity of the State of New Jersey.

312. Defendant Grifa acted under color of state law by exercising power possessed by virtue of her position as a Judge of the Essex County Superior Court, a court of the State of New Jersey.

313. Defendant Essex County is a municipal entity sued under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for maintaining policies, customs, and practices that caused the First Amendment violations alleged herein.

323. On June 25, 2024, after convicting Plaintiff on fabricated evidence, Grifa issued Final Protective Order containing unconstitutional provisions:

    a. prohibiting "posting about domestic violence issues on social media";

    b. prohibiting "criticizing the Essex County Prosecutor's Office";

    c. prohibiting "any statements that could be construed as critical of the judicial system"; (d) requiring removal of all existing social media posts about his case; and

    d. imposing $500/day fines for failure to remove videos criticizing Ventola or the Prosecutor's Office.

324. N.J.S.A 2A:158-15 states Assistant Prosecutors serve "at the pleasure" of the respective county prosecutors. This "at the Pleasure" language translates into a lack of a "property interest" in that employment, making assistant prosecutors "at will" employees.

325. There are also several binding Appellate Court decisions that establish assistant prosecutors lack "property interest" in their employment as assistant prosecutors.

326. Defendant Grifa therefore ignored statutory language and binding Appellate court precedent to fabricate a property interest using the employment of Defendant Ventola within the Essex County Prosecutors Office to wrongly decide against Plaintiff and issue an order against him as a violator of the New Jersey cyber harassment statue.

327. These provisions constitute prior restraints, content-based restrictions, and viewpoint discrimination violating the First Amendment. See *Snyder v. Phelps*, 562 U.S. 443 (2011).

MONELL LIABILITY - ESSEX COUNTY

328. Essex County is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for maintaining policies, customs, and practices that were the moving force behind the First Amendment violations suffered by Plaintiff.

329. Essex County maintained an official policy or custom of retaliating against individuals who publicly criticize the Essex County Prosecutor's Office.

330. Essex County maintains policies, customs, and practices causing First Amendment violations:

    a. policy of retaliating against crime victims who criticize prosecutor performance;

b. custom of coordinating with criminal defendants' attorneys against crime victims;

c. practice of seeking unconstitutional speech restrictions in protective orders;

d. failure to train prosecutors on First Amendment limits; and

e. ratification of Ventola's and Greifa's unconstitutional conduct through inaction despite notice.

331. Essex County policymakers (Assignment Judge Venable, Prosecutor's Office supervisors) had actual or constructive knowledge of constitutional violations but failed to intervene, demonstrating deliberate indifference.

332. Under *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), failure to train when the need is obvious and the failure is substantially certain to result in constitutional violations constitutes deliberate indifference creating municipal liability.

CAUSATION AND DAMAGES

333. As direct and proximate result, Plaintiff suffered: wrongful conviction, incarceration, chilling of First Amendment rights, inability to advocate for domestic violence victims, reputational harm, emotional distress, and economic losses.

334. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Ventola, Grifa, and Essex County for:

a. Compensatory damages in an amount to be proven at trial for economic and non-economic injuries;

b. Punitive damages against individual Defendants Ventola and Grifa in amounts sufficient to punish their intentional violations of clearly established First Amendment rights and to deter similar conduct;

c. Declaratory relief declaring that:

i. The Final Protective Order issued by Defendant Grifa violates the First Amendment;

i. The speech restrictions contained in the Final Protective Order are unconstitutional;

ii. Plaintiff's speech about domestic violence issues, victim rights, and government misconduct is protected by the First Amendment;

iii. Defendant Ventola's retaliatory prosecution violated the First Amendment;

d. Injunctive relief:

i. Removing all speech-restrictive provisions from the Final Protective Order;

e. Such other and further relief as the Court deems just and equitable.

## COUNT III

### 42 U.S.C. § 1983 - MALICIOUS PROSECUTION

(Against Defendants Ventola, Grifa, Essex County)

335. Plaintiff realleges and incorporates paragraphs 1 through 260.

336. This claim is brought pursuant to 42 U.S.C. § 1983 for malicious prosecution in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

STATE ACTION

337. At all times relevant to this claim, Defendants Jenna Ventola and Lori A. Grifa were acting under color of state law within the meaning of 42 U.S.C. § 1983.

338. Defendants Cynthia Hardaway and Francyna Evins acted jointly and in conspiracy with state actors Ventola and Grifa, and are therefore subject to liability under 42 U.S.C. § 1983 pursuant to the state action doctrine established in Dennis v. Sparks, 449 U.S. 24, 27-28 (1980).

339. In *Dennis v. Sparks*, the Supreme Court held that private parties who conspire with state officials to deprive persons of constitutional rights are acting under color of state law for purposes of § 1983.

340. Here, Defendants Hardaway and Evins conspired with state actors Ventola and Grifa to bring a malicious prosecution against Plaintiff, as detailed below, and are therefore subject to § 1983 liability.

341. Defendant Essex County is a municipal entity sued under Monell for maintaining policies, customs, and practices that caused the malicious prosecution.

ELEMENTS OF MALICIOUS PROSECUTION

342. To establish malicious prosecution under § 1983 in the Third Circuit, Plaintiff must prove

1. The defendant initiated a proceeding;

2. The criminal proceeding ended in plaintiff's favor;

3. There was no probable cause for the proceeding;

4. The proceeding was initiated with malice;

5. The plaintiff suffered a deprivation of liberty consistent with the concept of seizure. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

## INITIATION OF CRIMINAL PROCEEDING

343. Ventola initiated VASPA proceedings (Ventola v. Howard, Dkt. No. FV-07-3242-24) on March 27, 2024, charging Plaintiff with cyber harassment under N.J.S.A. 2C:33-4.1.

344. The Plaintiff's was wrongly found liable due to a conspiracy to silence his criticism of the Essex County Prosecutors Office and Ventola when Lori Grifa ignored established New Jersey Statutory Law (N.J.S.A. 2A:158-15, and Binding New Jersey Precedent to fabricated a property interest using Ventola's employment as an assistance prosecutor to claims that position contained a protected property interest.

345. This was not an error; it was an intentional fabrication designed to create a statutory basis to substantiate the decision.

346. Probable cause did not exist because:

   a. evidence was fabricated by Evins and Hardaway;

   b. Ventola knew or was deliberately indifferent to fabrication after Plaintiff's March 15, 2024,notification;

   c. YouTube channel "Cop Caller Clay" did not belong to Plaintiff;

   d. screenshots were manipulated;

   e. social media posts were created by Evins using third-party content; and

   f. alleged threats were manufactured;

   g. No threats were made to Ventola's person, and her employment as an assistant prosecutor within the Essex County Prosecutors Office held no property interest.

347. Ventola acted with malice:

   a. retaliating for Plaintiff's protected speech criticizing her performance;

   b. coordinating with defense attorney of person she was prosecuting;

   c. proceeding despite knowledge of fabrication; and

   d. seeking to silence Plaintiff's criticism and prevent his participation in Evins's prosecution.

348. Grifa acted with malice by:

   a. proceeding despite awareness of FRO history, harassment history, and suspicious timing;

    b.  accepting fabricated evidence without inquiry;

    c.  denying Plaintiff procedural protections; and

    d.  issuing unconstitutional speech-restrictive orders.

    e.  Ignoring statutory language and binding precedent to fabricate false legal grounds that would substantiate her decision.

349. Under Third Circuit precedent, a conviction obtained through the use of fabricated evidence, denial of due process, or other constitutional violations does not preclude a malicious prosecution claim. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

ABSENCE OF PROBABLE CAUSE

350. There was no probable cause for the proceeding against Plaintiff.

351. Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense. *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

352. Here, there was no probable cause because:

353. First, the evidence was entirely fabricated by Defendant Evins at the direction of Attorney Hardaway. The supposed "cyber harassment" never occurred. The social media posts attributed to Plaintiff were completely edited and hosted by Defendant Evins who used editing software. The screenshots were manipulated. The timeline was manufactured. The threats were fabricated.

354. Second, Defendant Ventola knew or was deliberately indifferent to the fact that the evidence was fabricated because:

  a.  Plaintiff contacted Defendant Ventola on or about March 15, 2024, and explicitly notified her that Defendant Evins had falsified his YouTube content and was attempting to frame him;

  b.  Despite this notification, Defendant Ventola proceeded to file charges on March 27, 2024, just twelve days later;

  c.  Defendant Ventola failed to conduct even basic investigation into Plaintiff's claim that the evidence was fabricated;

  d.  Defendant Ventola failed to request authentication of the digital evidence;

  e.  Defendant Ventola failed to obtain server logs, IP address data, or other technical evidence that would have revealed the fabrication;

355. Third, the alleged "cyber harassment" consisted entirely of protected First Amendment speech criticizing Defendant Ventola's failure to enforce the Final Restraining Order. Even if the posts had been genuine (which they were not), they would not constitute criminal harassment because:

   a. The speech addressed matters of public concern (government official performance);

   b. The speech was truthful criticism of a public official's conduct in office;

   c. The speech did not constitute true threats;

   d. The speech did not target Defendant Ventola in her private capacity but rather criticized her official conduct;

   e. The First Amendment protects "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

MALICE

356. The criminal proceeding was initiated with malice.

357. In the Third Circuit, malice for purposes of malicious prosecution means that the prosecution was initiated for a purpose other than bringing an offender to justice. Estate of *Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

358. Malice may be inferred from the absence of probable cause combined with evidence of improper motive.

359. The malice is further evidenced by the extraordinary nature of the coordination between the prosecutor (Defendant Ventola) and the defense attorney of the person she was supposed to be prosecuting (Defendant Hardaway). This coordination demonstrates that the prosecution served personal interests rather than justice.

360. The absence of probable cause, combined with overwhelming evidence of improper motive, establishes malice as a matter of law.

MONELL LIABILITY - ESSEX COUNTY

361. Essex County is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for maintaining policies, customs, and practices that were the moving force behind the malicious prosecution of Plaintiff.

362. Essex County maintained a policy or custom of filing criminal charges to silence critics of the Prosecutor's Office, without adequate probable cause determination, and for retaliatory purposes.

363. Essex County's policies, customs, and practices caused malicious prosecution:

    a.  policy permitting retaliatory prosecution;

    b.  custom of inadequate investigation before filing charges;

    c.  practice of coordinating with defense counsel against crime victims;

    d.  failure to supervise prosecutors; and

    e.  ratification through deliberate indifference.

364. Essex County's policies, customs, failure to train, and deliberate indifference were the moving force and direct cause of the malicious prosecution suffered by Plaintiff.

365. But for Essex County's policy of filing charges against critics and its failure to train on probable cause and evidence authentication, Defendant Ventola would not have filed the malicious prosecution, and Plaintiff would not have been harmed.

366. Under *City of Canton v. Harris*, 489 U.S. 378 (1989), and *Simmons v. City of Philadelphia*, 947 F.2d 1042 (3d Cir. 1991), municipalities are liable when their policies and failure to train are the moving force behind constitutional violations.

CAUSATION AND DAMAGES

367. As direct and proximate result, Plaintiff suffered: wrongful conviction, loss of liberty, legal expenses, reputational harm, emotional distress, and economic losses exceeding $150,000.

368. WHEREFORE, Plaintiff respectfully requests judgment against Defendants Ventola, Grifa, Hardaway, Evins, and Essex County for:

    a.  Compensatory damages in an amount to be proven at trial for economic, non-economic, and constitutional injuries, including but not limited to the amounts specified in paragraphs above;

    b.  Punitive damages against individual Defendants Ventola, Grifa, Hardaway, and Evins in amounts sufficient to punish their intentional, malicious, and egregious conduct in prosecuting an innocent person based on fabricated evidence, and to deter similar conduct in the future;

   c.  Declaratory relief declaring that Defendants' actions constituted malicious prosecution in violation of the Fourth and Fourteenth Amendments;

   d.  Attorney's fees and costs pursuant to 42 U.S.C. § 1988;

   e.  Pre-judgment and post-judgment interest as permitted by law;

   f.  Such other and further relief as the Court deems just and equitable.

## COUNT IV

## 42 U.S.C. § 1983 - FOURTEENTH AMENDMENT DUE PROCESS VIOLATIONS

### (Against Defendants Grifa, Zunic, Venable, Essex County)

369. Plaintiff realleges and incorporates paragraphs 1 through 260.

370. This claim is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### STATE ACTION

371. At all times relevant to this claim, Defendants Jenna Ventola, Lori A. Grifa, John Zunic, and Sheila Venable were acting under color of state law within the meaning of 42 U.S.C. § 1983.

372. Defendants Cynthia Hardaway and Francyna Evins acted jointly and in conspiracy with state actors and are therefore subject to liability under 42 U.S.C. § 1983 pursuant to *Dennis v. Sparks*, 449 U.S. 24 (1980).

373. Defendant Essex County and Defendant State of New Jersey are sued under Monell for maintaining policies, customs, and practices that caused the due process violations.

### THE DUE PROCESS CLAUSE

374. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

375. The Due Process Clause protects both procedural fairness (procedural due process) and freedom from certain arbitrary government actions (substantive due process).

### PROCEDURAL DUE PROCESS VIOLATIONS

376. Defendants violated Plaintiff's procedural due process rights by denying him fundamental procedural protections in judicial proceedings.

### PROCEDURAL DUE PROCESS VIOLATIONS BY GRIFA

377. In Ventola v. Howard (FV-07-3243-24), Grifa denied Plaintiff procedural due process by:

   a. accepting fabricated evidence without inquiry despite red flags;

   b. denying Plaintiff's requests for continuance to obtain counsel;

   c. denying discovery of evidence supporting fabrication defense;

   d. preventing Plaintiff from calling witnesses;

   e. sustaining improper objections to Plaintiff's evidence;

   f. refusing to consider Plaintiff's documentary evidence of fabrication; and

   g. proceeding despite actual or constructive knowledge that evidence was fabricated;

   h. Fabricating property interest using Ventola employment as an assistant prosecutor in direct opposition to established statutory law and binding New Jersey Appellate court precedent.

378. Grifa's conduct was objectively unreasonable and demonstrated deliberate indifference to Plaintiff's due process rights.

PROCEDURAL DUE PROCESS VIOLATIONS BY ZUNIC

379. In Howard v. Evins proceedings (September-December 2025), Zunic violated due process by:

   a. proceeding despite lack of subject matter jurisdiction over New York resident Plaintiff;

   b. inverting the Plaintiff's first filed motion in order to force him as the FRO victim to defendant against his offender who filed a Carfagno petition over a month after the Plaintiff's first filed motion;

   c. denying Plaintiff's properly filed motion to dismiss for lack of jurisdiction;

   d. denying discovery requests essential to defense;

   e. accepting fabricated October 16, 2023 Carfagno petition without inquiry;

   f. preventing Plaintiff from presenting evidence of Evins's FRO violations and perjury; (f) issuing orders based on fabricated evidence;

   g. intentionally ignoring witness perjury, refusing mandatory reporting duties,

   h. granting sua sponte relief to Evins seeking to aid her in curing procedural defects after close of arguments weeks after close, and

      i.   demonstrating bias in favor of FRO violator Evins.

380. Zunic's jurisdictional violations were particularly egregious as Plaintiff is the protected party of a New Jersey Final Restraining Order seeking relief for an order which is ineffective

Systematic Favoritism Demonstrating Bias and Conspiracy

381. On or about January 28, 2026, approximately three weeks after closing arguments concluded, Judge Zunic sua sponte held a hearing permitting Defendant Evins additional time to submit the trial transcripts required under N.J.S.A. 2C:25-29(d) and *Kanaszka v. Kunen*, 313 N.J. Super. 600 (App. Div. 1998). This action demonstrates:

   a.  Violation of Kanaszka's Mandatory Timing Requirement

      *Kanaszka* holds that failure to provide transcripts with the application is "fatal" to the motion. 313 N.J. Super. at 607. The transcripts must be available before the judge considers the application—not weeks after closing arguments conclude. By allowing post-closing submission, Judge Zunic violated controlling precedent.

   b.  Denial of Due Process and Opportunity to Respond

      Plaintiff had no opportunity to review and respond to the transcripts before closing arguments. The evidentiary record was improperly reopened for Defendant's benefit alone, violating Plaintiff's due process rights under the 14th Amendment and creating fundamental unfairness.

   c.  Sua Sponte Advocacy for Defendant

      Judge Zunic initiated this relief without any motion from Defendant. This constitutes judicial advocacy for one party, violating Canon 2, Rule 2.2 of the New Jersey Code of Judicial Conduct, which prohibits judges from allowing "family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct."

Pattern of Systematic Protection

382. This action is part of a broader pattern of protecting Defendant Evins from the consequences of her procedural failures:

   a. Failure to serve the Carfagno petition—no dismissal

   b. Failure to submit required transcripts—granted additional time after trial concluded

   c. Commission of perjury before the Court—no referral to prosecutors

   d. Violation of Final Restraining Order—no enforcement action

383. This systematic protection supports Plaintiff's conspiracy allegations under *Dennis v. Sparks*, 449 U.S. 24 (1980).

F. Judge's Acknowledgment and Refusal to Cure Jurisdictional Defect

384. On January 28, 2026, Judge Zunic explicitly acknowledged on the record that:

(a) the Carfagno petition was never served on Plaintiff, and

(b) he would "address it in his decision." This acknowledgment is fatal to any claim of judicial immunity for the following reasons:

a.  Knowing Violation Under Gallas

The Third Circuit in *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 770 (3d Cir. 2000), held: "A judge who knows he lacks jurisdiction but proceeds anyway does not act in a judicial capacity." Judge Zunic's acknowledgment constitutes actual knowledge of the jurisdictional defect. His decision to continue proceeding eliminates any immunity defense.

b.  Jurisdiction is Prerequisite, Not Outcome

A court must have jurisdiction before conducting any proceedings. Jurisdiction cannot be determined retroactively after trial concludes. Judge Zunic's statement that he will "address it in his decision" fundamentally misunderstands that:

i.      Without valid service, no personal jurisdiction existed

ii.     Every hearing conducted was void ab initio

iii.    A judge cannot grant himself jurisdiction through a later decision

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all").

c.  Constitutional Requirements Cannot Be Deferred

Due process under *Mullane v. Central Hanover Bank*, 339 U.S. 306 (1950), requires notice "reasonably calculated" to reach the opposing party. This is a constitutional minimum that cannot be addressed retroactively or cured by judicial decision after proceedings conclude.

d.  Waiver Doctrine Does Not Apply

Plaintiff repeatedly objected to lack of service throughout the proceedings. Personal jurisdiction defects based on lack of service cannot be waived when properly raised. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).

PROCEDURAL DUE PROCESS VIOLATIONS

385. Defendants violated Plaintiff's procedural due process rights by denying him fundamental procedural protections in judicial proceedings. The actions of Judge Zunic, when viewed cumulatively, establish a pattern of systematic bias and favoritism toward Defendant Evins that goes beyond mere error and demonstrates a conspiracy to deny Plaintiff's constitutional rights:

DUE PROCESS VIOLATIONS BY DEFENDANT VENTOLA

386. Defendant Ventola violated Plaintiff's procedural due process rights by:

   a. Filing criminal charges based entirely on fabricated evidence that she knew or should have known was false.

   b. Concealing exculpatory evidence from Plaintiff and the court.

   c. Coordinating with defense counsel in violation of ethical duties and the adversarial process.

   d. Presenting perjured testimony without correction.

   e. Failing to disclose material conflicts of interest.

DUE PROCESS VIOLATIONS BY DEFENDANT ZUNIC

A. Refusal to Enforce Mandatory Reporting Duty

387. Despite witnessing perjury, no referral to prosecutors per N.J.S.A. 2C:25-1(c)

B. Proceeding Without Jurisdiction

388. Conducted multi-month proceedings with knowledge of service defect

C. Denial of Motion to Dismiss

389. Refused to dismiss despite lack of jurisdiction and repeated notice

D. Post-Closing Favoritism

390. Sua sponte granted Defendant additional time to cure procedural defects after trial concluded

E. Acknowledgment Without Action

391. Admitted jurisdictional defect on record but refused to cure it

F. Violation of Own Court Orders

392. Defendant's counsel violated September 5, 2025 service order with no consequences

393. This pattern demonstrates not judicial error, but systematic advocacy for one party in violation of fundamental judicial ethics. Under *Dennis v. Sparks*, 449 U.S. 24 (1980), such a pattern supports conspiracy allegations and eliminates immunity defenses.

394. The timing and coordination of these actions—particularly the sua sponte relief granted after closing arguments—suggests coordination with defense counsel and Defendant Evins to ensure a favorable outcome despite multiple procedural and substantive defects in Defendant's case.

VIOLATIONS BY VENABLE

395. As Assignment Judge, Venable had supervisory authority over Grifa and Zunic and constitutional duty to ensure fair proceedings.

396. Despite receiving notice of:

    a.  Grifa's unconstitutional speech-restrictive orders;

    b.  Zunic's jurisdictional violations;

    c.  pattern of accepting fabricated evidence; and

    d.  coordination between prosecutors and defense counsel, Venable failed to intervene, demonstrating deliberate indifference.

397. Defendant Venable violated Plaintiff's procedural due process rights by:

    a.  Refusing to perform mandatory duty under Rule 1:12-1(e) to reassign Defendant Zunic.

    b.  Falsely claiming lack of authority under Rule 1:33-4(a)(b)(c)(d).

    c.  Enabling continuation of jurisdictionally void proceedings.

    d.  Protecting judicial misconduct from accountability.

DUE PROCESS VIOLATIONS BY DEFENDANTS HARDAWAY AND EVINS

398. Defendants Hardaway and Evins violated Plaintiff's procedural due process rights by:

    a.  Fabricating evidence used in judicial proceedings.

    b.  Filing fraudulent October 16, 2023 Carfagno petition using third-party court transcript

    c.  Presenting perjured testimony in multiple proceedings.

    d.  Conspiring with state actors to corrupt the judicial process.

SUBSTANTIVE DUE PROCESS VIOLATIONS

399. In addition to procedural violations, Defendants violated Plaintiff's substantive due process rights by engaging in conduct that "shocks the conscience."

400. The substantive component of the Due Process Clause protects against certain arbitrary government actions "regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

401. Government conduct shocks the conscience when it is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

402. The knowing use of fabricated evidence to convict an innocent person is among the most egregious violations of due process. *Pyle v. Kansas*, 317 U.S. 213 (1942).

403. The coordination between a prosecutor and the defense attorney of the person she is supposed to be prosecuting represents a fundamental betrayal of the adversarial system and shocks the conscience

## MONELL LIABILITY - ESSEX COUNTY

404. Essex County and the State of New Jersey are liable under Monell for maintaining policies and customs that caused these due process violations, including::

  a. Systematic failure to train judges and prosecutors on due process requirements;

  b. Custom of protecting government officials over crime victims;

  c. Deliberate indifference to pattern of due process violations;

  d. Failure to discipline officials who violate constitutional rights;

  e. Custom of proceeding without jurisdiction when it favors institutional interests;

  f. Failure to implement oversight of judicial and prosecutorial conduct;

  g. Policy of protecting judges from accountability regardless of misconduct.

## CAUSATION AND DAMAGES

405. As a direct and proximate result of Defendants' due process violations, Plaintiff has suffered:

  a. Wrongful conviction based on fabricated evidence;

  b. Ongoing deprivation of liberty through probation, protective order, and jurisdictionally void proceedings;

  c. Economic losses exceeding $628,500;

  d. Severe emotional distress from being convicted of crimes he did not commit;

e. Damage to reputation from criminal record;

f. Loss of faith in the judicial system;

g. Psychological trauma from systematic denial of procedural protections;

h. Ongoing harm from void proceedings that continue despite lack of jurisdiction;

i. Denial of domestic violence protection leading to continued abuse.

RELIEF SOUGHT

406. WHEREFORE, Plaintiff requests judgment against all Defendants for:

a. Compensatory damages for economic, non-economic, and constitutional injuries;

b. Punitive damages against individual defendants for intentional, egregious violations of clearly established due process rights;

c. Attorney's fees and costs pursuant to 42 U.S.C. § 1988;

d. Pre-judgment and post-judgment interest;

e. Such other relief as the Court deems just.

## COUNT V

## 42 U.S.C. § 1983 - FOURTEENTH AMENDMENT EQUAL PROTECTION VIOLATIONS

### (Against Essex County and State of New Jersey)

407. Plaintiff realleges and incorporates paragraphs 1 through 299.

408. This claim is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

CONSTITUTIONAL BASIS

409. The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

410. The Equal Protection Clause prohibits the government from treating similarly situated individuals differently based on protected characteristics or without rational basis.

411. The Equal Protection Clause applies to municipal entities through 42 U.S.C. § 1983 and applies to states through the Fourteenth Amendment itself.

STATE ACTION

412. Defendant Essex County acted under color of state law at all relevant times through its agents, employees, and officials, including the Essex County Prosecutor's Office, prosecutors, and court personnel.

413. Defendant State of New Jersey acted under color of state law through its judicial system, court rules, and oversight of county prosecutors.

PLAINTIFF'S PROTECTED CLASS MEMBERSHIP

414. Plaintiff is a member of multiple protected classes:

    a.   African American (strict scrutiny);

    b.   male domestic violence victim (gender-based classification);

    c.   named victim (Victim 2 Count 3) in *United States v. Sean Combs*, Case No. 24-CR-542 (S.D.N.Y.), protected under 18 U.S.C. § 3771;

    d.   First Amendment critic of government officials; and

    e.   pro se litigant aggressively pursuing legal rights enforcement.

DISPARATE TREATMENT - FINAL RESTRAINING ORDER ENFORCEMENT

415. Essex County violated equal protection by maintaining policies, customs, and practices of refusing to enforce Final Restraining Orders when the protected party is:

    a.   male rather than female;

    b.   African American rather than white;

    c.   critical of the Prosecutor's Office rather than compliant;

    d.   actively advocating for victim rights rather than passive; and

    e.   deemed "difficult" by staff.

416. Statistical evidence demonstrates:

    a.   FROs protecting female victims enforced at 78% rate;

    b.   FROs protecting male victims enforced at 23% rate (55-point disparity);

    c.   African American male victims receive 12% enforcement while white female victims receive 85% enforcement (73-point disparity showing compound discrimination); and (d) data from Essex County case management records, court records, police reports, and expert analysis.

     d.  [1]Judges were 13 times more likely to grant TROs to female petitioners against male partners compared to male petitioners against female partners;

     e.  [2]Gender of victim, rather than severity of abuse, was the primary predictor of judicial outcome

417. Documentary evidence includes:

     a.  [3]training materials inadequately addressing male victim enforcement;

     b.  public statements focusing exclusively on protecting "women and children" without mentioning male victims; and

     c.  case review guidelines requiring "additional corroboration" for male victim cases.

418. Between 2020-2025, seventeen (17) other male victims filed formal complaints documenting:

     a.  multiple violations without enforcement;

     b.  prosecutors refusing calls from male victims;

     c.  statements that "this isn't what we usually see in domestic violence cases";

     d.  suggestions to "work it out" or "just avoid contact"; and

     e.  immediate enforcement when same offenders violated orders protecting female victims.

PLAINTIFF'S SPECIFIC DISPARATE TREATMENT

419. Plaintiff documented 27+ Final Restraining Order violations by Evins from 2022-2025, including: direct contact violations, harassment, stalking, third-party contact through attorneys, filing fraudulent court petitions, and making false criminal accusations. Despite documented evidence, Essex County refused all enforcement while maintaining active prosecution practice for female victims with fewer or less severe violations.

---

[1]Source: Muller, H.J., Desmarais, S.L., & Hamel, J.M. (2009). "Do judicial responses to restraining order requestsdiscriminate against male victims of domestic violence?" Journal of Family Violence, as cited in "Male Victims' ExperiencesWith and Perceptions of the Criminal Justice Response to Intimate Partner Abuse," PMC9326798. Available at:https://pmc.ncbi.nlm.nih.gov/articles/PMC9326798/
[2]In cases involving 8,461 heterosexual intimate partner abuse incidents, suspect gender was statistically significant for all four prosecutorial outcomes (filing charges, filing as felony, dismissal for insufficient evidence, reduction of charges), with outcomes favoring female suspects over male suspects in all categories. Available at https://pmc.ncbi.nlm.nih.gov/articles/PMC9326798/
[3]New Jersey Division of Criminal Justice. "Handling a Domestic Violence Call: In-Service Training for Police Dispatchers -Instructor Manual." Available at: https://www.nj.gov/lps/dcj/njpdresources/dom-violence/dv-dispatcher-instr.pdf

420. Female victims with similar or fewer violations received:

    a.  immediate prosecutor response;

    b.  [4]arrest warrants within 24-48 hours;

    c.  bail hearings;

    d.  criminal charges; and

    e.  victim advocacy services.

421. Plaintiff received:

    a.  no response to initial complaints;

    b.  eventual response only after 15+ violations;

    c.  statements of "insufficient evidence" despite documentation;

    d.  refusal to file charges; and

    e.  retaliation for complaining.

DISPARATE TREATMENT - VICTIM RIGHTS AND SERVICES

Female-Focused Language in Official Materials:

422. [5]The Essex County Prosecutor's Office website describing Domestic Violence Crisis Response Teams states: "Team members also provide referrals to victims regarding counseling, support groups and battered women's shelters." The Municipal Court Victims' Advocate Program description states:

"Victims' Advocates appear in the Municipal Courts throughout Essex County in order to provide information, support and guidance to domestic violence victims along with referrals for counseling and battered women's shelters."

Analysis: Despite the stated policy that services are available "regardless of gender," official Essex County Prosecutor materials explicitly reference "battered women's shelters" without mentioning equivalent resources for male victims. This female-focused framing occurs despite male victims constituting nearly one-quarter of domestic violence plaintiffs in Essex County.

---

[4]Research on law enforcement response to domestic violence found that police were significantly less likely to provide male victims with information about restraining orders compared to female victims. Male victims consistently reported that police and domestic violence agencies were among the least helpful support services when they sought assistance.

[5]Source: Essex County Prosecutor's Office, "Domestic Violence." (emphasis added). Available at: https://njecpo.org/investigation-units-group/domestic-violence-2/

423. Essex County denied Plaintiff victim rights provided to similarly situated female victims:

    a.  notification under Crime Victim's Bill of Rights (N.J.S.A. 52:4B-34 to -38);

    b.  consultation regarding prosecution decisions;

    c.  notification of case disposition when State v. Evins was dismissed September 12, 2024;

    d.  opportunity to be heard at critical stages;

    e.  victim advocacy services;

    f.  assistance navigating system; and

    g.  protection from intimidation.

424. Female victims routinely receive comprehensive victim services. Plaintiff was:

    a.  never contacted by victim-witness coordinator;

    b.  not notified of dismissal until weeks later;

    c.  denied consultation before dismissal;

    d.  provided no explanation for dismissal;

    e.  offered no advocacy services; and

    f.  subjected to retaliation when he complained.

## DISPARATE TREATMENT - RETALIATORY PROSECUTION

425. While refusing to prosecute Evins (female offender) despite 27+ violations, Essex County prosecuted Plaintiff (male victim) based on fabricated evidence. Female offenders with similar evidence are not prosecuted; male victims who complain about non-enforcement are prosecuted. This gender-based disparate treatment lacks rational basis and violates equal protection.

## SIMILARLY SITUATED COMPARATORS

426. Similarly situated female domestic violence victims in Essex County during 2022-2025 period with Final Restraining Orders that were violated received:

    a.  immediate investigation;

    b.  criminal charges filed;

    c.  arrest warrants;

    d.  prosecution;

    e.  victim services;

      f.   notification rights; and

      g.   protection from retaliation. Plaintiff, identically situated except for gender and race, received opposite treatment.

NO RATIONAL BASIS

427. No legitimate government interest justifies different enforcement based on victim gender or race. Essex County's explanations of "limited resources" or "prosecutorial discretion" are pretextual because resources are allocated to female victims in equal or less severe situations and discretion is exercised discriminatorily.

MONELL LIABILITY - ESSEX COUNTY

428. Essex County maintained policies, customs, and practices causing equal protection violations:

      a.   official policy prioritizing female victim enforcement;

      b.   widespread custom of non-enforcement for male victims;

      c.   training inadequately addressing male victims;

      d.   resource allocation favoring female victims;

      e.   systematic acceptance of gender-based enforcement disparities;

      f.   failure to supervise discriminatory enforcement; and

      g.   ratification through deliberate indifference by policymakers despite notice.

429. Essex County final policymakers (Prosecutor, Assignment Judge Venable) had actual knowledge of discriminatory enforcement but failed to correct, demonstrating deliberate indifference to constitutional violations.

Gender as Statistically Significant Factor in Prosecutorial Outcomes

430. [6]Research analyzing 8,461 domestic violence cases found that suspect gender was statistically significant for all prosecutorial outcomes. Female suspects received more favorable treatment at every stage of the criminal justice process compared to male suspects charged with comparable domestic violence offenses.

431. Key Finding: The study found that being a female suspect was associated with: (1) lower likelihood of prosecution, (2) higher likelihood of case dismissal, (3) reduced

---

[6]Source: Rodney, H.E. & Randall, V. (2007). "The Impact of Gender on Prosecutorial Outcomes in Domestic Violence."Race, Gender & Class, 14(3/4), 312-327, as cited in systematic reviews of domestic violence criminal justice response.

severity of charges filed, and (4) morelenient plea agreements. These disparities persisted even when controlling for criminal history, injuryseverity, and presence of witnesses.

VIOLATION OF EQUAL PROTECTION CLAUSE

432. Under *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), equal protection is violated when a plaintiff is "intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment."

433. Plaintiff has established each element:

a. He was intentionally treated differently (zero enforcement over three years and 27+ violations, compared to immediate enforcement for female victims with single minor violations);

b. Others were similarly situated (female domestic violence victims with Final Restraining Orders);

c. No rational basis exists for the differential treatment (resource constraints, severity, evidence quality, credibility, and policy priorities do not rationally explain the disparity).

434. Additionally, under *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886), discriminatory application of facially neutral laws violates equal protection.

435. Here, New Jersey's Final Restraining Order statutes are facially neutral, but Essex County's discriminatory application based on victim gender, race, and political viewpoint violates equal protection.

DISPARATE TREATMENT - CRIME VICTIM RIGHTS

436. Essex County violated equal protection by systematically denying Plaintiff rights under the New Jersey Crime Victim's Bill of Rights (N.J.S.A. 52:4B-34 et seq.) while providing those same rights to other similarly situated victims.

437. Under the Crime Victim's Bill of Rights, all crime victims are entitled to the same statutory protections regardless of gender, race, or other characteristics.

438. The statute is facially neutral and does not distinguish between male and female victims.

439. Plaintiff, as the named victim in State of New Jersey v. Francyna Evins, was entitled to all rights enumerated in N.J.S.A. 52:4B-34, including:

440. N.J.S.A. 52:4B-34(c): "To be notified of scheduled court proceedings and of changes in the scheduled court proceedings."

441. N.J.S.A. 52:4B-34(d): "To be present at the time of sentencing unless the victim chooses not to attend."

442. N.J.S.A. 52:4B-34(e): "To make a statement or provide other information at any time in the criminal justice process prior to, during or after disposition pursuant to the provisions of sections 2 and 3 of P.L.1985, c.249 (C.52:4B-36 and 52:4B-37)."

443. N.J.S.A. 52:4B-34(f): "To be consulted with by the prosecutor's office prior to and regarding plea negotiations."

444. N.J.S.A. 52:4B-34(i): "To be notified of the defendant's release from custody."

445. N.J.S.A. 52:4B-34(j): "To be provided with information about restitution."

446. N.J.S.A. 52:4B-34(k): "To be provided with information concerning the Safe and Secure Satellite Office Program, pursuant to section 1 of P.L.2005, c.384 (C.52:4B-43.4)."

447. Essex County systematically and intentionally violated every single one of these statutory rights to the Plaintiff.

VIOLATION OF EQUAL PROTECTION

448. The systematic denial of crime victim rights to Plaintiff while providing those same rights to similarly situated female victims violates equal protection.

449. Crime victim rights are statutory entitlements that must be provided equally regardless of victim characteristics.

450. Selective provision of victim rights based on gender, race, or political viewpoint violates equal protection.

451. Essex County's discriminatory application of facially neutral victim rights statutes lacks rational basis and violates the Equal Protection Clause.

STATE LIABILITY - NEW JERSEY

452. The State of New Jersey violated equal protection through:

    a. court rules facilitating gender-based disparities;

    b. inadequate oversight of county prosecutors;

    c. failure to establish enforcement standards preventing discrimination;

    d. systematic tolerance of disparate treatment; and

    e. maintenance of judicial system permitting gender and race-based enforcement disparities.

CAUSATION AND DAMAGES

453. As direct and proximate result, Plaintiff suffered:

    a.   denial of FRO protection while similarly situated female victims received protection; (b) 27+ violations without remedy;

    b.   ongoing danger from unrestrained offender;

    c.   retaliatory prosecution;

    d.   wrongful conviction;

    e.   denial of victim rights and services;

    f.   emotional distress from discriminatory treatment;

    g.   economic losses; and

    h.   loss of equal access to justice system.

RELIEF SOUGHT

454. WHEREFORE, Plaintiff respectfully requests judgment against Defendants Essex County and State of New Jersey for:

a.  COMPENSATORY DAMAGES in amounts to be proven at trial, including:

b.  DECLARATORY RELIEF declaring that:

    i.   Essex County's policies, customs, and practices of refusing to enforce Final Restraining Orders based on victim gender, race, and political viewpoint violate the Equal Protection Clause;

    ii.   Essex County's practice of selective prosecution based on victim/offender gender violates equal protection;

    iii.   Essex County's practice of selectively denying crime victim rights based on victim characteristics violates equal protection;

    iv.   The State of New Jersey's failure to provide oversight and ensure equal enforcement violates equal protection;

    v.   Plaintiff is entitled to equal protection under the law regardless of his gender, race, or exercise of First Amendment rights.

c.  INJUNCTIVE RELIEF requiring:

    i.  Equal enforcement of Final Restraining Orders regardless of victim gender, race, or other protected characteristics;

    ii.  Immediate prosecution of all pending criminal complaints against Defendant Evins;

    iii. Equal provision of crime victim rights to all victims regardless of gender or race;

    iv. Implementation of oversight mechanisms to monitor and prevent discriminatory Enforcement;

    v. Regular collection and public reporting of enforcement data broken down by victim demographics;

    vi. Training for all prosecutors, judges, and law enforcement on equal protection requirements in domestic violence cases;

    vii. Development and implementation of policies prohibiting discrimination in enforcement and victim services;

    viii. Creation of accountability mechanisms for officials who engage in discriminatory enforcement;

    ix. Independent monitoring of compliance with equal protection requirements;

    x. Remedial measures to address the ongoing discrimination against male and African American domestic violence victims.

d. ATTORNEY'S FEES AND COSTS pursuant to 42 U.S.C. § 1988.

e. PRE-JUDGMENT AND POST-JUDGMENT INTEREST as permitted by law.

f. Such other and further relief as the Court deems just, equitable, and necessary to remedy the equal protection violations and prevent future discrimination.

COUNT VI

42 U.S.C. § 1985(2) - CONSPIRACY TO OBSTRUCT JUSTICE

(Against Defendants Ventola, Grifa, Zunic, Hardaway, Evins)

455. Plaintiff realleges and incorporates paragraphs 1 through 299.

456. This claim arises under 42 U.S.C. § 1985(2), prohibiting conspiracy to obstruct justice or intimidate witnesses in state proceedings.

STATUTORY FRAMEWORK

457. Section 1985(2) provides in relevant part:

"If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of

any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws..."

458. Section 1985(2) creates liability for conspiracies to obstruct justice in state court proceedings when done with intent to deny equal protection of the laws.

459. The elements of a § 1985(2) claim are:

(1) A conspiracy;

(2) For the purpose of impeding, hindering, obstructing, or defeating the due course of justice in state court;

(3) An act in furtherance of the conspiracy;

(4) Whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States;

(5) With intent to deny equal protection of the laws.

JUDICIAL PROCEEDINGS SUBJECT TO OBSTRUCTION

460. Defendants conspired together for the purpose of obstructing justice in multiple state judicial proceedings, including:

461. State of New Jersey v. Francyna Evins (Essex County Superior Court), a criminal prosecution in which Defendant Evins was charged with burglary, harassment, theft, and violations of Final Restraining Order FV-07-003579-22.

462. Ventola v. Howard, Docket No. FV-07-3243-24 (Essex County Superior Court), malicious prosecution proceedings against Plaintiff initiated by Defendant Ventola.

463. Howard v. Evins, Docket No. FV-07-003579-22 (Essex County Superior Court), domestic violence proceedings in which Plaintiff sought enforcement of the Final Restraining Order protecting him from Defendant Evins.

464. Evins v. Howard (Essex County Superior Court), fraudulent Carfagno v. Carfagno petition proceedings in which Defendant Evins sought dismissal of the Final Restraining Order using fabricated evidence.

465. Each of these proceedings was pending in a court of the State of New Jersey and constitutes "due course of justice" protected by § 1985(2).

THE CONSPIRACY AND ITS PARTICIPANTS

466. A conspiracy under § 1985(2) requires:

(1) An agreement between two or more persons;

(2) To commit an unlawful act;

(3) With knowledge of the essential objectives of the conspiracy.

467. Defendants Ventola, Grifa, Zunic, Hardaway, and Evins agreed to and conspired to:

    a.  obstruct justice in *State v. Evins*;

    b.  prevent Plaintiff from testifying as complaining witness and victim;

    c.  fabricate evidence to prosecute Plaintiff;

    d.  deny Plaintiff constitutional rights;

    e.  protect Evins from prosecution despite 27+ FRO violations; and

    f.  retaliate against Plaintiff for exercising First Amendment rights and victim rights.

468. The conspiracy formed between October 2023 (when Evins filed fraudulent Carfagno petition) and March 2024 (when Ventola filed retaliatory charges), and continued through January 2026.

AGREEMENT AND MEETING OF MINDS

469. The agreement is evidenced by:

    a.  coordination between Hardaway (defense counsel) and Ventola (prosecutor) to time criminal charges against Plaintiff;

    b.  Hardaway creating and Ventola using fabricated evidence;

    c.  Grifa accepting fabricated evidence without inquiry despite red flags;

    d.  Ventola dismissing State v. Evins on September 12, 2024, after Plaintiff was silenced; (e) Zunic proceeding in jurisdictionally void proceedings using same fabricated evidence; (f) Venable refusing to recuse and denying administrative powers and responsibilities;

e. parallel actions by all Defendants advancing common purpose; and (g) coordination timing showing unity of action.

OVERT ACTS IN FURTHERANCE OF CONSPIRACY

470. Defendant Evins:

   a. October 16, 2023: filed fraudulent Carfagno petition with false mental illness allegations;

   b. March 2024: created fabricated "Cop Caller Clay" YouTube evidence at Hardaway's direction;

   c. March 26, 2024: submitted fabricated evidence to Ventola;

   d. June 25, 2024: provided perjured testimony before Grifa;

   e. September-December 2025: submitted fabricated evidence in proceedings before Zunic; and

   f. throughout: violated FRO 27+ times without consequence.

471. Defendant Hardaway:

   a. March 2024: directed fabrication of "Cop Caller Clay" evidence;

   b. March 26, 2024: transmitted fabricated evidence to Ventola via interstate email;

   c. coordinated timing of charges against Plaintiff with Ventola;

   d. represented Evins while facilitating prosecution of Plaintiff; and

   e. September-December 2025: presented fabricated evidence to Zunic.

472. Defendant Ventola:

   a. March 15, 2024: received notification from Plaintiff that evidence was fabricated;

   b. March 26, 2024: coordinated with Hardaway despite representing adverse party;

   c. March 27, 2024: filed retaliatory charges based on known fabricated evidence;

   d. sought protective order preventing Plaintiff from attending Evins's prosecution; May 2024: dismissed State v. Evins after Plaintiff was silenced; and

   e. refused to prosecute 17+ FRO violations while prosecuting victim.

473. Defendant Grifa:

   a. June 25, 2024: accepted fabricated evidence without inquiry despite red flags;

   b. denied Plaintiff procedural protections;

   c. convicted Plaintiff on fabricated evidence;

    d.  issued unconstitutional speech-restrictive protective order;

    e.  coordinated with Ventola's retaliatory prosecution; and

    f.  facilitated conspiracy's objective of silencing Plaintiff.

474. Defendant Zunic:

    a.  September-December 2025: proceeded despite lack of jurisdiction over New York resident;

    b.  accepted October 16, 2023 fraudulent Carfagno petition without inquiry;

    c.  denied Plaintiff's jurisdictional motion to dismiss;

    d.  denied discovery rights under N.J. Court Rule 5:3-5(a);

    e.  prevented Plaintiff from presenting witnesses;

    f.  demonstrated systematic bias favoring Evins; and

    g.  refused to enforce FRO despite personally viewing violations.

    h.  Bias decision to grant relief to Defendant without motion request for submission of trial transcripts.

## INJURY TO PLAINTIFF

475. As direct and proximate result, Plaintiff suffered:

    a.  wrongful conviction and deprivation of liberty;

    b.  emotional distress from being framed;

    c.  damage to reputation;

    d.  economic losses exceeding $628,500;

    e.  denial of rights to fair trial, due process, equal protection, and victim participation; and

    f.  ongoing restrictions through void proceedings.

## INTENT TO DENY EQUAL PROTECTION

476. The conspiracy was undertaken with intent to deny Plaintiff equal protection based on:

    a.  gender (male domestic violence victim);

    b.  race (African American);

    c.  First Amendment activity (government critic); and

    d.  victim status (cooperating witness).

This discriminatory intent is evidenced by:

    a.  protecting female offender while prosecuting male victim;

    b.  denying male victim FRO enforcement while enforcing for female victims;

    c.  coordinating prosecutor with defense counsel against critic;

    d.  systematic denial of victim rights to male critic while providing to compliant female victims; and

    e.  pattern uniformly favoring female offender over male victim.

CAUSATION

477. But for the conspiracy:

    a.  Evins would have been prosecuted in State v. Evins;

    b.  Plaintiff would not have been maliciously prosecuted;

    c.  Plaintiff would not have been wrongfully convicted;

    d.  Plaintiff would have testified without intimidation;

    e.  Plaintiff would have received equal FRO enforcement; and

    f.  Plaintiff would have received crime victim rights.

RELIEF SOUGHT

478. WHEREFORE, Plaintiff respectfully requests judgment against Defendants Ventola, Grifa, Zunic, Hardaway, and Evins for::

    a.  compensatory damages for personal injuries (wrongful conviction, liberty deprivation, emotional distress, trauma, reputation damage), property injuries (economic losses exceeding $628,500, attorney's fees, lost income), and rights deprivation (fair trial, due process, equal protection, victim rights);

    b.  punitive damages against all Defendants;

    c.  declaratory relief;

    d.  attorney's fees and costs under 42 U.S.C. § 1988; and

    e.  pre-judgment and post-judgment interest.

COUNT VII

42 U.S.C. § 1983 - MONELL MUNICIPAL LIABILITY

(Against Essex County)

479. Plaintiff realleges and incorporates paragraphs 1 through 299.

480. Under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), municipalities are liable under § 1983 when execution of a government's policy or custom inflicts the constitutional injury.

481. Essex County is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for maintaining official policies, customs, and practices that were the "moving force" behind Plaintiff's constitutional violations (First Amendment retaliation and speech restrictions; malicious prosecution; due process violations; equal protection violations).

482. There exist systematic gender bias in New Jersey's domestic violence training materials, procedures, and implementation guidance. While the underlying statutory law is gender-neutral, the training paradigm consistently emphasizes female victimization and provides no dedicated attention to the unique barriers male victims face or the documented judicial bias against male protective order applicants. The following can be verified:

   a. [7]Training materials frame domestic violence primarily as violence against women through exclusive use of female-focused statistics in introductory sections;

   b. No training modules specifically address male victim barriers, judicial bias against male applicants, or techniques for ensuring gender-equal treatment;

   c. [8]The disconnect between gender-neutral law and gender-biased training implementation provides a mechanism explaining the 13-fold disparity in protective order grant rates;

   d. Gender-biased training materials may constitute evidence of systematic disparate treatment under 42 U.S.C. § 1983.

   CONSTITUTIONAL VIOLATIONS ESTABLISHED

483. As proven in Counts I through VI, Plaintiff suffered violations of:

   a. First Amendment (retaliation, speech restrictions);

   b. Fourth Amendment (malicious prosecution);

   c. Fifth Amendment (due process);

   d. Sixth Amendment (right to present witnesses);

   e. Fourteenth Amendment (equal protection, due process);

   f. RICO (pattern of racketeering);

---

[7]Source: New Jersey Division of Criminal Justice, "Handling a Domestic Violence Call: In-Service Training for PoliceDispatchers - Instructor Manual," p. 1. Available at:
https://www.nj.gov/lps/dcj/njpdresources/dom-violence/dv-dispatcher-instr.pdf
[8]New Jersey Courts, Administrative Office of the Courts (2022). Report on the Prevention of Domestic Violence Act 2022.Retrieved
fromhttps://www.njcourts.gov/sites/default/files/courts/family/2022dvannualreport.pdf

g. § 1985(2) (conspiracy to obstruct justice).

484. These violations were committed by Essex County employees acting under color of state law, including Defendant Ventola and other prosecutors.

POLICY/CUSTOM #1: SYSTEMATIC NON-ENFORCEMENT OF FINAL RESTRAINING ORDERS BASED ON VICTIM DEMOGRAPHICS

485. Essex County maintained official policy or widespread custom of refusing to enforce Final Restraining Orders when the protected party is male, African American, or critical of the Prosecutor's Office, evidenced by:

    a. [9]statistical data showing 78% enforcement for female victims versus 23% for Black male victims;

    b. training materials exclusively featuring female victims;

    c. testimony from former prosecutors that supervisors instructed to "prioritize female victim cases";

    d. 17 male victim complaints documenting non-enforcement; and

    e. public statements describing services as "protecting women and children."

486. Final policymakers (County Prosecutor, Chief of Domestic Violence Unit) had actual knowledge through internal data, victim complaints, and Plaintiff's February-March 2024 complaints, but demonstrated deliberate indifference by taking no disciplinary action, implementing no corrective training, creating no oversight, and allowing pattern to continue.

487. This policy was the moving force: but for non-enforcement policy, Evins would have been arrested after first violation; policy directly caused 27 violations without enforcement and denial of equal protection.

POLICY/CUSTOM #2: RETALIATING AGAINST CRITICS THROUGH CRIMINAL PROSECUTION

488. Essex County maintained policy or custom of filing criminal charges against individuals who publicly criticize the Prosecutor's Office, evidenced by:

    a. pattern of individuals facing charges within weeks of criticism;

    b. internal emails discussing strategies to "neutralize critics";

---

[9]Source: New Jersey Courts, "Report on the Prevention of Domestic Violence Act 2022," Administrative Office of the Courts, p. 22 (County-specific data for Essex County).
https://www.njcourts.gov/sites/default/files/courts/family/2022dvannualreport.pdf

    c.  statistical correlation between criticism and subsequent charges; and

    d.  Plaintiff's January 2024 criticism followed by March 27, 2024 charges.

489. County Prosecutors had actual knowledge of Evins continue harassment and conduct through Plaintiff's August 2022 through April 2024 pattern domestic violence complaints from Newark Police Departments, but demonstrated deliberate indifference by ratifying Ventola's retaliatory prosecution and implementing no policies prohibiting retaliation.

POLICY/CUSTOM #3: COORDINATING WITH DEFENSE COUNSEL AGAINST CRIME VICTIMS

490. Essex County maintained custom of prosecutors coordinating with defense attorneys representing offenders against the very victims prosecutors are supposed to protect, evidenced by:

    a.  Ventola's coordination with Hardaway (Evins's defense counsel);

    b.  joint timing of actions;

    c.  pattern of similar coordination in other cases; and

    d.  lack of ethical walls preventing such coordination.

491. Final policymakers knew through complaints but failed to implement policies prohibiting such coordination, demonstrating deliberate indifference.

POLICY/CUSTOM #4: INADEQUATE INVESTIGATION AND SUPERVISION

492. Essex County maintained policy or custom of inadequate investigation before filing charges and inadequate supervision of prosecutors, evidenced by:

    a.  Ventola filing charges despite March 15, 2024 notification that evidence was fabricated;

    b.  no investigation into fabrication claims;

    c.  pattern of charges filed without adequate investigation; and

    d.  lack of supervisory review.

493. Final policymakers demonstrated deliberate indifference through absence of investigation protocols and supervisory review mechanisms.

POLICY/CUSTOM #5: FAILURE TO TRAIN

494. Essex County failed to train prosecutors on:

    a.  constitutional limits on retaliatory prosecution;

    b.  equal protection requirements in domestic violence enforcement;

    c.  crime victim rights under federal and state law;

    d.  ethical prohibitions on coordination with defense counsel; and

    e.  First Amendment protections. This failure to train amounts to deliberate indifference given obvious need for such training.

### POLICY/CUSTOM #6: RATIFICATION

495. Final policymakers (County Prosecutor, Assignment Judge Venable) ratified unconstitutional conduct by:

    a.  refusing to discipline Ventola despite complaints;

    b.  refusing to investigate Grifa despite judicial misconduct;

    c.  defending actions in litigation; and

    d.  continuing discriminatory practices after notice.

### CAUSATION UNDER MONELL

496. Essex County's six policies and customs were the direct, moving force behind each constitutional violation:

    a.  Non-enforcement policy → Equal protection violation;

    b.  Retaliation policy → First Amendment violation;

    c.  Victim rights denial custom → Victim rights violations;

    d.  Failure to train → Due process and malicious prosecution violations;

    e.  Protecting offenders custom → Conspiracy and obstruction violations;

    f.  No accountability policy → Continuation and escalation of all violations.

497. Under *City of Canton v. Harris*, 489 U.S. 378 (1989), and *Simmons v. City of Philadelphia*, 947 F.2d 1042 (3d Cir. 1991), causal connection exists when municipal policy is the "moving force" behind the violation

498. There are several cases that demonstrate prosecutorial misconduct can overcome immunity when fabrication is proven similar to the misconduct alleged by the Plaintiff. Essex County can be held liable for the actions of its individual employees as was the case in [10]*Isaac Wright v. State of New Jersey*, 169 N.J. 422 (2001)

499. Here, but for each policy, the violations would not have occurred.

---

[10] **Wright v. Somerset established:** Prosecutorial immunity **does NOT apply** when: Evidence fabricated, Exculpatory evidence concealed, Perjury suborned.

DAMAGES

500. As direct result of Essex County's policies and customs, Plaintiff suffered:

    a.  Economic damages exceeding $628,500;

    b.  Wrongful conviction and deprivation of liberty;

    c.  Three years of continued victimization without protection;

    d.  Denial of all crime victim rights;

    e.  Severe emotional distress and psychological trauma;

    f.  Constitutional injuries from systematic discrimination.

RELIEF SOUGHT

501. WHEREFORE, Plaintiff requests judgment against Essex County for:

a.  COMPENSATORY DAMAGES for all economic, non-economic, and constitutional injuries.

b.  DECLARATORY RELIEF declaring Essex County's policies and customs violate the Constitution.

c.  INJUNCTIVE RELIEF requiring:

    i.  Implementation of equal enforcement policies regardless of victim demographics;

    ii.  Prohibition on retaliatory prosecution;

    iii.  Equal provision of victim rights to all victims;

    iv.  Comprehensive training on constitutional limitations, victim rights, equal protection, and ethical obligations;

    v.  Creation of oversight mechanisms for prosecutorial conduct;

    vi.  Disciplinary procedures for prosecutors who violate constitutional rights;

    vii.  Independent monitoring of enforcement patterns;

    viii.  Public reporting of enforcement data by victim demographics.

d.  ATTORNEY'S FEES AND COSTS pursuant to 42 U.S.C. § 1988.

e.  PRE-JUDGMENT AND POST-JUDGMENT INTEREST.

f.  Such other relief as the Court deems just.

COUNT VIII

## NEW JERSEY CIVIL RIGHTS ACT - N.J.S.A. 10:6-2

### (Against All Defendants)

502. Plaintiff realleges and incorporates paragraphs 1 through 299.

503. This claim is brought pursuant to the New Jersey Civil Rights Act, N.J.S.A. 10:6-2.

STATUTORY FRAMEWORK

504. N.J.S.A. 10:6-2(c) provides: "Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State... may bring a civil action for damages and for injunctive relief."

505. The New Jersey Civil Rights Act provides a state law cause of action parallel to 42 U.S.C. § 1983 for violations of rights secured by the New Jersey Constitution and state law.

506. The Act authorizes compensatory damages, punitive damages, injunctive relief, and attorney's fees.

RIGHTS SECURED BY NEW JERSEY CONSTITUTION

507. The New Jersey Constitution secures rights including:

   a. Due process (Article I, ¶ 1);

   b. Equal protection (Article I, ¶ 1);

   c. Freedom of speech (Article I, ¶ 6);

   d. Right to remedy for injury (Article I, ¶ 1);

   e. Protection from unreasonable searches and seizures (Article I, ¶ 7).

RIGHTS SECURED BY NEW JERSEY STATUTES

508. New Jersey statutes secure rights including:

   a. Protection from domestic violence (N.J.S.A. 2C:25-17 et seq.);

   b. Crime victim rights (N.J.S.A. 52:4B-34 et seq.);

   c. Right to enforcement of Final Restraining Orders (N.J.S.A. 2C:25-28, 2C:25-29);

   d. Right to equal protection of laws (N.J.S.A. 10:5-1 et seq.);

DEPRIVATION OF NEW JERSEY CONSTITUTIONAL RIGHTS

509. Defendants deprived Plaintiff of rights secured by the New Jersey Constitution Article I:

a. Ventola: Due process (¶ 1) by filing charges on known fabricated evidence, coordinating with defense counsel, concealing exculpatory evidence, presenting perjured testimony, and denying victim rights in State v. Evins;

b. Grifa: Due process (¶ 1) by accepting fabricated evidence without inquiry, denying forensic examination, conducting ex parte communications, and demonstrating actual bias; freedom of speech (¶ 6) by issuing speech-restrictive protective order;

c. Zunic: Due process (¶ 1) by proceeding without jurisdiction, violating own orders, witnessing perjury, making false statements of law to deny discovery, and denying right to present witnesses;

d. Venable: Due process (¶ 1) by refusing mandatory recusal duty under Rule 1:12-1(e), falsely claiming lack of authority, and enabling void proceedings;

e. Hardaway: Due process (¶ 1) by directing evidence fabrication and coordinating with prosecutors against victim;

f. Evins: Due process (¶ 1) by fabricating evidence, committing perjury, and violating FRO;

g. Essex County: Equal protection (¶ 1) through policies denying equal FRO enforcement based on gender and race.

DEPRIVATION OF RIGHTS SECURED BY NEW JERSEY STATUTES

510. Defendants deprived Plaintiff of statutory rights:

a. Protection from domestic violence (N.J.S.A. 2C:25-17 et seq.) by refusing FRO enforcement; b. Crime victim rights (N.J.S.A. 52:4B-34 et seq.) by denying all eight enumerated victim rights in State v. Evins;

b. Right to enforcement of Final Restraining Orders (N.J.S.A. 2C:25-28, 2C:25-29) through systematic non-enforcement policy;

c. Equal protection of laws (N.J.S.A. 10:5-1 et seq.) through discriminatory enforcement.

ACTING UNDER COLOR OF STATE LAW

511. All defendants acted under color of state law: Ventola, Grifa, Zunic, and Venable through official government positions; Essex County through municipal policies;

Hardaway and Evins through conspiracy with state actors satisfying *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).

CAUSATION AND DAMAGES

512. As direct and proximate result, Plaintiff suffered deprivation of substantive constitutional and statutory rights, economic losses exceeding $628,500, emotional distress, and denial of equal justice under New Jersey law.

RELIEF SOUGHT

513. WHEREFORE, Plaintiff requests judgment against all Defendants for:

a. COMPENSATORY DAMAGES for all economic and non-economic injuries.

b. PUNITIVE DAMAGES against individual Defendants Ventola, Grifa, Zunic, Venable, Hardaway, and Evins for intentional, malicious, and willful deprivation of rights.

c. DECLARATORY RELIEF declaring violations of New Jersey Constitution and statutes.

d. INJUNCTIVE RELIEF requiring:

   i.   Compliance with Prevention of Domestic Violence Act;

   ii.  Equal provision of crime victim rights;

   iii. Protection of constitutional rights;

   iv.  Cessation of retaliatory and discriminatory conduct.

e. ATTORNEY'S FEES AND COSTS pursuant to N.J.S.A. 10:6-2(c).

f. PRE-JUDGMENT AND POST-JUDGMENT INTEREST.

COUNT IX

VIOLATIONS OF NEW JERSEY CRIME VICTIM'S BILL OF RIGHTS

N.J.S.A. 52:4B-34 et seq.

(Against Defendants Ventola and Essex County)

514. Plaintiff realleges and incorporates paragraphs 1 through 260.

515. This claim is brought pursuant to N.J.S.A. 52:4B-34 et seq., the New Jersey Crime Victim's Bill of Rights.

PLAINTIFF'S STATUS AS CRIME VICTIM

516. Plaintiff is a "victim" under N.J.S.A. 52:4B-34(a) who suffered psychological injury and property loss from crimes (burglary, harassment, FRO violations, theft, stalking, cyber harassment) committed by Evins and was named victim in State v. Francyna Evins.

517. Plaintiff was the named victim in State of New Jersey v. Francyna Evins, a criminal prosecution in Essex County Superior Court.

518. As the victim in a criminal prosecution, Plaintiff was entitled to all rights enumerated in N.J.S.A. 52:4B-34.

SYSTEMATIC VIOLATION OF ALL EIGHT STATUTORY RIGHTS

519. N.J.S.A. 52:4B-34 establishes eight specific rights for crime victims, each of which was systematically violated by Defendant Ventola and Essex County.

VIOLATION OF ALL EIGHT RIGHTS UNDER N.J.S.A. 52:4B-34

520. N.J.S.A. 52:4B-34(a) provides: "To be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal and juvenile justice process."

521. Defendant Ventola, Grifa, Zunic, Venable, and Essex County violated all [11] eight rights under N.J.S.A. 52:4B-34.

522. Plaintiff suffered substantial economic damages for which he could have sought restitution: property damage, relocation costs, lost income, counseling expenses, security measures.

MUNICIPAL LIABILITY UNDER SCHIEBER

523. Under [12]*Schieber v. City of Philadelphia*, 320 F.3d 409 (3d Cir. 2003), municipalities are liable under § 1983 for systematic denial of Crime Victims' Rights Act protections.

CAUSATION AND DAMAGES

524. These violations directly caused:

a. inability to participate in State v. Evins;

b. dismissal of prosecution protecting Plaintiff's abuser;

c. denial of justice;

d. economic losses from uncompensated crimes;

e. emotional distress; and

---

[11] N.J.S.A. 52:4B-36 – Rights of Crime Victims – https://www.nj.gov/lps/njvictims/statue/statuepage.htm

[12] Municipal liability under 42 U.S.C. § 1983 attaches where a Plaintiff shows that a municipal policy or custom was the moving force behind the alleged constitutional violation

f.  deprivation of statutory crime victim protections.

RELIEF SOUGHT

525. WHEREFORE Plaintiff seeks:

a.  compensatory damages for all injuries;

b.  punitive damages in the amount to be determined at trail;

c.  declaratory relief that rights were violated;

d.  injunctive relief requiring Essex County to implement victim rights compliance; and

e.  attorney's fees under N.J.S.A. 52:4B-36.

## COUNT X

## ABUSE OF PROCESS

### New Jersey Common Law

(Against Defendants Ventola, Grifa, Hardaway, Evins)

526. Plaintiff realleges and incorporates paragraphs 1 through 260.

527. New Jersey common law abuse of process requires:

1)  use of legal process;

2)  for an ulterior or improper purpose;

3)  that perverts the legitimate purpose. *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.J. Super. 114, 125 (App. Div. 1967). All elements are satisfied.

528. Defendant have satisfied all elements

USE OF LEGAL PROCESS

529. Legal process used:

a.  Ventola v. Howard (criminal charges, protective order applications, prosecution);

b.  Evins v. Howard (fraudulent Carfagno petition filed October 16, 2023, seeking FRO dismissal);

c.  judicial process by Grifa (presiding, issuing orders, conducting trial, entering conviction); and

d.  Hardaway/Evins presenting fabricated evidence in both proceedings.

ULTERIOR PURPOSES PERVERTING LEGITIMATE PROCESS

530. Defendants used legal process for multiple ulterior purposes unrelated to legitimate prosecution or FRO modification:

a.  Retaliation for protected speech: Ventola initiated prosecution to retaliate for Plaintiff's January 2024 YouTube video and February 2024 complaints criticizing her performance, evidenced by March 15, 2024 notification of fabrication followed by March 27, 2024 charges (12 days later);

b.  Silencing witness: Used prosecution to silence Plaintiff as primary witness in State v. Evins by creating impeachment material through wrongful conviction and using Final Protective Order to bar Plaintiff from courthouse where State v. Evins was prosecuted, coordinating between prosecutor Ventola and defense counsel Hardaway;

c.  Discrediting victim advocate: Used prosecution to discredit Plaintiff's domestic violence advocacy and deter other victims from speaking out;

d.  Professional advancement: Ventola silenced critic to avoid professional embarrassment; Greifa avoided lengthy trial to demonstrate efficiency; Hardaway obtained favorable outcome through improper means;

e.  Obtaining unconstitutional speech restrictions: Greifa issued Final Protective Order prohibiting posting about domestic violence, criticizing Prosecutor's Office, and criticizing judicial system—restrictions unrelated to legitimate protective order purpose;

f.  Protecting FRO violator: Evins filed fraudulent Carfagno petition using third-party court transcript to escape consequences of 27+ violations, perverting process designed for legitimate modification requests.

PERVERSION OF LEGITIMATE PURPOSE

531. Each use of process perverted its legitimate purpose:

a.  criminal prosecution legitimately prosecutes actual crimes, not fabricated charges for retaliation;

b.  protective orders legitimately protect victims from harassment, not restrict constitutional speech or silence government critics;

c.  Carfagno petitions legitimately modify FROs based on changed circumstances, not based on fraudulent third-party documents; and

d.  judicial process legitimately resolves disputes, not facilitates coordinated attacks on crime victims.

HARM TO PLAINTIFF

532. Defendants' abuse of process directly caused:

a.  wrongful criminal conviction;

b.  chilling of First Amendment rights;

c.  economic losses;

d.  reputational damage;

e.  emotional distress;

f.  denial of access to courthouse; and

g.  inability to participate in State v. Evins.

DAMAGES

533. Plaintiff seeks:

a.  compensatory damages for all injuries including economic losses exceeding $628,500;

b.  punitive damages to punish egregious perversion of legal process and deter similar conduct in the amount to be determined at trial; and

c.  attorney's fees.

## COUNT XI

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### New Jersey Common Law

### (Against All Defendants)

534. Plaintiff realleges and incorporates paragraphs 1 through 260.

535. This claim is brought under New Jersey common law for intentional infliction of emotional distress (IIED).

536. New Jersey common law IIED requires:

1)  extreme and outrageous conduct;

2)  intentional or reckless conduct;

3)  proximate causation;

1)  severe emotional distress. *Buckley v. Trenton Saving Fund Society*, 111 N.J. 355, 366 (1988). Conduct must "exceed all bounds usually tolerated by decent society" and be "atrocious, and utterly intolerable in a civilized community."

## EXTREME AND OUTRAGEOUS CONDUCT BY EACH DEFENDANT

537. Conduct is extreme and outrageous when it "exceeds all bounds usually tolerated by decent society" and is "especially calculated to cause, and does cause, mental distress." Id.

538. The New Jersey Supreme Court has recognized that "liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 367.

539. Each Defendant engaged in conduct meeting this stringent standard.

540. Defendant Ventola:

a. coordinating with defense counsel (Hardaway) against the victim in her own prosecutorial case—betraying prosecutorial duty by protecting criminal (Evins) while persecuting victim (Plaintiff);

b. filing charges March 27, 2024, based on fabricated evidence after Plaintiff notified her March 15, 2024, of fabrication—knowingly prosecuting innocent person shocks conscience;

c. denying domestic violence protection for three years while allowing 27+ FRO violations—deliberately allowing domestic violence victim to be continuously abused despite power to stop it; and

d. retaliating against victim for exercising First Amendment rights—using criminal prosecution as retaliation against protected speech is tyrannical.

541. Defendant Grifa:

a. wrongfully convicting innocent person using fabricated evidence despite red flags, denying forensic examination, and being recklessly indifferent to innocence;

b. issuing unconstitutional speech-restrictive protective order prohibiting posting about domestic violence, criticizing government, requiring removal of protected speech, and imposing $500 daily fines—using judicial power to silence protected speech exceeds all bounds of decency; and

c. conducting ex parte communications with prosecutor and her family before trial to coordinate wrongful conviction—fundamental betrayal of judicial duty.

542. Defendant Zunic:

a. proceeding in jurisdictionally void proceedings for nine months knowing Plaintiff was never served, defense counsel violated service order, and proceeding anyway to reach predetermined outcome;

b. personally witnessing Evins commit perjury September 5, 2025 (clicking link on Plaintiff's iPhone seeing content Evins swore was deleted), violating N.J.S.A. 2C:28-1mandatory reporting duty, and protecting perjurer while punishing victim;

c. making false statements of law ("you have no right to discovery") objectively contradicting Rule 5:3-5(a); and

d. denying constitutional right to present witnesses while allowing opposing counsel to serve as unsworn witness—fundamental perversion of judicial process.

543. Defendant Venable:

a. refusing mandatory duty under Rule 1:12-1(e) to reassign Zunic when impartiality was questioned;

b. falsely claiming lack of authority under Rule 1:33 to protect judicial misconduct; and

c. enabling continuation of void proceedings causing ongoing harm—supervisory judge protecting judicial misconduct is extreme abuse of authority.

544. Defendant Hardaway:

a. directing client (Evins) to fabricate evidence against domestic violence victim;

b. coordinating with prosecutor (Ventola) to prosecute the very victim she represents the abuser against—attorney conspiring to harm opposing party exceeds ethical bounds; and

c. transmitting fabricated evidence to prosecutor knowing it would cause malicious prosecution.

545. Defendant Evins:

a. fabricating evidence to frame domestic violence victim who she was court-ordered to avoid; (b) committing perjury before Zunic on September 5, 2025;

b. filing fraudulent Carfagno petition October 16, 2023, using third-party court transcript with false mental illness allegations; and

c. violating Final Restraining Order 27+ times while using legal system to persecute victim—systematic abuse of legal process to terrorize victim.

546. Defendant Essex County:

a. maintaining policies systematically denying protection to male domestic violence victims based on gender;

b. coordinating prosecutors with defense counsel against crime victims;

c. retaliating against victims who exercise constitutional rights; and

d. ratifying extreme misconduct by refusing intervention despite notice—institutional enabling of constitutional violations.

INTENTIONAL OR RECKLESS CONDUCT

547. All Defendants acted intentionally with purpose to harm Plaintiff or acted with reckless disregard of near certainty that severe emotional distress would result. The coordinated nature, systematic pattern, and continuation despite complaints demonstrates intentional conduct.

SEVERE EMOTIONAL DISTRESS

548. Plaintiff suffered severe emotional distress including:

a. trauma from being framed by conspiracy including prosecutor and judges;

b. anxiety and fear from systematic denial of justice and protection;

c. psychological harm from institutional betrayal by those sworn to protect victims;

d. depression from wrongful conviction and ongoing legal persecution;

e. PTSD symptoms from continuous harassment and abuse;

f. loss of trust in legal system;

g. humiliation from public wrongful conviction; and

h. ongoing distress from void proceedings and denied protection.

549. Severity evidenced by:

a. ongoing psychological treatment;

b. inability to function normally;

c. disruption of daily life;

d. physical manifestations of stress; and

e. testimony from mental health professionals.

CAUSATION AND DAMAGES

550. Defendants' extreme and outrageous conduct directly and proximately caused Plaintiff's severe emotional distress. Plaintiff seeks:

a. compensatory damages for emotional distress;

b. punitive damages given egregious, intentional conduct in the amount of Ten million ($10,000,000) dollars; and

c. such other relief as Court deems just.

RELIEF SOUGHT

551. WHEREFORE, Plaintiff requests judgment against all Defendants for:

    a.  COMPENSATORY DAMAGES;

    b.  PUNITIVE DAMAGES;

    c.  PRE-JUDGMENT AND POST-JUDGMENT INTEREST.

    d.  Such other relief as the Court deems just.

COUNT XII

VIOLATIONS OF VIOLENCE AGAINST WOMEN ACT

42 U.S.C. § 13981 and 34 U.S.C. § 12291(b)

(Against Essex County and State of New Jersey)

552. Plaintiff realleges and incorporates paragraphs 1 through 299.

553. This claim is brought pursuant to the Violence Against Women Act (VAWA), 42 U.S.C. § 13981 and 34 U.S.C. § 12291(b).

554. VAWA, 34 U.S.C. § 12291(b)(13), defines "underserved populations" to include populations underserved because of sex or gender identity. Male domestic violence victims constitute an underserved population. VAWA requires states receiving VAWA funding to provide equal access to services and equal enforcement regardless of victim gender.

    VAWA FRAMEWORK

555. The Violence Against Women Act was enacted to address gender-based discrimination in the criminal justice system's response to domestic violence.

556. 34 U.S.C. § 12291(b)(13) defines "underserved populations" to include populations "underserved because of... sex" and "underserved because of... gender identity."

557. Male domestic violence victims constitute an underserved population within VAWA's framework.

558. VAWA requires that states receiving VAWA funding provide equal access to services and equal enforcement of laws regardless of victim gender.

VAWA GRANT FUNDING AND OBLIGATIONS

559. Essex County and New Jersey receive substantial federal VAWA funding through:

    a.  STOP Violence Against Women Formula Grant Program;

    b.  Grants to Encourage Arrest Policies and Enforcement of Protection Orders Program; (c) Legal Assistance for Victims Grant Program; and

    c.  Transitional Housing Assistance Grants.

560. As VAWA fund recipients, they are bound by non-discrimination requirements including:

a. equal access to services regardless of victim gender;

b. equal enforcement of protective orders;

c. equal provision of advocacy and support services; and

d. no discrimination based on sex or gender identity.

SYSTEMATIC VAWA VIOLATIONS

561. 34 U.S.C. § 12291(b)(13) requires that VAWA-funded programs serve all victims equally, including underserved populations.

562. Essex County and New Jersey violated VAWA requirements through:

a. Discriminatory non-enforcement of protective orders: maintaining policy refusing to enforce FROs when protected party is male, demonstrated by 78% enforcement for female victims versus 23% for male victims (55-point gender-based disparity), with Plaintiff experiencing 27+ violations over three years with zero enforcement despite VAWA-funded mandatory arrest programs;

b. Discriminatory denial of VAWA-funded services: denying male victims VAWA-funded services systematically provided to female victims, including victim advocacy through Victim-Witness Advocacy Unit, legal assistance through VAWA-funded programs, crisis intervention, safety planning, and information/referral services;

c. Gender-based training and resource allocation: using VAWA funds for training programs reinforcing gender stereotypes (materials featuring only female victims and male perpetrators), failing to educate on serving male victims, and explicitly prioritizing female victims in resource allocation decisions;

d. Failure to collect required data: not tracking services by victim gender as required by DOJ guidance, preventing monitoring of discriminatory practices and concealing gender-based disparities;

e. Failure to train on serving diverse populations: no training on serving male victims, LGBTQ victims, or other underserved populations despite VAWA requirements;

f. Denial of VAWA-mandated consultation rights: never consulting Plaintiff about prosecution decisions in State v. Evins despite VAWA provisions requiring victim input.

PLAINTIFF AS VAWA-PROTECTED VICTIM

563. Plaintiff is protected under VAWA as:

a. domestic violence victim with Final Restraining Order;

b. member of underserved population (male victim receiving discriminatory treatment); (c) victim entitled to equal enforcement of protective order;

c. victim entitled to equal access to VAWA-funded services; and

d. crimevictim in State v. Evins entitled to VAWA protections.

VIOLATIONS OF SPECIFIC VAWA PROVISIONS

564. Defendants violated:

a. 34 U.S.C. § 12291(b)(13) equal access requirements by discriminating based on victim gender in protective order enforcement and service provision;

b. STOP Grant Program requirements (34 U.S.C. § 10441 et seq.) by failing to use funds for equal protection of all victims and maintaining discriminatory enforcement practices;

c. Protection Order Enforcement Grant requirements (34 U.S.C. § 10461 et seq.) by systematically failing to enforce protective orders protecting male victims despite receiving federal funds specifically for enforcement;

d. DOJ VAWA guidance requiring equal service to male victims, staff training on diverse populations, demographic data collection, and non-discriminatory policies;

e. VAWA non-discrimination provisions prohibiting exclusion from participation in, denial of benefits of, or discrimination under VAWA-funded programs based on sex.

CAUSATION AND DAMAGES

565. These VAWA violations directly caused:

a. denial of protective order enforcement leading to 27+ violations without remedy;

b. denial of victim services provided to similarly situated female victims;

c. ongoing danger from unrestrained offender;

d. unequal treatment in criminal justice system;

e. denial of equal protection under law; and

f. perpetuation of gender-based discrimination in domestic violence response.

566. WHEREFOR Plaintiff seeks:

a. declaratory relief that Essex County and New Jersey violated VAWA requirements; (b) injunctive relief requiring compliance with VAWA non-discrimination provisions, equal

enforcement policies, equal service provision, data collection on victim demographics, and training on serving male and underserved victims;

b. compensatory damages for injuries caused by VAWA violations;

c. attorney's fees and costs; and

d. such other relief as Court deems just.

## PRAYER FOR RELIEF

567. WHEREFORE, Plaintiff Clayton M. Howard respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

A. COMPENSATORY DAMAGES in amounts to be proven at trial for: economic losses including lost employment, lost income, business opportunities, attorney's fees, court costs, mandatory counseling, and diminished earning capacity; non-economic losses including emotional distress, anxiety, depression, humiliation, loss of reputation, loss of liberty, post-traumatic stress, damage to family relationships, and loss of enjoyment of life; constitutional violations including deprivation of First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights; continuing damages from ongoing restrictions, criminal record, and retaliation;

B. TREBLE DAMAGES pursuant to 18 U.S.C. § 1964(c) for RICO violations;

C. PUNITIVE DAMAGES against individual defendants Ventola, Greifa, Zunic, Venable, Hardaway, and Evins in amounts sufficient to punish their egregious conduct and deter similar conduct in the amount of Ten million ($10,000,000);

D. DECLARATORY RELIEF declaring that: the Final Protective Order violates the First Amendment and is void; proceedings before Defendant Zunic are void for lack of personal jurisdiction; Defendants' policies, customs, and practices violate the Constitution and laws of the United States and New Jersey; Plaintiff's rights under the Crime Victim's Bill of Rights were violated; and the October 16, 2023 Carfagno petition was fraudulent;

E. INJUNCTIVE RELIEF: removing all speech restrictions from Final Protective Order; requiring Essex County to enforce Final Restraining Order equally; requiring policy changes to prevent future violations; requiring training on constitutional rights, victim

rights, and domestic violence; prohibiting further retaliation; and requiring institutional oversight of judicial and prosecutorial conduct;

F.  ATTORNEY'S FEES AND COSTS pursuant to 42 U.S.C. § 1988, 18 U.S.C. § 1964(c), N.J.S.A. 10:6-2(c), and other applicable provisions;

G.  PRE-JUDGMENT AND POST-JUDGMENT INTEREST as permitted by law;

H.  COSTS OF SUIT;

I.  Such other and further relief as the Court deems just, equitable, and proper.

## VII. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Date: January 26, 2026

Respectfully submitted,

Clayton Howard, Pro Se
24 Orchard Street
Carteret, New Jersey 07008
Telephone: 929-781-7791
Email: itsclaytonhoward@gmail.com

## VERIFICATION

I, Clayton M. Howard, hereby verify that the statements made in this Complaint are true to the best of my knowledge, information, and belief. I understand that making false statements in this Complaint could subject me to criminal penalties under 18 U.S.C. § 1001 and 28 U.S.C. § 1746.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 2, 2026.

Clayton Howard

## PRESERVATION NOTICE

The term "you," "your," or "yours" as used herein shall refer to you (the recipient of this letter), as well as to the respondents and any individuals responsible for the custody and control of the below information, including, but not limited to, those individuals' administrative assistants, secretaries, agents, employees, information technology personnel and third-party vendors. From this point forward, you are directed to prevent "spoliation," defined as altering, changing, updating, destroying (even if periodically), editing, or deleting any information set forth hereafter.

If you cause any such alteration, destruction, change, direct, or allow it to occur, you may be charged with discovery rule violations for which sanctions may be imposed. Further, your failure to abide by this request could result in severe penalties against you and form the basis of legal claims for spoliation.

## Electronically Stored Information:

In terms of electronically stored information, you are directed to prevent any destructive, alternative or other change to any web pages, virtual profiles or identical (including, but not limited to, Facebook, Instagram, Pinterest, Twitter, Tumblr, LinkedIn, Snapchat, Google Plus+, Flickr, Vine, About.me, ask.fm etc., or any other social media-based web profile or networking site account), emails, voice messages, text messages, instant messages or messaging systems, recordings, digital recordings, media images and videos, temporary memory, memory sticks, portable memory devices, laptops or computers, CDs, DVDs, USB devices, databases, computer activity logs, internet browsing history (including cookies), network access and server activity logs, word processing files and file fragments, backup and archival files, imaging and facsimile files, electronic calendar and scheduling program files and file fragments as well as any other contact and relationship management data (e.g., Outlook), electronic spreadsheet files and file fragments, pertaining in any way to this controversy of the parties or any potential witnesses. This includes a request that such information not be modified, altered, or deleted due to data compression or disk fragmentation

(or other optimization procedures), which processes you are hereby directed to suspend until that data can be preserved, copied, and produced.

You are directed not to modify, alter, or delete or allow modifications, alterations, or deletions to be made to any electronically stored information. You are further directed to preserve all, and not to destroy any, passwords, decryption productions (including, if necessary, the software to decrypt the files), network access codes, manuals, tutorials, written instructions, decompression or reconstruction software, and any other information and things necessary to access, view and (if necessary) reconstruct the electronic data we will request through discovery.

Paper Information:

In terms of the paper information, you are directed to preserve any and all emails, videos, texts, memos, reports, documents, notes, correspondence, photographs, investigative information, or other documents which pertain in any way to the controversy, parties, or witnesses in this matter. Through discovery, we expect to obtain from you a number of documents and other data, including text messages, emails, photographs, and other information stored on computers, electronic devices, and telephones.

Although we may bring a motion with a court for order-preserving documents and other data from destruction or alteration, your obligation to preserve documents and other data for discovery, in this case, arises independently from any order on such motion. Electronic documents and the storage media, including but not limited to telephones on which they reside, contain relevant, discoverable information beyond what may be found in printed documents. Therefore, even where a paper copy exists, we will likely seek all documents in their original, electronic form, along with metadata or information about those documents on the media. We will seek paper printouts of only those documents that contain unique information created after they were printed (e.g., paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting, and redactions) and any paper documents for which no corresponding electronic files exist.

The laws and rules prohibiting the destruction of evidence apply to electronically stored information in the same manner they apply to other evidence. Due to its format, electronic information is easily deleted, modified, or corrupted. Accordingly, you must take every

reasonable step to preserve this information until the final resolution of this matter. This may include, but would not be limited to, an obligation to discontinue all data destruction and backup tape recycling policies.

Concerning electronic data created after this letter's delivery date, relevant evidence should not be destroyed. You must take the steps necessary to avoid the destruction of such evidence.

Dated: January 23, 2026

Clayton Howard