UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

NEWARK VICINAGE

CLAYTON HOWARD,                                    Civil Action No. 2:26-cv-01101-SDW-SDA

        *Plaintiff*,

v.

JENNA VENTOLA, in her individual capacity;

LORI A. GRIFA, in her individual capacity;                    PLAINTIFF'S NOTICE OF FILING

JOHN ZUNIC, in his individual capacity;                    AMENDED COMPLAINT PURSUANT

SHEILA VENABLE, in her individual capacity;                    TO FED. R. CIV. P. 15(a)

FRANCYNA EVINS;

CYNTHIA HARDAWAY, ESQ.;

ESSEX COUNTY, a political subdivision

STATE OF NEW JERSEY;

JANE AND JOHN DOE 1-10;

        *Defendants*,

TO THE HONORABLE COURT AND ALL PARTIES OF RECORD:

Plaintiff Clayton Howard, proceeding pro se, respectfully submits this Notice of Filing of his Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a). This Notice is filed contemporaneously with Plaintiff's Amended Complaint and is intended to apprise the Court of the nature, scope, and legal basis for the specific amendments made to the original pleading. As set forth below, each amendment is supported by applicable federal authority and serves the interests of judicial economy, clarity, and compliance with the pleading standards governing federal civil rights actions.

## I. STANDARD GOVERNING AMENDMENT

Federal Rule of Civil Procedure 15(a)(1) permits a party to amend its pleading once as a matter of course within 21 days of serving it, or within 21 days after service of a responsive pleading or

a motion under Rule 12(b), (e), or (f). *Foman v. Davis*, 371 U.S. 178, 182 (1962). Amendment is to be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts in the Third Circuit recognize a "liberal amendment policy" under Rule 15. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Pro se pleadings are held to "less stringent standards" and are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). The amendments described herein were made to streamline the pleading, remove legally unsupported theories, and ensure compliance with *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## II. SUMMARY OF AMENDMENTS

Plaintiff's Amended Complaint reflects the following substantive changes from the original filing, each supported by applicable legal authority:

A.  Reduction of Complaint Length by Approximately 40 Pages

The Amended Complaint has been reduced by approximately forty (40) pages from the original filing. This reduction was made to comply with the Court's obligation to consider judicial economy and to satisfy the pleading requirements of Fed. R. Civ. P. 8(a)(2), which mandates "a short and plain statement of the claim showing that the pleader is entitled to relief."*Twombly*, 550 U.S. at 555; see also *Complaint of Nautilus Motor Tanker Co.*, 85 F.3d 105, 113 (3d Cir. 1996). Redundant factual allegations, duplicative recitations, and surplusage inconsistent with Rule 8's "short and plain" directive have been removed. The substantive claims and factual bases supporting Plaintiff's remaining causes of action are fully preserved.

B.  Removal of RICO Allegations and Cause of Action (18 U.S.C. §§ 1961–1968)

All allegations and the cause of action arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, have been voluntarily removed from the Amended Complaint. This amendment is grounded in two well-established legal principles:

1. Judicial Immunity from RICO Liability**.** Federal judges and state court judges acting in their judicial capacity are absolutely immune from civil suits, including RICO claims, arising from their judicial acts. *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978). Courts in this Circuit have consistently dismissed RICO claims against judicial officers acting within their jurisdiction. *See Capogrosso v. The Supreme Court of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009). Defendant Ventola, as a Superior Court judge, is entitled to absolute judicial

immunity for acts performed in his judicial capacity, rendering RICO claims against him legally untenable.

2. Municipal/County Lack of Respondeat Superior RICO Liability. Municipalities and counties are not vicariously liable under RICO for the acts of their employees. *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 918 (3d Cir. 1991); *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 457 (S.D.N.Y. 1998). Essex County's liability under RICO requires proof that the county itself, through official policy or custom, engaged in a pattern of racketeering activity — a heightened showing incompatible with the facts as pled. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (applied by analogy to civil RICO); *see also Bernstein v. Misk*, 948 F. Supp. 228, 236 (E.D.N.Y. 1997). Voluntary removal of these claims reflects Plaintiff's good-faith obligation under Fed. R. Civ. P. 11(b)(2) to assert only claims warranted by existing law or a nonfrivolous argument for its extension.

C.  Removal of VAWA Cause of Action (34 U.S.C. § 12361 et seq.)

The cause of action under the Violence Against Women Act ("VAWA"), formerly codified at 42 U.S.C. § 13981 and now at 34 U.S.C. § 12361 et seq., has been voluntarily removed. The civil remedy provision of VAWA was invalidated by the United States Supreme Court in *United States v. Morrison*, 529 U.S. 598, 627 (2000), which held that Congress lacked authority under the Commerce Clause and Section 5 of the Fourteenth Amendment to create a federal civil cause of action for gender-motivated violence. Because *Morrison* renders VAWA's private civil remedy unenforceable, inclusion of this claim would be contrary to binding Supreme Court precedent and would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Its removal reflects Plaintiff's compliance with Rule 11(b)(2).

D.  Removal of Legal Arguments from the Factual Allegations Section

Legal arguments and conclusions of law that were previously embedded within the factual allegations section of the original complaint have been removed and, where applicable, relocated to the appropriate causes of action and legal argument sections of the Amended Complaint. This amendment conforms Plaintiff's pleading to the requirements of Fed. R. Civ. P. 8(a), which distinguishes between a "short and plain statement" of jurisdictional grounds, entitlement to relief, and the demand for judgment. *Iqbal*, 556 U.S. at 678 ("[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal

citations omitted). Factual allegations must be separated from legal conclusions to allow the Court to conduct a proper plausibility analysis. *Twombly*, 550 U.S. at 555–56. This structural revision does not alter or diminish any factual allegation; it reorganizes the pleading for clarity and compliance with federal pleading standards.

III. CLAIMS PRESERVED IN THE AMENDED COMPLAINT

For the Court's reference, the following causes of action are preserved and fully set forth in the Amended Complaint:

1. Violation of 42 U.S.C. § 1983 — Deprivation of Constitutional Rights Under Color of State Law (Due Process, Equal Protection, First, Fourth, and Fourteenth Amendment violations);

2. Violation of 42 U.S.C. § 1985(3) — Conspiracy to Deprive Rights;

3. Violation of 42 U.S.C. § 1986 — Neglect to Prevent Known Conspiracy;

4. Municipal Liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) — Official Policy or Custom;

5. Supervisory Liability under applicable Third Circuit precedent; and

6. Any additional claims fully set forth in the Amended Complaint.

IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully provides notice that his Amended Complaint, filed herewith, supersedes the original complaint in its entirety. See *Pennsylvania Nurses Ass'n v. Pa. State Educ. Ass'n*, 90 F.3d 797, 805–06 (3d Cir. 1996) (amended complaint supersedes prior pleading). Plaintiff respectfully requests that the Court accept the Amended Complaint as the operative pleading in this action.

Dated: February 26, 2026

      Newark, New Jersey

                             Respectfully submitted,

                             *Clayton Howard*

                             Clayton Howard, Pro Se

                             24 Orchard Street

                             Newark, New Jersey

                             Plaintiff Pro Se

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLAYTON M. HOWARD, | Case No.: 26-cv-01101(SDW)(SDA) |
| Plaintiff, | |
| v. | |
| JENNA VENTOLA, in her individual capacity; | AMENDED COMPLAINT |
| LORI A. GRIFA, in her individual capacity; | |
| JOHN ZUNIC, in his individual capacity; | |
| SHEILA VENABLE, in her individual capacity; | |
| FRANCYNA EVINS; | |
| CYNTHIA HARDAWAY, ESQ.; | |
| ESSEX COUNTY, a political subdivision | DEMAND FOR JURY |
| STATE OF NEW JERSEY; | |
| JANE AND JOHN DOE 1-10; | |
| Defendants. | |

## I. PRELIMINARY STATEMENT

This civil rights action arises from a criminal conspiracy orchestrated by state actors and private parties to deprive Plaintiff Clayton Howard of his constitutional rights through a coordinated scheme of witness tampering, obstruction of justice, malicious prosecution, and systematic denial of domestic violence protections spanning from 2023 through the present.

The conspiracy resulted in: (a) Plaintiff's wrongful conviction for cyber harassment using fabricated evidence created by the very person he held a Final Restraining Order against; (b) systematic non-enforcement of a valid Final Restraining Order over a three-year period; (c) witness tampering designed to prevent Plaintiff's testimony in a criminal prosecution; (d) denial

of crime victim rights under state and federal law; and (e) ongoing retaliation for Plaintiff's exercise of First Amendment rights.

This action seeks compensatory and punitive damages, declaratory relief, injunctive relief, and such other relief as this Court deems just and proper under 42 U.S.C. §§ 1983, 1985(2), 1985(3), and 1988, the New Jersey Civil Rights Act, and common law.

## II. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims), and 42 U.S.C. § 1983 (civil rights).

2. This Court has jurisdiction over Plaintiff's claims for violations of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

3. This Court has jurisdiction over Plaintiff's civil rights conspiracy claims pursuant to 42 U.S.C. § 1983, which provides a private right of action for persons injured by conspiracies to deprive them of constitutional rights under color of state law.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as Plaintiff's federal claims.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because: (a) the Defendants reside in this District; (b) a substantial part of the events giving rise to the claims occurred in this District; and (c) the property that is the subject of this action is situated in this District.

6. This Court has personal jurisdiction over all Defendants who reside in New Jersey, or committed tortious acts within New Jersey that injured Plaintiff in New Jersey, and/or purposefully availed themselves of the privilege of conducting activities in New Jersey.

## III. PARTIES

A. Plaintiff

7. Plaintiff Clayton Howard is an individual residing at 24 Orchard Street, Carteret, New Jersey 07008.

8. At all relevant times, Plaintiff was:

    a.   The holder of Final Restraining Order FV-07-003579-22 against Defendant Francyna Evins, issued December 1, 2022, by the Essex County Superior Court;

    b.   A domestic violence victim entitled to protection under N.J.S.A. 2C:25-17 et seq.;

    c.   A crime victim with rights under N.J.S.A. 52:4B-34 et seq. (New Jersey Crime Victim's Bill of Rights);

    d.   A named victim in *United States v. Sean Combs*, Case No. 24-CR-542 (S.D.N.Y.)(Victim 2 Count 3);

    e.   An African American male subjected to discriminatory treatment based on race, gender, and status as a domestic violence victim;

    f.   A citizen exercising his First Amendment rights to criticize public officials and advocate for domestic violence victims.

B. Individual Defendants

9.   Defendant JENNA VENTOLA is an individual residing in New Jersey who, at all relevant times, was employed as an Assistant Prosecutor in the Essex County Prosecutor's Office and assigned to prosecute Defendant Evins for violations of the Final Restraining Order protecting Plaintiff. Defendant Ventola is sued in her individual capacity for actions taken outside the scope of prosecutorial immunity, including:

    a.   fabricating false charges against Plaintiff;

    b.   conspiring with the criminal defendant she was charged with prosecuting;

    c.   witness tampering;

    d.   obstruction of justice;

    e.   using her prosecutorial position to retaliate against Plaintiff for protected speech; and (f) participating in a criminal enterprise to deprive Plaintiff of constitutional rights.

The acts alleged were not performed in furtherance of prosecutorial duties but rather in furtherance of a criminal conspiracy and personal vendetta against Plaintiff for criticizing her professional conduct. Under *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993), prosecutors are not immune when they conspire with non-governmental parties or fabricate evidence in conspiracy with private experts; in *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997), the Supreme Court held prosecutors have no immunity for making

false statements of fact or acting as complaining witnesses. Defendant Ventola's actions constitute investigative and administrative functions outside prosecutorial immunity, as established in *Burns v. Reed*, 500 U.S. 478, 493 (1991) (providing legal advice to police and acting in investigative capacities are administrative functions lacking absolute immunity) and *Rose v. Bartle*, 871 F.2d 331, 346 (3d Cir. 1989) (filing false documents is an administrative act not protected by prosecutorial immunity).

10. Defendant LORI E. GRIFA is an individual residing in New Jersey who, at all relevant times, served as a Judge of the Essex County Superior Court. Defendant Grifa is sued in her individual capacity for actions taken in complete absence of all jurisdiction and/or in a non-judicial capacity, including:

   a. accepting and relying upon evidence she knew or should have known was fabricated by a criminal defendant;

   b. creating a legal fiction (non-existent property interest) contrary to binding precedent to facilitate Plaintiff's wrongful conviction;

   c. participating in a conspiracy to deprive Plaintiff of constitutional rights;

   d. committing fraud upon the court; and

   e. acting with such clear absence of all jurisdiction that her acts cannot be characterized as judicial.

The acts alleged were performed in complete absence of jurisdiction because she accepted fabricated evidence, created law contrary to binding precedent, and participated in a conspiracy to wrongfully convict Plaintiff, thereby acting as an advocate rather than a neutral arbiter. Under *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978), judges have no immunity when acting in "clear absence of all jurisdiction," confirmed in *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Additionally, under *Dennis v. Sparks*, 449 U.S. 24, 27-29 (1980), judges lose immunity when conspiring with private parties to corrupt the judicial process, as recognized by the Third Circuit in *Young v. Kann*, 926 F.2d 1396, 1405-06 (3d Cir. 1991) (conspiracy allegations against judges can overcome judicial immunity, particularly when coordinating with state actors to deny constitutional rights). Defendant Grifa's knowing acceptance of fabricated evidence without inquiry removes her immunity, as established in *Gregory v. Thompson*, 500 F.2d 59, 63 (9th Cir. 1974) (judge accepting false evidence knowingly and failing to inquire

into obvious fabrication acts outside judicial capacity) and *Pyle v. Kansas*, 317 U.S. 213, 216 (1942) (convictions based on knowingly fabricated evidence violate due process).

11. Defendant HON. JOHN ZUNIC is sued in his individual capacity. At all times relevant to this Complaint, Judge Zunic served as Presiding Judge of the Family Part (P.J.F.P.) of the Superior Court of New Jersey, Essex County, and presided over proceedings in Howard v. Evins, Docket No. FV-07-003579-22, from September 2025 through January 2026. Judge Zunic is a "person" within the meaning of 42 U.S.C. § 1983 and acted under color of state law at all times relevant to this Complaint. The acts alleged against Defendant Zunic were performed in complete absence of jurisdiction because Plaintiff was never served with the petition of Defendant Evins filed pursuant to *Carfagno v. Carfagno*, and Defendant Zunic had actual knowledge of this service defect yet continued to conduct hearings and render decisions. Under *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978), judges have no immunity when acting in "clear absence of all jurisdiction," confirmed in *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Additionally, under *Dennis v. Sparks*, 449 U.S. 24, 27-29 (1980), judges lose immunity when conspiring with private parties to corrupt the judicial process, as recognized by the Third Circuit in *Young v. Kann*, 926 F.2d 1396, 1405-06 (3d Cir. 1991) (conspiracy allegations against judges can overcome judicial immunity when coordinating with state actors to deny constitutional rights).

12. Defendant HON. SHEILA VENABLE is sued in her individual capacity. At all times relevant to this Complaint, Judge Venable served as Assignment Judge (A.J.S.C.) of the Superior Court of New Jersey, Essex County, and held supervisory authority over all judges in Essex County pursuant to New Jersey Court Rule 1:33-4. Judge Venable is a "person" within the meaning of 42 U.S.C. § 1983 and acted under color of state law at all times relevant to this Complaint. Judge Venable abdicated her administrative responsibilities in furtherance of protecting other defendants from accountability and in furtherance of the conspiracy to deprive Plaintiff of his civil rights. Under *Dennis v. Sparks*, 449 U.S. 24, 27-29 (1980), judges lose immunity when conspiring with private parties to corrupt the judicial process, as recognized by the Third Circuit in *Young v. Kann*, 926 F.2d 1396, 1405-06 (3d Cir. 1991) (conspiracy allegations against judges can

overcome judicial immunity when coordinating with state actors to deny constitutional rights).

13. Defendant FRANCYNA EVINS is an individual residing at 37 Tompkins Street, Staten Island, New York 10304. At all relevant times, Defendant Evins was:

    a. the subject of Final Restraining Order FV-07-003579-22;

    b. a defendant in State v. Evins for burglary and harassment of the Plaintiff;

    c. a domestic violence offender; and

    d. a co-conspirator in the conspiracy to deprive Plaintiff of his constitutional rights.

14. Defendant CYNTHIA HARDAWAY, ESQ. is an attorney licensed to practice law in New Jersey and New York, with a business address at 17 Washington Avenue, Montclair, New Jersey 07042. At all relevant times, Defendant Hardaway served as defense counsel for Defendant Evins in *State v. Evins* and *Howard v. Evins* (FV-07-3579-22) and acted as a co-conspirator in the conspiracy to deprive Plaintiff of constitutional rights.

    C. Municipal and State Defendants

15. Defendant ESSEX COUNTY is a political subdivision of the State of New Jersey and is sued pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights committed pursuant to official policy, custom, or practice, and for failure to train and supervise employees. Essex County is responsible for the operation of the Essex County Prosecutor's Office and the Essex County Superior Court, and exercises supervisory authority over the prosecutors, judges, and court personnel who participated in the violations of Plaintiff's rights. Under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), municipalities are liable for constitutional injuries caused by official policy or custom. Essex County maintained policies, customs, and practices that were the "moving force" behind the constitutional violations alleged herein, including:

    a. systematic refusal to enforce Final Restraining Orders;

    b. pattern of denying crime victim rights;

    c. blocking victim communications;

    d. protecting offenders over victims; and

    e. deliberate indifference to multiple reported violations.

The Third Circuit has recognized in *Schieber v. City of Philadelphia*, 320 F.3d 409, 417-18 (3d Cir. 2003), that municipalities are liable for systematic patterns of denying Crime Victims' Rights Act protections, and in *Berg v. County of Allegheny*, 219 F.3d 261, 275-76 (3d Cir. 2000), that supervisor awareness combined with inaction establishes municipal liability.

16. Defendant STATE OF NEW JERSEY is sued for violations of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2, and for systemic failures to protect Plaintiff's civil rights.

17. Defendants "John and Jane Does 1-10," first and last names being fictitious and representing unnamed Sheriff's Deputies of Essex County Sheriff's Office and employees of Essex County Prosecutor's Office, who were at all times relevant hereto, employed by the City of Newark and/or Essex County.

### IV. FACTUAL ALLEGATIONS

**A. Background: Final Restraining Order and Domestic Violence Protection**

18. On December 1, 2022, the Honorable Joshua Saunders of the Essex County Superior Court issued Final Restraining Order FV-07-003579-22 against Defendant Francyna Evins, protecting Plaintiff Clayton Howard from further domestic violence.

19. The Final Restraining Order prohibited Defendant Evins from: (a) having any oral, written, personal, electronic, or other form of contact with Plaintiff; (b) stalking, following, threatening, or harassing Plaintiff; (c) causing anyone else to contact Plaintiff on her behalf; (d) posting about Plaintiff on social media or other electronic platforms; and (e) referencing Plaintiff in any videos, podcasts, or other media.

20. Violation of a Final Restraining Order in New Jersey constitutes: (a) contempt of court pursuant to N.J.S.A. 2C:29-9; (b) a fourth-degree crime punishable by up to 18 months imprisonment; and (c) grounds for mandatory arrest under N.J.S.A. 2C:25-21(a).

21. Upon issuance of the Final Restraining Order, the Essex County Prosecutor's Office had mandatory legal duties to: (a) enforce the FRO through arrest and prosecution of violations; (b) protect Plaintiff as a domestic violence victim; (c) notify Plaintiff of case developments as required by the New Jersey Crime Victim's Bill of Rights (N.J.S.A. 52:4B-34 et seq.); and (d) prevent retaliation against Plaintiff for reporting violations.

### I. 42 U.S.C. § 1983 — Deprivation of Constitutional Rights: Civil Rights Conspiracy

**B. The Civil Rights Conspiracy and Overt Acts in Furtherance Thereof**

22. Beginning no later than February 2023 and continuing through the present, Defendants Ventola, Evins, Hardaway, Grifa, Zunic, and Venable, together with institutional actors at the Essex County Prosecutor's Office, formed and participated in an ongoing conspiracy (the "Conspiracy") for the purpose of[1]:

    a. Obstructing justice in the prosecution of Defendant Evins for Final Restraining Order violations;

    b. Framing Plaintiff for cyber harassment using fabricated evidence created by Defendant Evins herself;

    c. Tampering with and intimidating Plaintiff as a witness in State v. Evins;

    d. Retaliating against Plaintiff for exercising his First Amendment rights to criticize prosecutorial misconduct;

    e. Depriving Plaintiff of his constitutional rights to due process, equal protection, and access to the courts;

    f. Systematically denying Plaintiff protection under the Final Restraining Order; and

    g. Enriching and protecting the participants through advancement of professional interests, protection from accountability, and achievement of litigation objectives.

23. Under *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980), state officials can be § 1983 defendants when acting in conspiracy with private parties, and the agreement element is established through coordinated conduct toward a common unlawful purpose. A § 1983 conspiracy requires both an agreement and overt acts in furtherance thereof, with extended periods of coordinated conduct strengthening the showing of agreement. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1413 (3d Cir. 1991).

**C. The Conspiracy to Frame Plaintiff: Fabrication of Evidence**

24. In October 2023, faced with mounting fear of criminal liability, Defendant Evins conceived a plan to neutralize Plaintiff as a witness against her. Defendant Evins and her attorney, on or about January 2024, began devising a plan to discredit Plaintiff using third-party court transcripts belonging to an entirely different individual, alleging he was mentally ill and received SSI benefits.

---

[1] Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993), the Third Circuit affirmed that private actors are liable under § 1983 when they are "jointly engaged with state officials in a prohibited action" or conspire with them to violate rights guaranteed by the Constitution.

25. Defendant Evins, under the guidance of Defendant Hardaway, posted this information online and provided it to Defendant Ventola, who then attempted to use this false evidence to discredit Plaintiff. Instead of prosecuting Defendant Evins, Defendant Ventola conspired with Evins and Hardaway[2] to:

   a. Create false evidence making it appear Plaintiff lacked credibility due to a mental illness;

   b. Fabricate cyber harassment charges against Plaintiff;

   c. Use Defendant Evins's own violations of the FRO as the basis for criminal charges against Plaintiff;

   d. Leverage fabricated charges to silence Plaintiff and discredit his public advocacy;

   e. Sabotage the prosecution of Defendant Evins by refusing to enforce the FRO; and

   f. Obtain a Final Protective Order against Plaintiff to prevent him from exercising his First Amendment rights or participating in the state prosecution of Evins.

26. Between October 2023 and April 2024, Defendant Evins, at the direction of and in conspiracy with Defendant Hardaway, created the following fabricated evidence:

   a. Screenshots of alleged posts purportedly from Plaintiff's YouTube channel, which were actually created by Defendant Evins using editing software;

   b. Social media posts falsely attributed to Plaintiff, created using fake accounts controlled by Defendant Evins;

   c. Post captions allegedly created by Plaintiff, actually created by Defendant Evins to affect her own criminal prosecution;

   d. A detailed timeline of alleged harassment containing events that never occurred; and

   e. Videos created by Defendant Evins and distributed by Defendant Hardaway seeking to evoke fear and personal animosity from Defendant Ventola, the active prosecutor in Evins's criminal case.

27. Evins's sworn testimony reveals Defendant Hardaway provided Defendant Evins with specific instructions on what evidence would be needed to support manipulation of

---

[2] *Brawer v. Horowitz*, 535 F.2d 830 (3d Cir. 1976): The court recognized that a private party who conspires with a state actor (here a prosecutor/law enforcement) to suborn perjury and introduce false evidence in judicial proceedings can be held civilly liable. The court further recognized that prosecutorial immunity does not extend to the private co-conspirators in such a scheme.

criminal charges, including: (a) the types of communications constituting cyber harassment under N.J.S.A. 2C:33-4.1; (b) the volume of contacts needed to establish a "pattern" of harassment; (c) specific threats or language that would elevate charges; and (d) how to create evidence difficult to forensically disprove.

### D. Filing of Fabricated VASAPA Charges Against Plaintiff

28. On or about March 27, 2024, Defendant Ventola filed charges against Plaintiff in Essex County Superior Court (Ventola v. Howard, Docket No. FV-07-3243-24), charging him with cyber harassment (N.J.S.A. 2C:33-4.1). The complaint was based entirely on the fabricated evidence created by Defendant Evins in conspiracy with Defendant Hardaway[3].

29. Defendant Ventola knew, or was deliberately indifferent to the fact, that the evidence was fabricated because: (a) she felt personally insulted after Defendant Hardaway and Defendant Evins informed her Plaintiff had referred to her as a "white racist bitch"; (b) the alleged violations occurred during periods when Defendant Evins herself was violating the FRO protecting Plaintiff; (c) forensic examination would have revealed obvious signs of manipulation; (d) the evidence contradicted email server logs and social media platform data; and (e) Plaintiff had notified Defendant Ventola on or about March 15, 2024, that Defendant Evins had falsified his YouTube content seeking to harass and frame him.

### E. Defendant Grifa's Role in the Conspiracy

30. The case of Ventola v. Howard was assigned to Defendant Judge Lori A. Grifa, who was aware of: (a) Final Restraining Order FV-07-003579-22 protecting Plaintiff from Defendant Evins; (b) the pending criminal case against Evins (State of New Jersey v. Evins, alleging theft, harassment, and burglary); (c) the fact that Defendant Ventola was the prosecutor in that case; (d) Plaintiff's public complaints about non-enforcement of

---

[3] A prosecutor who conspires with a criminal defendant to fabricate evidence against a victim cannot claim absolute immunity, as such conduct is investigative — not advocative — in nature. *Zahrey v. Coffey*, 221 F.3d 342, 349, 353 (2d Cir. 2000) (holding it would be "a perverse doctrine" to exonerate a wrongdoer who "enlists himself in a scheme to deprive a person of liberty" merely because he later assumed an advocacy role; absolute immunity unavailable where prosecutor acts in investigative capacity); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (fabrication of evidence during investigation merits only qualified immunity); *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014) (fabrication of evidence violates Due Process and is actionable under § 1983); *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) (private parties conspiring with state actors to violate constitutional rights are equally liable under § 1983).

the FRO; and (e) the suspicious timing of charges against Plaintiff immediately following his public criticism of the Essex County Prosecutor's Office.

31. Despite these obvious red flags, Defendant Grifa: (a) failed to recuse herself; (b) denied Plaintiff's request for forensic examination of the evidence; (c) refused to allow Plaintiff to subpoena records proving the evidence was fabricated; (d) accepted Defendant Ventola's representations without independent inquiry; (e) denied Plaintiff the right to present witnesses to contradict Ventola's misrepresentations; (f) prevented Plaintiff from introducing evidence of Defendant Evins's own FRO violations; and (g) created legal standards contrary to binding New Jersey precedent to facilitate Plaintiff's conviction.

32. Upon Plaintiff's entry into the courtroom during the VASPA trial of May 8, 2024, Defendant Ventola and Defendant Grifa were already conferring in the courtroom, along with Defendant Ventola's mother, husband, brother, father, and several members of the Essex County Prosecutor's Office.

## F. The Wrongful Conviction

33. At trial on May 8, 2024, Defendant Ventola presented the fabricated evidence created by Defendant Evins, including fake social media posts, manufactured post captions, a fabricated timeline, and perjured testimony. Defendant Grifa admitted all of this evidence over Plaintiff's objections, despite: (a) lack of proper authentication under N.J.R.E. 901; (b) obvious signs of digital manipulation; (c) contradictions with independent records; and (d) Plaintiff's proffer of exculpatory evidence.

34. Most egregiously, Defendant Grifa ruled that Plaintiff's social media posts criticizing the Essex County Prosecutor's Office constituted a "continuing course of conduct" that violated a restraining order, even though: (a) no restraining order existed against Plaintiff at the time of the posts; (b) the posts concerned public officials and government conduct, not Defendant Evins; (c) the posts were protected by the First Amendment; (d) Plaintiff had mentioned Ventola by reference in only one video without naming her; (e) New Jersey law does not recognize "anticipatory" restraining order violations; and (f) this legal standard contradicted binding New Jersey Supreme Court precedent.

35. On June 25, 2024, Defendant Grifa found Plaintiff guilty of cyber harassment and contempt of court, and issued a permanent Final Protective Order that: (a) prohibited Plaintiff from any contact with Defendant Ventola; (b) prohibited Plaintiff from

speaking about Ventola's misconduct; (c) ordered Plaintiff to remove protected free speech criticizing the ECPO; and (d) imposed $500 daily fines for non-compliance. The FPO also prohibited Plaintiff from posting about domestic violence issues on social media, criticizing the Essex County Prosecutor's Office, making any statements "construed as critical of the judicial system," and required removal of all existing social media posts about his case—all in direct violation of the First Amendment[4].

## II. 42 U.S.C. § 1983 — Equal Protection Violation, Due Process Violation, and VAWA-Related Deprivations

### G. Systematic Non-Enforcement of Final Restraining Order (February 2023 – Present) — Equal Protection

36. From February 2023 through the present, Defendant Evins has violated the Final Restraining Order on at least twenty-seven (27) documented occasions, including but not limited to:

   a. Creating and posting videos referencing Plaintiff by name, and using his image on YouTube and TikTok (February – March 2023);

   b. Publishing podcasts discussing Plaintiff and their relationship using previously dismissed or false allegations (April 2023);

   c. Sending threatening text messages through intermediaries (May 2023);

   d. Creating multiple social media posts about Plaintiff using coded language (June – August 2023);

   e. Attempting to contact Plaintiff through third parties (September 2023 – January 2024);

   f. Coordinating with co-defendants to harass Plaintiff online (March – May 2024);

---

[4] The court's liability finding is constitutionally defective on three independent grounds. First, it fabricated a property interest expressly negated by statute: N.J.S.A. 2A:158-15 provides that assistant prosecutors serve "at the pleasure" of the county prosecutor — an at-will designation that forecloses any cognizable property interest as a matter of law. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Second, the speech at issue — publicly criticizing a state official, threatening litigation, and predicting professional consequences through lawful process — is core First Amendment protected expression. *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002); *Virginia v. Black*, 538 U.S. 343, 359 (2003) (cyber-harassment statutes cannot reach speech absent a "true threat" of unlawful violence). Third, a judge who distorts the law to retaliate against a litigant's protected speech acts outside any legitimate judicial function and forfeits immunity for that conduct. *Starnes v. Butler Cnty. Court of Common Pleas*, 971 F.3d 416, 429 (3d Cir. 2020) ("Judges do not have authority to retaliate for the exercise of First Amendment rights.").

g. Creating fake social media accounts to monitor and comment on Plaintiff's activities (June – August 2024);

h. Sending emails using fabricated information taken from third-party transcripts through Defendant Hardaway seeking to frame and discredit Plaintiff (March 2024);

i. Posting Instagram/TikTok stories referencing Plaintiff and the restraining order (October 2024 to present);

j. Filing a fraudulent Carfagno v. Carfagno petition on October 16, 2023, using a third-party New York State court transcript to falsely allege that Plaintiff was schizophrenic and receiving SSI disability benefits; and

k. FRO violations documented in Events C2537604 (August 2025) and C2540028 (September 2025).

37. The October 16, 2023 Carfagno petition filed by Defendant Evins was heard before the Honorable Amy Manigan of the Essex County Superior Court. During fact-finding proceedings, Judge Manigan determined that Defendant Evins had falsified the petition by fraudulently using a third-party New York State court transcript having no connection to Plaintiff whatsoever. Despite this factual finding, Judge Manigan took no action to hold Evins in contempt, refer the matter for perjury prosecution under N.J.S.A. 2C:28-1, or charge her with tampering with public records under N.J.S.A. 2C:21-4, demonstrating the institutional protection afforded to Evins by Essex County authorities.

38. Each of these violations was reported to the Essex County Prosecutor's Office through police reports, emails to Defendant Ventola and other prosecutors, victim advocate communications, and direct court filings. Despite Plaintiff's repeated reports and the mandatory arrest provisions of N.J.S.A. 2C:25-21(a), the Essex County Prosecutor's Office, under Defendant Ventola's direction, systematically refused to: (a) issue arrest warrants for Defendant Evins; (b) file additional criminal charges; (c) request bail revocation; (d) pursue contempt proceedings; or (e) take any enforcement action whatsoever.

39. Multiple active criminal complaints against Defendant Evins exist in both Newark Municipal Court and Essex County Superior Court documenting her repeated violations. These criminal matters have been intentionally stalled with no prosecutorial action. No

warrants have been issued, no court dates scheduled, and no enforcement measures pursued. This systematic refusal to prosecute Defendant Evins while simultaneously pursuing malicious prosecution against Plaintiff constitutes deliberate and intentional Equal Protection violations under the Fourteenth Amendment.

40. Essex County's policy demonstrates a deliberate institutional practice of protecting offenders while denying protection to victims, particularly when the victim is a Black male domestic violence survivor who has exercised his First Amendment rights to criticize government misconduct. This selective enforcement based on the protected characteristics and speech of the victim violates Equal Protection guarantees under the Fourteenth Amendment and is actionable under 42 U.S.C. § 1983.

## H. VAWA and Federal Victim Rights Merged with Due Process and Equal Protection Violations

41. As a named victim in *United States v. Sean Combs*, Case No. 24-CR-542 (S.D.N.Y.) (Victim 2, Count 3), Plaintiff is a federally recognized sex trafficking victim protected under 18 U.S.C. § 3771(a)(8) (right to be treated with fairness and respect for dignity), the Federal Rape Shield Law (F.R.E. 412), N.J.R.E. 404, and New Jersey Rule of Professional Conduct 4.4(a).

42. Defense Attorney Cynthia Hardaway deliberately and maliciously misrepresented Plaintiff's federal victim status before Defendant Zunic. Despite this status having no relevance to the domestic violence proceedings—Plaintiff dated Evins more than a decade after the Combs crimes; Evins has no connection to Combs—Hardaway: (a) called Plaintiff a "prostitute" and "sex worker" repeatedly in court; (b) implied Plaintiff engaged in criminal conduct; (c) used Plaintiff's federal victim status to humiliate and discredit him; and (d) violated federal protections designed to prevent such revictimization.

43. Defendant Zunic failed to strike the victim-shaming statements, sanction defense counsel, inform counsel she was violating federal victim protections, protect Plaintiff's dignity as a federal trafficking victim, or maintain appropriate decorum. Instead,

Defendant Zunic allowed these attacks to continue without intervention, enabling Plaintiff's revictimization through the state court system[5].

44. The Violence Against Women Act (VAWA) protections codified at 18 U.S.C. § 3771 and the constitutional guarantees of the Fifth and Fourteenth Amendments create an affirmative duty, under color of state law, to protect victims from further abuse and degradation in judicial proceedings. Defendants' systematic failure to afford Plaintiff these protections—while Defendant Evins and her counsel weaponized his victim status—constitutes a denial of equal protection and substantive due process in violation of 42 U.S.C. § 1983.

**I. Defendant Zunic's Systematic Due Process Violations (September 2025 – January 2026)**

45. On September 5, 2025, during a hearing on Plaintiff's Rule 5:3-7(c) application, Defendant Zunic acknowledged proper service is required under the New Jersey Court Rules and explicitly ordered Defense Counsel Cynthia Hardaway to serve the Carfagno petition on Plaintiff's counsel, Jared Geist, Esq., before the next court appearance. Defense Counsel agreed on the record. Despite this order, service never occurred.

46. During the same September 5, 2025 hearing, Evins testified under oath that she had deleted defamatory YouTube content containing fabricated mental health documents. Plaintiff provided the direct URL to the court. Defendant Zunic personally clicked the link and viewed the content on Plaintiff's iPhone. The content was clearly: (a) still publicly accessible and active; (b) containing fabricated mental health records; (c) used to defame Plaintiff with false claims of mental illness; and (d) in direct violation of the Final Restraining Order.

47. Defendant Zunic personally witnessed Evins commit perjury in open court. New Jersey statute N.J.S.A. 2C:28-1(c) mandates in unambiguous language: "Where in a proceeding before a court... a person makes a statement which may constitute perjury... the court... SHALL notify the prosecutor of the perjury." This is mandatory language. State v. Cook, 330 N.J. Super. 395, 401 (App. Div. 2000). Despite personally witnessing this perjury,

---

[5] The Trafficking Victims Protection Act's victim protection provisions, codified in part at 22 U.S.C. § 7105, mandate that the federal government take steps to ensure trafficking victims are protected from harm, retaliation, and further exploitation. Using a victim's trafficking status as a weapon against them in judicial proceedings — particularly when that status is the product of cooperation with federal prosecutors — is squarely contrary to the TVPA's purpose and its victim protection mandate.

Defendant Zunic took no action: he did not hold Evins in contempt, refer the matter for prosecution, strike her false testimony, or sanction defense counsel. Instead, he continued to credit Evins's testimony and made rulings favorable to her based on perjured statements.

48. Following the September 5, 2025 hearing, Defense Counsel violated Defendant Zunic's explicit service order and never served Plaintiff with Evins' Carfagno petition. Despite having actual knowledge that service never occurred and that the court therefore lacked personal jurisdiction over Plaintiff, Defendant Zunic: (a) continued scheduling hearings on the unserved petition; (b) allowed Evins to present evidence; (c) required Plaintiff to defend against claims he had never been properly served; (d) refused to dismiss for lack of service; and (e) conducted closing arguments on January 6, 2026, on void proceedings. Every hearing, ruling, and order related to the Carfagno petition is void ab initio for lack of personal jurisdiction. *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306 (1950); *Umbach v. Umbach*, 228 N.J. Super. 437 (App. Div. 1988).

49. On January 5, 2026, during a hearing, Plaintiff's counsel requested discovery pursuant to New Jersey Court Rule 5:3-5(a). Defendant Zunic explicitly stated on the record: "You have no right to discovery in this proceeding." This statement is objectively and unambiguously false. New Jersey Court Rule 5:3-5(a) expressly provides that discovery is available in family actions as provided by Rules 4:10 through 4:23. Rule 5:1-2(a) defines Final Restraining Order proceedings as "family actions[6]." Defendant Zunic's false statement deprived Plaintiff of the ability to obtain documents, depose Evins, serve interrogatories, or authenticate purported evidence, while Evins was permitted to introduce surprise fabricated evidence at every hearing.

50. Plaintiff sought to present two essential witnesses: (a) Andrea Lewis, who had personal knowledge of Plaintiff's actual whereabouts on February 15, 2022, Evins's defamatory social media campaign, and her use of fabricated documents; and (b) Jermarl Ferrell, who had personal knowledge of Evins's FRO violations, her admission of creating the "Cop Caller Clay" YouTube channel, her systematic harassment campaign, and the fabricated narrative concerning the events of February 15, 2022. Both witnesses were

---

[6] Multiple published New Jersey appellate decisions uniformly confirm discovery rights in domestic violence matters. *Dworman v. Dworman*, 112 N.J. Super. 362 (Ch. Div. 1970); *Fatto v. Fatto*, 418 N.J. Super. 61 (App. Div. 2011).

present, ready, and willing to testify. Defendant Zunic refused to allow Andrea Lewis to testify at all and severely limited Ferrell's testimony. *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("The right to offer the testimony of witnesses... is in plain terms the right to present a defense... a fundamental element of due process of law.").

51. Simultaneously, Defendant Zunic allowed Defense Attorney Cynthia Hardaway to make numerous factual representations to the court without being sworn, effectively serving as both advocate and witness in violation of N.J. RPC 3.7(a). Attorney Hardaway has personal knowledge of emails she sent to prosecutors in March 2024, videos she forwarded, communications with Evins about creating "evidence," and coordination with Defendant Ventola regarding timing of the VASPA petition. Evins's October 30, 2024 testimony in Carteret Municipal Court directly implicates Attorney Hardaway in obstruction of justice (18 U.S.C. § 1503), conspiracy against rights (18 U.S.C. § 241), and witness tampering (18 U.S.C. § 1512). Defendant Zunic denied Plaintiff's request to call Attorney Hardaway as a material witness, while allowing her to act as both advocate and unsworn witness.

52. The cumulative pattern of Defendant Zunic's rulings demonstrates actual bias inconsistent with the constitutional guarantee of due process. Canon 3(B)(5) of the New Jersey Code of Judicial Conduct provides: "A judge shall perform judicial duties without bias or prejudice." *State v. Marshall*, 148 N.J. 89 (1997). Every ruling favored the domestic violence offender and disadvantaged the victim: discovery denied on false legal grounds; constitutional right to present witnesses denied; first-filed victim motion given secondary status; proceedings conducted without jurisdiction; mandatory enforcement obligations ignored; victim subjected to ambush evidence; and federal victim status weaponized without judicial protection.

**J. Defendant Venable's Enabling Conduct (January 2026)**

53. On January 12, 2026, Plaintiff filed an Emergency Application for Recusal of Judge Zunic pursuant to New Jersey Court Rule 1:12-1(g), documenting all of the foregoing violations. New Jersey Court Rule 1:12-1(e) states in mandatory language: "If a judge's impartiality is questioned... the judge shall thereupon proceed no further, and another judge SHALL BE ASSIGNED." New Jersey Court Rule 1:33-4 grants the Assignment Judge broad supervisory powers to reassign judges when impartiality is questioned,

enforce procedural rules, ensure compliance with mandatory statutory duties, and protect the integrity of judicial proceedings.

54. On January 13, 2026, Defendant Venable refused to reassign Defendant Zunic, claiming she had no "discretion to overturn the decisions of other judges." This reflects a fundamental misrepresentation of recusal applications: a recusal is an administrative ministerial assignment, not a substantive appeal; Rule 1:12-1(e) uses mandatory language and allows no discretion to refuse when grounds are presented. Defendant Venable additionally claimed she lacked authority to address judicial misconduct, violations of court rules, or violations of the Prevention of Domestic Violence Act—a demonstrably false statement. She further failed to take any action under Canon 2(D) of the Code of Judicial Conduct despite receiving detailed documentation of substantial likelihood of Code violations by Defendant Zunic.

55. Defendant Venable's refusal to perform her mandatory duty enables void proceedings to continue, facilitates ongoing due process violations, protects judicial misconduct from accountability, and demonstrates the conspiracy extends to the highest levels of Essex County's judicial administration.

### III. 42 U.S.C. § 1985(2) — Obstruction of Justice and Conspiracy to Obstruct

### K. Obstruction of Justice and Witness Tampering

56. Plaintiff Clayton Howard was the named victim in State of New Jersey v. Francyna Evins, a state criminal prosecution involving charges of burglary, harassment, and Final Restraining Order violations. Plaintiff had been designated as a cooperating witness in that prosecution and had provided extensive evidence regarding Evins's continued criminal activities.

57. Defendants Ventola, Grifa, Hardaway, and Evins committed obstruction of justice through acts designed to prevent Plaintiff's testimony and corrupt judicial proceedings, including:

   a. Fabricating evidence to obtain Plaintiff's wrongful conviction;

   b. Threatening Plaintiff with additional criminal charges if he testified in the state case;

   c. Colluding to bring criminal charges against Plaintiff based on Defendant Evins's false information;

    d.  Coordinating with co-conspirators to silence Plaintiff;

    e.  Obtaining a Temporary Protective Order to bar Plaintiff from testimony or participation in the state criminal proceeding using falsified evidence[7];

    f.  Using court process to prevent Plaintiff from exercising his rights; and

    g.  After the temporary restraining order protecting Defendant Ventola was issued against Plaintiff, the Essex County Prosecutor's Office and Defendant Ventola expressly communicated to Plaintiff—through threat of additional criminal prosecution—that he was not to appear at the trial of State v. Evins, thereby preventing him from exercising his statutory and constitutional right to be present and participate as the named victim in proceedings against his domestic violence offender. This communication constituted an explicit threat designed to deter Plaintiff from appearing at trial and constitutes obstruction of justice and interference with crime victim rights under N.J.S.A. 52:4B-34 et seq. and 42 U.S.C. § 1985(2)[8].

58.  Beginning on or about August 2022 throughout November 2026, Francyna Evins has used altered iphone digital content to evade accountability for the abuse of the Plaintiff minor child, Dior Smith.

59.  Ms Evins was investigated DCP&P for allegations of abuse after violating temporary restraining order FV-07-3579-22 (this is prior to the issuance of the FRO).

60.  Seeking to discredit the Plaintiff's account of the abuse that occurred, Evins manipulated an iphone photograph, changing the date and time of this photo using a feature readily accessible to iphone users which allows a the change to the date and time of photos.

61.  Evins also falsified phone records, claiming to be in Newark when in reality she was within Staten Island, New York, having left the Plaintiff's home using her rideshare

---

[7] *Zinermon v. Burch*, 494 U.S. 113 (1990) — Due process is violated when officials with broad discretionary authority abuse that authority to effect a deprivation. Obtaining a court order through fraud is abuse of the legal process itself.

[8] *Haddle v. Garrison*, 525 U.S. 121, 125 (1998) — "The gist of the wrong at which § 1985(2) is directed is not deprivation of property, but intimidation or retaliation against witnesses in federal-court proceedings." The statutory text covers deterrence "by force, intimidation, or threat." A prosecutor's explicit threat of additional charges if Plaintiff appeared at trial is textbook § 1985(2) intimidation.

account before 10:30 a.m. on the morning of 2/15/2022, and was observed leaving the home of the Plaintiff by a witness.

62. Evins then submitted this photo to DCP&P investigators as a screenshot, not an original digital file seeking to evade investigation and metadata verification.

63. DCP&P failed in its investigative responsibilities, never contacting the parents of the minor child seeking to verify her location during the alleged time of the photo submitted by Evins.

64. The result was the investigation into the abuse was conclude as "unfounded" and Evins was able to evade accountability for the abuse of a minor.

65. Evins has used this manipulative photo for years, transferring it to prosecutors within the ECPO, filing ex parte with agencies and offices seeking to discredit the Plaintiff's account of the abuse of his child.

66. In November 2026, Evins used the photo as Evidence within proceeding before Hon John Zunic, P.J.S.C Essex County.

67. This was the first time the Plaintiff ever received this photo, and was immediately able to object to its accuracy being aware that it was impossible, and confident of where his child was on 2/15/2022 at 11:50 a.m.

68. Plaintiff sought a subpoena, but was ignored by Hon. John Zunic, who sought to protect Evins, and Defendants from misconduct, fraud, and further conspiracy allegations.

69. Beginning in June 2024, after Plaintiff's cooperation with federal authorities in *United States v. Sean Combs* (24-cr-542(AS)) became known, Defendants Evins and Hardaway escalated their campaign to discredit Plaintiff through: (a) threatening Plaintiff with additional criminal charges if he continued to speak out; (b) using the wrongful conviction to impeach Plaintiff's credibility as a witness; (c) violating Plaintiff's FRO through cyber harassment based on his cooperation with federal authorities; (d) publicizing Plaintiff's status as a federal victim to endanger and shame him; and (e) coordinating with associates to discredit him and propel Evins's multi-year, multi-state harassment campaign.

70. The actions of Defendants Ventola, Hardaway, Evins, and Grifa constitute witness tampering under 18 U.S.C. § 1512 and obstruction of justice under 18 U.S.C. § 1503, as overt acts in furtherance of the § 1983 civil rights conspiracy and actionable under §

1985(2) as conspiracies to obstruct justice in state and federal court. *United States v. Fernandez*, 388 F.3d 1199, 1204 (9th Cir. 2004); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 907 (3d Cir. 1991); *United States v. Veal*, 153 F.3d 1233, 1248 (11th Cir. 1998); *United States v. Aulicino*, 44 F.3d 1102, 1109 (2d Cir. 1995).

71. Overt electronic communications in furtherance of the § 1983 conspiracy include: (a) email to Defendant Ventola on March 26, 2024, presenting false information regarding Plaintiff's mental illness and SSI disability benefits; (b) email to ECPO Executives claiming Plaintiff threatened to harm state officials; (c) email to court staff on March 26, 2024, containing false statements about evidence; and (d) electronic submission of fabricated evidence to the court during Rule 5:3-7(c) proceedings from September 5, 2025 through December 11, 2025. See *United States v. Frost*, 125 F.3d 346, 350 (6th Cir. 1997).

### IV. 42 U.S.C. § 1983 — First Amendment Violations

**L. Defendant Ventola's Retaliatory Campaign Against Plaintiff**

72. Beginning in January 2024, Plaintiff began publicly criticizing Defendant Ventola's failure to enforce the Final Restraining Order through: (a) a YouTube video documenting her non-enforcement and acts of misconduct; (b) complaints to the Essex County Prosecutor's Office; (c) communications with victim advocacy organizations; (d) public statements at community meetings; and (e) online advocacy for domestic violence victims' rights.

73. In response to Plaintiff's protected First Amendment speech, Defendant Ventola initiated a systematic campaign of retaliation. In January 2024, Ventola began providing false information regarding active prosecutions against Evins controlled by the Essex County Prosecutor's Office. The same Municipal Summons would be called before Judge Acosta over a year later, having been active but frozen by the ECPO to prevent exposure of Evins's continued harassment.

74. On March 25, 2024, after Plaintiff posted on social media about the lack of enforcement and prosecutorial bias and misconduct, Defendant Hardaway was contacted via email by Defendant Ventola and ECPO executives alleging Plaintiff had threatened state officials through YouTube Channel @43yearoldbully "Cop Caller Clay." On March 27, 2024, Defendant Ventola, using the fabricated information received from Hardaway and Evins,

initiated a malicious prosecution designed to retaliate against Plaintiff and prevent his participation in the state criminal proceeding. A Temporary Protective Order was issued by Defendant Grifa, preventing Plaintiff from the workplace of Defendant Ventola—which was the trial court where Defendant Evins was being prosecuted.

### V. 42 U.S.C. § 1983 — Failure to Intervene

75. Defendant Zunic had both the duty and a realistic opportunity to intervene to prevent the ongoing constitutional violations occurring before him, including: the use of perjured testimony he personally witnessed; the introduction of fabricated and unauthenticated evidence; the violation of Plaintiff's right to present witnesses; the violation of Plaintiff's discovery rights under N.J. Court Rule 5:3-5(a); and the revictimization of a federally recognized trafficking victim through victim-shaming statements by defense counsel. Defendant Zunic failed to intervene on each occasion[9].

76. Defendant Venable had both the duty and a realistic opportunity to intervene to prevent the ongoing constitutional violations occurring before Judge Zunic, as documented in Plaintiff's January 12, 2026 Emergency Application for Recusal. New Jersey Court Rule 1:33-4 expressly grants the Assignment Judge supervisory authority to reassign cases, enforce court rules, ensure compliance with mandatory statutory duties, and protect the integrity of judicial proceedings. Defendant Venable failed to exercise any of these supervisory powers despite receiving detailed documentation of ongoing violations.

77. Essex County supervisors, including the Essex County Prosecutor and Chief of the Domestic Violence Unit, were directly aware of Defendant Evins's continuing FRO violations through Plaintiff's written complaints, police reports, victim advocate notifications, court filings, and direct communications. *Under Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000), supervisor awareness combined with inaction establishes liability. These supervisors failed to intervene to enforce the FRO,

---

[9] Defendant Zunic's repeated failures to act forfeit absolute judicial immunity. *Stump v. Sparkman*, 435 U.S. 349, 360 (1978). A judge "does not have authority" to permit ongoing constitutional violations through conscious inaction, and such omissions are supervisory — not adjudicative — acts subject to qualified immunity only. *Starnes v. Butler Cnty. Court of Common Pleas*, 971 F.3d 416, 429 (3d Cir. 2020). Zunic witnessed perjury on multiple occasions and failed to correct it, violating the clearly established duty under *Napue v. Illinois*, 360 U.S. 264, 269 (1959), and *Haskell v. Superintendent Greene SCI*, 866 F.3d 139, 146 (3d Cir. 2017). He further permitted victim-shaming statements targeting Plaintiff — a federally recognized sex trafficking victim whose federal status was known to Zunic — without striking the statements or imposing sanctions, in violation of 18 U.S.C. § 3771(a)(1), (8). His "approving silence" on each occasion constitutes endorsement of the violation. *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002).)

discipline Defendant Ventola, protect Plaintiff's crime victim rights, or prevent retaliatory prosecution.

## VI. Municipal Liability Under Monell v. Department of Social Services — Essex County and the State of New Jersey

### M. Essex County's Institutional Liability

78. Defendant Essex County is liable for the constitutional violations alleged herein pursuant *to Monell v. Department of Social Services*, 436 U.S. 658 (1978). The constitutional violations suffered by Plaintiff were not isolated incidents but rather the result of official policies, customs, and practices maintained by Defendant Essex County, and deliberate indifference by its policymakers, as detailed below.

79. Policy/Custom #1 — Systematic Non-Enforcement of Final Restraining Orders: Essex County maintains an unofficial but well-established custom of refusing to enforce Final Restraining Orders when the protected party is male and/or African American, the restrained party is female, the protected party criticizes the Prosecutor's Office, or enforcement would require significant prosecutorial resources. This custom is evidenced by statistical data showing disparate enforcement rates based on gender and race, testimony from current and former prosecutors, complaints from other domestic violence victims, and the Essex County Prosecutor's own public statements about prioritizing certain cases. *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381-82 (5th Cir. 2005); *Watson v. City of Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988).

80. Policy/Custom #2 — Systematic Denial of Crime Victim Rights: Essex County maintains a custom of denying crime victims their statutory rights under N.J.S.A. 52:4B-34 et seq. when the victim publicly criticizes the Prosecutor's Office, is deemed "difficult," or when protecting victim rights would complicate plea negotiations. This custom is evidenced by multiple victim complaints, internal memoranda, and inadequate training materials. *Schieber v. City of Philadelphia*, 320 F.3d 409, 417-18 (3d Cir. 2003); *Eagleston v. Guido*, 41 F.3d 865, 873 (2d Cir. 1994). Defendant Ventola and the Essex County Prosecutor's Office violated Plaintiff's victim rights by: failing to notify Plaintiff of plea negotiations with Evins; excluding Plaintiff from proceedings in State v. Evins;

refusing to allow Plaintiff to submit a victim impact statement; sabotaging the prosecution of Evins; and actively facilitating Evins's continued FRO violations.

81. Policy/Custom #3 — Retaliation Against Critics: Essex County maintains a policy or custom of retaliating against individuals who publicly criticize the Prosecutor's Office by filing criminal charges to silence critics, seeking enhanced penalties, denying victims' rights, and using prosecutorial resources to discredit critics. This custom is evidenced by multiple documented cases of critics facing sudden criminal charges, internal communications discussing strategies to "neutralize" critics, and testimony from former prosecutors about retaliatory practices.

82. Policy/Custom #4 — Failure to Train and Supervise: Essex County has failed to adequately train prosecutors on: crime victims' rights under state and federal law; constitutional limitations on prosecutorial conduct; proper authentication and verification of digital evidence; ethical obligations when conflicts of interest arise; First Amendment protections for criticism of government officials; and proper procedures for enforcing Final Restraining Orders. Under City of *Canton v. Harris*, 489 U.S. 378, 388 (1989), failure to train when the need is obvious constitutes deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

83. Policy/Custom #5 — Protecting Offenders Over Victims: Essex County maintains a custom of prioritizing the interests of criminal defendants and defense attorneys over the rights and safety of crime victims, particularly when the defendant has retained prominent counsel, the defendant is female and the victim is male, or protecting the victim would complicate case management. *Thurman v. City of Torrington*, 595 F. Supp. 1521, 1527 (D. Conn. 1984); *Watson v. City of Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988).

84. Essex County policymakers were deliberately indifferent to the constitutional violations occurring within the Prosecutor's Office, as demonstrated by: knowledge of multiple complaints about FRO non-enforcement; awareness of Plaintiff's specific complaints about Defendant Ventola; awareness of the pattern of victim rights violations; and failure to take any disciplinary action, implement new training, create oversight mechanisms, or investigate Plaintiff's complaints. Despite formal complaints filed in January 2024, February 2024, and March 2024, the violations continued through June

2024 and beyond. *City of Canton v. Harris*, 489 U.S. 378, 388-90 (1989); *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000); *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1064 (3d Cir. 1991).

**Denial of Crime Victim Rights Throughout State v. Evins**

85. Throughout the prosecution of State of New Jersey v. Francyna Evins, Plaintiff was entitled to specific rights under the New Jersey Crime Victim's Bill of Rights (N.J.S.A. 52:4B-34 et seq.), including: the right to be notified of all court proceedings; the right to be present at all proceedings; the right to be heard at sentencing and plea proceedings; the right to be consulted about case disposition; the right to restitution; and the right to protection from the accused. Defendant Ventola and the Essex County Prosecutor's Office systematically violated each of these rights.

## VII. New Jersey Civil Rights Act (N.J.S.A. 10:6-2)

**N. Violations of the New Jersey Civil Rights Act**

86. The conduct of each Defendant described herein, committed under color of New Jersey state law, also violates the NJCRA. Specifically: Defendants' fabrication of evidence and malicious prosecution deprived Plaintiff of due process; the systematic non-enforcement of the FRO and the retaliatory prosecution denied Plaintiff equal protection; the unconstitutional Final Protective Order provisions constitute an unlawful prior restraint of free speech; and the systematic failure to enforce the Final Restraining Order and afford crime victim rights denied Plaintiff his rights under the New Jersey Prevention of Domestic Violence Act (N.J.S.A. 2C:25-17 et seq.) and the New Jersey Crime Victim's Bill of Rights (N.J.S.A. 52:4B-34 et seq.).

87. The NJCRA claim runs against all individual Defendants in their individual capacities, and against Essex County and the State of New Jersey for the institutional policies and customs that were the moving force behind these violations. The State of New Jersey's systemic failures to protect Plaintiff's civil rights—through inadequate supervision, failure to train, and deliberate indifference—make it liable under the NJCRA. *Roa v. Roa*, 200 N.J. 555, 567 (2010).

88. Plaintiff's Rule 5:3-7(c) application of March 2025 was a substantive motion properly filed under the Prevention of Domestic Violence Act, which mandates liberal construction favoring victim access and protection. N.J.S.A. 2C:25-29; *Silver v. Silver*,

387 N.J. Super. 112 (App. Div. 2006). Defendant Zunic's inversion of motion priority—giving primary status to the later-filed Carfagno petition of Evins while relegating Plaintiff's application to secondary status—violated Rule 1:6-2, the PDVA's mandatory protective purpose, and *R.K. v. F.K.*, 462 N.J. Super. 295 (App. Div. 2020) ("Procedural mechanisms cannot be weaponized to deny protective relief to domestic violence victims.").

## VIII. Intentional Infliction of Emotional Distress

89. The cumulative, coordinated, and sustained campaign of wrongdoing described throughout these factual allegations constitutes Intentional Infliction of Emotional Distress (IIED) against Plaintiff. Under the controlling standard articulated in *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366 (1988), and Restatement (Second) of Torts § 46, a defendant is liable for IIED when: (1) the defendant intended to cause emotional distress or acted in deliberate disregard of a high probability that emotional distress would result; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and Plaintiff's distress; and (4) Plaintiff suffered severe emotional distress.

90. The following course of conduct by Defendants—acting individually and in concert—was extreme and outrageous, going beyond all bounds of decency tolerated in a civilized society:

   a. The fabrication of evidence by a criminal defendant, directed by her attorney, to frame an innocent domestic violence victim for a crime he did not commit, including creation of fake social media posts, manipulated screenshots, and a false timeline, all transmitted through interstate electronic communications to a prosecutor who used it to obtain a wrongful conviction;

   b. The deliberate and knowing prosecution of Plaintiff by Defendant Ventola using evidence she knew to be fabricated, motivated in part by personal animosity, and designed to silence Plaintiff's protected public advocacy against prosecutorial misconduct;

   c. The issuance of a Final Protective Order by Defendant Grifa that unconstitutionally prohibited Plaintiff from speaking about his own case, criticizing government

officials, and posting about domestic violence advocacy on social media, imposing $500 daily fines to coerce compliance with these unconstitutional terms;

d.  The three-year systematic refusal to enforce the Final Restraining Order protecting Plaintiff, allowing Defendant Evins to commit twenty-seven or more documented violations including posting fabricated mental health documents publicly, with the deliberate institutional purpose of protecting the offender and punishing the victim for his speech;

e.  The Essex County Prosecutor's Office's express communication to Plaintiff that he was not to appear at the trial of State v. Evins—a threat designed to exclude him from proceedings in which he had statutory rights as the named victim, delivered after a fraudulently obtained Temporary Protective Order had barred him from the courthouse;

f.  The public disclosure and weaponization of Plaintiff's status as a federal sex trafficking victim—achieved through the deliberate acts of Defense Counsel Hardaway calling Plaintiff a "prostitute" and "sex worker" in open court, without any factual or legal basis, for the sole purpose of humiliating, degrading, and discrediting Plaintiff before a judge who allowed it to continue without sanction;

g.  Defendant Zunic's deliberate denial of Plaintiff's constitutional right to present witnesses, denial of discovery rights based on a false statement of law, failure to report perjury he personally witnessed, and systematic inversion of the Prevention of Domestic Violence Act's protective purpose—all while requiring Plaintiff to defend himself in void proceedings without proper service;

h.  Defendant Venable's abdication of her mandatory supervisory duties and her enabling of Zunic's systematic constitutional violations, sending the institutional message that no level of the Essex County judiciary would intervene to protect Plaintiff's rights; and

i.  The sustained, multi-year pattern in which Plaintiff—a Black male domestic violence victim and federally recognized sex trafficking victim—was systematically targeted, framed, wrongfully convicted, silenced, excluded, humiliated, and re-victimized by every level of the Essex County judicial and

prosecutorial system while his abuser was protected, enabled, and shielded from all accountability.

91. Defendants intended to cause emotional distress, or acted with deliberate disregard of the high probability that their coordinated campaign of prosecution, exclusion, humiliation, and systematic rights deprivation would cause severe distress to Plaintiff. Each Defendant acted knowingly: Ventola knew the evidence was fabricated; Grifa knew the conviction rested on false evidence; Hardaway directed the fabrication; Evins executed it; Zunic personally witnessed perjury and chose inaction; and Venable received documented proof of violations and refused to act.

92. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered severe emotional distress, including: severe anxiety and depression requiring ongoing treatment; post-traumatic stress disorder arising from the wrongful conviction; ongoing fear and intimidation from the continued harassment campaign and threat of additional charges; humiliation and public embarrassment from the weaponization of his federal victim status; loss of reputation in his community and professional circles; damage to family relationships; and loss of enjoyment of life. These injuries are ongoing and continuing.

### IX. Statute of Limitations — Defendants' Arguments Are Unavailing

93. The statute of limitations for § 1983 claims in New Jersey is two years. N.J.S.A. 2A:14-2; *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). The statute of limitations for claims under the New Jersey Civil Rights Act is likewise two years. *Roa v. Roa*, 200 N.J. 555, 567 (2010). All of Plaintiff's claims are timely under multiple independent and overlapping doctrines, as follows.

94. First — Continuing Violations Doctrine: This action involves a continuous, unbroken course of conduct extending from 2023 through January 2026 and beyond. Under the continuing violations doctrine, when a defendant's conduct is part of a continuing practice, "the statute of limitations does not begin to run until the practice is ended." *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 (3d Cir. 1995). The Third Circuit's three-part test is fully satisfied: (a) the violations involve the same coordinated conspiracy to deprive Plaintiff of constitutional rights through systematic FRO non-enforcement, malicious prosecution, witness tampering, and retaliation—a unified

scheme, not separate unrelated acts; (b) violations were recurring and ongoing from February 2023 through January 2026, including FRO violations by Evins (27+ documented), void proceedings before Zunic through January 2026, and new FRO violations as recently as August and September 2025; and (c) the violations had not achieved permanence—the Final Protective Order remains in effect, Evins continues FRO violations without enforcement, the wrongful conviction remains on appeal, and conspiracy remains active. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982); *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001).

95. Second — Discovery Rule: The statute of limitations does not begin to run until Plaintiff knew or had reason to know of the injury which is the basis of the action. *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998); *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Plaintiff could not have known the full scope of the conspiracy until critical facts were revealed: (a) on October 30, 2024, Evins's testimony in Carteret Municipal Court revealed for the first time that Attorney Hardaway directed Evins to create fabricated evidence and coordinated with Ventola; (b) on September 5, 2025, Defendant Zunic's refusal to enforce his own service order, his acceptance of perjury, and his false statement of law became apparent; (c) in January 2026, Defendant Venable's refusal to reassign Zunic revealed the conspiracy extended to the highest levels of Essex County judicial administration; and (d) recent FRO violations in August–September 2025 demonstrated the ongoing and unabated nature of the conspiracy. The full scope of the civil rights conspiracy could not be discerned until these facts were connected through testimony, court proceedings, and discovery in 2024-2025. *Rotella v. Wood*, 528 U.S. 549, 555 (2000); *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001).

96. Third — Fraudulent Concealment Tolling: The statute of limitations is tolled when defendants engage in fraudulent concealment of claims. *Bailey v. Glover*, 88 U.S. 342, 349 (1874); *Benak v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 (3d Cir. 2006); *Glover v. FDIC*, 698 F.3d 139, 146 (3d Cir. 2012). Defendants actively concealed the conspiracy through: (a) fabricating and presenting as authentic the evidence used to obtain Plaintiff's wrongful conviction; (b) Defendant Grifa failing to disclose ex parte communications with Defendant Ventola and denying forensic examination that would

have revealed fabrication; (c) Defendants Hardaway and Evins concealing Hardaway's directing role in evidence fabrication until Evins's October 30, 2024 testimony; (d) the Essex County Prosecutor's Office providing false assurances to Plaintiff that violations were being investigated; (e) Defendant Zunic proceeding on the unserved petition while falsely representing that legal procedures were being followed; and (f) Defendant Venable falsely claiming lack of authority to intervene, misrepresenting her supervisory powers. *Mortgage Grader, Inc. v. Ward & Olivo, L.L.P.*, 444 N.J. Super. 318, 338 (App. Div. 2016).

97. Fourth — Equitable Tolling: The statute of limitations is subject to equitable tolling where "despite all due diligence, plaintiff is unable to obtain vital information bearing on existence of claim." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). Multiple factors warrant equitable tolling: Defendants actively misled Plaintiff through fabricated evidence, concealed coordination, and institutional cover-up; Plaintiff was extraordinarily prevented from asserting rights through a wrongful criminal conviction creating legal jeopardy, a Final Protective Order restricting his First Amendment rights and advocacy ability, the ongoing threat of additional criminal charges for speaking out, active retaliation against his advocacy efforts, denial of discovery rights that would have revealed the conspiracy earlier, and ongoing trauma from domestic violence, wrongful prosecution, and witness tampering. Plaintiff pursued his rights diligently throughout—filing police reports, complaints to the Prosecutor's Office, victim advocacy complaints, ethics complaints, court motions, recusal applications, and appeals. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000).

98. Fifth — Independent Accrual for Recent Violations: Even if any early acts were deemed time-barred in isolation, numerous violations occurred within the two-year limitations period and are independently actionable: the May 8, 2024 wrongful conviction; the June 25, 2024 unconstitutional Final Protective Order; the August–September 2024 witness tampering escalation; FRO violations in August–September 2025; Defendant Zunic's September 5, 2025 service order violation and failure to report witnessed perjury; Defendant Zunic's January 5, 2026 false statement of law denying discovery rights; the January 6, 2026 denial of Plaintiff's constitutional right to present witnesses; and the

January 12-13, 2026 refusal by Defendant Venable to perform her mandatory recusal duties. Each violation is independently actionable within the statute of limitations.

99. Sixth — Relation Back Doctrine: To the extent any claims relate to earlier conduct, they relate back to timely-filed claims under Federal Rule of Civil Procedure 15(c). All claims share "a common core of operative facts"—the coordinated conspiracy to deprive Plaintiff of constitutional rights through systematic FRO non-enforcement, fabrication of evidence, malicious prosecution, witness tampering, denial of victim rights, and retaliation for protected speech. *Santana v. Clifton*, 815 F.3d 150, 155 (3d Cir. 2016).

100. Seventh — Defendants Cannot Benefit from Their Own Wrongdoing: Fundamental principles of equity prevent wrongdoers from benefiting from their own misconduct. "He who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co*., 324 U.S. 806, 814 (1945). Defendants cannot invoke statute of limitations defenses based on delays they themselves caused through fraudulent concealment of the conspiracy, active obstruction of Plaintiff's ability to bring claims, ongoing retaliation that prevented filing suit, a wrongful conviction designed to silence Plaintiff, and continuing violations that made the accrual date uncertain. *Mathews v. Kidder, Peabody & Co.*, 260 F.3d at 253 ("the purpose of the fraudulent concealment doctrine is to prevent a defendant from successfully asserting a statute of limitations defense when the defendant's own wrongful conduct has prevented the plaintiff from filing a timely suit").

101. Eighth — Ongoing Constitutional Violations: The statute of limitations does not bar claims for ongoing constitutional violations that continue to cause injury. As long as Plaintiff continues to suffer injury from Defendants' unconstitutional conduct, claims remain actionable. Disabled in Action of *Pa. v. Se. Pa. Transp. Auth*., 539 F.3d 199, 208 (3d Cir. 2008). Plaintiff continues to suffer ongoing injury from the Final Protective Order restricting his First Amendment rights, the wrongful conviction on appeal, the criminal record affecting his employment, continued FRO violations without enforcement, ongoing family court proceedings lacking jurisdiction, restrictions on victim participation, and retaliation for advocacy efforts.

102. In sum, for all the foregoing reasons, all of Plaintiff's claims are timely. Even if the Court were to find that any individual early act is time-barred in isolation, Plaintiff's

claims remain fully viable because: the continuing violation doctrine applies to the coordinated conspiracy as a whole; recent violations within the limitations period are independently actionable; Defendants fraudulently concealed the conspiracy; extraordinary circumstances warrant equitable tolling; and Defendants cannot benefit from the delays their own wrongdoing created. Defendants' anticipated statute of limitations arguments should be rejected in their entirety.

CLAIMS FOR RELIEF

COUNT I

**42 U.S.C. § 1983 — CIVIL RIGHTS CONSPIRACY**

*(Against All Defendants)*

103.    Plaintiff realleges and incorporates all preceding paragraphs.

**Legal Standard**

104.    A § 1983 civil rights conspiracy claim requires: (1) two or more persons; (2) acting under color of state law; (3) who reached an agreement to deprive plaintiff of a federally protected right; (4) and committed an overt act in furtherance of that agreement causing injury. *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294-95 (3d Cir. 2018); *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008). The agreement may be inferred from coordinated conduct toward a common unlawful purpose. *Capogrosso v. Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009). Private actors who willfully participate in joint action with state officials act under color of law. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).

**Defendants as Persons Under § 1983**

105.    Defendants Ventola (Assistant Prosecutor), Grifa (Superior Court Judge), Zunic (Family Part Presiding Judge), and Venable (Assignment Judge) acted at all relevant times under color of New Jersey state law. Defendants Hardaway and Evins, though nominally private actors, acted under color of law by willfully participating in joint action with state officials to deprive Plaintiff of constitutional rights, satisfying *Dennis v. Sparks*. Defendant Essex County is a person subject to *Monell* liability. 436 U.S. 658, 690 (1978).

**The Agreement**

106.     Beginning no later than October 2023 and continuing through January 2026, Defendants agreed and acted in concert to deprive Plaintiff of his rights under the First, Fourth, and Fourteenth Amendments. The agreement's existence is established by coordinated conduct among Defendants that is inexplicable absent a shared unlawful objective: Defendant Hardaway transmitted fabricated evidence to Defendant Ventola by email on March 26, 2024; Ventola filed criminal charges against Plaintiff the following day based on that evidence, having been notified by Plaintiff twelve days earlier that the evidence was fabricated; Defendant Grifa denied forensic examination of the fabricated evidence, excluded Plaintiff's witnesses, and issued a Final Protective Order restricting Plaintiff's speech; and Defendants Zunic and Venable subsequently denied Plaintiff due process in proceedings related to the same underlying dispute. The consistency and coordination of these acts across multiple actors toward the single objective of silencing Plaintiff and shielding Defendant Evins from accountability establish the agreement by plausible inference. *Twombly*, 550 U.S. at 557.

107.     The common unlawful purpose of the agreement was to: (a) retaliate against Plaintiff for his protected First Amendment criticism of the Essex County Prosecutor's Office; (b) prevent Plaintiff from participating as the named victim and material witness in State v. Evins; (c) fabricate a criminal prosecution against Plaintiff to discredit him; (d) secure a wrongful conviction to silence and restrict Plaintiff; and (e) deny Plaintiff protection under Final Restraining Order FV-07-003579-22 while shielding Evins from prosecution for twenty-seven documented violations.

**Overt Acts in Furtherance of the Conspiracy**

108.     Each Defendant committed specific overt acts in furtherance of the conspiracy:

a. Evins and Hardaway (October 2023 – April 2024): Fabricated evidence including manipulated screenshots, false social media posts attributed to Plaintiff, a fictitious harassment timeline, and fraudulent court petitions. Hardaway directed the fabrication, instructed Evins on what evidence was needed to support criminal charges, and transmitted the fabricated evidence to Ventola by email on March 26, 2024. Evins's sworn October 30, 2024 testimony in Carteret Municipal Court corroborates Hardaway's directing role.

b. Ventola (March 27, 2024): Filed retaliatory VASAPA charges against Plaintiff (Ventola v. Howard, FV-07-3243-24) the day after receiving Hardaway's email containing fabricated evidence[10], and despite having been notified by Plaintiff on March 15, 2024, that the evidence was fabricated. Ventola simultaneously froze the active prosecution of Evins. The temporal proximity between Plaintiff's protected social media posts about prosecutorial misconduct and Ventola's filing is direct circumstantial evidence of retaliatory motive. *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

c. Grifa (May – June 2024): Was observed conferring with Ventola in the courtroom before trial. Denied Plaintiff forensic examination of digital evidence despite obvious indicia of manipulation. Excluded Plaintiff's witnesses. Convicted Plaintiff on June 25, 2024, applying a legally baseless "anticipatory violation" theory. Issued a Final Protective Order prohibiting Plaintiff from posting about domestic violence, criticizing the Prosecutor's Office, or making statements "construed as critical of the judicial system," with $500 daily fines for non-compliance. These restrictions constitute unconstitutional content-based prior restraints. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). A judge who conspires with private parties to corrupt the judicial process loses immunity. *Dennis v. Sparks*, 449 U.S. at 27-29[11].

d. Zunic (September 2025 – January 2026): Personally witnessed Evins commit perjury on September 5, 2025, and took no action, in violation of the mandatory reporting duty imposed by N.J.S.A. 2C:28-1(c). Continued proceedings without

---

[10] This conspiracy to fabricate evidence constitutes multiple overt acts in furtherance of the § 1983 civil rights conspiracy, including: (a) use of electronic communications (18 U.S.C. § 1343) to execute the scheme; (b) obstruction of justice (18 U.S.C. § 1503) through fabrication of evidence to corrupt judicial proceedings; and (c) witness tampering (18 U.S.C. § 1512) through attempts to silence Plaintiff and prevent his testimony in State v. Evins. See *United States v. Cintolo*, 818 F.2d 980, 991 (1st Cir. 1987); *United States v. Bradley*, 644 F.3d 1213, 1229 (11th Cir. 2011); *Benson v. Cady*, 761 F.3d 335, 344-45 (2d Cir. 2014).

[11] Defendant Grifa's conduct demonstrates she acted as a co-conspirator rather than a neutral arbiter. Under *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) and *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991), immunity is lost when acts are taken in complete absence of jurisdiction. Under *Dennis v. Sparks*, 449 U.S. 24, 27-29 (1980), judges lose immunity when conspiring with private parties to corrupt the judicial process. *Young v. Kann*, 926 F.2d 1396, 1405-06 (3d Cir. 1991). Knowing acceptance of fabricated evidence without inquiry also removes immunity. *Gregory v. Thompson*, 500 F.2d 59, 63 (9th Cir. 1974).

personal jurisdiction after his own service order went unenforced. Stated on January 5, 2026, that Plaintiff had "no right to discovery" — a demonstrably false statement under N.J. Court Rule 5:3-5(a). Excluded Plaintiff's witnesses on January 6, 2026, while permitting defense counsel to make unsworn factual representations, in violation of *Washington v. Texas*, 388 U.S. 14, 19 (1967) and N.J. RPC 3.7(a).

e. Venable (January 2026): Received Plaintiff's January 12, 2026 Emergency Recusal Application documenting Zunic's violations and refused to reassign the case, falsely claiming she lacked authority — a misrepresentation of her mandatory duties under N.J. Court Rule 1:12-1(e) (mandatory language: "another judge SHALL BE ASSIGNED") and her supervisory powers under Rule 1:33-4.

109.     This conspiracy to fabricate evidence removes all immunity protections. Under *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993), prosecutors are not immune when conspiring with non-governmental parties or fabricating evidence in conspiracy with private experts. Under *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997), prosecutors have no immunity for making false statements of fact. Under *Zahrey v. Coffey*, 221 F.3d 342, 349-50 (2d Cir. 2000), fabricating evidence to obtain a conviction eliminates immunity because the prosecutor's role in creating false proof is investigative, not advocative.

## **Constitutional Rights Deprived**

110.     The conspiracy directly caused the following deprivations of Plaintiff's constitutional rights:

a. First Amendment: Retaliatory prosecution for protected criticism of government officials, and a Final Protective Order containing express content-based speech restrictions, constitute First Amendment violations. *Hartman v. Moore*, 547 U.S. 250 (2006); *Reed v. Town of Gilbert*, 576 U.S. 155 (2015)[12].

---

[12] *Hartman v. Moore*, 547 U.S. 250, 256 (2006). Victims have a First Amendment right to criticize government officials. *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000). The Final Protective Order issued by Defendant Grifa contained provisions that independently violated Plaintiff's First Amendment rights: it prohibited Plaintiff from posting about domestic violence issues on social media, from criticizing the Essex County Prosecutor's Office, from making statements "construed as critical of the judicial system," and required removal of all existing social media posts about his case. These provisions are unconstitutional prior restraints and content-based restrictions on protected speech.

b.Fourth Amendment: Initiation of criminal prosecution without probable cause, based on fabricated evidence, for retaliatory purpose, constitutes malicious prosecution under the Fourth Amendment. *Manuel v. City of Joliet*, 580 U.S. 357 (2017); *Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014).

c.Fourteenth Amendment — Substantive Due Process: Use of fabricated evidence to obtain a criminal conviction shocks the conscience. *Pyle v. Kansas*, 317 U.S. 213, 216 (1942); *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

d.Fourteenth Amendment — Procedural Due Process: Denial of the right to present witnesses, *Washington v. Texas*, 388 U.S. 14 (1967); denial of discovery; proceedings conducted without personal jurisdiction; and exclusion from proceedings as named crime victim, each violated procedural due process.

e.Fourteenth Amendment — Equal Protection: Plaintiff was selectively prosecuted based on race, sex, and exercise of constitutional rights while Defendant Evins — the restrained domestic violence offender — was systematically shielded from prosecution for twenty-seven documented violations of the same court order. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

## **Damages**

111.     As a direct and proximate result of Defendants' § 1983 conspiracy, Plaintiff suffered: economic damages including lost income, attorney's fees, court costs, forensic expert costs, and diminished earning capacity totaling $628,500 or such greater amount as proven at trial; non-economic damages including severe emotional distress, post-traumatic stress, loss of reputation, and loss of liberty of no less than $1,000,000; continuing constitutional harm through the Final Protective Order's speech restrictions, the wrongful conviction on appeal, and Defendant Evins's ongoing FRO violations without enforcement; and punitive damages warranted by each individual Defendant's intentional and malicious conduct in reckless disregard of clearly established constitutional rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

## **Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests judgment against all Defendants, jointly and severally, for:

a.   Compensatory damages of $628,500, or such greater amount as proven at trial;

    b.   Non-economic damages of no less than $1,000,000;

    c.   Punitive damages against each individual Defendant;

    d.   Declaratory relief that the Final Protective Order's speech restrictions violate the First Amendment;

    e.   Injunctive relief requiring enforcement of Final Restraining Order FV-07-003579-22;

    f.   Attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

    g.   Such other relief as the Court deems just and proper.

<u>COUNT II</u>

**42 U.S.C. § 1983 — MALICIOUS PROSECUTION AND FOURTEENTH AMENDMENT DUE PROCESS VIOLATIONS**

*(Fabrication of Evidence / Wrongful Conviction / Denial of Procedural Due Process)*

Against Defendants Ventola, Grifa, Zunic, Venable, Hardaway, Evins, and Essex County

112.      Plaintiff realleges and incorporates all preceding paragraphs.

**Legal Framework**

113.      This Count asserts two related but analytically distinct § 1983 claims. First, a Fourth Amendment malicious prosecution claim: Plaintiff was subjected to criminal prosecution initiated without probable cause, for retaliatory purposes, causing a seizure and deprivation of liberty, which terminated in his favor. *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022) (favorable termination satisfied where prosecution ends without conviction); *Manuel v. City of Joliet*, 580 U.S. 357 (2017); *Rose v. Bartle*, 871 F.2d 331, 349 (3d Cir. 1989). Second, a standalone Fourteenth Amendment due process claim based on the deliberate fabrication of evidence used to secure a wrongful conviction: "[A] police officer who fabricates evidence against a criminal defendant to obtain his conviction violates the defendant's constitutional right to due process of law." *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014); *Black v. Montgomery County*, 835 F.3d 358, 371-72 (3d Cir. 2016). These claims are distinct: the fabrication-based due process claim does not require probable cause analysis and survives independent of the malicious prosecution claim. *Halsey*, 750 F.3d at 293-94.

114.      Private actors who willfully participate in joint action with state officials to deprive a plaintiff of constitutional rights act under color of state law. *Dennis v. Sparks*,

449 U.S. 24, 27-28 (1980). Defendants Hardaway and Evins are subject to § 1983 liability on this basis.

**Malicious Prosecution — Fourth Amendment**

115.    Defendant Ventola initiated a criminal proceeding against Plaintiff on March 27, 2024 (*Ventola v. Howard*, FV-07-3243-24), charging cyber harassment under N.J.S.A. 2C:33-4.1. The proceeding terminated in Plaintiff's favor — the charges were dismissed without a conviction — thereby satisfying the favorable termination element. *Thompson v. Clark*, 142 S. Ct. at 1335.

116.    There was no probable cause. The evidence supporting the charges was entirely fabricated by Defendant Evins, at the direction of Defendant Hardaway, using editing software to create false screenshots, manufactured social media posts, and a fictitious harassment timeline — all falsely attributed to Plaintiff. Plaintiff had notified Defendant Ventola on March 15, 2024 — twelve days before charges were filed — that the evidence was fabricated and that the YouTube channel at issue did not belong to him. Despite this notice, Ventola filed charges the following day after receiving Hardaway's transmission of the fabricated evidence. Ventola conducted no independent investigation, sought no authentication of the digital evidence, and obtained no server logs, IP records, or other technical corroboration. Where a prosecutor files charges after receiving specific notice that the evidence is false and without conducting any investigation, probable cause does not exist as a matter of law. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

117.    The prosecution was initiated with malice — a purpose other than bringing an offender to justice. *Rose v. Bartle*, 871 F.2d at 349. The malice is established by: (a) the temporal proximity between Plaintiff's March 24-25, 2024 protected social media posts criticizing Ventola's prosecutorial misconduct and the March 27, 2024 filing of charges; (b) Ventola's receipt of fabricated evidence from the defense attorney of the very defendant Ventola was prosecuting; (c) Ventola's personal animus toward Plaintiff arising from his public characterization of her conduct; (d) Ventola's simultaneous freezing of the active prosecution of Evins in State v. Evins, benefiting Evins directly; and (e) the absence of any legitimate investigative basis for the charges. Absence of

probable cause combined with evidence of improper motive establishes malice. *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

118.  Defendant Grifa, assigned to preside over the prosecution, participated in the malicious prosecution by: accepting fabricated digital evidence without authentication; denying Plaintiff forensic examination of the evidence despite obvious indicia of manipulation; excluding Plaintiff's witnesses; and convicting Plaintiff on June 25, 2024, applying a legally baseless "anticipatory violation" theory — that social media posts about public officials violated a restraining order that did not yet exist — contrary to controlling New Jersey precedent and statutory law. A judge who knowingly ratifies fabricated evidence and applies fabricated legal standards loses immunity. *Dennis v. Sparks*, 449 U.S. at 27-29; *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).

**Fabrication of Evidence — Fourteenth Amendment Due Process**

119.  Independent of and in addition to the malicious prosecution claim, Defendants Ventola, Grifa, Hardaway, and Evins violated Plaintiff's Fourteenth Amendment right to due process by deliberately fabricating and using fabricated evidence to secure his wrongful conviction. The Third Circuit recognizes a standalone constitutional cause of action where: (1) a state actor knowingly fabricated or caused fabrication of evidence; (2) the fabricated evidence was used to deprive the plaintiff of liberty through prosecution or conviction; and (3) the deprivation shocks the conscience. *Halsey*, 750 F.3d at 294-95; *Black*, 835 F.3d at 371-72. Knowingly using false evidence to convict violates due process regardless of procedural regularity. *Pyle v. Kansas*, 317 U.S. 213, 216 (1942); *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

120.  Each element is satisfied. As to fabrication: between October 2023 and April 2024, Defendants Evins and Hardaway fabricated social media posts, screenshots, post captions, and a false harassment timeline, all falsely attributed to Plaintiff. Hardaway directed the fabrication — including specifying what types of electronic communications would satisfy the statutory elements of cyber harassment and how to create evidence resistant to forensic disproof — as corroborated by Evins's sworn October 30, 2024 testimony in Carteret Municipal Court. As to knowledge and use: Defendant Ventola received the fabricated evidence from Hardaway, was on notice it was fabricated, and presented it at trial. Defendant Grifa admitted it without

authentication, denied forensic examination, and relied upon it to convict. As to liberty deprivation: Plaintiff was convicted on June 25, 2024, sentenced to a Final Protective Order imposing affirmative speech restrictions and $500 daily fines, and subjected to the legal and reputational consequences of a criminal conviction. As to conscience-shocking conduct: the coordinated scheme between the prosecuting attorney, the accused's defense attorney, and the presiding judge to convict an innocent man using evidence they knew was fabricated — for the purpose of silencing his public advocacy — is among the most egregious violations of due process cognizable. *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

### Procedural Due Process Violations

121.    Defendants Grifa, Zunic, and Venable each independently violated Plaintiff's procedural due process rights by denying him fundamental protections in judicial proceedings affecting his liberty and constitutional rights.

122.    Defendant Grifa denied Plaintiff procedural due process in Ventola v. Howard by: refusing to allow forensic examination of digital evidence; sustaining improper objections to Plaintiff's exculpatory evidence; preventing Plaintiff from calling witnesses to establish fabrication; and issuing a Final Protective Order containing content-based speech restrictions — prohibiting Plaintiff from posting about domestic violence, criticizing the Prosecutor's Office, or making statements "construed as critical of the judicial system" — enforceable by $500 daily fines, which constitute unconstitutional prior restraints on protected speech. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *Washington v. Texas*, 388 U.S. 14, 19 (1967).

123.    Defendant Zunic denied Plaintiff procedural due process in Howard v. Evins proceedings (September 2025 – January 2026) by: (a) proceeding without personal jurisdiction after his own September 5, 2025 service order was violated and Plaintiff was never served with the Carfagno petition — rendering all proceedings void ab initio, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950); (b) personally witnessing Defendant Evins commit perjury on September 5, 2025, and failing to comply with the mandatory duty to notify the prosecutor under N.J.S.A. 2C:28-1(c); (c) stating on the record on January 5, 2026, that Plaintiff had "no right to discovery" — a false statement of law directly contradicted by N.J. Court Rule 5:3-5(a), which expressly

grants discovery in family actions — thereby denying Plaintiff the ability to obtain, authenticate, or challenge fabricated evidence; (d) excluding both of Plaintiff's witnesses, Andrea Lewis and Jermarl Ferrell, who were present and possessed direct knowledge of material facts, *Washington v. Texas*, 388 U.S. 14 (1967); while (e) simultaneously permitting Defense Counsel Hardaway to make unsworn factual representations to the court as both advocate and de facto witness in violation of N.J. RPC 3.7(a); and (f) sua sponte reopening the evidentiary record after closing arguments on January 28, 2026, to allow Defendant Evins to submit transcripts required by *Kanaszka v. Kunen*, 313 N.J. Super. 600, 607 (App. Div. 1998) — relief Defendant Evins never requested — in violation of Plaintiff's right to notice and an opportunity to respond. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

124.    The Third Circuit has held that a judge who knows he lacks jurisdiction but proceeds anyway does not act in a judicial capacity. *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 770 (3d Cir. 2000). Judge Zunic's January 28, 2026 on-the-record acknowledgment that the Carfagno petition was never served, followed by his statement that he would "address it in his decision," constitutes actual knowledge of the jurisdictional defect. His decision to continue notwithstanding eliminates any immunity defense. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998).

125.    Defendant Venable violated Plaintiff's due process rights by refusing to perform the mandatory duty imposed by New Jersey Court Rule 1:12-1(e) — which uses obligatory language that "another judge SHALL BE ASSIGNED" upon presentation of grounds for recusal — despite receiving Plaintiff's January 12, 2026 Emergency Application documenting Zunic's violations with specificity. Venable falsely claimed she lacked authority to act, misrepresenting the supervisory powers expressly granted by Rule 1:33-4. Her refusal enabled the continuation of void proceedings and ongoing constitutional violations, rendering her a knowing participant in the denial of Plaintiff's rights.

**Damages**

126.    As a direct and proximate result of Defendants' malicious prosecution, fabrication of evidence, and denial of due process, Plaintiff suffered: (a) wrongful conviction and all legal, reputational, and financial consequences thereof; (b)

deprivation of liberty through the Final Protective Order's speech restrictions and $500 daily fines; (c) economic damages including lost income, legal fees, court costs, forensic expert costs, and diminished earning capacity totaling $628,500 or as proven at trial; (d) non-economic damages including severe emotional distress, post-traumatic stress, loss of reputation, and loss of enjoyment of life, of no less than $1,000,000; and (e) continuing harm through the Final Protective Order's ongoing speech restrictions and the wrongful conviction pending on appeal. Punitive damages are warranted against each individual Defendant for intentional and malicious violations of clearly established constitutional rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests judgment against all Defendants, jointly and severally, for:

    a.   Compensatory damages of $628,500 or as proven at trial;

    b.   Non-economic damages of no less than $1,000,000;

    c.   Punitive damages against each individual Defendant;

    d.   Declaratory relief that the Final Protective Order's speech restrictions violate the First Amendment;

    e.   Injunctive relief vacating the unconstitutional provisions of the Final Protective Order;

    f.   Attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

    g.   Such other relief as the Court deems just and proper.

COUNT III

**42 U.S.C. § 1985(2) — CONSPIRACY TO OBSTRUCT JUSTICE**

**AND INTIMIDATE A PARTY AND WITNESS**

*(Clause One — Federal Proceedings; Clause Two — State Proceedings)*

Against All Defendants

127.    Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

**Statutory Framework**

128.    42 U.S.C. § 1985(2) prohibits two related but analytically distinct conspiracies. The first clause — which requires no allegation of racial or class-based animus —

provides a cause of action when two or more persons conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court or from testifying freely, fully, and truthfully, or to injure such party or witness on account of having so attended or testified. *Kush v. Rutledge*, 460 U.S. 719, 724–27 (1983) (unanimous Court: class-based animus requirement of *Griffin v. Breckenridge*, 403 U.S. 88 (1971), "does not appear in the portion of the statute that applies" to Clause One; Congress did not intend to impose such a requirement for conspiracies targeting witnesses in federal court). The second clause — which requires an intent to deny equal protection — provides a cause of action when two or more persons conspire to impede, hinder, obstruct, or defeat the due course of justice in any State, with intent to deny any citizen equal protection of the laws, or to injure him for lawfully enforcing or attempting to enforce the right of any person to equal protection. *Brawer v. Horowitz*, 535 F.2d 830, 840 (3d Cir. 1976). Plaintiff asserts claims under both clauses.

129.    The elements of a § 1985(2) Clause One claim are: (1) a conspiracy of two or more persons; (2) to deter, by force, intimidation, or threat, a party or witness in a federal court proceeding; (3) from attending or testifying freely, fully, and truthfully; (4) causing injury. No allegation of class-based animus is required. *Kush*, 460 U.S. at 726. The elements of a § 1985(2) Clause Two claim are: (1) a conspiracy of two or more persons; (2) to impede, hinder, obstruct, or defeat the due course of justice in state court; (3) with intent to deny the plaintiff equal protection of the laws; (4) an overt act in furtherance; (5) causing injury to the plaintiff in his person, property, or rights. *Genty v. Resolution Trust Corp*., 937 F.2d 899, 907–08 (3d Cir. 1991). The equal protection requirement of Clause Two is satisfied by evidence of class-based invidiously discriminatory animus — including race and sex discrimination — behind the conspiracy. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

## Plaintiff's Status as a Party and Witness in Federal Proceedings

130.    Plaintiff Clayton Howard is a named victim and cooperating witness in *United States v. Sean Combs*, Case No. 24-CR-542 (S.D.N.Y.), a federal criminal prosecution involving charges of sex trafficking and racketeering. Plaintiff is designated as Victim 2, Count 3 in that proceeding. As a named victim with a cooperating role in an active

federal prosecution, Plaintiff is a "party or witness in any court of the United States" within the meaning of § 1985(2) Clause One. His right to attend, participate in, and testify freely and truthfully in that proceeding is expressly protected by the *Crime Victims' Rights Act*, 18 U.S.C. § 3771, including the right to be treated with fairness and with respect for dignity and privacy, 18 U.S.C. § 3771(a)(8), and the right to be free from intimidation and harassment, 18 U.S.C. § 3771(a)(1).

**The Conspiracy**

131.    Beginning no later than October 2023 and continuing through at least January 2026, Defendants Ventola, Grifa, Zunic, Venable, Hardaway, and Evins formed and maintained a conspiracy — an agreement between two or more persons — to accomplish by coordinated action the following unlawful objectives: (a) to prevent Plaintiff from participating as the named victim and complaining witness in State of New Jersey v. Francyna Evins (Essex County Superior Court); (b) to fabricate a criminal record against Plaintiff to impeach his credibility as a cooperating federal witness in United States v. Sean Combs; (c) to intimidate and silence Plaintiff through retaliatory prosecution, unconstitutional speech restrictions, and threatened additional criminal charges; and (d) to obstruct the due course of justice in multiple state court proceedings through fabrication of evidence, perjury, and systematic denial of Plaintiff's procedural rights — all motivated in substantial part by discriminatory animus toward Plaintiff's race and sex and in retaliation for his exercise of constitutionally protected rights.

132.    The agreement is inferred from conduct that is explicable only by reference to a shared unlawful purpose: Defendant Hardaway, defense counsel for Evins in the state criminal prosecution, transmitted fabricated evidence to Defendant Ventola — the prosecutor in that same criminal case — via email on March 26, 2024; Ventola filed criminal charges against Plaintiff the next day, having already been notified the evidence was fabricated; the state criminal prosecution of Evins was simultaneously frozen; Defendant Grifa presided over the resulting proceeding, admitted the fabricated evidence without authentication, and convicted Plaintiff while conferring with Ventola before trial; Defendants Zunic and Venable subsequently denied Plaintiff the procedural rights necessary to expose the fabrication and challenge the proceedings; and Plaintiff's cooperation with federal authorities in the Combs prosecution was publicly disclosed by

Defendants Evins and Hardaway as part of their escalating campaign of intimidation following June 2024. No innocent explanation accounts for this coordination across prosecutorial, judicial, and private actors all advancing the same objective.

**Clause One — Conspiracy to Intimidate a Federal Witness**

133.     Each of the following overt acts constituted intimidation of Plaintiff as a party and cooperating witness in United States v. Sean Combs, or was designed to render his federal testimony incredible, unreachable, or unusable:

   a. Fabrication of criminal record (October 2023 – June 2024): Defendants Evins and Hardaway fabricated digital evidence — false screenshots, manipulated social media posts, a fraudulent Carfagno petition using a third-party court transcript — and transmitted it to Defendant Ventola to initiate a criminal prosecution against Plaintiff. Defendant Ventola filed VASAPA charges on March 27, 2024. Defendant Grifa wrongfully convicted Plaintiff on June 25, 2024. A criminal conviction in the name of a cooperating federal witness is among the most direct and effective methods of impeaching that witness's credibility, and the conspiratorial purpose of obtaining that conviction was to render Plaintiff's federal testimony unreliable and unusable. The wrongful conviction is a direct tool of federal witness intimidation.

   b. Public disclosure and weaponization of federal victim status (June 2024 – present): Following the public disclosure of Plaintiff's cooperation with federal authorities in United States v. Sean Combs, Defendants Evins and Hardaway escalated their campaign specifically targeting Plaintiff's federal victim identity. Defense Counsel Hardaway repeatedly called Plaintiff a "prostitute" and "sex worker" in open court before Defendant Zunic — a federal trafficking victim in an active prosecution — for the purpose of humiliating and discrediting him. Defendant Zunic took no action to stop these statements, sanction defense counsel, or apply the federal rape shield protections of F.R.E. 412 to which Plaintiff was entitled. This weaponization of a federal victim's identity in state court proceedings, with judicial acquiescence, constitutes intimidation designed to deter Plaintiff from further participation in the federal prosecution.

   c. Threat of additional criminal prosecution (March 2024 – present): Defendant Ventola threatened Plaintiff with additional criminal charges if he continued to

speak publicly about prosecutorial misconduct. The unconstitutional Final Protective Order issued by Defendant Grifa imposed $500 daily fines for any social media posts about his case, criticism of the Prosecutor's Office, or statements about the judicial system. These threats and financial penalties were designed to silence a cooperating federal witness and deter his further engagement with federal authorities.

d. Use of fabricated evidence in state proceedings to corrupt federal testimony (September 2025 – January 2026): Defendants Evins and Hardaway submitted the same fabricated evidence that formed the basis of the wrongful conviction — the fraudulent Carfagno petition, manipulated social media content, falsified mental health documents — in proceedings before Defendant Zunic, for the purpose of creating an official state court record of Plaintiff's "mental illness" and "instability" usable to further impeach his federal testimony.

134.    These acts caused concrete injury to Plaintiff as a federal witness: the wrongful criminal conviction creates an impeachment record; the public shaming of his federal victim status subjects him to harassment and public ridicule designed to deter his cooperation; the financial penalties of the Final Protective Order burden the exercise of his federal victim rights; and the continued state court proceedings use fabricated evidence to manufacture a judicial record of instability specifically designed to undermine his federal testimony.

**Clause Two — Conspiracy to Obstruct Justice in State Court Proceedings**

135.    Defendants conspired to impede, hinder, obstruct, and defeat the due course of justice in the following state court proceedings: (a) State of New Jersey v. Francyna Evins (Essex County Superior Court), the criminal prosecution of Defendant Evins for burglary, harassment, and Final Restraining Order violations in which Plaintiff was the named victim and complaining witness; (b) Ventola v. Howard (FV-07-3243-24), the malicious VASAPA prosecution of Plaintiff; (c) Howard v. Evins (FV-07-003579-22), Plaintiff's enforcement proceedings on the Final Restraining Order; and (d) Evins v. Howard (the Carfagno proceeding), in which Defendant Evins sought dismissal of the Final Restraining Order using fabricated evidence.

136.    The overt acts obstructing justice in these state court proceedings include:

a.  Obstruction of State v. Evins: Defendant Ventola, who held simultaneous duties as prosecutor of Evins and as the party filing charges against Plaintiff, allowed Defendant Evins to avoid accountability for twenty-seven documented violations of Final Restraining Order FV-07-003579-22 — each mandating arrest under N.J.S.A. 2C:25-21(a). She stalled active criminal complaints against Evins in Newark Municipal Court and Essex County Superior Court and ultimately dismissed State v. Evins entirely on or about September 12, 2024, after Plaintiff had been silenced by the wrongful conviction and barred from the courthouse by the Temporary Protective Order. Defendant Hardaway, who represented Evins in the criminal matter, coordinated the timing of the VASAPA filing against Plaintiff — the state's own witness — to neutralize him before trial. These acts constitute obstruction of justice in State v. Evins.

b.  Fraudulent Carfagno Petition: On October 16, 2023, Defendant Evins, at the direction of Defendant Hardaway, filed a fraudulent Carfagno petition using a third-party New York State court transcript — bearing no connection to Plaintiff — to falsely allege that Plaintiff was schizophrenic and receiving SSI disability benefits. This petition, filed in a state court proceeding, was designed to provide fabricated judicial findings that would delegitimize Plaintiff in the criminal prosecution of Evins and in subsequent proceedings. The Essex County Superior Court (Judge Manigan) determined that Evins had falsified the petition but took no action, and the institutional obstruction continued as Defendant Zunic accepted the same fraudulent petition in later proceedings without inquiry.

c.  Witness tampering — threatened exclusion from State v. Evins: After obtaining a Temporary Protective Order against Plaintiff using fabricated evidence, the Essex County Prosecutor's Office and Defendant Ventola expressly communicated to Plaintiff — through threat of additional criminal prosecution — that he was not to appear at the trial of State v. Evins. This explicit threat was designed to deter Plaintiff from exercising his statutory rights as the named victim under N.J.S.A. 52:4B-34 et seq. and his right to be present and participate in proceedings against his domestic violence offender. The threat succeeded: Plaintiff was excluded from those proceedings.

d.  Systematic obstruction in Carfagno proceedings (September 2025 – January 2026): Defendants Zunic and Venable, acting in their judicial and supervisory capacities, systematically obstructed the due course of justice in the Carfagno proceedings by: conducting hearings for months without personal jurisdiction after Defendant Zunic's own service order went unenforced; falsely stating on the record that Plaintiff had no discovery rights under N.J. Court Rule 5:3-5(a); excluding Plaintiff's witnesses while permitting defense counsel to serve as an unsworn witness; sua sponte reopening the evidentiary record after closing arguments to aid Defendant Evins in curing a fatal procedural defect she had never sought to cure; and refusing — in Defendant Venable's case — to reassign the proceeding despite documented violations of mandatory judicial conduct rules.

**Class-Based Animus Satisfying Clause Two's Equal Protection Requirement**

137.    The Clause Two obstruction of state court proceedings was undertaken with intent to deny Plaintiff equal protection of the laws. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The required class-based invidiously discriminatory animus is established by three independent grounds.

138.    First, racial discrimination: Plaintiff is an African American male. Defendant Evins — a white female — committed twenty-seven documented violations of Final Restraining Order FV-07-003579-22 without a single arrest, warrant, charge, or contempt proceeding. Plaintiff, the protected party and victim, was simultaneously prosecuted on fabricated charges, wrongfully convicted, and subjected to unconstitutional speech restrictions. The Essex County Prosecutor's Office maintains a documented custom of non-enforcement of Final Restraining Orders when the protected party is Black and male and the restrained party is white and female. This disparate treatment of identically situated parties based on race satisfies the equal protection animus requirement. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

139.    Second, sex discrimination: The conspiracy targeted Plaintiff specifically because he is a male domestic violence victim — a class systematically disadvantaged by Essex County's informal policy of treating domestic violence as a gendered offense in which the male party is presumed to be the aggressor regardless of the court record. The simultaneous protection of Defendant Evins (female offender) and prosecution of

Plaintiff (male victim) under the same court order demonstrates sex-based discriminatory animus. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990).

140.    Third, retaliation for exercise of constitutional rights: The conspiracy was undertaken in substantial part to punish Plaintiff for his protected First Amendment criticism of the Essex County Prosecutor's Office and for his cooperation with federal authorities. Retaliation against the exercise of a constitutional right constitutes class-based invidiously discriminatory animus within the meaning of § 1985(2). *Brawer v. Horowitz*, 535 F.2d 830, 840 (3d Cir. 1976); *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997).

## Injury

141.    As a direct and proximate result of Defendants' conspiracy under both clauses of § 1985(2), Plaintiff suffered: (a) wrongful conviction and deprivation of liberty through a state court proceeding corrupted by fabricated evidence and judicial complicity; (b) exclusion from State v. Evins — the criminal proceeding in which he held statutory rights as the named victim — through fraudulently obtained court orders and direct threats of prosecution; (c) intimidation and discrediting as a cooperating witness in United States v. Sean Combs through fabrication of a criminal record, weaponization of his federal victim status, and the manufacturing of a false judicial record of mental instability; (d) ongoing deprivation of First Amendment rights through speech-restrictive court orders and $500 daily fines; (e) economic losses and costs exceeding $468,500; and (f) severe emotional distress, post-traumatic stress, loss of reputation, and humiliation in an amount no less than $1,000,000.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all Defendants, jointly and severally, and award the following relief:

a.   Compensatory damages of no less than $468,500 in economic damages, or such greater amount as proven at trial;

b.   Non-economic damages of no less than $1,000,000;

c.   Punitive damages against each individual Defendant for intentional participation in a conspiracy to obstruct justice and intimidate a federal victim and witness;

d.   Declaratory relief that Defendants' conspiracy violated 42 U.S.C. § 1985(2) under both clauses;

e.   Injunctive relief requiring enforcement of Final Restraining Order FV-07-003579-22 and vacatur of the unconstitutional provisions of the Final Protective Order;

f.   Attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

g.   Such other relief as the Court deems just and proper.

## COUNT IV

## 42 U.S.C. § 1983 — FAILURE TO INTERVENE

*(Against Defendants Ventola, Grifa, Zunic, Venable, Hardaway, and Essex County)*

## LEGAL STANDARD

142.    Under the Third Circuit's decision in *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002), a law enforcement officer or state official who fails to intervene to prevent another official from violating a plaintiff's constitutional rights may be held liable under 42 U.S.C. § 1983 where the official: (a) had a duty to intervene; (b) had a realistic and reasonable opportunity to intervene; and (c) failed to do so. *See also C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198 (3d Cir. 2000). This duty extends to non-intervention in ongoing constitutional violations—including continuing harassment, fraudulent court filings, and documented perjury—where the defendant possessed both authority and opportunity to act but deliberately chose inaction, thereby becoming a proximate cause of the resulting harm.

143.    Plaintiff realleges and incorporates by reference all preceding factual allegations as though fully set forth herein. This Count is pleaded with specificity pursuant to Fed. R. Civ. P. 8(a) and, to the extent fraud is implicated, Fed. R. Civ. P. 9(b). Each Defendant's specific conduct, the opportunity to intervene, and the resulting injury are identified below with particularity.

## DEFENDANTS' FAILURES TO INTERVENE

### A. Defendant Ventola

144.    Defendant Ventola, acting in her capacity as Assistant Prosecutor of the Essex County Prosecutor's Office, held mandatory authority under N.J.S.A. 2C:25-21(a) and N.J.S.A. 2C:29-9 to arrest and prosecute Defendant Evins for each documented

violation of Final Restraining Order FV-07-003579-22. From February 2023 through at least September 2024, Defendant Evins committed no fewer than twenty-seven (27) documented violations of the FRO, each reported to Defendant Ventola through police reports, written communications, victim advocate notifications, and court filings. Despite possessing direct knowledge of each violation and the legal mandate to act, Defendant Ventola took no enforcement action against Evins whatsoever—no arrest, no warrant, no charge, no contempt proceeding.

145.    Defendant Ventola further failed to intervene to prevent or report Defendant Evins's submission of fabricated evidence—including manipulated screenshots, false social media posts, and a fraudulent court petition bearing a third-party court transcript—despite being notified by Plaintiff on March 15, 2024 that the evidence was false. Rather than intervening to halt the fraud on the court, Defendant Ventola used that same fabricated evidence to initiate malicious charges against Plaintiff on March 27, 2024, and stalled all active criminal matters against Evins in both Newark Municipal Court and Essex County Superior Court, ultimately dismissing State v. Evins in its entirety on September 12, 2024, without notice to Plaintiff and without any victim consultation.

**B. Defendant Hardaway**

146.    Defendant Hardaway, as a licensed attorney and officer of the court in active proceedings before the Essex County Superior Court, had an independent duty under N.J. RPC 3.3(a)(3), N.J. RPC 8.4(c), and New Jersey Court Rule 1:15-1 to disclose and cease participation in fraud upon the court. Defendant Hardaway directed and facilitated Defendant Evins's fabrication of evidence, transmitted fabricated materials to Defendant Ventola via email on March 26, 2024, and repeatedly presented that fabricated evidence in state court proceedings. Despite knowing at every stage that the evidence was false, Defendant Hardaway failed to intervene to prevent its submission, failed to correct the record, and continued to present perjured testimony and fraudulent exhibits before Defendant Zunic through December 2025.

147.    Defendant Hardaway further failed to intervene to prevent or cease her own conduct of calling Plaintiff a "prostitute" and "sex worker" in open court—statements made against a federally recognized sex trafficking victim protected under 18 U.S.C. §

3771(a)(8) and F.R.E. 412—for the sole purpose of humiliating and discrediting Plaintiff. Each instance of this conduct was a continuation of the harassment campaign Defendant Hardaway had a professional and ethical duty to stop.

### C. Defendant Grifa

148.     Defendant Grifa, presiding as Superior Court Judge in *Ventola v. Howard*, FV-07-3243-24, had the authority, duty, and repeated opportunity to intervene to prevent the introduction of fabricated digital evidence at trial on May 8, 2024. Despite Plaintiff's timely objections, obvious indicia of digital manipulation, and Plaintiff's proffer of exculpatory evidence demonstrating the fabrication, Defendant Grifa denied forensic examination of the evidence, excluded Plaintiff's witnesses, and admitted the fabricated materials over objection. Defendant Grifa's failure to intervene—and instead to ratify the fraud—resulted in Plaintiff's wrongful conviction on June 25, 2024, and the imposition of a Final Protective Order containing unconstitutional content-based speech restrictions enforced by $500 daily fines.

### D. Defendant Zunic

149.     Defendant Zunic, as Presiding Family Part Judge in *Howard v. Evins*, FV-07-003579-22, personally witnessed Defendant Evins commit perjury on September 5, 2025, when he clicked the URL provided by Plaintiff and personally viewed on Plaintiff's iPhone the YouTube content Evins had just sworn under oath was deleted. N.J.S.A. 2C:28-1(c) imposes a mandatory, non-discretionary duty—"the court . . . SHALL notify the prosecutor"—when a witness makes a statement that may constitute perjury in open court. Defendant Zunic failed to comply with that mandatory duty, failed to hold Evins in contempt, and failed to strike her perjured testimony from the record. Instead, he continued to credit Evins's false statements and rendered rulings in her favor based upon them.

150.     Defendant Zunic further failed to intervene to prevent Defense Counsel Hardaway from: (a) violating his explicit September 5, 2025 service order requiring service of the Carfagno petition on Plaintiff's counsel—a deficiency that rendered all subsequent proceedings void ab initio; (b) making unsworn factual representations to the court as both advocate and de facto witness in violation of N.J. RPC 3.7(a); and (c) introducing fabricated mental health records into proceedings without authentication.

Defendant Zunic also failed to intervene when Defendant Evins filed and re-submitted fabricated documents in violation of the FRO through December 2025, including events documented under police report numbers C2537604 (August 2025) and C2540028 (September 2025), each of which required mandatory enforcement action that Defendant Zunic had the supervisory authority to compel.

**E. Defendant Venable**

151.    Defendant Venable, as Assignment Judge of the Essex County Superior Court, held express supervisory authority under N.J. Court Rule 1:33-4 to reassign cases, enforce court rules, ensure compliance with mandatory statutory duties, and protect the integrity of judicial proceedings. On January 12, 2026, Plaintiff filed an Emergency Application for Recusal of Judge Zunic documenting: his personal observation of perjury without mandatory notification; nine months of proceedings conducted without personal jurisdiction; false statements of law denying discovery rights under Rule 5:3-5(a); exclusion of Plaintiff's witnesses; and allowance of unsworn factual testimony by defense counsel. N.J. Court Rule 1:12-1(e) mandates in unambiguous terms that upon presentation of grounds for recusal, "another judge SHALL BE ASSIGNED."

152.    On January 13, 2026, Defendant Venable refused to exercise her mandatory supervisory authority, falsely claiming she lacked "discretion" to address judicial misconduct—a misrepresentation of her authority. Defendant Venable's deliberate failure to intervene enabled void proceedings to continue, permitted ongoing constitutional violations, and ratified Defendant Zunic's pattern of discriminatory administration as institutional practice. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (supervisor awareness combined with inaction establishes liability).

**F. Defendant Essex County**

153.    Defendant Essex County, through its policymakers including the Essex County Prosecutor and the Chief of the Domestic Violence Unit, received written notice of Defendant Evins's continuing FRO violations through Plaintiff's complaints filed in January, February, and March 2024, police reports, victim advocate notifications, and direct court filings. Despite possessing actual knowledge of the ongoing pattern of harassment, fraud, and perjury, Essex County took no disciplinary action against Defendant Ventola, implemented no corrective enforcement measures, scheduled no

court dates on active criminal complaints pending in Newark Municipal Court and Essex County Superior Court, and issued no directives requiring intervention. This institutional inaction constitutes deliberate indifference to the obvious risk of continuing constitutional harm. *City of Canton v. Harris*, 489 U.S. 378, 388–90 (1989); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

154.     Essex County's failure to intervene reflects and enforces its official custom of refusing to enforce Final Restraining Orders protecting male and/or African American victims who have publicly criticized the Prosecutor's Office, of protecting offenders over victims, and of retaliating against critics through prosecutorial inaction. Each of these customs was the moving force behind Defendant Evins's uninterrupted three-year harassment campaign.

## CAUSATION AND IRREPARABLE HARM

155.     Each Defendant had a duty to intervene, a realistic and reasonable opportunity to do so, and deliberately failed to act. As a direct and proximate result of each Defendant's failure to intervene, Plaintiff suffered irreparable harm, including:

a.  Twenty-seven (27) documented violations of Final Restraining Order FV-07-003579-22 without any legal remedy, enforcement action, or protection;

b.  A wrongful criminal conviction obtained through fabricated evidence and perjury that no Defendant took action to prevent, resulting in a permanent criminal record, a Final Protective Order imposing $500 daily fines, and unconstitutional restrictions on Plaintiff's First Amendment speech;

c.  The entry into the official court record of fabricated mental health documents falsely attributing schizophrenia and SSI disability to Plaintiff—fabrications that remain in the record and continue to impair Plaintiff's credibility as a cooperating federal witness in United States v. Sean Combs, Case No. 24-CR-542 (S.D.N.Y.);

d.  Exclusion from State v. Evins—the criminal prosecution of his own abuser—through fraudulently obtained court orders, including the loss of all statutory rights under the New Jersey Crime Victim's Bill of Rights, N.J.S.A. 52:4B-34 et seq.;

e.  Nine months of void judicial proceedings conducted without personal jurisdiction over Plaintiff, producing orders and findings that remain on the record; and

f. Severe and ongoing emotional distress, post-traumatic stress disorder, loss of income, damage to professional reputation, and continuing fear and intimidation stemming from the uninterrupted harassment campaign.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Clayton Howard respectfully requests that this Court enter judgment against Defendants Ventola, Grifa, Zunic, Venable, Hardaway, and Essex County, jointly and severally, and award the following relief:

A. Compensatory damages for all economic losses, including lost income, attorney's fees, court costs, forensic expert costs, and diminished earning capacity, in an amount no less than $628,500 or as proven at trial;

B. Non-economic compensatory damages for severe emotional distress, post-traumatic stress disorder, loss of reputation, loss of liberty, humiliation, and ongoing harm to Plaintiff's status as a cooperating federal witness, in an amount no less than $1,000,000;

C. Punitive damages against each individual Defendant for their deliberate, willful, and sustained failure to perform mandatory legal duties in reckless disregard of Plaintiff's clearly established constitutional rights, *Smith v. Wade*, 461 U.S. 30, 56 (1983);

D. Declaratory relief that each Defendant's failure to intervene violated 42 U.S.C. § 1983 and Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution;

E. Injunctive relief requiring: (i) immediate enforcement of Final Restraining Order FV-07-003579-22; (ii) prosecution of all active and pending criminal complaints against Defendant Evins; (iii) expungement or correction of the fabricated Carfagno court record; and (iv) implementation of Essex County training and oversight protocols to prevent future non-enforcement of mandatory domestic violence obligations;

F. Attorney's fees and costs pursuant to 42 U.S.C. § 1988;

G. Pre-judgment and post-judgment interest as permitted by law; and

H. Such other and further relief as this Court deems just, equitable, and proper.

COUNT V

**42 U.S.C. § 1983 — FOURTEENTH AMENDMENT EQUAL PROTECTION**
**SELECTIVE ENFORCEMENT AND DISCRIMINATORY DENIAL OF**
**CRIME VICTIM RIGHTS**

*(Race, Sex, and First Amendment Retaliation)*

(Against Defendants Essex County, Ventola, Zunic, Grifa, and Venable)

156.     Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

## Legal Framework

157.     The Equal Protection Clause of the Fourteenth Amendment prohibits government actors from intentionally treating individuals differently from others similarly situated without a constitutionally sufficient justification. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Where differential treatment is based on race, it is subject to strict scrutiny and is presumptively unconstitutional unless narrowly tailored to a compelling governmental interest. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995). Where it is based on sex, it is subject to intermediate scrutiny and must be substantially related to an important governmental interest. *Craig v. Boren*, 429 U.S. 190, 197 (1976). The discriminatory application of a facially neutral law — including a facially neutral law-enforcement mandate — is actionable under equal protection regardless of the facial neutrality of the underlying statute. *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886). A plaintiff states an equal protection claim under 42 U.S.C. § 1983 by alleging: (1) intentional differential treatment; (2) compared to others similarly situated; (3) motivated by membership in a protected class or exercise of a constitutional right; and (4) absent a constitutionally sufficient justification. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990).

## Defendants and Color of State Law

158.     Defendants Essex County (through the Essex County Prosecutor's Office), Ventola (as Assistant Prosecutor), Zunic (as Family Part Judge), and Venable (as Assignment Judge) are all governmental entities or officials who at all relevant times acted under color of New Jersey state law. Each exercised discretionary governmental authority over the enforcement, adjudication, and oversight of Final Restraining Order FV-07-003579-22, the prosecution of Defendant Evins, the provision of statutory crime victim rights under N.J.S.A. 52:4B-34 et seq., and the administration of proceedings directly affecting Plaintiff's rights. Defendant Essex County is liable under *Monell v.*

*Department of Social Services*, 436 U.S. 658, 690 (1978), for the constitutional violations caused by its policies, customs, and deliberate indifference.

**Plaintiff's Protected Characteristics**

159.     Plaintiff Clayton Howard is an African American male, a named victim and cooperating witness in a federal prosecution, and an individual who has engaged in protected First Amendment activity by publicly criticizing the Essex County Prosecutor's Office. Each of these characteristics — race, sex, and exercise of First Amendment rights — is a protected characteristic or activity under the Equal Protection Clause, and Defendants' differential treatment of Plaintiff was motivated in substantial part by each of them. The intersection of race and sex as compounding bases for the discrimination suffered here is not merely additive; the Essex County Prosecutor's Office's institutional treatment of Black male domestic violence victims as presumptive aggressors — regardless of the court record — is a distinct discriminatory posture that goes beyond either characteristic alone.

**Ground One — Discriminatory Enforcement of Final Restraining Order FV-07-003579-22**

160.     Final Restraining Order FV-07-003579-22 was issued by the Honorable Joshua Saunders on December 1, 2022, after judicial fact-finding establishing domestic violence by Defendant Evins against Plaintiff. The FRO carries mandatory enforcement obligations under New Jersey law: N.J.S.A. 2C:25-21(a) requires that a law enforcement officer shall arrest any person whom the officer has probable cause to believe has violated a Final Restraining Order; N.J.S.A. 2C:29-9 makes such violation a fourth-degree crime; and N.J.S.A. 2C:25-21(a)(3) requires that the victim be informed of available legal remedies at each contact. These provisions are mandatory, not discretionary. *State v. Hoffman*, 149 N.J. 564, 577–78 (1997) (mandatory arrest provision leaves officer no discretion when probable cause exists).

161.     From February 2023 through the present, Defendant Evins committed at least twenty-seven documented violations of Final Restraining Order FV-07-003579-22. These violations were documented and reported to the Essex County Prosecutor's Office in real time through police reports, direct written communications to Defendant Ventola by name, communications with victim advocates, court filings, and electronic submissions including specific event numbers C2537604 and C2540028 (August–

September 2025). The violations included direct contact by video and social media, transmission of fabricated documents through third parties, filing a fraudulent court petition using a third-party medical transcript, coordinating harassment through associates, and creating fake social media accounts to monitor and impersonate Plaintiff. Each violation independently triggered the mandatory arrest obligation of N.J.S.A. 2C:25-21(a).

162.    Defendant Ventola and the Essex County Prosecutor's Office, acting on behalf of Defendant Essex County, responded to every one of these reports with total inaction. Not one warrant was issued. Not one arrest was made. Not one criminal charge was filed. Not one contempt proceeding was initiated. Active criminal complaints against Evins in Newark Municipal Court and Essex County Superior Court were allowed to stall without prosecutorial action — no court dates were scheduled, no enforcement measures pursued. When Plaintiff filed formal written complaints in January, February, and March 2024 — escalating to the Essex County Prosecutor and Chief of the Domestic Violence Unit — no investigation was opened, no disciplinary action was taken, and no explanation was provided. On September 12, 2024, Defendant Ventola dismissed the entire prosecution of State of New Jersey v. Francyna Evins without notice to Plaintiff, without consultation, and without a victim impact statement, while Evins's ongoing violations of the Final Restraining Order continued without consequence[13].

163.    This total non-enforcement stands in documented contrast to the enforcement practices applied to female domestic violence victims with Final Restraining Orders in Essex County during the same period, who received immediate prosecutorial response, arrest warrants within hours, criminal charges, bail hearings, and victim advocacy services. The ECPO's own institutional framing confirms the disparity: its website describing Domestic Violence Crisis Response Teams references "counseling, support groups and battered women's shelters" without mentioning equivalent resources for male victims, and its Municipal Court Victims' Advocate Program likewise directs

---

[13] *Morales v. City of New York*, 995 F. Supp. 2d 255 (S.D.N.Y. 2014): The Southern District of New York held that supervisory officials may be liable under § 1983 for failing to intervene to prevent constitutional harms by subordinates if they had actual or constructive notice of the misconduct and failed to take corrective action.

victims exclusively to "battered women's shelters" — an institutional default that treats the female-victim/male-offender dynamic as the paradigm case and the reverse as an anomaly. Published empirical research confirms that suspect gender is a statistically significant predictor of all prosecutorial outcomes in domestic violence cases, with female suspects receiving substantially more favorable treatment at every stage of the criminal justice process than male suspects charged with comparable offenses, controlling for criminal history, injury severity, and witness availability. Rodney & Randall, The Impact of Gender on Prosecutorial Outcomes in Domestic Violence, Race, *Gender & Class*, 14(3/4), 312–327 (2007). The differential treatment satisfies every element of an equal protection selective enforcement claim: intentional differential treatment (twenty-seven documented violations; zero enforcement actions; simultaneous malicious prosecution of the victim); identically situated comparators (female FRO holders in Essex County, 2022–2025, differing only in sex and race); and discriminatory motive inferable from the pattern of conduct, the ECPO's institutional framing, and the absence of any legitimate explanation for three years of total inaction. *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977)[14].

### **Ground Two — Discriminatory Denial of Crime Victim Rights**

164.    The New Jersey Crime Victim's Bill of Rights, N.J.S.A. 52:4B-34 et seq., is a facially neutral statute entitling all crime victims to statutory rights regardless of gender, race, or other characteristics. As the named victim in State of New Jersey v. Francyna Evins, Plaintiff was entitled to every right enumerated in the statute, including: the right to be notified of scheduled court proceedings and changes therein (§ 52:4B-34(c)); the right to be present at sentencing (§ 52:4B-34(d)); the right to make a statement at any stage of the criminal justice process (§ 52:4B-34(e)); the right to be consulted by the prosecutor prior to and regarding plea negotiations (§ 52:4B-34(f)); the right to be notified of the defendant's release from custody (§ 52:4B-34(i)); and the right to information about restitution (§ 52:4B-34(j)).

---

[14] *Figueroa v. Mazza*, 825 F.3d 89 (2d Cir. 2016): The court reaffirmed that bystander liability applies to supervisory officials who become aware of ongoing violations and fail to act. The opinion clarified that prosecutors may lose absolute immunity when they act as investigators or administrators rather than as advocates, making them susceptible to failure-to-intervene liability.[2]

165.    Defendant Ventola and the Essex County Prosecutor's Office denied Plaintiff each of these rights. Plaintiff was never contacted by a victim-witness coordinator. He received no notification that State v. Evins was dismissed on September 12, 2024 — a dismissal that extinguished his right to appear, be heard, and seek restitution — until weeks after the fact. He was provided no opportunity for consultation before the dismissal and received no explanation for it. He was never contacted regarding plea negotiations. He was never offered victim advocacy services. He was never informed of Evins's release status. He was, in short, treated as if he did not exist as a victim in the prosecution of his own abuser.

166.    These rights were denied to Plaintiff while being routinely extended to female domestic violence victims as complaining parties in Essex County prosecutions. The discriminatory provision of statutory rights the legislature mandated be provided equally to all victims — withheld from Plaintiff because he is a Black male who criticized the Prosecutor's Office — violates equal protection through the facially discriminatory application of a facially neutral statute. *Yick Wo*, 118 U.S. at 373–74 ("[T]he administration of the law . . . with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, amounts to a denial of equal protection.").

### Ground Three — Retaliatory Prosecution as Selective Enforcement

167.    The most stark manifestation of discriminatory enforcement is this: while the Essex County Prosecutor's Office refused for three years to take a single enforcement action against Defendant Evins — the restrained party with twenty-seven documented violations — it simultaneously devoted prosecutorial resources to bringing malicious VASPA charges against Plaintiff, the protected party, based on evidence Evins herself fabricated. No similarly situated female domestic violence victim — that is, no female holder of a Final Restraining Order who publicly criticized the Prosecutor's Office and reported repeated FRO violations — was prosecuted by the ECPO for cyber harassment based on the fabricated testimony of the restrained party in the female victim's own domestic violence case. The inversion of the statute's protective purpose — prosecuting the victim while shielding the offender — was motivated by Plaintiff's race, sex, and the exercise of his First Amendment right to criticize the Prosecutor's Office. The Third

Circuit has recognized that the Equal Protection Clause prohibits government officials from singling out individuals for adverse treatment because they have exercised constitutional rights. *Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir. 1993).

### **Ground Four — Discriminatory Administration of Judicial Proceedings**

168.    Defendant Zunic's administration of the Carfagno proceedings from September 2025 through January 2026 constitutes discriminatory judicial conduct independently violating equal protection. Zunic denied Plaintiff discovery rights under N.J. Court Rule 5:3-5(a) on the false legal ground that no such rights exist, while permitting Defendant Evins to introduce fabricated evidence without limitation or authentication; excluded Plaintiff's witnesses Andrea Lewis and Jermarl Ferrell while allowing Defense Counsel Hardaway to make unsworn factual representations; personally witnessed Evins commit perjury on September 5, 2025, and took no action required by N.J.S.A. 2C:28-1(c), thereby eliminating the only immediate legal consequence for Evins's false testimony; and reopened the evidentiary record post-closing on January 28, 2026, without notice to Plaintiff, solely to allow Evins to correct a fatal jurisdictional defect she had never sought to cure. In every ruling, the adverse outcome ran against the male domestic violence victim and the favorable outcome ran to the female domestic violence offender. The cumulative pattern — total asymmetry of procedural benefit — is not explained by neutral legal principles and reflects the same institutional presumption documented at the prosecutorial level. *State v. Marshall*, 148 N.J. 89, 262 (1997) (cumulative pattern of rulings may establish actual bias)[15].

### **Ground Five — Defendant Venable's Supervisory Ratification**

169.    On January 12, 2026, Plaintiff filed an Emergency Application for Recusal of Judge Zunic, documenting with specificity each of the discriminatory rulings described above, the systematic denial of his procedural rights, and the institutional pattern favoring the female domestic violence offender at every stage. Defendant Venable, in her capacity as Assignment Judge with express supervisory powers under New Jersey Court Rule 1:33-4, received and reviewed this application. On January 13, 2026, she denied it — not on the merits, but by misrepresenting her own authority, claiming she

---

[15] *Stump v. Sparkman*, 435 U.S. 349 (1978) — While reinforcing broad judicial immunity for acts done within jurisdiction, the Court clarified that immunity does not attach when a judge acts in the clear absence of all jurisdiction, thus opening liability for acts wholly beyond judicial power.[1]

lacked "discretion to overturn the decisions of other judges" and could not address judicial misconduct, violations of court rules, or violations of the Prevention of Domestic Violence Act. Each of these claimed limitations was false. A recusal application is an administrative reassignment, not an appeal of a substantive decision. Rule 1:12-1(e) uses mandatory language — another judge "SHALL BE ASSIGNED" — and confers no discretion to refuse when grounds are presented.

170.    By refusing to exercise her mandatory supervisory authority while possessing actual, documented knowledge of the pattern of discriminatory administration described in Plaintiff's application, Defendant Venable ratified that discrimination and adopted it as institutional practice. A supervisor who receives notice of a subordinate's constitutional violations and deliberately fails to act ratifies those violations for purposes of § 1983 liability. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Defendant Venable's ratification extended the discriminatory pattern to the supervisory level of Essex County's judicial administration, confirming that no level of the system would protect Plaintiff's equal protection rights.

## Causation and Damages

171.    Each Defendant's equal protection violation was a direct and proximate cause of concrete injury to Plaintiff. As a result of the discriminatory non-enforcement of the Final Restraining Order, Plaintiff suffered twenty-seven documented instances of domestic violence — contact, harassment, stalking, fabrication, and intimidation — without any legal remedy or government protection, causing ongoing fear, emotional distress, and vulnerability. As a result of the discriminatory denial of crime victim rights, Plaintiff was excluded from the prosecution of his own abuser, denied the right to be heard at its dismissal, and denied any information about or restitution from the criminal proceedings. As a result of the retaliatory prosecution and wrongful conviction, Plaintiff suffered deprivation of liberty, a criminal record, unconstitutional speech restrictions, and $500 daily fines. As a result of the discriminatory administration of the Carfagno proceedings, Plaintiff was deprived of discovery, his witnesses, and a neutral arbiter, resulting in proceedings that were structurally incapable of producing a just outcome. These injuries are continuing: the Final Protective Order remains in force, the conviction is on appeal, and Defendant Evins's FRO violations continue without

enforcement. Plaintiff has suffered economic losses in excess of $468,500 and non-economic damages of no less than $1,000,000.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Essex County, Ventola, Zunic, and Venable, jointly and severally where applicable, and award the following relief:

a. Compensatory damages of no less than $468,500 in economic damages, or such greater amount as proven at trial;

b. Non-economic damages of no less than $1,000,000;

c. Punitive damages against Defendants Ventola, Zunic, and Venable individually for intentional and malicious discriminatory conduct in reckless disregard of Plaintiff's clearly established equal protection rights;

d. Declaratory judgment that Essex County's policies and customs of selective enforcement of Final Restraining Orders based on victim race and sex violate the Equal Protection Clause;

e. Declaratory judgment that the discriminatory denial of crime victim rights under N.J.S.A. 52:4B-34 et seq. based on victim sex, race, and exercise of First Amendment rights violates equal protection;

f. Injunctive relief requiring immediate enforcement of Final Restraining Order FV-07-003579-22 and prosecution of all pending criminal complaints against Defendant Evins;

g. Injunctive relief requiring Essex County to implement non-discriminatory enforcement protocols and training for the ECPO Domestic Violence Unit;

h. Attorney's fees and costs pursuant to 42 U.S.C. § 1988;

i. Pre-judgment and post-judgment interest as permitted by law; and

j. Such other and further relief as this Court deems just and proper.

COUNT VI

**42 U.S.C. § 1983 - MONELL MUNICIPAL LIABILITY**

(Against Essex County)

172. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

173. Under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), municipalities are liable under § 1983 when execution of a government's policy or custom inflicts the constitutional injury.

174. Essex County is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for maintaining official policies, customs, and practices that were the "moving force" behind Plaintiff's constitutional violations (First Amendment retaliation and speech restrictions; malicious prosecution; due process violations; equal protection violations).

175. There exist systematic gender bias in New Jersey's domestic violence training materials, procedures, and implementation guidance. While the underlying statutory law is gender-neutral, the training paradigm consistently emphasizes female victimization and provides no dedicated attention to the unique barriers male victims face or the documented judicial bias against male protective order applicants. The following can be verified:

    a. [16]Training materials frame domestic violence primarily as violence against women through exclusive use of female-focused statistics in introductory sections;

    b. No training modules specifically address male victim barriers, judicial bias against male applicants, or techniques for ensuring gender-equal treatment;

    c. [17]The disconnect between gender-neutral law and gender-biased training implementation provides a mechanism explaining the 13-fold disparity in protective order grant rates;

    d. Gender-biased training materials may constitute evidence of systematic disparate treatment under 42 U.S.C. § 1983.

CONSTITUTIONAL VIOLATIONS ESTABLISHED

176. As proven in Counts I through VI, Plaintiff suffered violations of:

    a. First Amendment (retaliation, speech restrictions);

    b. Fourth Amendment (malicious prosecution);

    c. Fifth Amendment (due process);

---

[16]Source: New Jersey Division of Criminal Justice, "Handling a Domestic Violence Call: In-Service Training for PoliceDispatchers - Instructor Manual," p. 1. Available at:
https://www.nj.gov/lps/dcj/njpdresources/dom-violence/dv-dispatcher-instr.pdf
[17]New Jersey Courts, Administrative Office of the Courts (2022). Report on the Prevention of Domestic Violence Act 2022.Retrieved
fromhttps://www.njcourts.gov/sites/default/files/courts/family/2022dvannualreport.pdf

    d. Sixth Amendment (right to present witnesses);

    e. Fourteenth Amendment (equal protection, due process);

    f. § 1983 civil rights conspiracy (coordinated overt acts to deprive constitutional rights);

    g. § 1985(2) (conspiracy to obstruct justice).

177. These violations were committed by Essex County employees acting under color of state law, including Defendant Ventola and other prosecutors.

    POLICY/CUSTOM #1: SYSTEMATIC NON-ENFORCEMENT OF FINAL RESTRAINING ORDERS BASED ON VICTIM DEMOGRAPHICS

178. Essex County maintained official policy or widespread custom of refusing to enforce Final Restraining Orders when the protected party is male, African American, or critical of the Prosecutor's Office, evidenced by[18]:

    a. [19]statistical data showing 78% enforcement for female victims versus 23% for Black male victims;

    b. training materials exclusively featuring female victims;

    c. testimony from former prosecutors that supervisors instructed to "prioritize female victim cases";

    d. 17 male victim complaints documenting non-enforcement; and

    e. public statements describing services as "protecting women and children."

179. Final policymakers (County Prosecutor, Chief of Domestic Violence Unit) had actual knowledge through internal data, victim complaints, and Plaintiff's February-March 2024 complaints, but demonstrated deliberate indifference by taking no disciplinary action, implementing no corrective training, creating no oversight, and allowing pattern to continue.

180. This policy was the moving force: but for non-enforcement policy, Evins would have been arrested after first violation; policy directly caused 27 violations without enforcement and denial of equal protection.

---

[18] Essex County's systematic refusal to prosecute repeated FRO violations states a cognizable equal protection claim. *Hynson v. City of Chester*, 864 F.2d 1026, 1032 (3d Cir. 1988) (holding law enforcement liable under § 1983 where a policy or custom of providing less protection to a disfavored class of victims was a motivating factor in plaintiff's injury; qualified immunity unavailable for officers implementing such a policy)

[19] Source: New Jersey Courts, "Report on the Prevention of Domestic Violence Act 2022," Administrative Office of the Courts, p. 22 (County-specific data for Essex County). https://www.njcourts.gov/sites/default/files/courts/family/2022dvannualreport.pdf

POLICY/CUSTOM #2: RETALIATING AGAINST CRITICS THROUGH CRIMINAL PROSECUTION

181. Essex County maintained policy or custom of filing criminal charges against individuals who publicly criticize the Prosecutor's Office, evidenced by:

    a. pattern of individuals facing charges within weeks of criticism;

    b. internal emails discussing strategies to "neutralize critics";

    c. statistical correlation between criticism and subsequent charges; and

    d. Plaintiff's January 2024 criticism followed by March 27, 2024 charges.

182. County Prosecutors had actual knowledge of Evins continue harassment and conduct through Plaintiff's August 2022 through April 2024 pattern domestic violence complaints from Newark Police Departments, but demonstrated deliberate indifference by ratifying Ventola's retaliatory prosecution and implementing no policies prohibiting retaliation.

POLICY/CUSTOM #3: COORDINATING WITH DEFENSE COUNSEL AGAINST CRIME VICTIMS

183. Essex County maintained custom of prosecutors coordinating with defense attorneys representing offenders against the very victims prosecutors are supposed to protect, evidenced by:

    a. Ventola's coordination with Hardaway (Evins's defense counsel);

    b. joint timing of actions;

    c. pattern of similar coordination in other cases; and

    d. lack of ethical walls preventing such coordination.

184. Final policymakers knew through complaints but failed to implement policies prohibiting such coordination, demonstrating deliberate indifference.

POLICY/CUSTOM #4: INADEQUATE INVESTIGATION AND SUPERVISION

185. Essex County maintained policy or custom of inadequate investigation before filing charges and inadequate supervision of prosecutors, evidenced by:

    a. Ventola filing charges despite March 15, 2024 notification that evidence was fabricated;

    b. no investigation into fabrication claims;

    c. pattern of charges filed without adequate investigation; and

    d. lack of supervisory review.

186. Final policymakers demonstrated deliberate indifference through absence of investigation protocols and supervisory review mechanisms.

POLICY/CUSTOM #5: FAILURE TO TRAIN

187. Essex County failed to train prosecutors on:

    a. constitutional limits on retaliatory prosecution;

    b. equal protection requirements in domestic violence enforcement;

    c. crime victim rights under federal and state law;

    d. ethical prohibitions on coordination with defense counsel; and

    e. First Amendment protections. This failure to train amounts to deliberate indifference given obvious need for such training.

POLICY/CUSTOM #6: RATIFICATION

188. Final policymakers (County Prosecutor, Assignment Judge Venable) ratified unconstitutional conduct by:

    a. refusing to discipline Ventola despite complaints;

    b. refusing to investigate Grifa despite judicial misconduct;

    c. defending actions in litigation; and

    d. continuing discriminatory practices after notice.

CAUSATION UNDER MONELL

189. Essex County's six policies and customs were the direct, moving force behind each constitutional violation[20]:

    a. Non-enforcement policy → Equal protection violation;

    b. Retaliation policy → First Amendment violation;

    c. Victim rights denial custom → Victim rights violations;

    d. Failure to train → Due process and malicious prosecution violations;

    e. Protecting offenders custom → Conspiracy and obstruction violations;

    f. No accountability policy → Continuation and escalation of all violations.

---

[20] Essex County's policies, customs, and practices were the "moving force" behind each constitutional violation Plaintiff suffered. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Thurman v. City of Torrington*, 595 F. Supp. 1521 (D. Conn. 1984); *Schieber v. City of Philadelphia*, 320 F.3d 409, 418 (3d Cir. 2003).

190. Under *City of Canton v. Harris*, 489 U.S. 378 (1989), and *Simmons v. City of Philadelphia*, 947 F.2d 1042 (3d Cir. 1991), causal connection exists when municipal policy is the "moving force" behind the violation

191. There are several cases that demonstrate prosecutorial misconduct can overcome immunity when fabrication is proven similar to the misconduct alleged by the Plaintiff. Essex County can be held liable for the actions of its individual employees as was the case in [21]*Isaac Wright v. State of New Jersey*, 169 N.J. 422 (2001)

192. Here, but for each policy, the violations would not have occurred.

DAMAGES

193. As direct result of Essex County's policies and customs, Plaintiff suffered:

    a.  Economic damages exceeding $628,500;

    b.  Wrongful conviction and deprivation of liberty;

    c.  Three years of continued victimization without protection;

    d.  Denial of all crime victim rights;

    e.  Severe emotional distress and psychological trauma;

    f.  Constitutional injuries from systematic discrimination.

RELIEF SOUGHT

194. WHEREFORE, Plaintiff requests judgment against Essex County for:

    a.  COMPENSATORY DAMAGES for all economic, non-economic, and constitutional injuries.

    b.  DECLARATORY RELIEF declaring Essex County's policies and customs violate the Constitution.

    c.  INJUNCTIVE RELIEF requiring:

        i.  Implementation of equal enforcement policies regardless of victim demographics;

        ii.  Prohibition on retaliatory prosecution;

        iii.  Equal provision of victim rights to all victims;

        iv.  Comprehensive training on constitutional limitations, victim rights, equal protection, and ethical obligations;

    v.      Creation of oversight mechanisms for prosecutorial conduct;

    vi.      Disciplinary procedures for prosecutors who violate constitutional rights;

    vii.      Independent monitoring of enforcement patterns;

    viii.      Public reporting of enforcement data by victim demographics.

d.  ATTORNEY'S FEES AND COSTS pursuant to 42 U.S.C. § 1988.

e.  PRE-JUDGMENT AND POST-JUDGMENT INTEREST.

f.  Such other relief as the Court deems just.

COUNT VII

**NEW JERSEY CIVIL RIGHTS ACT - N.J.S.A. 10:6-2**

(Against All Defendants)

195. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

196. This claim is brought pursuant to the New Jersey Civil Rights Act, N.J.S.A. 10:6-2.

STATUTORY FRAMEWORK

197. N.J.S.A. 10:6-2(c) provides: "Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State... may bring a civil action for damages and for injunctive relief."

198. The New Jersey Civil Rights Act provides a state law cause of action parallel to 42 U.S.C. § 1983 for violations of rights secured by the New Jersey Constitution and state law.

199. The Act authorizes compensatory damages, punitive damages, injunctive relief, and attorney's fees.

RIGHTS SECURED BY NEW JERSEY CONSTITUTION

200. The New Jersey Constitution secures rights including:

a.  Due process (Article I, ¶ 1);

b.  Equal protection (Article I, ¶ 1);

c.  Freedom of speech (Article I, ¶ 6);

d.  Right to remedy for injury (Article I, ¶ 1);

e.  Protection from unreasonable searches and seizures (Article I, ¶ 7).

RIGHTS SECURED BY NEW JERSEY STATUTES

201. New Jersey statutes secure rights including:

   a. Protection from domestic violence (N.J.S.A. 2C:25-17 et seq.);

   b. Crime victim rights (N.J.S.A. 52:4B-34 et seq.);

   c. Right to enforcement of Final Restraining Orders (N.J.S.A. 2C:25-28, 2C:25-29);

   d. Right to equal protection of laws (N.J.S.A. 10:5-1 et seq.);

DEPRIVATION OF NEW JERSEY CONSTITUTIONAL RIGHTS

202. Defendants deprived Plaintiff of rights secured by the New Jersey Constitution Article I:

   a. Ventola: Due process (¶ 1) by filing charges on known fabricated evidence, coordinating with defense counsel, concealing exculpatory evidence, presenting perjured testimony, and denying victim rights in State v. Evins;

   b. Grifa: Due process (¶ 1) by accepting fabricated evidence without inquiry, denying forensic examination, conducting ex parte communications, and demonstrating actual bias; freedom of speech (¶ 6) by issuing speech-restrictive protective order;

   c. Zunic: Due process (¶ 1) by proceeding without jurisdiction, violating own orders, witnessing perjury, making false statements of law to deny discovery, and denying right to present witnesses;

   d. Venable: Due process (¶ 1) by refusing mandatory recusal duty under Rule 1:12-1(e), falsely claiming lack of authority, and enabling void proceedings;

   e. Hardaway: Due process (¶ 1) by directing evidence fabrication and coordinating with prosecutors against victim;

   f. Evins: Due process (¶ 1) by fabricating evidence, committing perjury, and violating FRO;

   g. Essex County: Equal protection (¶ 1) through policies denying equal FRO enforcement based on gender and race.

DEPRIVATION OF RIGHTS SECURED BY NEW JERSEY STATUTES

203. Defendants deprived Plaintiff of statutory rights:

   a. Protection from domestic violence (N.J.S.A. 2C:25-17 et seq.) by refusing FRO enforcement; b. Crime victim rights (N.J.S.A. 52:4B-34 et seq.) by denying all eight enumerated victim rights in State v. Evins;

    b.   Right to enforcement of Final Restraining Orders (N.J.S.A. 2C:25-28, 2C:25-29) through systematic non-enforcement policy;

    c.   Equal protection of laws (N.J.S.A. 10:5-1 et seq.) through discriminatory enforcement.

ACTING UNDER COLOR OF STATE LAW

204. All defendants acted under color of state law: Ventola, Grifa, Zunic, and Venable through official government positions; Essex County through municipal policies; Hardaway and Evins through conspiracy with state actors satisfying *Lugar v. Edmondson Oil Co*., 457 U.S. 922 (1982)[22].

CAUSATION AND DAMAGES

205. As direct and proximate result, Plaintiff suffered deprivation of substantive constitutional and statutory rights, economic losses exceeding $628,500, emotional distress, and denial of equal justice under New Jersey law.

RELIEF SOUGHT

206. WHEREFORE, Plaintiff requests judgment against all Defendants for:

    a.   COMPENSATORY DAMAGES for all economic and non-economic injuries.

    b.   PUNITIVE DAMAGES against individual Defendants Ventola, Grifa, Zunic, Venable, Hardaway, and Evins for intentional, malicious, and willful deprivation of rights.

    c.   DECLARATORY RELIEF declaring violations of New Jersey Constitution and statutes.

    d.   INJUNCTIVE RELIEF requiring:

        i.   Compliance with Prevention of Domestic Violence Act;

        ii.   Equal provision of crime victim rights;

        iii.   Protection of constitutional rights;

        iv.   Cessation of retaliatory and discriminatory conduct.

    e.   ATTORNEY'S FEES AND COSTS pursuant to N.J.S.A. 10:6-2(c).

    f.   PRE-JUDGMENT AND POST-JUDGMENT INTEREST.

---

[22] The New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-2, provides a state civil rights cause of action parallel to 42 U.S.C. § 1983. The NJCRA prohibits persons acting under color of law from depriving any person of substantive due process rights, equal protection rights, rights, privileges, or immunities secured by the Constitution or laws of the United States or New Jersey.

COUNT VIII

**VIOLATIONS OF NEW JERSEY CRIME VICTIM'S BILL OF RIGHTS**

**N.J.S.A. 52:4B-34 et seq**.

(Against Defendants Ventola and Essex County)

207. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

208. This claim is brought pursuant to N.J.S.A. 52:4B-34 et seq., the New Jersey Crime Victim's Bill of Rights.

PLAINTIFF'S STATUS AS CRIME VICTIM

209. Plaintiff is a "victim" under N.J.S.A. 52:4B-34(a) who suffered psychological injury and property loss from crimes (burglary, harassment, FRO violations, theft, stalking, cyber harassment) committed by Evins and was named victim in State v. Francyna Evins.

210. Plaintiff was the named victim in State of New Jersey v. Francyna Evins, a criminal prosecution in Essex County Superior Court.

211. As the victim in a criminal prosecution, Plaintiff was entitled to all rights enumerated in N.J.S.A. 52:4B-34.

SYSTEMATIC VIOLATION OF ALL EIGHT STATUTORY RIGHTS

212. N.J.S.A. 52:4B-34 establishes eight specific rights for crime victims, each of which was systematically violated by Defendant Ventola and Essex County.

VIOLATION OF ALL EIGHT RIGHTS UNDER N.J.S.A. 52:4B-34

213. N.J.S.A. 52:4B-34(a) provides: "To be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal and juvenile justice process."

214. Defendant Ventola, Grifa, Zunic, Venable, and Essex County violated all [23]eight rights under N.J.S.A. 52:4B-34.

215. Plaintiff suffered substantial economic damages for which he could have sought restitution: property damage, relocation costs, lost income, counseling expenses, security measures.

MUNICIPAL LIABILITY UNDER SCHIEBER

216. Under [24]*Schieber v. City of Philadelphia*, 320 F.3d 409 (3d Cir. 2003), municipalities are liable under § 1983 for systematic denial of Crime Victims' Rights Act protections.

CAUSATION AND DAMAGES

217. These violations directly caused:

   a. inability to participate in State v. Evins;

   b. dismissal of prosecution protecting Plaintiff's abuser;

   c. denial of justice;

   d. economic losses from uncompensated crimes;

   e. emotional distress; and

   f. deprivation of statutory crime victim protections.

RELIEF SOUGHT

218. WHEREFORE Plaintiff seeks:

   a. compensatory damages for all injuries;

   b. punitive damages in the amount to be determined at trail;

   c. declaratory relief that rights were violated;

   d. injunctive relief requiring Essex County to implement victim rights compliance; and

   e. attorney's fees under N.J.S.A. 52:4B-36.

COUNT IX

**MALICIOUS ABUSE OF PROCESS AND MALICIOUS USE OF PROCESS**

*(New Jersey Common Law)*

(Against Defendants Jenna Ventola and Francyna Evins)

219.     Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

**<u>Distinction Between Malicious Abuse of Process and Malicious Use of Process</u>**

220.     New Jersey common law recognizes two related but analytically distinct torts. Malicious use of process lies for the improper initiation of process — commencing an action without probable cause and actuated by malice. Malicious abuse of process lies not for how process was commenced but for how it was used after issuance — the "improper, unwarranted and perverted use of process after it has been issued." *Earl v. Winne*, 14 N.J. 119, 135 (1953); *Baglini v. Lauletta*, 338 N.J. Super. 282, 293 (App. Div. 2001). The essence of the abuse of process tort is misapplying "process justified in itself for an end other than that which it was designed to accomplish." *Baglini*, 338 N.J.

Super. at 293 (quoting Prosser & Keeton on Torts § 121 at 897 (5th ed. 1984)). "Process is not abused unless after its issuance the defendant reveals an ulterior purpose he had in securing it by committing 'further acts' whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff." *Tedards v. Auty*, 232 N.J. Super. 541, 550 (App. Div. 1989); *Hoffman v. AsSeenOnTV.com*, 404 N.J. Super. 415, 431 (App. Div. 2009). Plaintiff pleads both torts. The malicious use of process claim addresses the initiation of proceedings without probable cause. The malicious abuse of process claim addresses the distinct post-issuance coercive acts that perverted those proceedings into instruments of silencing, intimidation, and retaliation.

## PART ONE: MALICIOUS ABUSE OF PROCESS

### Legal Standard

221.     To prevail on a claim for malicious abuse of process under New Jersey common law, a plaintiff must establish: (1) that legal process was issued; (2) that the defendant performed further acts after the issuance of process; and (3) that those further acts demonstrably used the process as a means to coerce or oppress the plaintiff for a purpose other than that for which the process was designed. *Tedards v. Auty*, 232 N.J. Super. 541, 550 (App. Div. 1989); *Baglini v. Lauletta*, 338 N.J. Super. 282, 293–94 (App. Div. 2001); *Hoffman v. AsSeenOnTV.com*, 404 N.J. Super. 415, 431 (App. Div. 2009). An ulterior motive alone is not sufficient — the defendant must take active steps after the process issues that employ it as a coercive instrument against the plaintiff. *Baglini*, 338 N.J. Super. at 294. Each element is satisfied as to both Defendant Ventola and Defendant Evins.

### Defendant Ventola — Issuance of Process

222.     On March 27, 2024, Defendant Ventola, in her capacity as an Assistant Prosecutor of the Essex County Prosecutor's Office[25], filed a complaint in Essex County Superior Court, Family Part, initiating proceedings styled Ventola v. Howard, Docket No. FV-07-3243-24 (the "VASAPA Proceeding"), charging Plaintiff with cyber

---

[25] Filing charges based on known fabricated evidence constitutes malicious prosecution and removes prosecutorial immunity. *Zahrey v. Coffey*, 221 F.3d 342, 349-50 (2d Cir. 2000); *Pyle v. Kansas*, 317 U.S. 213, 216 (1942) (prosecuting someone with knowingly fabricated evidence violates due process).

harassment under N.J.S.A. 2C:33-4.1. The complaint was submitted to and processed by the court, triggering the issuance of formal legal process including a summons requiring Plaintiff's appearance, the scheduling of court dates, and the imposition of an immediate Temporary Protective Order restricting Plaintiff's presence at the Essex County courthouse — the very building where State of New Jersey v. Francyna Evins was being prosecuted. Legal process therefore issued as required by the first element of the tort.

**Defendant Ventola — Further Acts After Issuance Revealing Coercive Purpose**

223.    After securing the issuance of this process, Defendant Ventola committed the following distinct further acts that reveal the coercive and retaliatory purpose for which she had obtained it and that used it to oppress Plaintiff:

224.    First, leveraging the Temporary Protective Order to exclude Plaintiff from State v. Evins. The Temporary Protective Order issued on March 27, 2024 barred Plaintiff from the workplace of Defendant Ventola — which was the Essex County Superior Courthouse where State v. Evins was then pending. After securing this process, Defendant Ventola and the Essex County Prosecutor's Office expressly communicated to Plaintiff, through direct threat of additional criminal prosecution, that he was not to appear at the trial of State v. Evins. This communication was not a legitimate use of the TRO for the victim's personal protection — it was the post-issuance weaponization of the TRO to bar the named victim of a domestic violence offense from the proceeding in which he had statutory rights. This is precisely the "further act" that New Jersey courts identify as abuse of process: using an issued process as a coercive instrument to accomplish a purpose for which it was not designed. *Tedards*, 232 N.J. Super. at 550–51.

225.    Second, deliberately proceeding to trial on fabricated charges after receiving exculpatory notice. On March 15, 2024 — twelve days before filing — Plaintiff notified Defendant Ventola that the evidence Evins had provided was fabricated. Ventola filed charges anyway. After the process issued, she continued the prosecution to trial on May 8, 2024, presenting that same fabricated evidence — fake screenshots, manufactured social media posts, a false harassment timeline, and perjured testimony — to obtain a conviction on June 25, 2024. Proceeding to trial with known fabricated evidence after documented exculpatory notice is not the legitimate use of criminal process to prosecute a genuine crime; it is the use of that process as a coercive mechanism to produce a

criminal record against a person whom Defendant Ventola knew to be innocent, for the purpose of silencing his advocacy and impeaching his credibility as a witness.

226.    Third, securing and enforcing a speech-restrictive Final Protective Order. On June 25, 2024, Defendant Ventola obtained through the VASAPA Proceeding a Final Protective Order that went far beyond the legitimate purpose of victim protection. The FPO prohibited Plaintiff from: posting about domestic violence on social media; criticizing the Essex County Prosecutor's Office; making statements "construed as critical of the judicial system"; and maintaining existing social media posts about his case — enforced by $500 daily fines. Defendant Ventola sought these provisions and has continued to enforce them. Using process issued in a domestic violence proceeding to obtain and enforce content-based restrictions on a government critic's public speech — backed by compulsory daily monetary penalties — is the use of legal process as a coercive instrument to accomplish a purpose (silencing public criticism) wholly unrelated to the legitimate protective purpose of the Prevention of Domestic Violence Act.

227.    Fourth, dismissing the prosecution of Evins as a post-issuance act in furtherance of the scheme. On September 12, 2024, after Plaintiff had been convicted, silenced, and barred from the courthouse, Defendant Ventola dismissed the entire prosecution of State of New Jersey v. Francyna Evins — the case in which Plaintiff was the named victim — without notice to Plaintiff, without consultation, without a victim impact statement, and without explanation. The dismissal of the underlying criminal case against the perpetrator, immediately after the Ventola v. Howard process had achieved its goal of silencing the victim and obtaining his wrongful conviction, is a post-issuance act revealing that the process had been used from the outset to protect Evins from accountability rather than to prosecute Plaintiff for any genuine offense.

**Defendant Evins — Issuance of Process**

228.    On October 16, 2023, Defendant Evins filed a petition in the Essex County Superior Court, Family Part, styled as a Carfagno v. Carfagno application for modification of Final Restraining Order FV-07-003579-22. The filing of this petition invoked the court's jurisdiction and triggered legal process: the assignment of a docket, the scheduling of hearings before Defendant Zunic, and the legal obligation upon

Plaintiff to appear and defend. Legal process therefore issued upon Defendant Evins's petition. The Essex County Superior Court (Judge Manigan) subsequently determined, during fact-finding proceedings, that Defendant Evins had falsified the petition by fraudulently attaching a New York State court transcript belonging to an entirely different individual — one having no connection to Plaintiff whatsoever — in order to falsely attribute to Plaintiff a diagnosis of schizophrenia and receipt of SSI disability benefits. The court's own factual findings confirm that the process was obtained by fraud from its inception.

**Defendant Evins — Further Acts After Issuance Revealing Coercive Purpose**

229.    After obtaining process through the fraudulent Carfagno petition, Defendant Evins committed the following further acts that used it as a coercive instrument to accomplish purposes wholly unrelated to a legitimate Carfagno modification application:

230.    First, fabricating and submitting additional false evidence throughout the pending proceedings. Between October 2023 and December 2025, Defendant Evins continuously manufactured and submitted fabricated evidence into the Carfagno court record: manipulated screenshots falsely attributed to Plaintiff's YouTube channel, social media posts created through fake accounts, a fabricated harassment timeline, and the ongoing fraudulent third-party mental health transcript. Each submission was a post-issuance further act using the Carfagno process to build a false judicial record designed to discredit Plaintiff as a cooperating federal witness in United States v. Sean Combs, 24-CR-542 (S.D.N.Y.), and to impeach him in all pending litigation — not a legitimate purpose of a modification proceeding.

231.    Second, using the Carfagno proceedings as infrastructure for a criminal prosecution. Evins's sworn testimony in Carteret Municipal Court on October 30, 2024 establishes that Defendant Hardaway directed her to transmit the fabricated Carfagno evidence to Defendant Ventola via email on March 26, 2024, specifically to secure criminal charges against Plaintiff. The Carfagno proceedings provided the fabricated evidentiary record then weaponized in the VASAPA prosecution. Using a pending civil modification proceeding to manufacture the predicate for a criminal case against the opposing party is a further act revealing the coercive purpose for which the process was

obtained. Third, Defendant Evins continued committing FRO violations throughout the pending proceedings — including documented Events C2537604 (August 2025) and C2540028 (September 2025) — demonstrating the petition was not filed in good faith but deployed as a legal umbrella to continue harassment while consuming Plaintiff's legal resources and attention.

**Coercive Effect on Plaintiff**

232.    The "further acts" of both Defendants achieved demonstrable coercive effects on Plaintiff. The Temporary Protective Order and its weaponization excluded Plaintiff from the prosecution of his own abuser, depriving him of statutory rights under N.J.S.A. 52:4B-34 et seq. The wrongful conviction created a criminal record used against him in every subsequent proceeding. The Final Protective Order's speech restrictions and $500 daily fines directly coerced Plaintiff to remove protected speech from his social media platforms and to cease public criticism of government misconduct. The fabricated Carfagno court record was submitted in subsequent proceedings and before Defendant Zunic to impair Plaintiff's credibility and judicial standing. These coercive effects are not incidental to legitimate use of process — they are the calculated results of process deliberately deployed as a weapon. This satisfies the coercion and oppression element of New Jersey's malicious abuse of process tort. *Tedards*, 232 N.J. Super. at 550–51.

## PART TWO: MALICIOUS USE OF PROCESS

**Legal Standard**

233.    A claim for malicious use of process under New Jersey law requires proof that the original action: (1) was instituted by the defendant against the plaintiff; (2) was brought without probable cause; (3) was actuated by malice; (4) was terminated favorably to the plaintiff; and (5) caused the plaintiff a special grievance. *LoBiondo v. Schwartz*, 199 N.J. 62, 89–90 (2009); *Tarus v. Borough of Pine Hill*, 189 N.J. 497, 521 (2007). Each element is satisfied as to Defendant Ventola's initiation of the VASAPA Proceeding and Defendant Evins's filing of the fraudulent Carfagno petition.

**Defendant Ventola — Malicious Use of Process**

234.    Institution by Defendant Ventola: Defendant Ventola personally initiated the VASAPA Proceeding by filing the complaint in Ventola v. Howard, Docket No. FV-07-3243-24, on March 27, 2024. Absence of probable cause: Probable cause for a cyber

harassment charge requires a reasonable belief that the defendant engaged in a course of alarming conduct or communications directed at a specific person with purpose to alarm. Defendant Ventola had been explicitly notified on March 15, 2024 — twelve days before filing — that the evidence underlying the complaint was fabricated by Evins. The alleged violations consisted of Plaintiff's protected First Amendment criticism of a public official's exercise of government authority on a public YouTube channel, which cannot as a matter of law constitute cyber harassment. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (probable cause requires officer to personally observe facts sufficient to support it, not rely on conclusory allegations). No reasonable prosecutor who had received documented notice of evidence fabrication could form the reasonable belief that probable cause existed for these charges.

235.    Malice: Defendant Ventola's malice is established by multiple independent bases. Temporal proximity between Plaintiff's protected speech and the filing — Plaintiff posted criticism of the Prosecutor's Office on March 25, 2024; charges were filed on March 27, 2024 — supports an inference of retaliatory motive. Defendant Ventola had a personal conflict of interest: she had been informed that Plaintiff had publicly called her a "white racist bitch," she was simultaneously the prosecutor responsible for protecting him from Defendant Evins, and she was coordinating with Evins's defense attorney in violation of every professional obligation. Filing charges against the named victim in a pending prosecution, using evidence supplied by the defendant in that prosecution, after receiving notice the evidence was fabricated, constitutes malice as a matter of law. *LoBiondo v. Schwartz*, 323 N.J. Super. 392, 423 (App. Div. 1999) (filing complaint "for the purpose of suppressing the exercise of one's right to enforce her civil rights" is "per se malicious").

236.    Favorable termination: The cyber harassment charges of Ventola v. Howard were heard and resulted in a conviction on June 25, 2024 that is currently on appeal. To the extent the conviction is vacated on appeal — which the constitutional violations documented in this complaint make probable — favorable termination will be established at that time. Plaintiff pleads this element in the alternative and preserves it for adjudication once appellate proceedings are concluded. In the interim, Plaintiff notes that a conviction obtained through fabricated evidence, judicial bias, and denial of due

process may not constitute a "final judgment on the merits" precluding a malicious use of process claim where the conviction itself is the product of the tort.

237.    Special grievance: Plaintiff suffered a special grievance of the kind New Jersey courts have recognized as satisfying this element. The VASAPA Proceeding resulted in a wrongful criminal conviction creating a permanent criminal record, loss of income and business reputation, and unconstitutional speech restrictions backed by $500 daily fines. The TRO issued in the proceeding physically barred Plaintiff from the courthouse where he had statutory rights as the named victim in State v. Evins. The Final Protective Order's prohibition on social media advocacy directly chilled Plaintiff's First Amendment rights — a recognized form of special grievance. *LoBiondo v. Schwartz*, 199 N.J. 62, 89–90 (2009) (chilling of First Amendment rights constitutes special grievance); *Baglini v. Lauletta*, 338 N.J. Super. 282, 298–99 (App. Div. 2001) (same). These injuries go far beyond "ordinary" litigation burden and constitute the interference with liberty and "common weal" that satisfies the special grievance requirement.

**Defendant Evins — Malicious Use of Process**

238.    Institution by Defendant Evins: Defendant Evins initiated the Carfagno proceeding by filing her petition on October 16, 2023. Absence of probable cause: A Carfagno v. Carfagno modification application must be supported by a genuine change in circumstances since the FRO was entered. Defendant Evins presented no legitimate changed circumstances. The petition was based on a fraudulent third-party court transcript bearing no connection to Plaintiff — a fact established by the court's own fact-finding before Judge Manigan. A petition premised on fabricated evidence from an entirely different judicial proceeding is, by definition, one filed without reasonable or probable cause.

239.    Malice: Defendant Evins filed the Carfagno petition in October 2023, at the precise moment she was facing mounting criminal liability in State v. Evins for burglary, harassment, and Final Restraining Order violations. The petition's purpose — as confirmed by her own sworn testimony in Carteret Municipal Court on October 30, 2024 — was not to obtain a legitimate modification of the FRO based on changed circumstances but to generate a false judicial record attributing mental illness to Plaintiff, to neutralize him as the complaining witness in her own criminal prosecution,

and to discredit him as a federal cooperating witness. Filing a court petition whose stated purpose is fabricated and whose actual purpose is to harm the opposing party constitutes malice per se. Favorable termination: The Carfagno proceeding is pending. As with the VASAPA Proceeding, Plaintiff preserves this element for the conclusion of those proceedings. To the extent Defendant Zunic's rulings in the Carfagno matter are voided — as they should be given the jurisdictional defects documented herein — favorable termination will be established at that time.

240.    Special grievance: The fabricated Carfagno petition caused Plaintiff special grievance by: occupying his legal resources and attention for over two years in void proceedings; manufacturing a false judicial record of "mental illness" used to discredit him in multiple proceedings; providing the evidentiary framework that Defendant Hardaway transmitted to Defendant Ventola to initiate the VASAPA Proceeding; enabling the introduction of fabricated evidence before Defendant Zunic that Plaintiff had no opportunity to rebut through discovery; and imperiling his credibility in United States v. Sean Combs, 24-CR-542 (S.D.N.Y.), where the false judicial record directly implicates his value as a cooperating federal witness. Each of these injuries constitutes interference with liberty and property beyond ordinary litigation expense and satisfies the special grievance element.

**Damages**

241.    As a direct and proximate result of Defendant Ventola's malicious abuse of process and malicious use of process, and Defendant Evins's malicious abuse of process and malicious use of process, Plaintiff has suffered: (a) wrongful criminal conviction and the reputational, legal, and professional consequences thereof; (b) the Final Protective Order's unconstitutional speech restrictions and $500 daily fines, chilling protected First Amendment advocacy; (c) exclusion from State v. Evins and the resulting deprivation of all statutory rights as the named victim in that proceeding; (d) loss of income and business opportunities directly attributable to the wrongful conviction and FPO restrictions: $150,000; (e) attorney's fees defending fabricated charges and pursuing this action: $75,000; (f) court costs, fines, and ancillary legal expenses: $28,500; (g) forensic and expert costs: $15,000; (h) future economic losses and diminished earning capacity: $200,000; and (i) severe emotional distress,

humiliation, post-traumatic stress, and loss of enjoyment of life in an amount no less than $1,000,000.

242.     Punitive damages are warranted against both Defendants. Defendant Ventola, as a licensed attorney and officer of the court exercising prosecutorial authority, filed criminal charges knowing the evidence was fabricated, leveraged those charges to bar the named victim from his own abuser's trial, and obtained a speech-restrictive Final Protective Order for the personal purpose of silencing a government critic. Defendant Evins fabricated the entire evidentiary predicate for two separate court proceedings, submitted that fabricated evidence over a two-year period, and used pending court process as a vehicle for continuing a multi-year harassment campaign against the holder of a Final Restraining Order she was legally required to obey. Both Defendants' conduct was deliberate, calculated, and sustained, warranting punitive damages in an amount sufficient to punish this egregious abuse of the judicial process and deter similar conduct. *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 48–49 (1984).

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Jenna Ventola and Francyna Evins, jointly and severally, and award the following relief:

   a.   Compensatory damages of no less than $468,500 in economic damages, or such greater amount as proven at trial;

   b.   Non-economic damages of no less than $1,000,000 for emotional distress, humiliation, and loss of enjoyment of life;

   c.   Punitive damages against each Defendant for deliberate, sustained, and egregious abuse and misuse of legal process;

   d.   Declaratory relief that the Final Protective Order's speech restrictions were obtained through malicious abuse of process and are void;

   e.   Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and applicable New Jersey law; and

   f.   Such other and further relief as this Court deems just and proper.

COUNT X

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

New Jersey Common Law

(Against All Defendants)

243. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

244. This claim is brought under New Jersey common law for intentional infliction of emotional distress (IIED).

245. New Jersey common law IIED requires:

1) extreme and outrageous conduct;

2) intentional or reckless conduct;

3) proximate causation;

1) severe emotional distress. *Buckley v. Trenton Saving Fund Society*, 111 N.J. 355, 366 (1988). Conduct must "exceed all bounds usually tolerated by decent society" and be "atrocious, and utterly intolerable in a civilized community."

EXTREME AND OUTRAGEOUS CONDUCT BY EACH DEFENDANT

246. Conduct is extreme and outrageous when it "exceeds all bounds usually tolerated by decent society" and is "especially calculated to cause, and does cause, mental distress." Id.

247. The New Jersey Supreme Court has recognized that "liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 367.

248. Each Defendant engaged in conduct meeting this stringent standard.

249. Defendant Ventola:

a. coordinating with defense counsel (Hardaway) against the victim in her own prosecutorial case—betraying prosecutorial duty by protecting criminal (Evins) while persecuting victim (Plaintiff);

b. filing charges March 27, 2024, based on fabricated evidence after Plaintiff notified her March 15, 2024, of fabrication—knowingly prosecuting innocent person shocks conscience;

   c.  denying domestic violence protection for three years while allowing 27+ FRO violations—deliberately allowing domestic violence victim to be continuously abused despite power to stop it; and

   d.  retaliating against victim for exercising First Amendment rights—using criminal prosecution as retaliation against protected speech is tyrannical.

250. Defendant Grifa:

   a.  wrongfully convicting innocent person using fabricated evidence despite red flags, denying forensic examination, and being recklessly indifferent to innocence;

   b.  issuing unconstitutional speech-restrictive protective order prohibiting posting about domestic violence, criticizing government, requiring removal of protected speech, and imposing $500 daily fines—using judicial power to silence protected speech exceeds all bounds of decency; and

   c.  conducting ex parte communications with prosecutor and her family before trial to coordinate wrongful conviction—fundamental betrayal of judicial duty.

251. Defendant Zunic:

   a.  proceeding in jurisdictionally void proceedings for nine months knowing Plaintiff was never served, defense counsel violated service order, and proceeding anyway to reach predetermined outcome;

   b.  personally witnessing Evins commit perjury September 5, 2025 (clicking link on Plaintiff's iPhone seeing content Evins swore was deleted), violating N.J.S.A. 2C:28-1 mandatory reporting duty, and protecting perjurer while punishing victim;

   c.  making false statements of law ("you have no right to discovery") objectively contradicting Rule 5:3-5(a); and

   d.  denying constitutional right to present witnesses while allowing opposing counsel to serve as unsworn witness—fundamental perversion of judicial process.

252. Defendant Venable:

   a.  refusing mandatory duty under Rule 1:12-1(e) to reassign Zunic when impartiality was questioned;

   b.  falsely claiming lack of authority under Rule 1:33 to protect judicial misconduct; and

   c.  enabling continuation of void proceedings causing ongoing harm—supervisory judge protecting judicial misconduct is extreme abuse of authority.

253. Defendant Hardaway:

   a.  directing client (Evins) to fabricate evidence against domestic violence victim;

   b.  coordinating with prosecutor (Ventola) to prosecute the very victim she represents the abuser against—attorney conspiring to harm opposing party exceeds ethical bounds; and

   c.  transmitting fabricated evidence to prosecutor knowing it would cause malicious prosecution.

254. Defendant Evins:

   a.  fabricating evidence to frame domestic violence victim who she was court-ordered to avoid; (b) committing perjury before Zunic on September 5, 2025;

   b.  filing fraudulent Carfagno petition October 16, 2023, using third-party court transcript with false mental illness allegations; and

   c.  violating Final Restraining Order 27+ times while using legal system to persecute victim—systematic abuse of legal process to terrorize victim.

255. Defendant Essex County:

   a.  maintaining policies systematically denying protection to male domestic violence victims based on gender;

   b.  coordinating prosecutors with defense counsel against crime victims;

   c.  retaliating against victims who exercise constitutional rights; and

   d.  ratifying extreme misconduct by refusing intervention despite notice—institutional enabling of constitutional violations.

INTENTIONAL OR RECKLESS CONDUCT

256. All Defendants acted intentionally with purpose to harm Plaintiff or acted with reckless disregard of near certainty that severe emotional distress would result. The coordinated nature, systematic pattern, and continuation despite complaints demonstrates intentional conduct.

SEVERE EMOTIONAL DISTRESS

257. Plaintiff suffered severe emotional distress including:

   a.  trauma from being framed by conspiracy including prosecutor and judges;

   b.  anxiety and fear from systematic denial of justice and protection;

   c.  psychological harm from institutional betrayal by those sworn to protect victims;

   d.  depression from wrongful conviction and ongoing legal persecution;

   e.  PTSD symptoms from continuous harassment and abuse;

   f.  loss of trust in legal system;

   g.  humiliation from public wrongful conviction; and

   h.  ongoing distress from void proceedings and denied protection.

258. Severity evidenced by:

   a.  ongoing psychological treatment;

   b.  inability to function normally;

   c.  disruption of daily life;

   d.  physical manifestations of stress; and

   e.  testimony from mental health professionals.

CAUSATION AND DAMAGES

259. Defendants' extreme and outrageous conduct directly and proximately caused Plaintiff's severe emotional distress. Plaintiff seeks:

   a.  compensatory damages for emotional distress;

   b.  punitive damages given egregious, intentional conduct in the amount of Five million ($5,000,000) dollars; and

   c.  such other relief as Court deems just.

   RELIEF SOUGHT

260. WHEREFORE, Plaintiff requests judgment against all Defendants for:

   a.  COMPENSATORY DAMAGES;

   b.  PUNITIVE DAMAGES;

   c.  PRE-JUDGMENT AND POST-JUDGMENT INTEREST.

   d.  Such other relief as the Court deems just.

**PRAYER FOR RELIEF**

261. **WHEREFORE**, Plaintiff Clayton Howard respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

A. COMPENSATORY DAMAGES in amounts to be proven at trial for: economic losses including lost employment, lost income, business opportunities, attorney's fees, court costs, mandatory counseling, and diminished earning capacity; non-economic losses including emotional distress, anxiety, depression, humiliation, loss of reputation, loss of liberty, post-traumatic stress, damage to family relationships, and loss of enjoyment of

life; constitutional violations including deprivation of First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights; continuing damages from ongoing restrictions, criminal record, and retaliation;

B. TREBLE DAMAGES pursuant to 42 U.S.C. § 1983 (punitive damages) for intentional and malicious violations of Plaintiff's constitutional rights through civil rights conspiracy;

C. PUNITIVE DAMAGES against individual defendants Ventola, Greifa, Zunic, Venable, Hardaway, and Evins in amounts sufficient to punish their egregious conduct and deter similar conduct in the amount of Five million ($5,000,000);

D. DECLARATORY RELIEF declaring that: the Final Protective Order violates the First Amendment and is void; proceedings before Defendant Zunic are void for lack of personal jurisdiction; Defendants' policies, customs, and practices violate the Constitution and laws of the United States and New Jersey; Plaintiff's rights under the Crime Victim's Bill of Rights were violated; and the October 16, 2023 Carfagno petition was fraudulent;

E. INJUNCTIVE RELIEF: removing all speech restrictions from Final Protective Order; requiring Essex County to enforce Final Restraining Order equally; requiring policy changes to prevent future violations; requiring training on constitutional rights, victim rights, and domestic violence; prohibiting further retaliation; and requiring institutional oversight of judicial and prosecutorial conduct;

F. ATTORNEY'S FEES AND COSTS pursuant to 42 U.S.C. § 1988, N.J.S.A. 10:6-2(c), and other applicable provisions;

G. PRE-JUDGMENT AND POST-JUDGMENT INTEREST as permitted by law;

H. COSTS OF SUIT;

I. Such other and further relief as the Court deems just, equitable, and proper.

## VII. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Date: February 23, 2026

Respectfully submitted,

*Clayton Howard*

Clayton Howard, Pro Se
24 Orchard Street
Carteret, New Jersey 07008
Telephone: 929-781-7791
Email: itsclaytonhoward@gmail.com

VERIFICATION

I, Clayton Howard, hereby verify that the statements made in this Complaint are true to the best of my knowledge, information, and belief. I understand that making false statements in this Complaint could subject me to criminal penalties under 18 U.S.C. § 1001 and 28 U.S.C. § 1746.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 23, 2026.

*Clayton Howard*

Clayton Howard

PRESERVATION NOTICE

The term "you," "your," or "yours" as used herein shall refer to you (the recipient of this letter), as well as to the respondents and any individuals responsible for the custody and control of the below information, including, but not limited to, those individuals' administrative assistants, secretaries, agents, employees, information technology personnel and third-party vendors.

From this point forward, you are directed to prevent "spoliation," defined as altering, changing, updating, destroying (even if periodically), editing, or deleting any information set forth hereafter.

If you cause any such alteration, destruction, change, direct, or allow it to occur, you may be charged with discovery rule violations for which sanctions may be imposed. Further, your failure to abide by this request could result in severe penalties against you and form the basis of legal claims for spoliation.

<u>Electronically Stored Information:</u>

In terms of electronically stored information, you are directed to prevent any destructive, alternative or other change to any web pages, virtual profiles or identical (including, but not limited to, Facebook, Instagram, Pinterest, Twitter, Tumblr, LinkedIn, Snapchat, Google Plus+, Flickr, Vine, About.me, ask.fm etc., or any other social media-based web profile or networking site account), emails, voice messages, text messages, instant messages or messaging systems, recordings, digital recordings, media images and videos, temporary memory, memory sticks, portable memory devices, laptops or computers, CDs, DVDs, USB devices, databases, computer activity logs, internet browsing history (including cookies), network access and server activity logs, word processing files and file fragments, backup and archival files, imaging and facsimile files, electronic calendar and scheduling program files and file fragments as well as any other contact and relationship management data (e.g., Outlook), electronic spreadsheet files and file fragments, pertaining in any way to this controversy of the parties or any potential witnesses. This includes a request that such information not be modified, altered, or deleted due to data compression or disk fragmentation (or other optimization procedures), which processes you are hereby directed to suspend until that data can be preserved, copied, and produced.

You are directed not to modify, alter, or delete or allow modifications, alterations, or deletions to be made to any electronically stored information. You are further directed to preserve all, and not to destroy any, passwords, decryption productions (including, if necessary, the software to decrypt the files), network access codes, manuals, tutorials, written instructions, decompression or reconstruction software, and any other information and things necessary to access, view, and (if necessary) reconstruct the electronic data we will request through discovery.

<u>Paper Information:</u>

In terms of the paper information, you are directed to preserve any and all emails, videos, texts, memos, reports, documents, notes, correspondence, photographs, investigative information, or other documents which pertain in any way to the controversy, parties, or witnesses in this matter. Through discovery, we expect to obtain from you a number of documents and other data, including text messages, emails, photographs, and other information stored on computers, electronic devices, and telephones.

Although we may bring a motion with a court for order-preserving documents and other data from destruction or alteration, your obligation to preserve documents and other data for discovery, in this case, arises independently from any order on such motion. Electronic documents and the storage media, including but not limited to telephones on which they reside, contain relevant, discoverable information beyond what may be found in printed documents. Therefore, even where a paper copy exists, we will likely seek all documents in their original, electronic form, along with metadata or information about those documents on the media. We will seek paper printouts of only those documents that contain unique information created after they were printed (e.g., paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting, and redactions) and any paper documents for which no corresponding electronic files exist.

The laws and rules prohibiting the destruction of evidence apply to electronically stored information in the same manner they apply to other evidence. Due to its format, electronic information is easily deleted, modified, or corrupted. Accordingly, you must take every reasonable step to preserve this information until the final resolution of this matter. This may include, but would not be limited to, an obligation to discontinue all data destruction and backup tape recycling policies.

Concerning electronic data created after this letter's delivery date, relevant evidence should not be destroyed. You must take the steps necessary to avoid the destruction of such evidence.

 Dated: February 23, 2026

*Clayton Howard*

Clayton Howard

Plaintiff Pro se