# EXHIBIT C

SUPERIOR COURT OF NEW JERSEY

LAW DIVISION: ESSEX COUNTY

CLAYTON HOWARD,                                    Docket No.: ESX-L-008941-25

Plaintiff,

v.                                                 CIVIL ACTION

CYNTHIA HARDAWAY, ESQ., individually
and in her professional capacity,
FRANCYNA EVINS, and JANE DOE,                      SECOND AMENDED COMPLAINT
an individual known online as @thatgirlhenny,
@ThatGirlHennyReviews, and by other                JURY DEMAND
social media handles,
Defendants.

## INTRODUCTION

1. This civil action arises from a coordinated campaign of defamation, fraud, and malicious conduct perpetrated by Defendants against Plaintiff in violation of New Jersey common law, statutory law, constitutional protections, and federal civil rights statutes. Defendants knowingly submitted false information to state officials and prosecutors, engaged in a nationwide defamation campaign reaching over one million people, and conspired to cause severe emotional and reputational harm to Plaintiff through fabricated allegations of mental illness, disability fraud, and criminal conduct.

## PARTIES

2. Plaintiff CLAYTON HOWARD is an individual residing at 24 Orchard Street, Carteret, New Jersey 07008.

3. Defendant CYNTHIA HARDAWAY, ESQ. is an attorney licensed to practice law in New Jersey, with a principal office believed to be located in Essex County. At all relevant times, Hardaway acted individually and in her professional capacity as legal counsel for Defendant Evins.

4. Defendant FRANCYNA EVINS is an individual believed to reside in New York who has engaged in substantial activities within New Jersey sufficient to confer jurisdiction upon this Court.

5. Defendant JANE DOE is an individual whose true name is currently unknown to Plaintiff but who operates social media accounts under the handles @thatgirlhenny, @ThatGirlHennyReviews, and related usernames. Jane Doe is believed to reside within the United States and has engaged in substantial activities within New Jersey through publication of defamatory content concerning Plaintiff, participation in the civil conspiracy, and intentionally causing injury to persons and property within New Jersey. Plaintiff will seek leave to amend this Complaint to substitute Jane Doe's true name upon discovery through third-party subpoenas to YouTube/Google LLC and other platforms, ISP records, and payment processor records.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to N.J. Const. art. VI, § 3, ¶ 2, and N.J.S.A. 2A:15-5.9 et seq.

7. This Court has personal jurisdiction over Defendants pursuant to N.J. Ct. R. 4:4-4(b) and (c) as Defendants have purposefully transacted business within New Jersey, committed tortious acts within New Jersey, and caused injury to persons and property within New Jersey.

8. Venue is proper in Essex County pursuant to N.J. Ct. R. 4:3-2 because a substantial part of the events occurred in Essex County, including court proceedings in Superior Court, Chancery Division, Family Part, Essex County; communications with Essex County prosecutors; and acts causing injury to Plaintiff while present in Essex County.

## FACTUAL ALLEGATIONS

A. Final Restraining Order

9. On December 1, 2022, the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, issued Final Restraining Order AFR-07-3579-22 ("FRO") in favor of Plaintiff and protected minor Dior Smith against Defendant Evins pursuant to N.J.S.A. 2C:25-17 et seq.

10. The FRO was issued after a full trial at which the Court found that Defendant Evins committed acts of harassment and domestic violence against Plaintiff, including theft, burglary, and a pattern of harassing conduct. The Court dismissed Defendant Evins's cross-petition and ordered Evins to maintain 1,000 feet distance from Plaintiff and the protected minor.

11. Beginning in February 2024, Defendant Hardaway served as legal counsel for Defendant Evins in criminal proceedings in Essex County and related Family Court matters.

B. Fraudulent Medical Records

12. In or around October 2023, Defendant Evins obtained medical and court records belonging to a different individual who shares Plaintiff's name. These records falsely indicated schizophrenia and SSI disability benefits.

13. The records showed an age discrepancy of approximately 18 years between the subject individual and Plaintiff.

14. Despite knowing or having reason to know that these records did not pertain to Plaintiff, Defendants intentionally misrepresented them as Plaintiff's records and used them to support false criminal charges and a defamation campaign.

15. Plaintiff has never been diagnosed with schizophrenia, has never received SSI disability benefits, and is not mentally ill.

C. False Submissions to State Officials (March 26, 2024)

16. On March 26, 2024, Defendant Hardaway, acting on behalf of and in conspiracy with Defendant Evins, sent emails to Essex County prosecutors, the trial judge, the Special Remand Court, and the Essex County Sheriff's Office containing materially false statements:

a. That Plaintiff created and operated YouTube channel "@43yearoldbully - Cop Caller Clay" threatening a state prosecutor;

b. That Plaintiff suffered from schizophrenia and received SSI disability benefits;

c. That Plaintiff created a banner image calling a prosecutor a "racist white bitch";

d. That Plaintiff posed a danger to state officials and law enforcement.

17. Each statement was false and known to be false by Defendants.

18. The YouTube channel was created, controlled, and operated by Defendant Evins, not Plaintiff. The channel name referenced Plaintiff's name (Clayton/"Clay") and age (43) to falsely implicate Plaintiff.

19. Defendant Evins manipulated Plaintiff's original video content by editing separate portions together and adding false captions to create misleading narratives designed to falsely incriminate Plaintiff.

20. A grand jury subpoena to Verizon traced the IP address associated with the YouTube channel to Laura Owens, Defendant Evins's mother, with whom Evins shares a cellphone account, conclusively establishing Evins's ownership.

21. During proceedings in Middlesex County Superior Court on October 31, 2024, prosecutors testified that Defendant Evins admitted ownership of the channel.

D. Direct Results of False Statements

22. As a direct result of Defendants' false submissions:

a. Plaintiff was charged with cyber harassment under N.J.S.A. 2C:33-4.1;

b. Plaintiff was wrongfully prosecuted and convicted in Essex County Family Court based on false evidence;

c. Essex County Prosecutor's Office terminated all communication with Plaintiff, violating his rights under N.J.S.A. 52:4B-34 et seq. and 18 U.S.C. § 3771;

d. Plaintiff was barred by Temporary Protective Order FV-07-3243-24 (Ventola v. Howard) from attending the criminal trial of Defendant Evins;

e. Defendant Evins was acquitted in the criminal matter, benefiting directly from the false narrative;

f. Plaintiff suffered severe emotional distress, reputational harm, economic losses, and loss of access to his minor daughter.

E. Nationwide Defamation Campaign

23. Beginning in April 2023 and continuing through at least September 2025, Defendants Evins and Hardaway engaged in a coordinated, systematic campaign to defame Plaintiff on a national scale.

24. Defendant Evins created and published over 30 videos titled "Breaking Up With a Diagnosed Schizophrenic" and maintained an Instagram campaign "Breakingupisnotacrime," both falsely portraying Plaintiff as mentally ill, dangerous, abusive, and criminal.

25. The campaign used Plaintiff's name, image, and personal information without authorization, employed hashtag #claytonhoward, and tagged Plaintiff's social media accounts to ensure maximum exposure.

26. In August and September 2025, Defendants Evins and Hardaway appeared together on podcast "unwinewithtashak," hosted by Latasha Kebe ("Tasha K"), which has approximately one million subscribers. During this appearance, Defendants repeated false allegations, failed to disclose court findings in Plaintiff's favor, and used the platform to spread defamatory statements to a national audience.

27. Defendant Evins recruited multiple third parties to create and distribute defamatory content, including Maritza Stewart, Malcolm Penn White, and individuals operating as @thatgirljenny and @rahiemtherabbit, PressPlay Media, and Defendant Jane Doe.

28. Defendant Hardaway's participation in the national media campaign was conducted with full knowledge of the FRO, the falsity of the medical records, court findings that Defendant Evins was the offender, and the severe harm to Plaintiff. Hardaway's professional position as an attorney gave additional credibility to the false statements, compounding the harm.

F. Jane Doe's Participation in the Conspiracy

29. Beginning in or around August 2025, Defendants Evins and Hardaway systematically recruited third-party content creators to serve as proxies for amplifying defamatory allegations against Plaintiff.

30. The purpose of recruiting third-party proxies was to: circumvent the FRO prohibiting Defendant Evins from directly contacting Plaintiff; create the appearance of independent corroboration; expand the reach to new audiences; insulate Defendants from direct liability; continue harassment through multiple channels; and create a false narrative of widespread public concern.

31. Defendants provided third-party proxies with false information, fabricated evidence including fraudulent medical records, talking points designed to maximize harm, direct access through interviews, encouragement and approval for defamatory content, and promotional support through cross-platform amplification.

32. Jane Doe operates social media accounts under handle @thatgirlhenny and related usernames, including YouTube channel "ThatGirlHennyReviews."

33. In or around August through December 2025, Jane Doe created, published, and distributed multiple videos and social media posts featuring and promoting Defendants Hardaway and Evins, repeating false and defamatory allegations against Plaintiff.

34. Jane Doe's defamatory content included: videos featuring Hardaway discussing the case and repeating false allegations that Plaintiff is mentally ill, dangerous, and engaged in criminal conduct; videos featuring Evins repeating false allegations that Plaintiff is a domestic violence abuser despite contrary court findings; content falsely portraying Plaintiff as suffering from schizophrenia; content falsely characterizing Plaintiff as the aggressor when courts found him to be the victim; content characterizing Plaintiff as a "vexatious litigant"; and content that failed to disclose material facts including the FRO protecting Plaintiff, court findings that Evins committed domestic violence against Plaintiff, the fraudulent nature of medical records, Evins's admitted creation of the false YouTube channel, and pending criminal contempt charges against Evins.

35. Jane Doe published this content knowing it concerned a New Jersey resident, knowing it related to New Jersey court proceedings, and knowing it would cause injury to Plaintiff in New Jersey.

36. Jane Doe acted with actual malice or reckless disregard by: failing to conduct independent verification before publishing; providing a platform to individuals subject to restraining orders without investigating underlying court findings; repeating allegations that minimal investigation would have revealed to be false; continuing to maintain defamatory

content online after falsity became publicly documented; and failing to retract or correct false statements despite having access to contradictory information.

37. Jane Doe's conduct was undertaken in concert and coordination with Defendants Evins and Hardaway as part of the civil conspiracy to defame Plaintiff, destroy his credibility, and cause severe harm.

38. On December 15, 2025, Plaintiff sent Jane Doe a comprehensive cease and desist letter providing complete notice of falsity, detailed evidence including court findings and grand jury subpoena results, notice of pending civil litigation and potential liability, a 48-hour deadline to remove all defamatory content, and an explicit offer to resolve the matter without adding Jane Doe as a defendant if she complied.

39. As of the filing of this Complaint, Jane Doe has failed to remove the defamatory content, failed to respond to the cease and desist demand, and has continued to maintain the defamatory videos and posts online, demonstrating knowledge of falsity and willful participation in the ongoing conspiracy.

40. Upon discovery of Jane Doe's true identity through lawful discovery methods including service of third-party subpoenas on YouTube/Google LLC, ISP providers, payment processors, and cross-referencing information from multiple sources, Plaintiff will move to amend this Complaint to substitute her true name and effect personal service.

G. The Conspiracy

41. At all relevant times, Defendants Hardaway, Evins, and Jane Doe acted in concert, conspiracy, and coordination to accomplish unlawful objectives including: using falsified medical records to defame Plaintiff and support false criminal charges; submitting false information to state officials on March 26, 2024; joint participation in the national media campaign; provision of professional legitimacy and legal cover by Hardaway; mutual understanding that coordinated actions would cause severe harm; recruitment and coordination of third-party proxies including Jane Doe; and continuing agreement to refuse retraction of false statements despite knowledge of their falsity.

42. On May 20, 2024, Plaintiff requested that Defendant Hardaway retract the false information. Hardaway flatly refused to issue any retraction despite knowing or having reason to know the information was false.

H. Plaintiff's Damages

43. As a direct result of Defendants' conduct, Plaintiff has suffered substantial damages including:

a. Reputational Harm: Destruction of Plaintiff's reputation on a national scale through defamatory statements distributed to over one million people, false portrayal as mentally ill, dangerous, abusive, and criminal, with ongoing harm from content remaining accessible online.

b. Emotional Distress: Severe anxiety, depression, humiliation, shame, sleep disturbances, loss of appetite, difficulty concentrating, and forced reliving of traumatic events.

c. Loss of Parental Relationship: Loss of access to minor daughter and profound emotional suffering from deprivation of fundamental parental rights.

d. Economic Losses - $212,000 minimum: Legal defense costs ($69,250), lost income and business opportunities ($128,000), medical and psychological treatment ($6,900), and reputation management ($7,850).

e. Violation of Rights: Deprivation of rights under the New Jersey Constitution, NJPDVA, VAWA, CVRA, NJCVRA, and other victim protection statutes.

STATUTE OF LIMITATIONS DEFENSES

44. To the extent Defendants assert statute of limitations defenses, Plaintiff relies on:

a. Continuing Violation Doctrine: The defamation and tortious conduct constitute a single, continuing course of wrongful conduct that is ongoing and indivisible. The last overt act occurred within one year of filing this Complaint when Defendants appeared on national podcast in September 2025 and refused to retract false statements.

b. Discovery Rule: Plaintiff could not reasonably have discovered the full extent of Defendants' conspiracy until later events revealed the true nature of their relationship and scheme, including ownership of the YouTube channel traced through grand jury subpoena (October 31, 2024), fraudulent nature of medical records, and professional relationship between Hardaway and Evins.

c. Fraudulent Concealment: Defendants actively and intentionally concealed material facts essential to Plaintiff's causes of action, including Evins's ownership of the YouTube channel, the fraudulent nature of medical records, the extent of their conspiracy, and Hardaway's active participation in the defamation campaign.

d. Multiple Separate Publications: Each of over 30 videos, multi-platform republications, the March 26, 2024 communications to state officials, the August-September 2025 national media campaign, continuous Instagram campaign, and recruitment of third-party publishers constitute separately actionable publications. Numerous publications occurred within one year of filing.

COUNT ONE: DEFAMATION

*(All Defendants)*

45. Plaintiff incorporates all preceding allegations.

46. Defendants published false and defamatory statements about Plaintiff including: that Plaintiff suffers from schizophrenia; that Plaintiff receives SSI disability benefits; that Plaintiff created and operated a threatening YouTube channel; that Plaintiff is dangerous and unstable; that Plaintiff engaged in domestic violence against Evins; that Plaintiff engaged in vexatious litigation; that Plaintiff engaged in cyber harassment; and that Plaintiff made false reports of child abuse.

47. These statements were published to Essex County prosecutors and law enforcement, judges, millions of social media users and podcast listeners, numerous third-party content creators, and the general public.

48. The statements were false and defamatory per se as they imputed to Plaintiff a loathsome disease (mental illness) under N.J.S.A. 2A:43-1, imputed conduct incompatible with his lawful profession, imputed criminal offenses involving moral turpitude, and exposed Plaintiff to public hatred, contempt, and ridicule.

49. Defendants knew the statements were false or acted with reckless disregard for truth or falsity.

50. Defendants acted with actual malice and with specific intent to harm Plaintiff's reputation.

51. As a direct result, Plaintiff suffered substantial injury to reputation, severe emotional distress, economic losses, loss of relationship with minor child, and other damages.

52. Defendants' conduct was willful, wanton, malicious, and undertaken with reckless and outrageous disregard for Plaintiff's rights, entitling Plaintiff to punitive damages pursuant to N.J.S.A. 2A:15-5.9 et seq.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, costs and fees, and such other relief as the Court deems just.

## COUNT TWO: FALSE LIGHT INVASION OF PRIVACY

*(All Defendants)*

53. Plaintiff incorporates all preceding allegations.

54. Defendants gave publicity to matters concerning Plaintiff that placed Plaintiff in a false light before the public, specifically portraying Plaintiff as mentally ill, suffering from schizophrenia, a recipient of disability benefits, dangerous and unstable, a domestic violence abuser, engaging in criminal conduct, and a vexatious litigant.

55. This false light portrayal would be highly offensive to a reasonable person.

56. Defendants acted with knowledge of or reckless disregard for the falsity of the publicized matter and the false light in which Plaintiff would be placed.

57. As a direct result, Plaintiff suffered substantial injury to reputation, severe emotional distress, economic losses, loss of relationship with minor child, and other damages.

58. Defendants' conduct was willful, wanton, malicious, and undertaken with reckless and outrageous disregard for Plaintiff's rights, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, costs and fees, and such other relief as the Court deems just.

## COUNT THREE: CIVIL CONSPIRACY

### *(All Defendants)*

59. Plaintiff incorporates all preceding allegations.

60. Defendants entered into an agreement to accomplish an unlawful purpose or a lawful purpose by unlawful means, specifically: to submit false information to state officials to cause Plaintiff to be criminally prosecuted; to use falsified court records to defame Plaintiff; to conduct a nationwide defamation campaign; to deprive Plaintiff of statutory rights as a crime victim; to cause severe emotional distress and reputational harm; and to obstruct justice and interfere with court proceedings.

61. In furtherance of this conspiracy, Defendants committed overt acts including: Evins obtaining falsified court records and providing them to Hardaway; Hardaway reviewing and submitting false information to state officials on March 26, 2024; coordinating creation and distribution of defamatory social media content; appearing together on a national podcast; recruiting third-party proxies including Jane Doe to amplify defamatory content; and refusing to retract false statements despite knowledge of their falsity.

62. Defendants acted with common purpose and shared intent to harm Plaintiff.

63. As a direct result, Plaintiff suffered substantial injury to reputation, severe emotional distress, economic losses, loss of relationship with minor child, violation of constitutional and statutory rights, and other damages.

64. Defendants' conduct was willful, wanton, malicious, and undertaken with reckless and outrageous disregard for Plaintiff's rights, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, costs and fees, and such other relief as the Court deems just.

## COUNT FOUR: NEGLIGENT MISREPRESENTATION

*(Defendant Hardaway Only)*

65. Plaintiff incorporates all preceding allegations.

66. Defendant Hardaway, as an attorney licensed in New Jersey, owed a duty of care to Plaintiff as a non-client third party under Petrillo v. Bachenberg, 139 N.J. 472 (1995), because: Hardaway was aware that the primary intent of her March 26, 2024 communications was to influence state officials' treatment of Plaintiff and cause Plaintiff to be criminally charged; Hardaway knew Plaintiff's identity and knew that prosecutors and law enforcement would rely on the accuracy of her representations; and there exists a direct and close nexus between Hardaway's submission of false information and the substantial harm suffered by Plaintiff.

67. On March 26, 2024, Hardaway made material representations of fact to Essex County prosecutors, judges, and law enforcement in formal legal communications, including that court records indicating schizophrenia and SSI benefits pertained to Plaintiff, that Plaintiff created the threatening YouTube channel, and that Plaintiff posed a danger to state officials.

68. Each representation was false and made without reasonable investigation or verification.

69. Hardaway breached her duty by: failing to verify the accuracy of medical records; failing to investigate whether Plaintiff actually created the YouTube channel; failing to disclose that her own client created the channel; making categorical representations without reasonable basis; presenting information designed to mislead prosecutors; refusing to retract false statements when requested on May 20, 2024; and continuing to participate in the defamation campaign after being made aware of the falsity.

70. State officials justifiably relied on Hardaway's representations because they were made by a licensed attorney in formal legal communications accompanied by purported documentary evidence.

71. As a direct result, Plaintiff was charged, prosecuted, convicted, deprived of victim rights, excluded from criminal proceedings, suffered severe emotional distress and reputational harm, incurred substantial legal fees, lost access to his minor daughter, and suffered impairment of constitutional rights.

72. Plaintiff is entitled to recover all costs, expenses, and fees incurred as a result of Hardaway's negligent misrepresentations, including legal defense costs, filing fees, transcript costs, travel expenses, investigation costs, and other related expenses, pursuant to fee-shifting principles.

WHEREFORE, Plaintiff demands judgment against Defendant Hardaway for compensatory damages, recovery of all legal fees and costs, pre-judgment and post-judgment interest, and such other relief as the Court deems just.

## COUNT FIVE: FRAUD

### (All Defendants)

73. Plaintiff incorporates all preceding allegations.

74. Defendants made material misrepresentations of fact to state officials, prosecutors, and the public that court records pertained to Plaintiff, Plaintiff created the YouTube channel, Plaintiff threatened prosecutors, and Plaintiff was mentally ill and dangerous.

75. Defendants knew these representations were false or made them with reckless disregard for truth or falsity.

76. Defendants made these false representations with intent that state officials, prosecutors, law enforcement, courts, and the public would rely upon them, specifically to cause Plaintiff to be criminally prosecuted, destroy Plaintiff's credibility, undermine the FRO, deprive Plaintiff of statutory rights, and cause reputational and emotional harm.

77. State officials, prosecutors, and law enforcement justifiably relied on Defendants' false representations, resulting in investigation, prosecution, and conviction of Plaintiff based on false evidence.

78. Plaintiff suffered additional damages including severe emotional distress, reputational harm, economic losses, and loss of relationship with minor child.

79. Defendants' conduct was willful, wanton, malicious, and undertaken with reckless and outrageous disregard for Plaintiff's rights, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, costs and fees, and such other relief as the Court deems just.

## COUNT SIX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (All Defendants)

80. Plaintiff incorporates all preceding allegations.

81. Defendants engaged in extreme and outrageous conduct by: knowingly submitting false information to state officials causing Plaintiff to be criminally prosecuted; using falsified court records to publicly portray Plaintiff as mentally ill; conducting a coordinated nationwide defamation campaign reaching over one million people; appearing on national media platforms to spread false and humiliating allegations; recruiting third parties including Jane Doe to amplify defamatory content; refusing to retract false statements despite

knowledge of falsity and severe harm being caused; causing Plaintiff to lose access to his minor child; violating Plaintiff's statutory and constitutional rights as a crime victim; and engaging in systematic victim shaming designed to humiliate and intimidate Plaintiff.

82. Defendants' conduct was intentional and deliberate.

83. Defendants' conduct was extreme and outrageous, going beyond all bounds of decency and utterly intolerable in a civilized society.

84. Defendants acted with specific intent to cause Plaintiff severe emotional distress or with reckless disregard for the high probability that severe emotional distress would result.

85. As a direct result, Plaintiff has suffered and continues to suffer severe emotional distress manifesting in physical symptoms including anxiety, depression, sleep disturbances, loss of appetite, difficulty concentrating, and other manifestations.

86. Defendants' conduct was willful, wanton, malicious, and undertaken with reckless and outrageous disregard for Plaintiff's rights, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, costs and fees, and such other relief as the Court deems just.

COUNT SEVEN: 42 U.S.C. § 1985(2) CONSPIRACY TO OBSTRUCT JUSTICE

*(All Defendants)*

87. Plaintiff incorporates all preceding allegations.

88. Defendants conspired to obstruct justice by interfering with Plaintiff's access to courts, participation in judicial proceedings, and rights as a crime victim in state criminal proceedings against Defendant Evins, motivated by animus toward Plaintiff based on his status as a domestic violence victim who successfully obtained a Final Restraining Order.

89. The conspiracy included agreement to: prevent Plaintiff from testifying truthfully as a crime victim; destroy Plaintiff's credibility through fabricated allegations; cause prosecutors to terminate communication with Plaintiff and exclude him from criminal proceedings in violation of statutory rights; cause Plaintiff to be falsely arrested and prosecuted to intimidate him; and obstruct enforcement of the Final Restraining Order by portraying Plaintiff as the aggressor.

90. Overt acts in furtherance included: Hardaway submitting false information to Essex County prosecutors, judges, and law enforcement on March 26, 2024; coordination with pending criminal proceedings against Evins to undermine Plaintiff's participation; refusal to retract false statements after grand jury subpoena results traced the YouTube channel to Evins and prosecutors confirmed Evins's admission; engagement in nationwide defamation

campaign to intimidate Plaintiff and prejudice witnesses, prosecutors, and judicial officers; joint appearances on national media platforms; Hardaway providing professional legitimacy knowing allegations would carry additional weight with prosecutors and courts; and recruitment of third-party proxies including Jane Doe.

91. As a direct result, Plaintiff was charged, prosecuted, convicted, Essex County Prosecutor's Office terminated communication with Plaintiff as a crime victim in violation of N.J.S.A. 52:4B-34 et seq. and 18 U.S.C. § 3771, Plaintiff was barred from attending Evins's criminal trial, Evins was acquitted benefiting from the false narrative, Plaintiff's testimony was effectively nullified, and enforcement of the FRO was substantially undermined.

92. Defendants acted with actual knowledge that their conduct would obstruct justice or with reckless disregard for the high probability that obstruction would occur.

93. Defendants' conduct was willful, wanton, malicious, and undertaken with deliberate intent to deny Plaintiff equal protection of the laws, entitling Plaintiff to compensatory damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. §§ 1985(2) and 1988(b).

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as the Court deems just.

## COUNT EIGHT: 42 U.S.C. § 1986 NEGLECT TO PREVENT CONSPIRACY
### *(Defendant Hardaway Only)*

94. Plaintiff incorporates all preceding allegations.

95. Defendant Hardaway, as a licensed attorney and officer of the court, had actual knowledge of the conspiracy alleged in Count Seven and of the wrongful acts being committed by Defendant Evins in furtherance of that conspiracy.

96. Hardaway had actual knowledge that: court records did not pertain to Plaintiff based on age discrepancies and inconsistencies; Evins, not Plaintiff, created and operated the YouTube channel based on the channel name, Evins's control of footage, grand jury subpoena results, and Evins's admission to prosecutors; the purpose of submitting false information was to cause Plaintiff to be falsely prosecuted, destroy his credibility, prevent participation in criminal proceedings, obstruct enforcement of the FRO, and deprive Plaintiff of rights as a crime victim; and the conspiracy was causing ongoing harm including false prosecution, exclusion from proceedings, termination of prosecutor communication, severe reputational damage, and emotional distress.

97. Despite this knowledge, Hardaway had power to prevent or aid in preventing the conspiracy's wrongs by: refusing to submit false information; conducting reasonable inquiry;

disclosing to prosecutors that the records did not pertain to Plaintiff and the YouTube channel was created by her client; withdrawing false submissions and issuing corrections; retracting false statements when requested on May 20, 2024; refusing to participate in the nationwide defamation campaign; advising Evins that her conduct was unlawful; withdrawing as counsel if Evins refused to cease unlawful conduct; and reporting the misconduct to appropriate authorities.

98. Hardaway neglected and refused to take any action to prevent the conspiracy, instead: actively participated by submitting false information; lent professional credibility to false allegations; flatly refused to retract false statements; continued to participate in the defamation campaign by appearing on national media platforms; took no steps to correct false information or mitigate harm; and provided ongoing legal counsel and support to Evins in furtherance of the conspiracy's objectives.

99. As a direct result, Plaintiff suffered all injuries detailed above.

WHEREFORE, Plaintiff demands judgment against Defendant Hardaway for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as the Court deems just.

## COUNT NINE: NEW JERSEY CONSUMER FRAUD ACT
### *(Defendant Hardaway Only)*

100. Plaintiff incorporates all preceding allegations.

101. Defendant Hardaway engaged in unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations in connection with the sale or advertisement of legal services and in the subsequent performance of those services, specifically representing to state prosecutors, law enforcement, and judicial officers that Plaintiff suffered from schizophrenia, received SSI disability benefits, created the threatening YouTube channel, pertained to medical records when she knew or should have known they pertained to a different individual, posed a danger to state officials, and participating in national media implying her client's allegations were truthful when knowing they were false.

102. These representations concerned material facts likely to affect the conduct and decisions of state prosecutors, law enforcement officials, judicial officers, and the public.

103. Hardaway made these representations with knowledge of their falsity or with reckless disregard for truth, with intent that state officials, prosecutors, law enforcement, courts, and the public would rely upon them, knowing they would induce prosecutors to charge Plaintiff, induce law enforcement to treat Plaintiff as dangerous, induce courts to issue protective

orders against Plaintiff, cause the public to view Plaintiff as mentally ill, undermine Plaintiff's credibility, and cause substantial reputational and economic harm.

104. The misrepresentations were made in connection with the sale and advertisement of legal services and in the subsequent performance of those services. Hardaway provided legal representation to Evins for compensation, the misrepresentations were made in the course of providing those services, were made to further Hardaway's commercial interests by advancing her client's objectives, enhancing her professional reputation through media appearances, generating publicity for her legal practice, and demonstrating purported effectiveness as counsel.

105. Hardaway also engaged in unconscionable commercial practices that offend public policy and are immoral, unethical, oppressive, and unscrupulous by: knowingly submitting false evidence to state prosecutors; refusing to retract false statements despite knowledge of falsity; participating in a coordinated defamation campaign against an individual protected by a domestic violence restraining order; using her professional status to lend credibility to false allegations; violating her ethical obligations under the New Jersey Rules of Professional Conduct; exploiting Plaintiff's status as a domestic violence victim; engaging in victim shaming and revictimization tactics; and appearing on national media to spread false allegations while failing to disclose known facts undermining those allegations.

106. As a direct result, Plaintiff suffered ascertainable losses including: legal fees and costs defending against false criminal charges ($69,250); lost wages from time spent attending court proceedings and defending against false allegations ($50,000); loss of business opportunities due to reputational harm ($128,000); costs of attempting to remove or counteract defamatory content ($7,850); travel expenses ($3,600); costs of obtaining transcripts, records, and evidence ($4,400); ascertainable loss of reputation and relationships with concrete economic value; ascertainable loss of ability to earn income due to reputational harm; and other quantifiable economic losses.

107. Hardaway's violations were willful because she acted with knowledge that her conduct violated the CFA or with reckless disregard.

108. Plaintiff is entitled to treble damages for all ascertainable losses under N.J.S.A. 56:8-19 and to recover reasonable attorneys' fees, filing fees, and costs of suit.

WHEREFORE, Plaintiff demands judgment against Defendant Hardaway for treble damages for all ascertainable losses, attorneys' fees, filing fees, costs of suit, and such other relief as the Court deems just.

COUNT TEN: VIOLATIONS OF NJPDVA CONFIDENTIALITY PROVISIONS

*(All Defendants)*

109. Plaintiff incorporates all preceding allegations.

110. N.J.S.A. 2C:25-33 provides that records of applications for restraining orders "shall not be open to public inspection, except... by order of a Superior Court judge," intended to protect domestic violence victims from further victimization, prevent perpetrators from using court records to harass victims, safeguard privacy of sensitive information, encourage victims to seek protection without fear of public exposure, and prevent weaponization of domestic violence proceedings against victims.

111. Plaintiff is a protected person under Final Restraining Order AFR-07-3579-22 issued after a full trial at which the Court found that Evins committed acts of domestic violence against Plaintiff and dismissed Evins's cross-petition.

112. Defendants violated confidentiality provisions by: publicly disclosing confidential information from domestic violence proceedings including details of the relationship, allegations made during restraining order proceedings, personal information revealed in court filings, and the existence and nature of the proceeding itself through social media posts, national podcast appearances, third-party content creators, and media interviews; using protected information to harass, intimidate, and retaliate against Plaintiff by portraying Plaintiff as the aggressor when the Court found him to be the victim, characterizing the proceeding as "vexatious litigation" initiated by Plaintiff, publicly attacking Plaintiff's credibility based on information from proceedings, and using information as ammunition for nationwide defamation campaign; weaponizing the proceedings against the protected person by reversing victim and offender roles, creating Instagram campaign "Breakingupisnotacrime" portraying Evins as the victim, using Plaintiff's status to paint him as mentally unstable, and exploiting details to craft false narratives; disclosing information with intent to undermine effectiveness of the FRO, create public sympathy for Evins despite court findings, intimidate Plaintiff into abandoning enforcement, and discourage Plaintiff from seeking further legal protection; and publicly mischaracterizing court findings by claiming Plaintiff was the abuser, failing to disclose that Evins's cross-petition was dismissed, omitting that the Court found Evins committed multiple acts of domestic violence, and creating false impression that Plaintiff initiated baseless litigation.

113. These disclosures were made without court authorization and in direct violation of N.J.S.A. 2C:25-33.

114. Defendants had actual knowledge that the information was protected by statutory confidentiality provisions or acted with reckless disregard for the confidential nature of the information.

115. As a direct result, Plaintiff suffered: revictimization through public exposure of confidential domestic violence proceedings; severe emotional distress from having protected information weaponized against him; undermining of the protective order's effectiveness; reputational harm from public mischaracterization of court findings; harassment and intimidation intended to discourage enforcement of rights; chilling effect on willingness to seek legal protection; denial of protections the NJPDVA was designed to provide; and additional economic losses and other damages.

116. While N.J.S.A. 2C:25-33 does not explicitly create a private cause of action, New Jersey courts recognize that violation of a statute intended to protect a class of persons creates a tort action for members of that class who are injured by the violation under O'Neill v. Windshire Coppermine, Inc., 164 N.J. 163 (2000). Plaintiff is a member of that protected class as a domestic violence victim who obtained a final restraining order.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, injunctive relief, costs and fees, and such other relief as the Court deems just.

## COUNT ELEVEN: ABUSE OF PROCESS

### (All Defendants)

117. Plaintiff incorporates all preceding allegations.

118. Defendants used legal process through: criminal complaints and law enforcement reports (Hardaway's March 26, 2024 submissions to Essex County prosecutors and law enforcement designed to cause Plaintiff to be criminally charged, resulting in prosecution under N.J.S.A. 2C:33-4.1); judicial proceedings (false submissions to judges influencing judicial proceedings and decisions); restraining order proceedings (Evins filing multiple restraining order petitions against Plaintiff based on fabricated allegations); communications with law enforcement (false reports to multiple law enforcement agencies); and service of process (causing process to be served on Plaintiff in various legal actions designed to harass).

119. Defendants used these legal processes primarily to accomplish improper purposes, not for legitimate resolution of legal disputes, including: obstruction of justice (to prevent Plaintiff from testifying as crime victim, undermine credibility, cause prosecutors to terminate communication in violation of statutory rights, exclude Plaintiff from attending criminal trial, punish Plaintiff for cooperating with law enforcement); retaliation and

harassment (to retaliate for obtaining FRO, harass in violation of restraining order protections, punish for cooperation, cause emotional distress and financial hardship); defamation and reputation destruction (to create false official record, provide veneer of legitimacy for defamation campaign, generate content for social media and national media appearances, destroy reputation); custody and parental alienation (to cause Plaintiff to lose access to minor daughter, alienate child's mother, justify withholding custody based on fabricated concerns); undermining domestic violence protections (to undermine the FRO, reverse victim and offender roles, create false impression Plaintiff was the perpetrator, discourage enforcement of rights); witness intimidation (to intimidate Plaintiff into abandoning cooperation, deter from providing testimony, send message that cooperation would result in prosecution); and commercial and professional advancement (to enhance Hardaway's professional reputation, generate publicity for her legal practice, provide content for media appearances, demonstrate purported effectiveness).

120. Evidence of improper purpose includes: lack of probable cause (Defendants knew allegations were false, knew Plaintiff did not create the YouTube channel, knew medical records did not pertain to Plaintiff); timing and coordination (false submissions strategically timed to coincide with pending criminal proceedings against Evins, initiation of process against Plaintiff served to distract from proceedings against Evins); refusal to abandon process when falsity revealed (Defendants refused to withdraw or correct false submissions even after falsity definitively proven); pattern of conduct (Defendants initiated or threatened multiple legal processes in multiple jurisdictions suggesting harassment); and statements of purpose (using legal proceedings as content for defamation campaigns, publicly portraying Plaintiff as vexatious litigant when Defendants were filing multiple actions, celebrating on social media when legal process resulted in harm to Plaintiff).

121. As a direct result, Plaintiff suffered: false arrest and criminal prosecution; wrongful conviction; legal fees and costs; lost wages and business opportunities; severe emotional distress from being subjected to criminal prosecution based on fabricated evidence; reputational harm from having official record of criminal charges; exclusion from criminal proceedings as crime victim; loss of relationship with minor child; chilling of First Amendment rights and right to access courts; violation of rights under the Crime Victims' Rights Act; and other damages.

122. The harm was not merely incidental to legitimate use of legal process but was the direct and intended result of Defendants' improper use of that process.

123. Defendants' abuse of process is particularly egregious because it involved an attorney with special obligations who misused her professional status; targeted a domestic violence victim protected by a restraining order; involved fabrication of evidence; was undertaken in conspiracy between multiple parties; persisted even after the falsity was definitively proven; involved multiple legal processes in multiple jurisdictions; was combined with nationwide defamation campaign; resulted in actual criminal conviction of an innocent person; violated crime victim protection statutes; and was undertaken for purely malicious purposes with no colorable legitimate objective.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, costs and fees, and such other relief as the Court deems just.

## COUNT TWELVE: VIOLATIONS OF CRIME VICTIMS' RIGHTS ACT
### *(All Defendants)*

124. Plaintiff incorporates all preceding allegations.

125. Plaintiff is a "crime victim" within the meaning of 18 U.S.C. § 3771(e) as a named victim (Count 3) in United States v. Sean Combs, Case No. 24-CR-542 (S.D.N.Y.), involving violations of 18 U.S.C. §§ 1591 (sex trafficking) and 1952 (racketeering), as a victim of sex trafficking, interstate domestic violence, and related federal offenses, as a federally protected witness who has cooperated extensively with federal law enforcement, and as a person who has suffered direct and proximate harm from commission of federal offenses.

126. As a federal crime victim, Plaintiff is entitled to rights guaranteed by 18 U.S.C. § 3771(a), including: the right to be reasonably protected from the accused; the right to reasonable, accurate, and timely notice of any public court proceeding involving the crime; the right not to be excluded from any such public court proceeding; the right to be reasonably heard at proceedings; the reasonable right to confer with the attorney for the Government; the right to full and timely restitution; the right to proceedings free from unreasonable delay; and the right to be treated with fairness and with respect for dignity and privacy.

127. Defendants violated Plaintiff's CVRA rights by: failing to respect Plaintiff's right to be reasonably protected from harassment, intimidation, and retaliation; engaging in coordinated campaign to intimidate and retaliate against Plaintiff for cooperation with federal authorities; submitting false information to cause Plaintiff's arrest threatening his physical liberty; conducting nationwide defamation campaign exposing Plaintiff to harassment and threats; creating climate of fear and intimidation to discourage continued cooperation; causing Plaintiff to be excluded from criminal proceedings through false allegations that Plaintiff

posed a danger when he was the protected victim; causing Essex County Prosecutor's Office to terminate all communication with Plaintiff, depriving him of right to confer with prosecutors; subjecting Plaintiff to nationwide defamation campaign portraying him as mentally ill and dangerous; engaging in victim shaming and victim blaming; reversing victim and offender roles; using Plaintiff's status as crime victim to further victimize him; exploiting trauma for commercial and malicious purposes; and treating Plaintiff with contempt, dishonesty, and cruelty.

128. Defendants' conduct was specifically designed to interfere with Plaintiff's participation in federal criminal proceedings by: destroying credibility as federal witness; creating false record portraying Plaintiff as mentally ill and unreliable; intimidating Plaintiff into reducing or terminating cooperation with federal authorities; causing Plaintiff to be occupied with defending against false state charges; causing emotional distress and psychological harm impairing ability to testify effectively; and discouraging other potential witnesses from cooperating by demonstrating consequences of such cooperation.

129. As a direct result, Plaintiff suffered: exclusion from criminal proceedings in which he was the victim; termination of communication with prosecutors; inability to exercise right to be reasonably heard; loss of opportunity to obtain restitution; severe emotional distress from being treated with contempt rather than dignity; re-traumatization through victim shaming; chilling effect on cooperation with federal authorities; loss of protections the CVRA was designed to provide; economic losses from defending against false charges; reputational harm undermining effectiveness as federal witness; and other damages.

WHEREFORE, Plaintiff demands: a declaration that Defendants violated Plaintiff's rights under 18 U.S.C. § 3771; compensatory damages for all harm resulting from these violations; punitive damages to deter future violations of crime victim rights; injunctive relief prohibiting Defendants from further interfering with Plaintiff's CVRA rights; attorneys' fees and costs; and such other relief as the Court deems just.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Clayton Howard respectfully requests that this Honorable Court enter judgment in his favor and against Defendants Cynthia Hardaway, Esq., Francyna Evins, and Jane Doe, jointly and severally, and award Plaintiff the following relief:

A. COMPENSATORY DAMAGES

130. Compensatory damages for all injuries, losses, and harm suffered by Plaintiff, including reputational harm, severe emotional distress, loss of parental relationship, violation of constitutional and statutory rights, and ongoing and future harm. Special damages of

$212,000 minimum for documented economic losses including legal defense costs ($69,250), lost income and business opportunities ($128,000), medical and psychological treatment ($6,900), and reputation management and mitigation ($7,850), plus future economic losses.

## B. TREBLE DAMAGES UNDER NEW JERSEY CONSUMER FRAUD ACT

131. Pursuant to Count Nine and N.J.S.A. 56:8-19, Plaintiff is entitled to treble damages against Defendant Hardaway for all ascertainable losses caused by her willful violations of the Consumer Fraud Act. Calculated conservatively: documented economic losses attributable to Hardaway ($212,000) trebled = $636,000.

## C. PUNITIVE DAMAGES

132. Punitive damages in the amount of $500,000-$700,000 or as determined by the jury to punish Defendants for their willful, wanton, malicious, and outrageous conduct and to deter similar conduct in the future, warranted because Defendants: acted with actual malice; engaged in extreme and outrageous conduct; knowingly submitted false information to state officials; deliberately fabricated evidence; conducted coordinated nationwide defamation campaign reaching over one million people; refused to retract false statements even after definitively proven false; targeted a domestic violence victim protected by a restraining order; conspired to obstruct justice and deprive Plaintiff of federally protected rights; violated crime victim protection statutes; Hardaway, as an attorney, abused her professional status; continued harmful conduct over an extended period; and showed complete disregard for the harm caused to Plaintiff, his minor child, and the administration of justice.

## D. MANDATORY RETRACTION AND CORRECTION

133. An Order requiring Defendants to issue full, complete, and public retractions and corrections of all false statements, including: written retractions to all recipients of false information within 15 days; public corrections on all social media platforms posted within 30 days and maintained for 12 months; video correction statement admitting falsity and apologizing for harm; corrections to third-party content creators within 45 days; and notification to podcast hosts and media outlets.

## E. DECLARATORY JUDGMENT

134. Pursuant to N.J.S.A. 2A:16-50 et seq., a declaratory judgment declaring that: Defendants violated 42 U.S.C. §§ 1985(2), 1986, and 18 U.S.C. § 3771; Defendants violated N.J.S.A. 2C:25-17 et seq., 2C:25-33, 56:8-1 et seq., 52:4B-34 et seq., N.J. Const. art. I, ¶ 22, Violence Against Women Act, and other state and federal victim protection statutes; Defendants committed defamation per se and per quod, false light invasion of privacy, civil conspiracy, negligent misrepresentation, fraud, intentional infliction of emotional distress, and abuse of

process; Defendants engaged in systematic victim shaming and revictimization; Defendants weaponized domestic violence proceedings and legal processes against the protected victim; Defendants' conduct was willful, wanton, malicious, and undertaken with reckless and outrageous disregard for Plaintiff's rights; and Plaintiff is entitled to all protections and remedies afforded to domestic violence victims and crime victims.

F. PERMANENT INJUNCTION AND PROTECTIVE ORDER

135. Pursuant to N.J.S.A. 2A:15-53, a comprehensive permanent injunction with the following provisions:

1. Cease All Use of Plaintiff's Identity: Defendants shall not use, display, distribute, reference, or permit others to use Plaintiff's name, image, voice, personal information, or any material referring to or inferring a relationship with Plaintiff in any forms of communication except in legitimate court filings as required by applicable rules.

2. Remove All Existing Defamatory Content: Within 30 days, Defendants shall remove all existing content including the entire "Breaking Up With a Diagnosed Schizophrenic" video series, all content from the "Breakingupisnotacrime" Instagram campaign, all YouTube videos, Facebook posts, TikTok videos, podcast appearances, Twitter/X posts, and any other content on any platform.

3. No Third-Party Dissemination: Defendants shall not provide, share, distribute, or otherwise disseminate to any third party any information, images, videos, audio recordings, or other materials concerning Plaintiff.

4. No Contact with Child's Mother: Defendant Evins shall have no contact, direct or indirect, with Dimonic Smith except as specifically ordered by a court of competent jurisdiction or in cases of genuine emergency.

5. Vexatious Litigation Restriction: Defendants shall not file any complaint, charge, petition, motion, application, or other legal action against Plaintiff without first obtaining leave of this Court.

6. Reporting and Compliance Obligations: Initial report within 30 days detailing all content removed, quarterly reports for 3 years, and final report at conclusion certifying complete compliance.

7. Sanctions for Violations: First violation: $5,000 per violation plus attorneys' fees; Second violation: $10,000 per violation plus attorneys' fees; Third and subsequent violations: $25,000 per violation plus attorneys' fees, plus additional contempt sanctions.

8. Duration: Minimum period of 5 years, continuing indefinitely unless modified by this Court upon showing of complete compliance.

G. ATTORNEYS' FEES AND COSTS

136. Award of all reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action pursuant to 42 U.S.C. § 1988(b), N.J.S.A. 56:8-19, N.J.S.A. 2A:15-59.1, the Court's inherent equitable powers, and the private attorney general doctrine. Pro se time value: 300+ hours x $350/hour = $105,000 minimum, plus actual attorneys' fees if counsel retained, expert witness fees, and all litigation costs.

H. PRE-JUDGMENT AND POST-JUDGMENT INTEREST

137. Pre-judgment and post-judgment interest on all monetary awards at the maximum rate permitted by New Jersey law.

I. COSTS OF SUIT

138. Award of all taxable costs of suit including filing fees, fees for service of summons and complaint, subpoenas, certified copies, transcripts, depositions, exhibits, and any other costs taxable under New Jersey Court Rules.

J. OTHER RELIEF

139. Such other, further, and different relief as this Court deems just, equitable, and appropriate, including: a finding that this action involves exceptional circumstances; an order referring Defendant Hardaway to the New Jersey Office of Attorney Ethics; an order referring the matter to appropriate law enforcement authorities for investigation of potential criminal violations; and an order that the judgment shall not be dischargeable in bankruptcy.

Dated: November 24, 2025

Respectfully submitted,

*Clayton Howard*

Clayton Howard, Pro Se
Plaintiff
24 Orchard Street
Carteret, New Jersey 07008
(929) 781-7791
itsclaytonhoward@gmail.com

## CERTIFICATION PURSUANT TO R. 4:5-1

I certify that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration proceeding. I am not aware of any other party who should be joined in this action. If during the pendency of this action, I obtain knowledge that any such party exists, I shall promptly file and serve an amended certification identifying that person or entity.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: November 24, 2025

*Clayton Howard*
Clayton Howard, Pro Se

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right pursuant to N.J. Const. art. I, ¶ 9, Rule 4:35, and applicable law.

Dated: November 24, 2025

*Clayton Howard*
Clayton Howard, Pro Se

## RULE 4:5-1 CERTIFICATION

I certify that, to the best of my knowledge, confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

Dated: November 24, 2025

*Clayton Howard*
Clayton Howard, Pro Se

FILED

JAN 1 6 2026

Hon. Stephen L. Petrillo, J.S.C.

SUPERIOR COURT OF NEW JERSEY

LAW DIVISION: ESSEX COUNTY

CLAYTON HOWARD,

    *Plaintiff,*

Docket No.: ESX-L-008941-25

v.

CIVIL ACTION

CYNTHIA HARDAWAY, ESQ., individually
and in her professional capacity,
FRANCYNA EVINS, and JANE DOE,
an individual known online as @thatgirlhenny,
@ThatGirlHennyReviews, and by other
social media handles,

    *Defendants,*

[PROPOSED] ORDER
GRANTING MOTION TO
AMEND COMPLAINT AND
ADD DEFENDANT

ORDER

THIS MATTER having been opened to the Court by Clayton Howard, Plaintiff *pro se*, on his
motion for leave to file a Second Amended Complaint adding Jane Doe as a defendant and
authorizing the filing of a streamlined complaint; and the Court having considered the Notice
of Motion, the Affidavit of Clayton Howard, the Memorandum of Law in support thereof, the
proposed Second Amended Complaint, and any opposition thereto; and for good cause
shown;

IT IS on this 16 day of Jan , 2025, hereby:

**ORDERED** that Plaintiff's motion for leave to file a Second Amended Complaint adding
Jane Doe as a defendant is **GRANTED**; and it is further

**ORDERED** that Plaintiff is granted leave to file the consolidated Second Amended
Complaint, which streamlines the original complaint from approximately 62 pages to 10
pages while maintaining all substantive allegations, in furtherance of judicial efficiency; and
it is further

**ORDERED** that Plaintiff shall file the Second Amended Complaint within **seven (7) days** of
the date of this Order; and it is further

**ORDERED** that Plaintiff is authorized to pursue discovery to identify Jane Doe's true name
and location through the following methods:

a. Service of third-party subpoenas on YouTube/Google LLC demanding all account registration information, payment information, IP addresses, email addresses, telephone numbers, physical addresses, and other identifying data associated with the account known as '@thatgirlhenny,' 'ThatGirlHennyReviews,' and related usernames;

b. Service of subpoenas on Internet Service Providers associated with IP addresses used to access the account to obtain subscriber information;

c. Service of subpoenas on other social media platforms where Jane Doe may maintain accounts under the same or similar handles;

d. Service of subpoenas on payment processors including PayPal, Stripe, and others that may have processed payments associated with the account;

e. ~~Such other~~ ALL lawful discovery methods as may be necessary to establish Jane Doe's true identity and location;

and it is further

**ORDERED** that pending discovery of Jane Doe's true identity and physical location, Plaintiff is authorized to serve Jane Doe by alternative means, including:

a. Email service to addresses associated with her social media accounts, including any email addresses discovered through the subpoena process;

b. Publication of the summons and complaint on Jane Doe's social media platforms, including posting notice on videos or posts that contain defamatory content about Plaintiff;

and it is further

**ORDERED** that the deadline for service of process on Jane Doe is extended to sixty (60) days following discovery of her true identity and location; and it is further

**ORDERED** that upon discovery of Jane Doe's true identity, Plaintiff shall PROMPTLY move to amend the Second Amended Complaint to substitute her true name for the Jane Doe designation; and it is further

**ORDERED** that Defendants Cynthia Hardaway, Esq. and Francyna Evins shall file their Answer to the Second Amended Complaint within thirty-five (35) days of service of the Second Amended Complaint; and it is further

**ORDERED** that Jane Doe shall file her Answer to the Second Amended Complaint within thirty-five (35) days of service upon her by alternative means, or within thirty-five (35) days of personal service upon her following discovery of her true identity, whichever occurs first; and it is further

**ORDERED** that the parties shall proceed with discovery in accordance with the New Jersey Court Rules and any case management orders entered by the Court.

_____, J.S.C.
Hon.

Hon. Stephen L. Petrillo, J.S.C.

OPPOSED / NOT OPPOSED

_____
Attorney for Defendant Cynthia Hardaway, Esq.

_____
Attorney for Defendant Francyna Evins

⊛ Serve per R 1:5.1(a)