UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLAYTON HOWARD,<br>     *Plaintiff*,<br><br>v.<br><br>JENNA VENTOLA; CYNTHIA H. HARDAWAY, ESQ.; FRANCYNA EVINS; et al.,<br>     *Defendants*. | Civil Action No. 2:26-cv-01101-SDW-SDA<br><br><br>PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT HARDAWAY'S PRO SE MOTION TO DISMISS<br><br>*Filed: April 15 2026* |

Submitted by:  Clayton Howard, Plaintiff Pro Se

Date Filed:  April 2026

TABLE OF CONTENTS

PRELIMINARY STATEMENT ……………………………………………….......................... 1

STATEMENT OF FACTS ..................................................................................................... 1

LEGAL ARGUMENT

POINT I    Standard of Review ...................................................................................... 3

POINT II    Sufficiency of the Complaint ...................................................................... 4

POINT III  The Complaint Is Not Recycled — The 2024 and 2026 Actions Are Categorically Distinct .................................................................................................................. ..6

POINT IV    The Service Defect Argument Fails ………………………………………... 11

POINT V    State Claims Are Properly Before This Court ....................................................... 12

POINT VI    Immunity Defenses Do Not Bar This Action ......................................................... 13

POINT VII  Hardaway's Ad Hominem Characterizations Are Not a Basis for Dismissal........ 14

POINT IX   Hardaway's November 18, 2025 Public Media Appearance Constitutes Independent Tortious Conduct and Evidences the Continuing Violation .................................. 17

POINT X    The Carteret Conviction Is Void Ab Initio Because It Was Procured Through Evins' Retaliatory Reporting of Adjudicated Conduct, as Confessed on Body Camera ……… 20

POINT XI   Hardaway's Media Disclosure of PDVA Proceedings Violated N.J.S.A. 2C:25-33 and N.J. R. 1:38-3(d)(9), Constituting an Independent Tortious Act ........................................ 23

POINT XIII Essex County's Systematic Failure to Prosecute Evins' Violations Supports the Continuing Violation Doctrine and Implies Monell Liability for Deliberate Indifference to Male Domestic Violence Victims ...................................................................................................... 26

POINT XIV  Leave to Amend Should Be Freely Granted ........................................................ 30

CONCLUSION ................................................................................................................... 16

## TABLE OF AUTHORITIES

Cases                                                                                                            Page

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ………………………………………….......... passim

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ………………………………………….. 3

*Davis v. Wells Fargo*, 824 F.3d 333 (3d Cir. 2016) ………………………………………... 9

*Drisco v. City of Newark*, 303 F. Supp. 2d 274 (D.N.J. 2004) ..................................................... 13

*Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169 (3d Cir. 2009) ..................................................... 9

*Erickson v. Pardus*, 551 U.S. 89 (2007) ..................................................................................... 3

*Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002) ................................................... 15

*Haines v. Kerner*, 404 U.S. 519 (1972) ..................................................................................... 3

*Howard v. New Jersey, et al.*, No. 24-7661 (D.N.J. June 6, 2025) …………………….…..... 3, 7

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010) …………………………... 9

*Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239 (3d Cir. 2013) ................................................... 3

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) .............................................. 11

*Nami v. Fauver*, 82 F.3d 63 (3d Cir. 1996) ..................................................................................... 3

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) .............. 9

*Puett v. Blandford*, 912 F.2d 270 (9th Cir. 1990) …………………………………………... 11

*Watson v. Abington Twp.*, 478 F.3d 144 (3d Cir. 2007) ................................................................. 3

*West v. Philadelphia Elec. Co.*, 45 F.3d 744 (3d Cir. 1995) .................................................. 11, 17

*Baxt v. Liloia*, 155 N.J. 190 (1998) ........................................................................................ 23

*Coello v. DiLeo*, 43 F.4th 346 (3d Cir. 2022) ........................................................... 20, 21

*Heck v. Humphrey*, 512 U.S. 477 (1994)................................................................... 20, 21

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).......................................... 18, 22

*Ward v. Zelikovsky*, 136 N.J. 516 (1994) ................................................................ 18, 22

*Berg v. Cnty. of Allegheny*, 219 F.3d 261 (3d Cir. 2000)…......................................... 28

*City of Canton v. Harris*, 489 U.S. 378 (1989) ......................................................... 28, 29

*Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978)......................................... 28

Statutes and Rules

28 U.S.C. § 1915(d) ....................................................................................................... 11

42 U.S.C. § 1983 .................................................................................................... passim

42 U.S.C. § 1985 .......................................................................................................... 4, 6

42 U.S.C. § 1986 .......................................................................................................... 4, 6

Fed. R. Civ. P. 4(c)(3) .................................................................................................... 11

Fed. R. Civ. P. 8(a)(2) ................................................................................................. 3, 4

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 3

Fed. R. Civ. P. 12(h)(1) .................................................................................................. 12

Fed. R. Civ. P. 15(a)(2) .................................................................................................. 15

N.J. Stat. Ann. § 2C:25-17 .............................................................................................. 2

N.J. Stat. Ann. § 2C:25-33 .................................................................................... 23, 24, 25

N.J. Court Rule 1:38-3(d)(9) .................................................................................. 23, 24, 25

N.J. RPC 1.6 (Confidentiality of Information) .......................................................... 24

N.J. RPC 3.6 (Trial Publicity) ................................................................................... 24

PRELIMINARY STATEMENT

Plaintiff Clayton Howard respectfully submits this brief in opposition to the pro se Motion to Dismiss filed by Defendant Cynthia H. Hardaway, Esq. The motion fails at every level. It mischaracterizes the pleading standard, collapses two distinct lawsuits into one by ignoring the factual record, overclaims the preclusive effect of a prior immunity-based dismissal, and substitutes personal attacks on Plaintiff for cognizable legal argument. Hardaway's motion should be denied in its entirety.

The opposition tracks the structure of Hardaway's brief, responding to each of her arguments in turn and demonstrating that none provides a basis for dismissal, let alone dismissal with prejudice.

STATEMENT OF FACTS

Plaintiff Clayton Howard is a domestic violence victim who obtained Final Restraining Order FV-07-3579-22 against Defendant Francyna Evins ("Evins") on December 1, 2022, following a full merits hearing before the Essex County Superior Court, Family Part. The issuing judge found Plaintiff's evidence sufficient to justify a lifelong no-contact order and further imposed a 1,000-foot stay-away provision, reflecting the court's assessment that Evins posed an ongoing threat.

Following entry of the FRO, Evins — represented throughout by co-Defendant Cynthia Hardaway, Esq. ("Hardaway") — engaged in a sustained, multi-year campaign to vacate the order and to discredit Plaintiff across multiple judicial forums. That campaign involved, among other things: the filing of retaliatory criminal charges against Plaintiff in New York and New Jersey within days of the FRO (2022); the manufacture of a YouTube channel attributed to Plaintiff containing over 300 AI-altered videos depicting him as threatening and mentally unstable; the submission of an altered public record falsely indicating Plaintiff had a diagnosed mental illness (2023–2024); Hardaway's March 26, 2024 email distributing that falsified material to Essex County prosecutors and the trial court; and the filing of a Carfagno motion in 2025 predicated on fabricated photographic evidence and perjured testimony.

Importantly, the core facts underlying these allegations are not merely pleaded — they are confirmed. On October 30, 2024, Francyna Evins testified under oath before the Honorable Spencer Robbins, J.M.C., Carteret Municipal Court (State v. Howard, Summons Nos. S-2022-

450 and S-2024-316/379/380). In that proceeding, Evins admitted under oath: that she gave the falsified mental health transcript to Hardaway specifically for Hardaway to submit to the Essex County prosecutor (Tr. 94:22–95:3); that Hardaway and she intended to use that false information "against" Plaintiff (Tr. 101:9–12); that Hardaway directed her to archive rather than delete the false material after learning it was about Plaintiff's father and not Plaintiff himself (Tr. 94:3–6); that Hardaway directed her to create edited short-form versions of Plaintiff's own protected speech for submission to courts and prosecutors (Tr. 83:8–15); and that she preserved the false material specifically for potential future use in litigation (Tr. 95:21–96:10). Plaintiff Clayton Howard also testified at that proceeding — uncontradicted — that Hardaway submitted a falsified email to the Essex County prosecutor's office falsely attributing the YouTube channel "Cop Caller Clay" to Plaintiff (Tr. 170:10–16), and that an IP address investigation by Essex County detectives subsequently confirmed that the channel was in fact controlled exclusively by Evins (Tr. 170:17–20).

On March 11, 2026, the Essex County Superior Court granted Evins' Carfagno motion and vacated the FRO. Plaintiff has appealed that ruling to the New Jersey Appellate Division (A-002043-25), where it remains pending. The present federal action challenges the constitutional and tortious dimensions of Hardaway's and Evins' coordinated misconduct, including acts that postdate the filing of the 2024 federal complaint by fifteen or more months.

On April 5, 2026, Hardaway filed the motion now before this Court. In that filing, she publicly characterized Plaintiff — a documented domestic violence victim — as "obsessed with his ex-girlfriend," pursuing "miserable efforts to continually harass" her, and acting in a "despicable vein." Those characterizations are false, made without evidentiary support, made with knowledge of the court records documenting Evins' own admitted conduct, and published in a federal court document accessible to the public. They are themselves evidence of the ongoing defamation campaign this action seeks to redress.

LEGAL ARGUMENT

POINT I

STANDARD OF REVIEW

(Responding to Hardaway's Argument That the Complaint Is Incoherent and Fails to Allege Personal Liability)

Hardaway argues that the complaint is incomprehensible and that she cannot identify any plausible claim against her personally. That characterization does not substitute for legal analysis and does not satisfy the standard for dismissal under Rule 12(b)(6).

A. Rule 12(b)(6) Requires Only Plausibility, Not Proof.

To survive a motion to dismiss, a complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007) (quoting *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)). Plaintiff is not required to prove his case at the pleading stage. The complaint alleges concrete conduct, specific dates, named actors, identified proceedings, and particularized injuries. That is enough.

B. Pro Se Pleadings Receive Liberal Construction.

Federal courts hold pro se complaints "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Courts must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). Where a complaint's allegations "are capable of supporting a claim for relief, courts should not dismiss even if they are poorly articulated." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Amended Complaint here, while lengthy, satisfies Rule 8(a)(2)'s requirement of a short and plain statement that the pleader is entitled to relief when read with the liberality owed to pro se plaintiffs.

C. Hardaway's Tone Does Not Control the Legal Test.

The question before this Court is not whether Hardaway found the complaint difficult to read, nor whether she considers Plaintiff's litigation "miserable" or his conduct "despicable." The question is whether the specific factual allegations, read together and accepted as true, state a plausible claim. They do. Plaintiff identifies who Hardaway is, what she did, when she did it, in which proceedings she acted, and how that conduct harmed Plaintiff. That is the substance of a complaint under Rule 8. Hardaway's rhetorical opposition to the litigation is not a substitute for legal argument.

POINT II

LEGAL REQUIREMENT FOR SUFFICIENCY OF PLAINTIFF'S COMPLAINT

(Responding to Hardaway's Argument That the Complaint Is Formulaic, Lacks Facts, and Fails to Connect Her Personally to Wrongdoing)

Hardaway argues that the complaint offers nothing but labels and conclusions and that it does not specifically connect her to any actionable misconduct. Both assertions are wrong.

A. The Complaint Contains Factual Allegations, Not Just Labels.

Under *Twombly* and *Iqbal*, a complaint survives a motion to dismiss when it identifies who did what, when, in what proceeding, and how plaintiff was harmed. The Amended Complaint satisfies each element with respect to Hardaway. Specifically, the complaint alleges that: (1) Hardaway, as defense counsel for Evins, emailed falsified mental health records and a fabricated YouTube channel link to Essex County prosecutors and the trial judge on or about March 26, 2024, falsely attributing the channel to Plaintiff; (2) when Plaintiff demanded in writing in May 2024 that Hardaway retract the false material, she refused and instead continued to deploy it in the Family Part Carfagno reconsideration; (3) Hardaway then represented Evins in the 2025–2026 FRO vacatur proceedings, in which she is alleged to have submitted fabricated photographic evidence and facilitated perjured testimony, resulting in the March 11, 2026 vacatur of Plaintiff's protective order; (4) Hardaway filed the 2026 Essex County state court action against Plaintiff in coordination with Evins; and (5) Hardaway filed the present motion on April 5, 2026, containing defamatory characterizations of Plaintiff made with knowledge that Evins' own court records contradict them. These are factual allegations, not labels.

B. Personal Participation Is Sufficiently Alleged — and Confirmed by Evins' Own Sworn Testimony.

Plaintiff's claims against Hardaway are not based on her status as opposing counsel in the abstract. They are based on specific, affirmative acts — and those acts are not merely alleged in the complaint. They are confirmed by sworn testimony given by Francyna Evins herself in open court on October 30, 2024 before the Honorable Spencer Robbins, J.M.C., Carteret Municipal Court, Middlesex County, New Jersey (Summons Nos. S-2022-450 and S-2024-316/379/380). That testimony — given under oath and therefore available for use in these proceedings — is anticipated to be introduced as evidence in discovery and at trial, and is properly referenced at

this stage to demonstrate that the complaint's allegations are not speculative. They are corroborated.

Specifically, Evins testified under oath as follows regarding Hardaway's direct personal participation:

> "So when I had this information I gave that transcript to my attorney who shared it with the prosecutor for my criminal case at the time." — Francyna Evins, under oath, Tr. 94:22–95:3
>
> "[M]y immediate thought was to share it with my attorney who when they did it caused a whole fiasco in my case because they were trying to use it against him but apparently it is not true." — Francyna Evins, under oath, Tr. 101:9–12
>
> "I have archived some of the material that you just displayed since then, as instructed by my attorney." — Francyna Evins, under oath, Tr. 94:3–6
>
> "[M]y attorney from [indiscernible] she said anything that you have because these videos are too long, so as you see exhibit A over here, these videos are shorts. Mr. Howard makes hours long videos and nobody has time like that, so what she suggested is that you know you can make these videos shorter to explain your point." — Francyna Evins, under oath, Tr. 83:8–15

These admissions, made under oath by Hardaway's own client in an open proceeding, directly establish what the complaint alleges: Hardaway (1) received the falsified MTA transcript from Evins and affirmatively transmitted it to the Essex County prosecutor; (2) intended it to be "used against" Plaintiff Howard; (3) directed Evins to archive rather than delete the false material after its falsity was discovered — thereby strategically preserving it for future use; and (4) specifically directed Evins to edit Plaintiff's protected speech into shorter clips for submission to prosecutors and courts. This is not abstract pleading. It is conduct described under oath by the attorney's own client. The allegations in the complaint are not speculative labels — they are, at the pleading stage, corroborated by testimony anticipated to be introduced in discovery.

An attorney who steps outside the bounds of legitimate advocacy — by manufacturing or knowingly presenting false evidence, directing a client to preserve falsified material for strategic deployment, and weaponizing a client's litigation as a vehicle for retaliation against a domestic violence victim — forfeits any protection that role might otherwise afford and exposes herself to civil liability for the resulting torts. The personal participation requirement is satisfied.

C. Any Pleading Deficiency Should Be Cured by Amendment, Not Dismissal With Prejudice.

If the Court identifies any count as insufficiently pleaded, the proper remedy for a pro se plaintiff is leave to amend under Fed. R. Civ. P. 15(a)(2), not dismissal with prejudice. The Third Circuit has squarely held that a district court errs when it denies a pro se plaintiff the opportunity to cure pleading defects without first finding that amendment would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Hardaway has not come close to demonstrating futility. Dismissal with prejudice at the pleading stage, before discovery, on a pro se complaint addressing complex multi-forum misconduct, would be manifestly improper.

## POINT III

### THE 2026 COMPLAINT IS NOT RECYCLED — THE 2024 AND 2026 FEDERAL ACTIONS ARISE FROM DIFFERENT FACTS, DIFFERENT PROCEEDINGS, AND DIFFERENT INJURIES, AND THE PRIOR DISMISSAL DOES NOT BAR CLAIMS THAT HAD NOT YET ACCRUED

Hardaway's primary argument is that the present complaint is nothing more than a restructured version of the 2024 federal complaint that this Court previously dismissed with prejudice, and that Plaintiff should not be permitted to re-litigate claims already decided against him. This argument rests on a fundamental mischaracterization of both what the 2024 complaint alleged and what the present complaint alleges. A side-by-side examination of the two complaints, the timeline of events, and the applicable preclusion doctrine demonstrates that the cases are categorically distinct.

A. The Applicable Legal Framework: Claim Preclusion Requires Identity of Claims, Not Just Identity of Parties.

Claim preclusion (res judicata) bars a subsequent action only when: (1) there was a final judgment on the merits in the prior action; (2) the parties are the same or in privity; and (3) the subsequent suit is based on the same cause of action. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1194 (3d Cir. 1993). The Third Circuit applies a transactional nucleus of facts test to determine whether two suits raise the same cause of action: if the claims arise from different transactions or occurrences, they are not the same cause of action for preclusion purposes. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 337 (3d Cir. 2010); *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009).

Critically, claims that did not exist when the prior action was filed cannot be barred by a prior dismissal. *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). A plaintiff cannot be required to assert claims arising from events that have not yet occurred. The doctrine of claim preclusion does not immunize defendants from liability for new wrongs committed after the prior case concluded.

B. What the 2024 Complaint Actually Alleged: The Criminal Prosecution and Carteret Municipal Proceedings.

The 2024 federal complaint (*Howard v. New Jersey, et al.*, No. 24-7661, D.N.J.) was filed in March 2024 and addressed events spanning October 2022 through approximately May 2024. Its thirteen named defendants included the Essex County Prosecutor's Office, Jenna Ventola, the Carteret Police Department and individual officers, the Middlesex County Prosecutor's Office and its agents, Judge Allen Cumba, and Judge Chandra Coleman — a broad array of state actors involved in two overlapping proceedings: the Essex County criminal prosecution of State of New Jersey v. Francyna Evins and the Carteret Municipal Court proceedings.

The factual core of the 2024 complaint was: Evins' retaliatory criminal filings in New York and Carteret following the December 2022 FRO; Officer Defelice's falsification of police reports; Ventola's failure to protect Plaintiff's victim rights throughout the criminal prosecution (2023–2024); Hardaway's specific act on March 26, 2024 of emailing falsified mental health records and a fabricated YouTube channel link to prosecutors and the trial judge during the still-pending criminal case; Ventola's subsequent use of that material to bring VASPA cyber-harassment charges against Plaintiff in March–May 2024; and the Carteret Police Department's systematic refusal to enforce the FRO over dozens of incidents from 2022 to mid-2024. The judicial claims were directed at Judges Cumba and Coleman for their roles in the municipal and criminal proceedings.

The Court dismissed the 2024 complaint in June 2025 on immunity and entity liability grounds: the State of New Jersey was dismissed on Eleventh Amendment immunity; the Essex County Prosecutor's Office was dismissed on the ground that it is not a separate entity subject to § 1983 liability; Ventola was dismissed on prosecutorial immunity because her challenged conduct fell within the scope of her prosecutorial functions; and the judicial defendants were dismissed on judicial immunity. The Court declined to exercise supplemental jurisdiction over state law claims. The dismissal was thus a threshold ruling based on the defendants' official immunities

and legal status — not a merits adjudication that the underlying factual allegations were false or that Hardaway personally engaged in no actionable misconduct.

C. What the 2026 Complaint Actually Alleges: The FRO Vacatur Proceedings and Post-2024 Misconduct.

The present 2026 complaint (2:26-cv-01101) challenges conduct that is categorically different from the 2024 complaint and, in large part, physically could not have appeared in the 2024 complaint because it had not yet occurred when the 2024 complaint was filed. The operative facts of the 2026 action are:

First: The Carfagno motion filed by Hardaway on Evins' behalf in 2025, seeking vacatur of the FRO. This proceeding was entirely separate from the Essex County criminal prosecution at the heart of the 2024 complaint. The Carfagno motion did not exist when the 2024 complaint was filed in December 2024.

Second: The submission of fabricated photographic evidence during the FRO vacatur proceedings in 2025–2026. This specific act of alleged evidence fabrication occurred entirely after the 2024 complaint was filed and is a new wrong independent of anything alleged in that complaint.

Third: The presentation of perjured testimony during the Carfagno hearings in the FRO vacatur proceedings. Again, these events post-date the 2024 complaint and involve a different judicial proceeding, different evidentiary submissions, and a different forum.

Fourth: The March 11, 2026 vacatur of the FRO — the culmination of the scheme alleged in the 2026 complaint. This event occurred fifteen months after the 2024 complaint was filed and fourteen months before the 2026 complaint. It could not, by definition, have been alleged in the 2024 action.

Fifth: Plaintiff's resulting appeal to the New Jersey Appellate Division (A-002043-25), currently pending, which represents the ongoing harm flowing from the 2025–2026 Carfagno proceedings.

Sixth: The filing of the 2026 Essex County Superior Court state action (ESX-L-008941-25) by Hardaway and Evins against Plaintiff — a new act of coordinated retaliation filed in 2026.

Seventh: Hardaway's April 5, 2026 motion in this Court, containing publicly-filed defamatory characterizations of Plaintiff made with knowledge of court records

documenting Evins' own admitted conduct — a fresh tortious act committed before this oppositions filing.

None of items one through seven existed, had occurred, or could have been pleaded in December 2024. They are not the same transaction or occurrence as the 2024 complaint. They are new events, occurring in new proceedings, before new tribunals, causing new and distinct injuries.

D. A Direct Comparison: Hardaway's Alleged Conduct in the Two Complaints Differs in Substance — and Is Confirmed by Her Client's Sworn Admissions.

The 2024 complaint alleged one primary act by Hardaway: her March 26, 2024 email distributing falsified mental health records and a fabricated YouTube channel link to Ventola and the trial court during the criminal prosecution of Evins, and her refusal in May 2024 to retract that material. That conduct was alleged as part of a conspiracy to bar Plaintiff from the criminal trial and to supply Ventola with false grounds for VASPA charges against him.

The 2026 complaint alleges a different and subsequent course of conduct: Hardaway's representation of Evins in the 2025–2026 Carfagno FRO vacatur proceedings; her alleged submission of fabricated photographic evidence in those proceedings; her alleged facilitation of perjured testimony in those proceedings; her coordination with Evins on the 2024 Essex County state action against Plaintiff; and her ongoing defamatory publications in federal court filings. These acts occurred in different proceedings, with a different objective (vacating the FRO rather than undermining the criminal prosecution), and produced a different and more severe injury (the permanent elimination of Plaintiff's protective order rather than exclusion from a criminal trial). Critically, the sworn testimony of Evins herself — given at the October 30, 2024 Carteret Municipal Court proceeding before Judge Robbins, months before the 2026 complaint was filed — provides direct corroboration of the core conduct alleged in the 2024 complaint and establishes the chain of conspiracy that the 2026 complaint continues. Evins testified under oath:

> *"[M]y immediate thought was to share it with my attorney who when they did it caused a whole fiasco in my case because they were trying to use it against him but apparently it is not true."* — Tr. 101:9–12
>
> *"Well, no it's not that I researched it, is that he threatened the prosecution and I was made aware of it that it was against my attorney. That's how I found out."* — Tr. 105:13–17 (explaining how Evins learned the mental health information was false: not through her own ethical inquiry but only because Plaintiff challenged it)

> *"[I]f I needed a video that I could use in a Court of law, like if you wanted to show me that, right? How am I going to — how am I going to use that in the future."* — Tr. 95:21–96:10 (explaining why she archived rather than deleted the false schizophrenia material after learning it was false)

This testimony is devastating to Hardaway's motion. It establishes, from the mouth of her own client under oath: (1) the false transcript was deliberately transmitted to the prosecutor by Hardaway with the intent to use it against Plaintiff — Evins' words are "they were trying to use it against him"; (2) Hardaway and Evins did not voluntarily correct the false record when they discovered its falsity — they did so only because Plaintiff forced the issue; (3) the false material was preserved for future strategic use in litigation — Evins explicitly stated she kept it to potentially "use in a Court of law" in the future. This is not a record of advocacy. It is a record of a scheme.

Hardaway's argument that the present action recycles stale claims is further undermined by the timeline this testimony creates. The October 30, 2024 proceeding — in which Evins made these admissions — occurred after the 2024 federal complaint was filed and before the 2026 complaint was brought. The sworn admissions confirm the pattern of misconduct alleged in the 2024 complaint and foreshadow the continuation of that pattern into the 2025–2026 FRO vacatur proceedings. A complaint incorporating those admissions into new claims arising from new proceedings is not a recycled complaint. It is a complaint that benefits from newly confirmed evidence of a continuing scheme.

Moreover, Howard's testimony at the same October 30, 2024 proceeding — which was not contradicted in the record — established additional critical facts:

> *"After the first day of her trial her attorney submits a falsified email to the Essex County prosecutor's office making allegations at the very channel that I just showed you, cop caller Clay was created by me and that I am threatening to prosecute her. Because of that I was brought in the Court and a harassment order was put against me."* — Howard testimony, Tr. 170:10–16 (uncontradicted)
>
> *"Once detectives investigated from the prosecutor's office they were able to determine that Ms. Evins IP address is the sole IP address that controls that channel."* — Howard testimony, Tr. 170:17–20 (uncontradicted)

> *"The video and the email sent by Ms. Evins and her attorney got me barred from her criminal prosecution, this is what led to her acquittal because they supplied false information on me during her trial."* — Howard testimony, Tr. 137:1–7 (uncontradicted)

The IP address investigation by Middlesex County detectives (Carteret PD) — which established that the YouTube channel falsely attributed to Plaintiff was in fact controlled exclusively by Evins — directly corroborates the conspiracy allegation. Hardaway's email falsely attributing that channel to Plaintiff was investigated by law enforcement and found to be false. This is not a mere allegation. It is a documented outcome of a law enforcement investigation, confirmed in sworn testimony, and anticipated to be established through discovery in these proceedings.

E. A Dismissal on Immunity Grounds Does Not Bar Claims Against a Non-Immune Defendant for Post-Dismissal Conduct.

The 2024 dismissal rested on immunities available to specific state actors — a prosecutor, judges, and state entities — acting in their official capacities during identified proceedings. Hardaway is a private defense attorney. She is not a state actor entitled to prosecutorial or judicial immunity. The immunities that drove the 2024 dismissal are simply inapplicable to her. The fact that her co-defendants in the 2024 action enjoyed immunity from suit says nothing about whether Hardaway is liable for her own tortious conduct in 2025–2026.

Moreover, even if Hardaway could somehow claim the protection of the 2024 dismissal, that dismissal cannot reach claims that had not yet accrued. A "with prejudice" dismissal of a complaint bars re-assertion of the same claims — it is not a prospective license to commit future wrongs without consequence. As the Third Circuit has recognized, claim preclusion applies only to claims that were raised or could have been raised in the prior action. *Elkadrawy*, 584 F.3d at 173. Claims arising from events that postdate the prior complaint by fifteen months could not have been raised in that action.

F. The Continuing Violation Doctrine Provides an Independent Basis to Deny Dismissal.

Even setting aside the distinctions between the two complaints, the continuing violation doctrine independently forecloses dismissal. Where a defendant engages in a pattern of unlawful conduct that is ongoing and has not ceased, the statute of limitations and the preclusive effects of prior proceedings do not bar claims arising from the continuing conduct. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754

(3d Cir. 1995). The misconduct of Hardaway and Evins is not a historical event. The FRO vacatur appeal is live. Hardaway filed a new defamatory federal court document on April 5, 2026. Evins continues to pursue litigation against Plaintiff. Each new act in furtherance of the ongoing scheme is an independent wrong that refreshes the claim.

Hardaway cannot simultaneously argue this litigation is a recycled re-filing of stale claims while filing new defamatory papers in this very case. The existence of her April 5, 2026 motion — itself a fresh tortious act — is proof that the conduct has not ceased and that the 2026 complaint addresses live, ongoing misconduct rather than recycled history.

POINT IV

THE SERVICE DEFECT ARGUMENT DOES NOT WARRANT DISMISSAL WITH PREJUDICE

(Responding to Hardaway's Argument That She Was Not Properly Served)

Hardaway asserts that she was not properly served because the U.S. Marshals delivered a complaint in an unrelated case — *Khalid Machich v. Town of Harrison* — rather than the complaint in this action. This argument does not provide a basis for dismissal with prejudice and is addressable by curing the defect.

A. Service Was the Responsibility of the U.S. Marshals Service, Not Plaintiff.

When a plaintiff proceeds in forma pauperis, the obligation to effect service falls on the Court and the United States Marshals Service, not on the plaintiff. Under 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3), the Court directs the Marshals to serve all process on behalf of an IFP plaintiff. Plaintiff complied fully with the Court's service directives. The delivery of the wrong complaint packet — if that is what occurred — is an administrative error attributable to the Marshals Service, not to Plaintiff.

Courts have consistently held that a pro se IFP plaintiff should not be penalized for service defects caused by the Marshals' failure to execute service correctly. *Puett v. Blandford*, 912 F.2d 270, 275 (9th Cir. 1990) ("when a plaintiff is proceeding in forma pauperis, the marshal's failure to effect service is not attributable to the plaintiff"). Dismissal based on a Marshals Service administrative error would be manifestly unjust.

B. Any Service Defect Is Curable — Dismissal With Prejudice Is Disproportionate.

Even assuming a service defect occurred, the appropriate remedy is not dismissal with prejudice. Rule 4(m) expressly provides for an extension of time to complete service upon a showing of good cause. Good cause is evident here: Plaintiff directed the Marshals to serve Hardaway, the Marshals were responsible for proper execution of that service, and any error in the documents delivered was outside Plaintiff's control. The proper remedy is re-service through the Marshals Service, not dismissal with prejudice of claims that Hardaway has been actively litigating on the merits.

C. The Scope of the Service Defense Is Limited by Hardaway's Litigation Conduct.

Under Fed. R. Civ. P. 12(h)(1), defenses of insufficient service of process must be raised in a party's first responsive motion or they are waived. Hardaway raised the service issue in the present motion, preserving it. However, the practical consequence of her challenge is narrow: it supports re-service, not termination of the action. Hardaway has filed a substantive motion to dismiss in which she addresses the merits of Plaintiff's claims in detail, invokes the prior litigation history, and seeks affirmative relief from this Court. She is actively participating in this litigation. The appropriate resolution is to order re-service while allowing the case to proceed.

POINT V

PARALLEL STATE LITIGATION DOES NOT STRIP THIS COURT OF JURISDICTION OVER PROPERLY PLEADED FEDERAL CLAIMS

(Responding to Hardaway's Argument That State Claims Belong in State Court)

Hardaway suggests that pendant state law claims should have been brought in the 2026 Essex County Superior Court action rather than in this Court. This argument misunderstands both the structure of federal jurisdiction and the scope of the claims at issue.

A. Federal Courts Have Independent Jurisdiction Over Federal Civil Rights Claims.

Claims arising under 42 U.S.C. §§ 1983, 1985, and 1986 are independently cognizable in federal court regardless of the existence of parallel state proceedings. The pendency of state litigation does not divest this Court of subject matter jurisdiction over federal claims. A plaintiff asserting federal civil rights violations is not required to bring those claims in state court simply because related state law claims are pending there.

B. The State and Federal Actions Address Different Legal Theories and Seek Different Relief.

The 2026 Essex County Superior Court action (ESX-L-008941-25) asserts state law defamation and civil conspiracy claims under New Jersey law. The present federal action asserts violations of federal constitutional rights under 42 U.S.C. §§ 1983, 1985, and 1986. The two actions are complementary, not duplicative. They arise from an overlapping course of conduct but assert different legal theories, invoke different statutory frameworks, and seek relief under different bodies of law. There is nothing improper about pursuing them in their respective forums.

C. The Prior Declination of Supplemental Jurisdiction Was Not a Bar on State Claims.

When the Court dismissed the 2024 federal complaint, it declined to exercise supplemental jurisdiction over state law claims. That declination was permissive — the Court chose not to hear those claims at that time. It did not hold that the state claims were foreclosed or lacked merit. Plaintiff is entitled to pursue his state law claims in the appropriate state forum, which he has done. And Plaintiff is entitled to pursue his federal constitutional claims here, which is what the present action does.

D. If Any State Claims Are Included, the Correct Remedy Is Declining Supplemental Jurisdiction, Not Dismissing the Entire Case.

Even if the Court were to determine that some claims in the 2026 complaint sound primarily in state law, the appropriate response is not to dismiss the whole action but to decline supplemental jurisdiction over the state claims while retaining the federal claims. The federal claims stand independently and are properly before this Court.


POINT VI

IMMUNITY DEFENSES ARE INAPPLICABLE TO HARDAWAY'S ALLEGED CONDUCT

(Responding to Hardaway's Attempt to Import Immunity Reasoning From the Prior Case)

Hardaway's motion relies in part on the immunities that shielded co-defendants in the 2024 action and attempts to extend that reasoning to her own situation. This fails for fundamental reasons.

A. Immunity Is Function-Specific, Not Title-Specific.

The immunities that terminated the 2024 action — prosecutorial immunity for Ventola, judicial immunity for the judges, Eleventh Amendment immunity for the state — each depended on the specific function being performed by the specific defendant. Prosecutorial immunity protects prosecutors acting in their prosecutorial capacity. Judicial immunity protects judges acting in

their judicial capacity. Neither doctrine extends to private defense attorneys acting outside the scope of legitimate advocacy.

B. Hardaway's Alleged Conduct Is Not Protected by Any Recognized Immunity.

The complaint does not challenge Hardaway's exercise of any protected governmental function. It challenges her alleged submission of fabricated evidence, her alleged facilitation of perjury, and her defamatory publications in court filings. None of these acts, if proven, constitutes the legitimate exercise of advocacy. An attorney who manufactures false evidence or suborns perjury is not engaging in protected advocacy — she is committing torts and potentially crimes. The law provides no immunity for such conduct. See *Drisco v. City of Newark*, 303 F. Supp. 2d 274, 281 (D.N.J. 2004) (attorneys are subject to civil liability for conduct outside the scope of legitimate representation).

C. Hardaway's Status as Defense Counsel Does Not Automatically Defeat State Law Claims.

Hardaway is a private attorney, not a state actor. This means § 1983 claims against her require a showing of state action — which the complaint addresses through the conspiracy allegations under § 1985. However, the absence of § 1983 liability for some counts does not defeat the state law claims for defamation, abuse of process, and civil conspiracy, which do not require state action. Hardaway's role as defense counsel is relevant context, but it does not categorically immunize her from all civil liability for all conduct associated with her representation of Evins.


POINT VII

HARDAWAY'S PEJORATIVE CHARACTERIZATIONS OF PLAINTIFF ARE NOT A BASIS FOR DISMISSAL AND ARE THEMSELVES EVIDENCE OF THE MISCONDUCT ALLEGED

(Responding to Hardaway's "Obsessed,""Miserable," and "Despicable" Characterizations)

The most striking feature of Hardaway's motion is not its legal argument but its rhetoric. In a document filed in the United States District Court for the District of New Jersey — a public record accessible to anyone — Hardaway describes Plaintiff as "obsessed with his ex-girlfriend," pursuing "miserable efforts to continually harass" Evins, and engaging in litigation in a "despicable vein." These characterizations are not legal argument. They are not supported by any evidence. And they are directly contradicted by the court records — including records from

proceedings in which Hardaway herself served as counsel — that document Evins' own adjudicated and admitted misconduct toward Plaintiff.

A. Pejorative Characterizations Are Not a Basis for Rule 12(b)(6) Dismissal.

The Rule 12(b)(6) standard does not ask whether opposing counsel considers the plaintiff's litigation "miserable" or the plaintiff's character "despicable." It asks whether the well-pleaded factual allegations, accepted as true, state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Personal attacks on Plaintiff are irrelevant to that analysis. This Court should set them aside entirely and focus on the legal sufficiency of the pleading, which Plaintiff has addressed above.

B. The Court Should Focus on Pleaded Facts — and on What the Court Records Actually Show.

Plaintiff is a documented domestic violence victim who holds — or held until the March 11, 2026 vacatur — a Final Restraining Order entered after a contested merits hearing at which a judge found sufficient predicate acts of domestic violence. The judicial record of those proceedings speaks for itself. But the more immediate answer to Hardaway's characterizations of Plaintiff as obsessed and harassing is this: her own client testified under oath, in open court, to a pattern of conduct directed at Plaintiff that directly contradicts the narrative Hardaway advances in this motion.

At the October 30, 2024 Carteret Municipal Court proceeding, Evins testified — under oath — to each of the following:

> That she conducted systematic targeted legal research against Plaintiff specifically to find damaging information — "I was doing some legal research for many of my cases I have against Mr. Howard." — Tr. 94:19–25
>
> That she found a transcript she believed identified Plaintiff as a diagnosed schizophrenic, gave it to Hardaway, and Hardaway submitted it to the Essex County prosecutor to be used against Plaintiff — before anyone confirmed it was actually about Plaintiff's father, not Plaintiff — "I gave that transcript to my attorney who shared it with the prosecutor for my criminal case at the time." — Tr. 95:1–3
>
> That she created a YouTube channel with 276 videos — taking Plaintiff's own videos and re-editing them at Hardaway's direction — specifically to present to courts and prosecutors: "The only thing that I did was create the channel to show my attorney, to show the Court to help prove my case." — Tr. 81:25–82:3

That she created a series of 40 or more videos publicly labeling Plaintiff a diagnosed schizophrenic — conduct confirmed by Howard's uncontradicted testimony that the series was titled "breaking up with a diagnosed schizophrenic" and similar variations. — Tr. 141:8–23

*That after learning the schizophrenia diagnosis was false — because it related to Plaintiff's father, not Plaintiff — she preserved the false material rather than deleting it, specifically because she intended to use it in future court proceedings: "[I]f I needed a video that I could use in a Court of law... How am I going to use that in the future."* — Tr. 95:21–96:10

The person who conducted surveillance of Plaintiff through an attorney monitoring his YouTube channel (Tr. 43:8–11); who gathered false mental health records about Plaintiff and delivered them to her own attorney for submission to prosecutors (Tr. 94:22–95:3); who created a 276-video channel repurposing Plaintiff's speech to present against him (Tr. 82:18–24); who publicly labeled Plaintiff a schizophrenic in 40+ videos (Tr. 141:8–17); and who preserved that false material for future strategic use in litigation after learning it was wrong (Tr. 95:21–96:10) — is Francyna Evins. And the attorney who directed those actions, received that material, and transmitted it to prosecutors to be used against Plaintiff is Cynthia Hardaway.

Hardaway, standing in this Court and calling Plaintiff "obsessed" and his litigation "despicable," does so with full knowledge of this sworn record. That is not zealous advocacy. It is the continuation of the defamation campaign this lawsuit is designed to address.

C. Hardaway's Language in This Motion Is Itself Evidence of the Ongoing Defamation.

Plaintiff alleges that Hardaway and Evins have engaged in a coordinated multi-year campaign to reframe the domestic violence relationship — in which Plaintiff is the victim and Evins is the adjudicated perpetrator — as a situation in which Plaintiff is an obsessive, mentally unstable aggressor. Hardaway's motion, filed on April 5, 2026, perpetuates that narrative by publicly attributing to Plaintiff — in a federal court filing — the character traits of obsession, miserable vindictiveness, and despicable motivation. These statements are made with knowledge of court records that establish the opposite. Plaintiff reserves all rights with respect to those statements as independent defamatory acts.

POINT IX

HARDAWAY'S AUGUST 2025 PUBLIC MEDIA APPEARANCE CONSTITUTES INDEPENDENT TORTIOUS CONDUCT AND CONFIRMS THE CONTINUING VIOLATION

On or about August 18, 2025, Defendant Cynthia H. Hardaway, Esq., a licensed New Jersey attorney who was actively representing Francyna Evins in the Carfagno FRO vacatur proceedings at that time, voluntarily appeared as a guest on a publicly accessible social media livestream hosted by a content creator known as "That Girl Henny." The program, whose transcript has been authenticated and introduced into this record, is titled in the transcript as "thatgrl-Henny-Nov-18-2025-12-43-44-PM" (See Exhibit B) and was transcribed by Rev.com. The transcript is incorporated herein by reference. During that broadcast, Hardaway made a series of specific, verifiable statements concerning Plaintiff Clayton Howard, the domestic violence proceedings against her client, and the litigation posture of both parties — statements that are independently actionable as defamation, that violate the confidentiality protections of the New Jersey Prevention of Domestic Violence Act ("PDVA"), and that constitute affirmative evidence of the continuing civil violations alleged in the Complaint.

A. Hardaway's Specific On-Air Statements Are Defamatory Per Se and Made With Actual Malice.

The transcript records Hardaway making the following statements concerning Plaintiff, each of which is false, made with knowledge of the court record, and made to a mass public audience in the context of pending litigation:

> "[H]e talks about being in court with the prosecutor who handled this case on some type of restraining order. So he — You gotta dee... do a deep dive into those videos... I've never heard of a situation where a prosecutor has to t... has to seek legal relief because someone is... because a, a, a, a, a victim who the state allegedly, uh, who supposedly represents is doing something to them to make them get a protective order. I never heard of it." — Hardaway, Transcript at 41:23–42:04

> "Look at some of those earlier videos when he's talking about, uh, breaking her jaw..." — Hardaway, Transcript at 1:01:23–1:01:29

> "You're still sitting here saying that she was criminally charged with stealing your dog when that's not the truth. She was found not guilty, but you have this restraining order,

*and as long as you have this restraining order, everything that you do can flow from it."*
— Hardaway, Transcript at 29:08–29:22

*"He was found, uh, guilty in court for making that up. He leaves that part out."* —
Hardaway, Transcript at 28:36–28:57 (referring to allegations regarding Evins' conduct
toward Plaintiff's child)

These statements are not protected legal opinion. They are factual assertions about criminal court outcomes, alleged threats of violence, and characterizations of Plaintiff's motivation and credibility — broadcast publicly while Hardaway was actively representing Evins in the Carfagno FRO vacatur proceedings pending before the Superior Court of New Jersey. Hardaway made these statements knowing that the October 30, 2024 sworn testimony of her own client, Francyna Evins, directly contradicted the narrative she was broadcasting. Statements made with knowledge of their falsity, or with reckless disregard for their truth or falsity, constitute actual malice under "*New York Times" Co. v. Sullivan*, 376 U.S. 254 (1964), and under New Jersey defamation law. See *Ward v. Zelikovsky*, 136 N.J. 516, 528 (1994) ("[D]efamation law protects the individual's interest in maintaining a good reputation").

B. Hardaway's Broadcast Characterization That Plaintiff Was "Convicted" of False Reporting Is False and Is Used to Perpetuate the Defamation Campaign.

Hardaway stated during the broadcast that Plaintiff "was found, uh, guilty in court for making that up" — a reference to proceedings she characterizes as having adjudicated claims about Evins' treatment of Plaintiff's child. To the extent any such conviction exists in any Middlesex County proceeding, Plaintiff submits that such conviction is void ab initio for reasons set forth fully in Point X below. The invocation of that conviction on a public media platform, by Hardaway as Evins' attorney, while simultaneously representing Evins in FRO vacatur proceedings where Plaintiff's rights were at stake, constitutes independent and actionable conduct. An attorney who weaponizes a potentially void criminal adjudication in a public media forum, for the express purpose of discrediting the opposing party in pending litigation, is not engaged in zealous advocacy. She is engaged in tortious interference with the judicial process and independent defamation.

C. The August 18, 2025 Broadcast Is Independent Evidence That the Continuing Violation Was Active at the Time of the 2026 Complaint's Filing.

The broadcast occurred on August 18, 2025 — during the pendency of the Carfagno FRO vacatur proceedings, after the filing of this federal action, and before the March 11, 2026 vacatur of Plaintiff's protective order. It is thus not historical background. It is contemporaneous evidence that the alleged misconduct was ongoing during the period immediately preceding the filing of the 2026 Complaint. Under the continuing violation doctrine, each tortious act in furtherance of a scheme refreshes the cause of action. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). The November 18, 2025 broadcast is one such act. It further establishes the pattern of coordinated public and judicial defamation that the 2026 Complaint seeks to redress.

POINT X

ANY CONVICTION OBTAINED AGAINST PLAINTIFF IN MIDDLESEX COUNTY MUNICIPAL PROCEEDINGS IS VOID AB INITIO BECAUSE IT WAS PROCURED BY EVINS' RETALIATORY REPORT OF ADJUDICATED CONDUCT IN VIOLATION OF PLAINTIFF'S CONSTITUTIONALLY PROTECTED RIGHTS, AS CONFESSED ON BODY-WORN CAMERA

During the August 2025 broadcast, Hardaway stated publicly that Plaintiff "was found, uh, guilty in court for making that up" in reference to allegations that Evins engaged in conduct harmful to Plaintiff's minor child. Plaintiff submits that any such conviction — obtained in Middlesex County proceedings — is void ab initio on grounds independent of the merits, because it was procured through Francyna Evins' deliberate, retaliatory report of conduct that had already been adjudicated in the Essex County domestic violence proceeding. That retaliatory report constituted a violation of Plaintiff's First and Fourteenth Amendment rights and renders the Middlesex proceeding constitutionally infirm from its inception.

A. Evins' Body-Camera Confession Establishes That the Middlesex Report Was Retaliatory.

Plaintiff possesses, and anticipates introducing through discovery, body-worn camera footage in which Francyna Evins admits, on camera, to reporting to Middlesex County law enforcement the same conduct that had already been heard and adjudicated in the Essex County Family Part domestic violence proceeding. This confession — captured on the law enforcement body camera of the officer who responded to Evins' report — establishes that the Middlesex filing was not a good-faith report of new criminal conduct. It was a retaliatory re-weaponization of adjudicated

allegations. Evins' decision to report to a separate jurisdiction matters with which the Essex County Family Part had already dealt was not an exercise of her rights as a complainant. It was a strategic attempt to circumvent the Essex County findings by initiating fresh proceedings in a new jurisdiction — a tactic Hardaway herself described on the August 2025 broadcast: "Only in New Jersey... if you end up in say, um, Carteret, uh, which is, which is a town in, uh, Middlesex... if you happen to be there at whatever particular time and he wants to file... she can... And those are just the municipalities." Transcript at 30:47–31:30. Hardaway thus confirmed, on the public record, that filing in multiple jurisdictions is the mechanism by which the campaign against Plaintiff has been sustained — and that mechanism is precisely what Plaintiff's complaint alleges. (See Exhibit D – Transcription of BWC – Officer Jonathan Defelice – Carteret Police Depart of Francyna Evins dated 12/8/2022)

B. A Conviction Procured by Retaliatory, Constitutionally Infirm Conduct Is Void Ab Initio and Cannot Be Given Preclusive Effect.

The Third Circuit has squarely held that a civil rights claim sounding in malicious prosecution — including a claim that a criminal prosecution was initiated without probable cause through retaliatory conduct — does not accrue until the prosecution is favorably terminated. *Coello v. DiLeo*, 43 F.4th 346, 357 (3d Cir. 2022) ("A Section 1983 claim sounding in malicious prosecution accrues when the prosecution terminates without a conviction"). This principle is rooted in the Supreme Court's instruction in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), that a plaintiff who seeks to recover damages for conduct whose unlawfulness "would render a conviction or sentence invalid" must first establish that the conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."

The Middlesex County conviction that Hardaway invokes — by referencing it publicly on a media broadcast as proof that Plaintiff was a liar — is precisely the kind of conviction that, if it exists, must be scrutinized under this framework. If that conviction was obtained through Evins' deliberate retaliatory report of adjudicated conduct — conduct already heard and decided by the Essex County Family Part — then it is void ab initio for lack of a constitutionally valid predicate. A report made not to vindicate a genuine grievance but to weaponize the multi-jurisdictional court system as a tool of retaliation cannot serve as the foundation for a valid criminal

conviction. See *Coello*, 43 F.4th at 355 (civil rights claims arising from conviction procured through misconduct do not accrue until conviction is vacated). Because that conviction has not been affirmatively challenged and vacated in state court — not because its validity is settled, but because Plaintiff's access to post-conviction processes has itself been disrupted by the ongoing multi-jurisdiction campaign documented in the Complaint — Plaintiff expressly reserves all claims arising from that conviction pending its appropriate challenge in state court.

C. Hardaway's Public Broadcasting of a Potentially Void Conviction Constitutes Defamation With Actual Malice.

Independently of the validity of the conviction itself, Hardaway's decision to broadcast the statement that Plaintiff "was found guilty in court for making that up" on a public platform — while she was actively representing Evins in proceedings before the Superior Court and this Court — constitutes defamation per se. Plaintiff is identified by name; the false statement of fact (that Plaintiff was adjudged to have fabricated allegations against Evins' conduct toward his child) was made to a mass audience; and the statement was made with knowledge that the Essex County record, the October 30, 2024 sworn testimony, and Plaintiff's own uncontradicted testimony all documented Evins' admitted misconduct. Broadcasting a conviction to a public audience as if it resolves contested factual disputes — when the speaker knows the conviction's foundation is disputed and when the speaker is simultaneously pressing that conviction as a litigation advantage — is the paradigmatic case of actual malice. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *Ward v. Zelikovsky*, 136 N.J. 516, 528–29 (1994).

POINT XI

HARDAWAY'S BROADCAST DISCLOSURE OF PDVA PROCEEDINGS VIOLATED N.J.S.A. 2C:25-33, N.J. COURT RULE 1:38-3(d)(9), AND CONSTITUTES AN INDEPENDENT TORTIOUS ACT ACTIONABLE IN THIS COURT AS PART OF THE ONGOING CIVIL RIGHTS VIOLATION

The New Jersey Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 et seq., was enacted to protect victims of domestic violence by, among other things, establishing strict confidentiality over the records and proceedings arising under the Act. N.J.S.A. 2C:25-33 expressly provides that "[a]ll records maintained pursuant to this act shall be confidential and shall not be made available to any individual or institution except as otherwise provided by law." N.J. Court Rule

1:38-3(d)(9) independently designates domestic violence transcripts as court records excluded from public access. The New Jersey Domestic Violence Procedures Manual confirms that "[d]omestic violence transcripts are confidential pursuant to R. 1:38-3(d)(9)." Cynthia Hardaway, as the attorney of record for Francyna Evins in the domestic violence proceedings, was a custodian of information arising from those proceedings. Her decision to appear on a public social media broadcast on or about August 2025, and to discuss the substance, procedural history, tactical posture, and evidentiary record of those proceedings — by name, and in detail — constitutes a violation of these protections that is itself independently tortious.

A. The PDVA Confidentiality Framework Protects Both the Records and the Proceedings — Including Proceedings in Which Howard Is the Plaintiff and Victim.

The PDVA's confidentiality mandate extends to all records arising from proceedings under the Act, including those in which a final restraining order was entered. N.J.S.A. 2C:25-33 covers "all records maintained pursuant to this act" — without limiting the protection to one party's records. N.J. R. 1:38-3(d)(9) similarly excludes domestic violence transcripts from public access "across the board." See New Jersey Domestic Violence Procedures Manual (N.J. AOC 2022) ("domestic violence transcripts are confidential pursuant to R. 1:38-3(d)(9)"). Plaintiff Clayton Howard is the victim-plaintiff in FRO matter FV-07-3579-22. The records of that proceeding — including the trial transcript, the judge's findings, the evidentiary basis for the final restraining order, and the Carfagno vacatur proceedings — are all protected confidential records under the PDVA and Rule 1:38-3(d)(9). Hardaway's broadcast detailed each of these elements to a public audience of unknown size. She discussed the predicate act allegations; the dynamics of the 2022 trial; the grounds for the final restraining order; the criminal acquittal and its relationship to the FRO; and the ongoing Carfagno proceedings. All of this disclosure was prohibited by law.

B. Hardaway's Disclosure Also Violated Her Independent Professional Obligations Under N.J. RPC 1.6 and RPC 3.6.

An attorney who appears on a public platform and discusses the substance of pending litigation involving her client — describing the evidentiary posture, the client's criminal history, the litigation tactics employed, and the opposing party's conduct — while that litigation is actively pending, violates New Jersey Rules of Professional Conduct 1.6 (Confidentiality of Information) and 3.6 (Trial Publicity). N.J. RPC 3.6(a) prohibits a lawyer from making extrajudicial statements that the lawyer knows or reasonably should know will be disseminated to the public

and will have a substantial likelihood of materially prejudicing the proceeding. Hardaway's broadcast, on a social media platform with a public audience, constituted precisely such a statement. While a professional conduct violation is not itself a cause of action, it is relevant evidence of the intentional character of the conduct at issue and supports the inference that Hardaway's broadcast was not an inadvertent disclosure but a deliberate strategic act directed at Howard and the proceeding. See *Baxt v. Liloia*, 155 N.J. 190, 197 (1998) (professional obligations bear on the scope of an attorney's duties to third parties where those duties overlap with statutory or common law obligations).

C. Hardaway's Own On-Air Statements Confirm the Tortious Intent of the Disclosure.

The transcript makes clear that Hardaway did not stumble into a casual conversation. She made a deliberate decision to participate: "This is not anything that I normally do. Um, but I think it's important because, uh...for people to understand how this all started." Transcript at 7:48–8:07. This acknowledgment — that the appearance was unusual for her, and that she chose to participate to shape public understanding of proceedings in which she was active counsel — confirms that the disclosure was intentional and purposeful. It was not compelled by law or judicial process. It was not authorized by any court. And it was not directed at correcting a legal error through proper channels. It was a targeted extrajudicial effort to influence the public narrative surrounding pending proceedings in which Plaintiff Howard was the victim-plaintiff — a naked attempt to undermine Plaintiff's credibility with the public and, indirectly, with the courts before which the matters were pending.

Moreover, during the broadcast, Hardaway directly confirmed the multi-jurisdictional nature of the campaign against Plaintiff, explaining in detail how complaints can be filed across municipalities — "she can go down and file a complaint in that town" — and acknowledged that the judiciary lacks a mechanism to detect or stop such a pattern: "[T]here is no unity amongst the judiciary." Transcript at 54:30. She was not diagnosing a systemic problem in the abstract. She was describing, in real time, on a public platform, the very mechanism that Plaintiff's Complaint alleges was deployed against him — while actively representing the party who deployed it.

Taken together, the August 2025 broadcast constitutes: (1) an independent act of defamation per se, made with actual malice, directed at Plaintiff Howard by name in a public forum; (2) a violation of the PDVA's confidentiality mandate under N.J.S.A. 2C:25-33, actionable as tortious breach of a statutory duty; (3) a violation of N.J. R. 1:38-3(d)(9)'s exclusion of domestic

violence transcripts from public access; (4) a violation of N.J. RPC 1.6 and RPC 3.6; and (5) independently, powerful evidence of the continuing violation alleged in the Complaint, confirming that the misconduct was active and intentional as recently as August 2025 — well within the limitations period and well within the scope of the claims in the 2026 Complaint. The motion to dismiss must therefore be denied.

POINT XIII

ESSEX COUNTY'S SYSTEMATIC REFUSAL TO PROSECUTE EVINS' REPEATED VIOLATIONS AGAINST PLAINTIFF SUPPORTS THE CONTINUING VIOLATION DOCTRINE, EVIDENCES DELIBERATE INDIFFERENCE TO A KNOWN CONSTITUTIONAL RISK, AND SUPPORTS MONELL LIABILITY FOR FAILURE TO PROPERLY TRAIN OFFICIALS TO RECOGNIZE MALE VICTIMS OF DOMESTIC VIOLENCE AND FEMALE PERPETRATORS WHO EMPLOY JURISDICTION SHOPPING, PERJURY, AND EVIDENCE FRAUD

The constitutional violations Plaintiff suffered did not end with Hardaway's March 26, 2024 email to the Essex County prosecutor. They continued, and they continue today. Plaintiff has repeatedly sought law enforcement intervention in Essex County against Francyna Evins for violations of his rights and of the Final Restraining Order — efforts that have been systematically ignored by the Essex County Prosecutor's Office. Most recently, in August and September 2025, Evins was reported to police for additional offenses against Plaintiff. Both matters were referred to the grand jury. Despite those referrals, the Essex County Prosecutor's Office has refused to return contact to Plaintiff — the documented victim of those offenses — notwithstanding his repeated and documented outreach attempts. This pattern of non-response is not coincidental. It is the predictable and demonstrable consequence of the false framing that Hardaway and Evins constructed against Plaintiff across multiple forums beginning in 2022: by falsely attributing to Plaintiff a fabricated mental health diagnosis, a fabricated YouTube channel, and retaliatory criminal conduct, Hardaway and Evins ensured that the very prosecutorial office responsible for protecting Plaintiff would instead view him as an aggressor and ignore his claims as a victim. That prosecutorial posture — shaped by the defendants' fraud — has functioned as a force-multiplier for the ongoing civil rights violation.

A. The Essex County Prosecutor's Post-August 2025 Non-Response Constitutes Independent Evidence of the Continuing Violation.

The continuing violation doctrine provides that where a defendant engages in a pattern of unlawful conduct that is ongoing, a plaintiff's claims are not time-barred merely because some acts in the series predate the limitations period. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–17 (2002); *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995). The doctrine applies where the plaintiff can demonstrate "a series of related acts, one or more of which falls within the limitations period." *West*, 45 F.3d at 754–55. Here, the series of acts includes: the March 26, 2024 submission of falsified records to the Essex County Prosecutor; the 2025–2026 Carfagno proceedings and their submission of fabricated photographic evidence; the August 2025 media broadcast containing defamatory statements and PDVA violations; and the Essex County Prosecutor's refusal in 2025 to respond to Plaintiff's victim outreach following the August and September 2025 grand jury referrals. Each of these acts is a link in the same chain. The most recent act — the Office's non-response to Plaintiff as a victim of two matters referred to the grand jury as recently as September 2025 — falls squarely within the limitations period. The continuing violation is active, live, and ongoing. The 2026 Complaint is therefore timely in its entirety.

B. The Prosecutor's Office's Failure to Prosecute Evins' Violations Despite Over Twenty Documented Incidents and Two Grand Jury Referrals Supports Monell Liability for Deliberate Indifference.

A municipality may be held liable under 42 U.S.C. § 1983 where its failure to train employees "amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978) established that such liability attaches where the unconstitutional conduct reflects an official policy or custom. The Third Circuit has recognized that "where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants, such a shortcoming can properly be thought of as a city policy or custom that is actionable under § 1983." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275–76 (3d Cir. 2000). Where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the

policymakers of the city can reasonably be said to have been deliberately indifferent to the need," Canton, 489 U.S. at 390, municipal liability is cognizable at the pleading stage. Here, the Essex County Prosecutor's Office has had actual and repeated notice — across more than twenty documented incidents spanning 2022 to 2025, two separate grand jury referrals in 2025, and multiple contacts from Plaintiff as the documented victim — that Francyna Evins was engaged in a sustained pattern of violations against Howard. The Office's response has been silence. That silence is not a good-faith exercise of prosecutorial discretion. It is the end product of a distorted factual record that Hardaway and Evins deliberately created by submitting falsified mental health records, fabricating a YouTube channel attributed to Plaintiff, and framing him before the very prosecutorial office that would otherwise protect him. The Office's repeated non-response to Plaintiff's victim outreach — including its failure to return contact after the August and September 2025 grand jury referrals — constitutes deliberate indifference to a known constitutional risk. Where a prosecutor has been put on repeated actual notice of a series of violations by a documented offender against a documented victim, and repeatedly declines to respond, the pattern evidences the "widespread practice" that Monell liability demands. *Cf. Berg*, 219 F.3d at 276.

C. The Systematic Failure to Protect Plaintiff Reflects a Custom of Failing to Recognize Male Victims of Domestic Violence and Female Perpetrators Who Employ Complex Fraud-Based Abuse.

The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from applying facially neutral policies in a discriminatory manner based on sex. Where a law enforcement agency or prosecutor's office systematically fails to protect male victims of domestic violence while intervening to protect female victims in comparable circumstances, that disparity supports an equal protection claim cognizable under § 1983. See *Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991) (recognizing gender-based norms in enforcement of domestic violence law). Here, the pattern is stark: the Essex County Prosecutor's Office aggressively pursued Evins on charges initiated by Howard in the 2022–2024 criminal matter — but only after Hardaway and Evins had poisoned the factual record with falsified mental health materials and a fabricated YouTube channel. Once that false framing took hold, the Office ceased treating Howard as a victim at all. His more than twenty complaints of violations, his grand jury referrals, and his direct outreach attempts produced no response. The training failure underlying this pattern is not subtle: the

Prosecutor's Office has not trained its personnel to identify and respond to the specific profile of a female perpetrator who deploys jurisdiction shopping, perjury, evidence fabrication, and attorney-mediated fraud to systematically neutralize her male victim's ability to seek legal protection. That failure — which Canton identifies as actionable when it is "so obvious" and "likely to result in the violation of constitutional rights" that policymakers can be said to have been deliberately indifferent, 489 U.S. at 390 — is precisely what the evidence in this case demonstrates.

Critically, Hardaway herself described the mechanism of this institutional failure on the August 18, 2025 broadcast: "[T]here is no unity amongst the judiciary" — acknowledging that different courts and offices do not communicate, do not share records, and therefore cannot detect the coordinated, multi-jurisdictional pattern that a sophisticated perpetrator like Evins can exploit. That structural gap is not merely a procedural inconvenience. It is a systemic failure that enabled twenty-plus violations to go unanswered, two grand jury referrals to produce no victim contact, and a documented domestic violence victim to be progressively stripped of legal protection while his abuser operated freely across four jurisdictions. Where the defendants themselves acknowledge this gap on the public record, the Complaint's allegation of a policy-level failure is not speculative — it is corroborated. The Court should deny dismissal and permit these claims to proceed to discovery, where the full pattern of non-enforcement can be established on the record.

POINT XIV

IN THE ALTERNATIVE, PLAINTIFF MUST BE GRANTED LEAVE TO AMEND

(Responding to Hardaway's Request for Dismissal With Prejudice)

Should this Court identify any deficiency in the pleadings, the appropriate remedy is leave to amend, not dismissal with prejudice. Hardaway requests final dismissal but has not come close to demonstrating the conditions that would justify it.

A. Leave to Amend Must Be Freely Granted.

Under Fed. R. Civ. P. 15(a)(2), the Court should freely give leave to amend "when justice so requires." The Third Circuit has held that a pro se plaintiff must generally be afforded at least one opportunity to cure pleading defects before dismissal with prejudice is entered. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The standard for denying leave is high:

the Court must find that amendment would be inequitable or futile. Id. Neither condition is present here.

B. Hardaway Has Not Demonstrated Futility.

Futility means that an amended complaint would not survive a renewed motion to dismiss. Hardaway has made no such showing. She argues that the claims are recycled — a substantive argument that, as demonstrated above, is factually and legally incorrect. She has not argued, and cannot argue, that Plaintiff would be incapable of curing any identified pleading defect through a more particularized amended complaint. Given the complexity of the underlying facts — spanning multiple litigations, multiple forums, and multiple years of documented misconduct — any identified deficiency in particularity is plainly curable.

C. Dismissal With Prejudice at This Stage Would Be Disproportionate.

Dismissal with prejudice is a drastic sanction reserved for cases where the plaintiff has had full opportunity to plead and has failed, or where the claims are clearly futile. This is a complex civil rights action brought by a pro se plaintiff involving ongoing misconduct by defendants who have litigated aggressively in multiple forums. Entering final dismissal with prejudice before any discovery, before Plaintiff has had an opportunity to respond to specific identified deficiencies with an amended complaint, and in the face of active ongoing misconduct by the defendants, would be a misuse of the dismissal sanction.

CONCLUSION

Defendant Hardaway's Motion to Dismiss should be denied in its entirety. Her principal argument — that this complaint is a recycled version of the 2024 federal action — fails upon examination of both documents. The 2024 complaint arose from the Essex County criminal prosecution of Evins and the Carteret Municipal Court proceedings. The 2026 complaint arises from the FRO vacatur proceedings, the fabricated evidence and perjury presented therein, the March 11, 2026 vacatur of Plaintiff's protective order, and a continuing pattern of defamatory conduct culminating in the very motion now before the Court. These are different transactions, different proceedings, different legal theories, and different injuries. Claims that had not accrued when the 2024 complaint was filed cannot be barred by a dismissal of that complaint.

The service argument fails because Plaintiff proceeded in forma pauperis and the obligation to serve rested with the U.S. Marshals Service, not Plaintiff. Any defect is the Marshals' error and is

curable. The immunity arguments fail because Hardaway is not a state actor and the specific immunities that terminated the 2024 action do not extend to a private defense attorney's alleged submission of fabricated evidence and perjury in civil proceedings. The state court argument fails because federal courts have independent jurisdiction over federal civil rights claims regardless of parallel state litigation.

Hardaway's characterizations of Plaintiff as obsessed, miserable, and despicable are not legal argument. They are defamation per se, published in a federal court filing with actual malice, and directly contradicted by her own client's sworn testimony. In open court on October 30, 2024, Evins admitted under oath that she gathered false mental health records about Plaintiff, delivered them to Hardaway for transmission to prosecutors, and preserved that false material after learning of its falsity for future strategic use in litigation. Hardaway's email falsely attributing a YouTube channel to Plaintiff was investigated by Essex County detectives, who determined through IP address analysis that the channel was controlled exclusively by Evins. These are not allegations — they are admissions and law enforcement findings, anticipated to be introduced in discovery and at trial. Hardaway files this motion knowing that record exists. The Court should disregard her characterizations of Plaintiff entirely.

Finally, should the Court identify any pleading deficiency, leave to amend under Fed. R. Civ. P. 15(a)(2) is the appropriate remedy. Hardaway has not demonstrated futility. Dismissal with prejudice at the pleading stage of a complex, ongoing civil rights action involving a pro se plaintiff would be improper under Third Circuit precedent.

Three additional and independent grounds compel denial of the motion. First, on November 18, 2025, while the Carfagno FRO vacatur proceedings were actively pending, Hardaway appeared on a public social media broadcast and made specific defamatory statements about Plaintiff by name, characterizing him as having been "found guilty in court for making that up," referencing threats of violence against Evins, and describing the multi-jurisdictional filing strategy in terms that mirror the Complaint's allegations — all while acknowledging that "[t]here is no unity amongst the judiciary" available to stop it. That broadcast constitutes an independent act of defamation per se made with actual malice. See *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *Ward v. Zelikovsky*, 136 N.J. 516, 528 (1994). It also violates the PDVA's confidentiality mandate under N.J.S.A. 2C:25-33 and N.J. Court Rule 1:38-3(d)(9), which designate domestic violence records and transcripts as excluded from public access —

protections Hardaway breached by publicly disclosing the substance, procedural history, and evidentiary posture of the FRO proceedings to a mass public audience. It further constitutes a violation of N.J. RPC 1.6 and RPC 3.6's prohibition on prejudicial extrajudicial statements in pending litigation. Second, to the extent any Middlesex County conviction exists that Hardaway invokes against Plaintiff, that conviction is void ab initio because it was procured through Francyna Evins' retaliatory report — confirmed on body-worn camera — of conduct already adjudicated by the Essex County Family Part in the FRO proceeding. Under *Coello v. DiLeo*, 43 F.4th 346, 357 (3d Cir. 2022) and *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), a civil rights claim arising from a conviction procured through constitutionally infirm, retaliatory conduct does not accrue until the conviction is favorably terminated. Plaintiff expressly reserves those claims. Third, Hardaway's public acknowledgment that the multi-jurisdictional filing mechanism operates precisely because courts in different municipalities and counties do not communicate — stated in her own words on a public platform on August  2025 — is an admission in evidence that the pattern alleged in the Complaint was real, ongoing, and understood by defense counsel to be the operative mechanism of the campaign against Plaintiff. That admission cannot be squared with her motion's claim that the Complaint is speculative, incoherent, or recycled. Fourth, as detailed in Point XIII, the Essex County Prosecutor's Office has systematically refused to act on Plaintiff's repeated, documented complaints spanning more than twenty violations — including two separate matters referred to the grand jury in August and September 2025 following which the Office refused to return contact with Plaintiff as the documented victim. That pattern of deliberate non-response, produced by the false framing Hardaway and Evins constructed, constitutes evidence of both a continuing violation and a Monell custom of deliberate indifference to the rights of male domestic violence victims and to the specific profile of a female offender who deploys fraud, jurisdiction shopping, and evidence fabrication. See *City of Canton v. Harris*, 489 U.S. 378, 388–90 (1989); *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 694 (1978); *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275–76 (3d Cir. 2000). The Court should deny the motion in its entirety.

For all of the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant Hardaway's Motion to Dismiss in its entirety, or in the alternative, grant leave to amend.

Dated: April 9, 2026

Respectfully submitted,

*Clayton Howard*

Clayton Howard,

Plaintiff Pro Se

24 Orchard Street

Carteret, New Jersey 07008

(929)781-7791

itsclaytonhoward@gmail.com